FRED M. BLUM, ESQ. (SBN 101586)
fblum@behblaw.com
MICHAEL E. GALLAGHER, ESQ. (SBN 195592)
mgallagher@behblaw.com
EARL L. HAGSTROM (SBN 150958)
ehagstrom@behblaw.com
DANIEL E. TROWBRIDGE (SBN 301301)
dtrowbridge@behblaw.com
BASSI, EDLIN, HUIE & BLUM LLP
500 Washington Street, Suite 700
San Francisco, CA 94111
Telephone:    (415) 397-9006
Facsimile:    (415) 397-1339

Attorneys for Defendant and Third Party Plaintiff
WHITTAKER CORPORATION

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SANTA CLARITA VALLEY WATER AGENCY, <br><br> Plaintiffs, <br><br> vs. <br><br> WHITTAKER CORPORATION and DOES 1-10, inclusive <br><br> Defendants. <br><br>_____ <br><br> WHITTAKER CORPORATION, <br><br> Third-Party Plaintiff, <br><br> vs. <br><br> KEYSOR-CENTURY CORP., a California Corporation; and SAUGUS INDUSTRIAL CENTER, LLC, a Delaware Limited Liability Company, <br><br> Third-Party Defendants. <br><br>_____ | Case No. 2:18-CV-6825-SB (RAOx) <br><br> *Assigned to Hon. Stanley Blumenfeld, Jr.* <br><br> **DEFENDANT AND THIRD PARTY PLAINTIFF WHITTAKER CORPORATION'S MOTION FOR PARTIAL SUMMARY JUDGMENT; AND *DAUBERT* MOTION TO EXCLUDE EXPERT CAUSATION OPINIONS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** <br><br> Date:         November 20, 2020 <br> Time:         8:30 a.m. <br> Courtroom: 6C <br><br> Action Filed:  August 8, 2018 <br> Trial Date:    January 19, 2021 |

2921034_5

1

DEFENDANT AND THIRD PARTY PLAINTIFF WHITTAKER CORPORATION'S MOTION
FOR PARTIAL SUMMARY JUDGMENT; AND *DAUBERT* MOTION TO EXCLUDE EXPERT
CAUSATION OPINIONS

## **NOTICE OF MOTION**

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that at 8:30 a.m. on November 20, 2020, Defendant and Third Party Plaintiff WHITTAKER CORPORATION ("Whittaker") will and hereby does move the Court:

1.     For Partial Summary Judgment against Plaintiff SANTA CLARITA VALLEY WATER AUTHORITY ("SCVWA") on Counts 1, 2, 8 and 9 that SCVWA cannot prove that Whittaker is the actual source of the VOCs found in its wells;

2.     For Partial Summary Judgment on Counts 3 through 8 and Count 10 as SCVWA cannot prove that Whittaker is the actual source of the VOCs found in its wells;

3.     To disallow, under *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589 (1993), any expert testimony that there has been sufficient time for VOCs to migrate to SCVWA's wells and/or that Whittaker is the source of any VOCs found in the wells; and

4.     To disallow, under *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589 (1993), any expert testimony that draws any conclusions based on the time that it may take perchlorate and/or VOCs to migrate to SCVWA's wells.

The motion will be heard before the Honorable Stanley Blumenfeld, Jr. in Courtroom 6C of the above-entitled Court, located at 350 West 1st Street in Los Angeles, California.

Whittaker brings this motion under Rule 56 of the Federal Rules of Civil Procedure and Rule 702 of the Federal Rules of Evidence.  The grounds for the motion are that there is no genuine dispute as to any material fact, and that Whittaker is entitled to summary judgment in its favor on all of SCVWA's causes of action set forth in the First Amended Complaint because SCVWA cannot prove

causation, which is a necessary element to each cause of action.  Specifically, SCVWA cannot prove that perchlorate and volatile organic compound ("VOC") contamination at its municipal water wells originated from the Whittaker-Bermite Site.  To the extent that experts Mark Trudell, Phyllis Stanin or Robert Gailey so opine, their scientific opinions should be excluded under *Daubert* because they are neither reliable nor based on sufficient data.  This includes any sub-opinions as to the amount of time required for surface releases of perchlorate or VOCs at the Whittaker site to migrate to the SCVWA water wells, or that there was sufficient time for such migration to occur.

Whittaker's motion is based on this Notice; the supporting Memorandum of Points and Authorities, Statement of Uncontroverted Facts and Conclusions of Law, and Declaration of Daniel E. Trowbridge ("Trowbridge Decl."); all pleadings and papers on file in this action; and upon such matters as may be presented to the Court at the time of the hearing on this motion.

Prior to making this motion, Whittaker attempted to meet and confer with SCVWA pursuant to L.R. 7-3.  After exchanging correspondence, Whittaker held a conference with SCVWA on October 22, 2020.  Trowbridge Decl., ¶ 43.

Dated:  October 23, 2020                BASSI, EDLIN, HUIE & BLUM LLP


By:   */s/Michael E. Gallagher*
        MICHAEL E. GALLAGHER
        Attorneys for Defendant and Third-Party Plaintiff
        WHITTAKER CORPORATION

2921034_5

3

DEFENDANT AND THIRD PARTY PLAINTIFF WHITTAKER CORPORATION'S MOTION FOR PARTIAL SUMMARY JUDGMENT; AND *DAUBERT* MOTION TO EXCLUDE EXPERT CAUSATION OPINIONS

# **TABLE OF CONTENTS**

I.   INTRODUCTION ...................................................................1

II.   STATEMENT OF FACTS .......................................................3

   A.   SCVWA CLAIMS AGAINST WHITTAKER ...............................3

   B.   THE WHITTAKER SITE AND PLAINTIFF'S WELLS..................3

   C.   SCVWA'S EXPERT REPORTS .............................................4

   D.   DR. TRUDELL'S DEPOSITION TESTIMONY ...........................6

      1.   No Data Regarding Vertical Migration At The Site ................6

      2.   No Data When VOCs And Perchlorate Arrived .....................7

      3.   No Ruling Out Of Possible Alternate Sources.........................7

   E.   PHYLLIS STANIN'S DEPOSITION TESTIMONY .......................7

   F.   ROBERT GAILEY'S DEPOSITION TESTIMONY .......................8

III.   LEGAL STANDARD.............................................................10

IV.   ARGUMENT.........................................................................11

   A.   THE TRIAL COURT SERVES AS A GATEKEEPER.................11

   B.   THESE EXPERT OPINIONS DO NOT SATISFY DAUBERT. ......12

      1.   Dr. Trudell Lacks Sufficient Data .........................................13

      2.   Dr. Trudell Has Not Ruled Out Alternate Sources ................14

      3.   Ms. Stanin Similarly Admitted The Lack of Data .................15

      4.   Dr. Gailey's Lack of Reliable Methodology...........................15

      5.   The Causation Opinions Should Be Excluded.......................17

   C.   ABSENT CAUSATION, WHITTAKER IS ENTITLED TO JUDGMENT ON SCVWA'S COMMON LAW CLAIMS. .................................18

V.   CONCLUSION ....................................................................19

**DEFENDANT AND THIRD PARTY PLAINTIFF WHITTAKER CORPORATION'S MOTION FOR PARTIAL SUMMARY JUDGMENT; AND *DAUBERT* MOTION TO EXCLUDE EXPERT CAUSATION OPINIONS**

# TABLE OF AUTHORITIES

**CASES**

*Amorgianos v. Nat'l R.R. Pass. Corp.*,
    303 F.3d 256, 270 (2d Cir. 2002) ..............................................15

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242, 248 (1986)..........................................................11

*Baker v. Chevron USA, Inc.*,
    680 F. Supp. 2d 865, 879 (S.D. Ohio 2010) ..............................18

*Castaic Lake Water Agency v. Whittaker Corp.*,
    272 F.Supp.2d 1053, 1066-1067 (C.D. Cal. 2003) ......................1

*Celotex Corp. v. Catrett*,
    477 U.S. 317, 323 (1986).....................................................10, 11

*Dana Corp. v. American Standard, Inc.*,
    866 F. Supp. 1481, 1498 (N.D. Ind. 1994) ................................12

*Daubert v. Merrell Dow Pharms., Inc.*
    509 U.S. 579, 589 (1993)........................... 11, 13, 14, 15, 17, 19

*Day, LLC v. Plantation Pipe Line Co.*,
    315 F. Supp. 3d 1219, 1225 (S.D. Ala. 2018)......................16, 17

*Kumho Tire Co., Ltd. v. Carmichael*,
    526 U.S. 137, 150 (1999)..........................................................11

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
    475 U.S. 574, 586 (1986)..........................................................11

*Textron, Inc. v. Barber-Colman Co.*,
    903 F. Supp. 1558, 1567-68 (W.D.N.C. 1995)...........................12

*Tyger Constr. Co., Inc. v. Pensacola Constr. Co.*,
    29 F.3d 137, 142 (4th Cir. 1994).............................................12

DEFENDANT AND THIRD PARTY PLAINTIFF WHITTAKER CORPORATION'S MOTION FOR PARTIAL SUMMARY JUDGMENT; AND *DAUBERT* MOTION TO EXCLUDE EXPERT CAUSATION OPINIONS

**STATUTES**

42 U.S.C. § 9607(a) ............................................................................3

CERCLA § 113(g) ...............................................................................3

Fed. R. Civ. P. 56(a) .........................................................................10

Fed. R. Civ. P. 56(e) .........................................................................11

FRCP 26(a)(2)(B) ..............................................................................18

**RULES**

F.R.E. 702(a) ........................................................................ 11, 16, 17

DEFENDANT AND THIRD PARTY PLAINTIFF WHITTAKER CORPORATION'S MOTION FOR PARTIAL SUMMARY JUDGMENT; AND *DAUBERT* MOTION TO EXCLUDE EXPERT CAUSATION OPINIONS

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

This action arises from Plaintiff SCVWA's alleged incurrence of response costs and other damages as a result of contamination by perchlorate and volatile organic compounds ("VOCs') of certain domestic water supply wells.  SCVWA, who manages water resources within the Santa Clarita Valley, alleges that the contamination originated from the former Whittaker Bermite site.[1]  However, the expert testimony which forms the basis of SCVWA's contention is inadmissible since its foundations are incomplete and nonscientific assumptions.  SCVWA and Third Party Defendant Saugus Industrial Center ("SIC") experts Dr. Mark Trudell, Phyllis Stanin or Robert Gailey have rendered these opinions nonetheless.

The fundamental problem with SCVWA's claim is that it lacks competent expert causation evidence to establish that the VOC contamination at its wells more likely than not came from Whittaker's property.[2]  SCVWA's primary designated expert on the source of the contamination, Dr. Mark Trudell, opines that the contamination originated from the Whittaker-Bermite site, but his opinion is based merely on (1) the general groundwater flow direction from the Whittaker-Bermite site northwesterly toward the SCVWA wells; and (2) the purported

---

[1] For the purposes of this Motion, Whitaker concedes that the perchlorate in Plaintiff's wells originated from its Site.  However, the same is not true for VOCs.  Perchlorate moves at least 2.5 times faster than VOCs which gave the treatment systems at the Site sufficient time to intercept the VOCs before they left the Site and reached the wells.

[2] CERCLA has a complicated causation requirement.  A plaintiff to make its *prima facie* need only prove that there is a plausible pathway from the defendant's site. *Castaic Lake Water Agency v. Whittaker Corp.,* 272 F.Supp.2d 1053, 1066-1067 (C.D. Cal. 2003).  A defendant may then rebut the showing by proving that there is not an actual pathway.  This motion does not affect the existence of a plausible pathway, but seeks a partial summary judgment relevant to establishing that no actual pathway exists.

2921034_5

1

passage of sufficient time for chemicals released at the Whittaker-Bermite site to have migrated the distance between that site and the SCVWA wells. Dr. Trudell concedes that there are other possibilities which he has not ruled out, such as the existence of an alternate source of contamination.

Dr. Trudell's "sufficient passage of time" opinion, upon which Ms. Stanin relies and shares, is inherently flawed. They only calculated the time that it may take the contaminants to migrate once they were in the groundwater. They ignored the travel time that it takes to move from the point of release at or near the surface to the groundwater. Neither took into account the full distance that contaminants would need to travel from the Whittaker site to SCVWA wells. Before getting to the groundwater the contaminants would need to approximately 60 to 400 feet, and the contaminants' ability to progress through the soil from the surface to the groundwater depends on a multitude of factors such as the soil composition, soil moisture, presence of other materials in the soil, and water infiltration in the soil.

Dr. Trudell conceded that he had not seen the soil data, had not performed the calculation, and could not opine how long it would take for the VOCs to reach the groundwater. Similarly, Ms. Stanin testified that she had not seen anyone do the necessary scientifically-based determinations as to how long it would have taken VOCs to move from a release point down to the saturated zone or the groundwater.

The omission of the vertical component is critical, and when it comes to the experts' causation opinion, fatal. This is the equivalent of an expert opining there is sufficient time to travel from Los Angeles to New York because he calculated the journey from Chicago to New York but skipped analysis of the Los Angeles to Chicago leg. He knows nothing about the traffic conditions, weather conditions, or road conditions from Los Angeles to Chicago, but still tries to stake an opinion covering the full Los Angeles to New York itinerary. Just as such a travel opinion should be excluded as speculative and lacking sufficient data, so too should any

causation opinions in this case purporting to identify the Whittaker site as the origin of perchlorate or VOC contamination at the SCVWA wells.

Absent causation opinions, SCVWA cannot prove causation.

## II.   STATEMENT OF FACTS

### A.   SCVWA CLAIMS AGAINST WHITTAKER

On March 18, 2019, SCVWA filed a Third Amended Complaint ("TAC") against Whittaker asserting ten claims for relief:  (1) Recovery Under CERCLA (Comprehensive Environmental  42 U.S.C. § 9607(a); (2) Declaratory Relief Under CERCLA § 113(g); (3) Negligence; (4) Negligence Per Se; (5) Nuisance; (6) Public Nuisance; (7) Trespass; (8) Recovery Under the California Hazardous Substance Account Act; (9) Declaratory Relief; and (10) Injunctive Relief Under RCRA.  Trowbridge Decl., Exhibit A. [3]  SCVWA alleged that it had incurred response costs and other damages in relation to contamination of certain domestic water supply wells by perchlorate and VOCs.  *Id.* at 2:2-3:5.  Essential to each cause of action was the allegation that the contamination originated at the Whittaker-Bermite site and migrated via groundwater to the SCVWA wells.

### B.   THE WHITTAKER SITE AND PLAINTIFF'S WELLS.

SCVWA wells that are at issue are called Saugus 1, Saugus 2, V-201, V-205 and Q2.  Figure 1 (on the next page) shows the placement of the wells which as well as the Site. For the Court's convenience the wells are enclosed in a red square and the Site is outlined in blue.

---

[3] A true and correct copy of the Third Amended Complaint is attached to the declaration of Daniel E. Trowbridge in Support of Whittaker's Motions for Summary Judgment and/or Partial Summary Judgment ("Trowbridge Decl.").

Figure 1



## C.   SCVWA'S EXPERT REPORTS

On April 21, 2020, SCVWA served its Amended Disclosure of Expert Witnesses.  SCVWA disclosed only one expert, Mark Trudell, Ph.D., on the subject of the source(s) of the VOC contamination found in its wells.  SCVWA Amended Expert Disclosure, p.1. [4]  SCVWA also disclosed Ms. Phyllis Stanin as an expert on "contamination pathways" from the Whittaker site to the wells, and

---

[4] A true and correct copy of the Amended Expert Disclosure, Served April 21, 2020, is attached to the Declaration of Daniel Trowbridge in support of Whittaker's Motions for Summary Judgment and/or Partial Summary Judgment, as Ex. AG.

on the impact of Whittaker treatment wells to offsite groundwater contamination. Id.

On August 3, 2020, SCVWA served Dr. Trudell's expert report. Exhibit 274 to Dr. Trudell's Deposition Transcript, Dr. Trudell's Expert Report dated August 3, 2020[5] ("Trudell Report"). Dr. Trudell's Opinion 4 stated: "VOCs from the Whittaker Site have impacted municipal water supply wells including Saugus 1 and Saugus 2, V201 and V205. Id. The VOCs at issue were primarily TCE and to a lesser extent PCE. Dr. Trudell calculated that there were approximately 75 years of travel time for contaminants to migrate from the Site to the location of the Saugus wells; it is reasonable to expect that groundwater from beneath the Whittaker Site, containing whatever contamination is present in the Saugus formation beneath the Site, would reach the Saugus wells within this timeframe." Id. at 18.

Dr. Trudell opined that perchlorate and VOCs travel along the exact same groundwater path from the Site to the wells. Id. at 13-14. However, because of the different properties of perchlorate and the VOCs, "TCE and PCE plumes will migrate at 2.6 times slower, and 5.51 times slower, than perchlorate . . . ." Id. at 13.

On August 3, 2020, SCVWA also served the expert report of Ms. Phyllis Stanin. Expert Report of Phyllis S. Stanin, August 3, 2020, Exhibit 369 to the Stanin Deposition ("Stanin Report"). [6] Ms. Stanin's opinions included that there were "plausible pathways" for VOC contamination to for VOC migration from the Whittaker site to downgradient water supply wells. Id. at 39.

---

[5] A true and correct copy of Dr. Trudell's Expert Report is attached as Exhibit N to the Trowbridge Decl.

[6] A true and correct copy of Ms. Stanin's Expert Report is attached as Exhibit AH to the Trowbridge Decl.

2921034_5

DEFENDANT AND THIRD PARTY PLAINTIFF WHITTAKER CORPORATION'S MOTION FOR PARTIAL SUMMARY JUDGMENT; AND *DAUBERT* MOTION TO EXCLUDE EXPERT CAUSATION OPINIONS

**D.**   **DR. TRUDELL'S DEPOSITION TESTIMONY**

**1.**   **No Data Regarding Vertical Migration At The Site**

At his September 21, 2020 deposition, Dr. Trudell opined that surface releases of TCE at or around the Hula Bowl (located on the Whittaker site) likely migrated down to groundwater.  Deposition of Dr. Mark Trudell, taken September 21, 2020, at 40:22-41:3 ("Trudell Depo").[7]  He based this opinion on a map of VOC-impacted areas and perchlorate-impacted areas.

Dr. Trudell testified that VOC soil concentrations (e.g. TCE) on the Whittaker site were relevant because "they established part of the chain that connects the use and release of chemicals on the . . . site to contamination in soil and then contamination in groundwater and then migration in groundwater." *Id.* at 33:18-34:5.  Yet, he had no opinion as to how long it would take the VOCs to move from the point of release, through the unsaturated zone, and to the groundwater. *Id.* at 69:5-78:24.[8]  Dr. Trudell did not review any soil sampling or soil gas data for the Whittaker site. *Id.* at 26:8-19.  Specifically, he did not look at any of the soil data to see if there was any evidence of movement of TCE in the soil from the surface all the way down to the saturated zone. *Id.* at 34:6-17.

Dr. Trudell did not know the distance from the surface at the Whittaker site to the saturated zone. *Id.* at 69:5-78:24. He testified that the amount of time for a surface spill of VOCs to reach the groundwater would depend on too many variables (e.g. volume of the spill, volatilization while the spill stays on the surface, soil properties such as moisture content and unsaturated hydraulic conductivity) to answer without actually doing an analysis, which Dr. Trudell did

---

[7] A true and correct excerpted copy of Dr. Trudell's deposition is attached as Exhibit AI to the Trowbridge Decl.

[8] Hydrologists refer to the area where groundwater is located as the saturated zone. Areas with little or no groundwater are referred to as the unsaturated zone.

not do. *Id.* He conceded that it was possible to do calculations to bracket the time it would have taken for VOCs to have gone from the surface to the groundwater, but he did not do those calculations. *Id.*

### 2.   No Data When VOCs And Perchlorate Arrived

Dr. Trudell assumed that VOCs and perchlorate arrived at the groundwater at the same time and at the same location, before migrating laterally to the Saugus wells. *Id.* at 222:3-223:5. However, he admitted that he had not done the analysis to determine if in fact they did arrive at the same time or location. *Id.*

### 3.   No Ruling Out Of Possible Alternate Sources

Assuming that perchlorate and VOCs enter the groundwater at the same time, they take the same pathway. *Id.* at 56:11-57:14. Because TCE experiences retardation, perchlorate travels faster in groundwater, approximately 2.6 times the distance as TCE. *Id.* at 167:22-168:2. In the case of well V-205, TCE arrived first and perchlorate arrived approximately three years later; a possible explanation could be a source of TCE other than the Whittaker site, and Dr. Trudell cannot rule out that explanation. *Id.* at 118:22-119:7.

### E.   PHYLLIS STANIN'S DEPOSITION TESTIMONY

At her October 9, 2020 deposition, Ms. Stanin likewise testified that she had "not seen anybody do the necessary scientifically based determinations as to how long it would have taken VOCs, in this case TCE or PCE, to move from a release point down to the saturated zone or the groundwater." Deposition of Phyllis Stanin, October 9, 2020[9], ("Stanin Depo") Trowbridge Decl., Exhibit AJ at 86:22-87:5.

Ms. Stanin agreed that simply because a release of VOCs occurs at the surface, the release does not have to result in groundwater contamination; it is

---

[9] A true and correct excerpted copy of Ms. Stanin's deposition transcript is attached as Ex. AJ to the Trowbridge Decl.

DEFENDANT AND THIRD PARTY PLAINTIFF WHITTAKER CORPORATION'S MOTION FOR PARTIAL SUMMARY JUDGMENT; AND *DAUBERT* MOTION TO EXCLUDE EXPERT CAUSATION OPINIONS

dependent on the existence or nonexistence of variables in the unsaturated zone between the surface and the groundwater. *Id.* at 75:12-20. The unsaturated zone at the Whittaker-Bermite is extremely heterogeneous. *Id.* at 75:21-77:5.[10] This heterogeneity, in addition to other factors such as the water table changing over time, how long something stayed in place, and whether it was remediated, make a determination of how long it would take a release of TCE to move from the surface down to the saturated zone very difficult, even if one knew where the release occurred and the volume. *Id.* Ms. Stanin was not aware of any investigation of release points at the Whittaker-Bermite site. *Id.* at 72:1-6.

Ms. Stanin testified that she did not know about the soil characteristics for the initial infiltration; she assumed it was heterogeneous but admitted that she had not looked at it all. *Id.* at 82:13-22.

## F.   ROBERT GAILEY'S DEPOSITION TESTIMONY

At his October 7, 2020 deposition, SIC's hydrogeology expert Dr. Robert Gailey took a different approach than Dr. Trudell and Ms. Stanin, in that Dr. Gailey offered an opinion as to how long it would take for perchlorate to move from the surface at the Whittaker site through the unsaturated zone to the groundwater: a couple years to a decade. Expert Report of Dr. Robert M. Gailey, July 31, 2020[11]; Deposition of Dr. Robert Gailey, taken October 7, 2020, at 84:24-86:1.[12] Dr. Gailey did not do a calculation, but bracketed it with some ranges. *Id.*

---

[10] When the unsaturated zone is heterogeneous that means that the constituents and properties of the materials that make up the unsaturated zone vary throughout the site. This variability makes it very difficult, if not impossible, to make generalizations concerning the movement of VOCs at any given location.

[11] A true and correct copy of Dr. Gailey's Expert Report is attached as Ex. AK to the Trowbridge Decl.

[12] A true and correct excerpted copy of Dr. Gailey's deposition transcript is attached as Exh. AL to the Trowbridge Decl.

2921034_5

8

at 85:4-6.  He testified that he did not discuss this assessment in his expert report, or any of the documents that he attached to his report.  *Id.* at 85:7-8; 86:24-87:14. The depth to groundwater at the Hula Bowl on the Whittaker site currently is anywhere from 150 to 300 feet to groundwater, but if you look back in time you'll see the water levels may have been a hundred feet shallower; nowhere in his expert report or his rebuttal report did Dr. Gailey state this analysis.  *Id.* at 103:3-24.

The published reliance documents cited in Dr. Gailey's expert report provided equations, theory, and representative parameter values, but none of them set forth a "here's how you do this, step A, step B, step C" methodology on how to determine the amount of time it would take for perchlorate to move from the surface to through the unsaturated zone to the groundwater.  *Id.* at 94:2-98:13.

Dr. Gailey could not point to any regulatory documents whether it be guidance documents or anything published by EPA, DTSC, or any other regulatory agency that supported his conclusion that the travel time in the unsaturated zone would be small.  *Id.* at 93:13-19.  He took information from different sources that he had learned as a result of his experience, put them all together, and from that made his assessment that the travel time through the unsaturated zone would be small.  *Id.* at 98:14-20.  He did not use any equation or models at all in reaching his conclusions relating to movement through the unsaturated zone.  *Id.* at 105:17-22.

Dr. Gailey testified that hydraulic conductivity would affect the movement of perchlorate through the unsaturated zone.  *Id.* at 106:16-19.  Hydraulic conductivity is variable over time and location in the unsaturated zone beneath the Whittaker site.  *Id.* at 107:5-10.  To the best of Dr. Gailey's knowledge, nobody took measurements of hydraulic conductivity through the unsaturated zone at the Whittaker site.  *Id.* at 107:11-15.

Dr. Gailey also testified that infiltration rate – the rate of bulk fluid entry into the ground – would affect movement of perchlorate through the unsaturated zone.  *Id.* at 107:16-19, 108:14-17.  To the best of Dr. Gailey's knowledge, nobody

1   did bulk fluid analysis as it related to the unsaturated zone at the site.  *Id.* at

2   108:18-21.  There was no information at which Dr. Gailey looked that told him

3   what percentage of rainfall during certain time periods infiltrated into the ground.

4   *Id.* at 119:2-7.  At no time period, whether it be aggregate or for a specific year, did

5   Dr. Gailey look at all the different variables that would affect water infiltration to

6   determine how much of the rain infiltrated into the ground.  *Id.* at 123:4-17.

7        Dr. Gailey testified that all of the variables affecting movement of

8   perchlorate through the unsaturated zone also applied to VOCs.  *Id.* at 109:1-4.

9   For VOCs, another important variable is the carbon content of the soil because a

10  portion of the VOCs would adhere to the soil depending upon the carbon content

11  of the soil.  *Id.* at 109:5-16.  Dr. Gailey did not see data that told him what the

12  carbon content of the soil was at the Whittaker site.  *Id.* at 109:17-20.

13       Dr. Gailey testified that the amount of perchlorate released at the surface

14  would affect the actual concentrations in the groundwater, and had the potential to

15  affect the transport as well.  *Id.* at 117:8-13.  He did not know when the most

16  perchlorate was released at the Whittaker site, or when the least perchlorate was

17  released.  *Id.* at 117:14-20.  The same "I don't know" answers applied to VOCs.

18  *Id.* at 117:21-23.

19

20  **III.   LEGAL STANDARD**

21       A party may move for summary judgment by "identifying each claim or

22  defense – or the part of each claim or defense – on which summary judgment is

23  sought."  Fed. R. Civ. P. 56(a).  Summary judgment is required where the movant

24  shows "there is no genuine dispute as to any material fact and that the movant is

25  entitled to judgment as a matter of law."  *Id.*

26       The movant bears the initial burden of demonstrating the absence of a

27  genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

28  A fact is material if it could affect the outcome of the suit under the governing

substantive law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The movant need only point out that there is an absence of evidence to support the non-movant's case.  *Celotex*, 477 U.S. at 325.

If the movant meets its initial burden, the non-movant then has the burden of identifying evidence of a genuine dispute of material fact.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  The Court may grant summary judgment if the motion and supporting materials show the movant is entitled to it.  Fed. R. Civ. P. 56(e).

## IV.   ARGUMENT

### A.    THE TRIAL COURT SERVES AS A GATEKEEPER.

A person qualified as an expert witness may testify in the form of an opinion if the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue.  F.R.E. 702(a).  Rule 702 requires that the court "ensure that any and all scientific testimony . . . is not only relevant, but reliable."  *Daubert v. Merrell Dow Pharms., Inc.* 509 U.S. 579, 589 (1993).

A district court faced with a proffer of expert scientific testimony must assess whether the reasoning or methodology underlying the testimony is scientifically valid and whether it can be applied the facts of the case at hand.  Id. at 592-93.  The district court may consider the following factors to evaluate the reliability of the testimony being proffered:  (1) whether theory or technique can be, or has been, tested; (2) whether it has been subjected to peer review and publication; (3) whether it has a known or potential rate of error; and (4) whether it has been generally accepted by the scientific community.  Id. at 593-94; *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 150 (1999).

"An expert's opinion should be excluded when it is based on assumptions which are speculative and are not supported by the record."  *Tyger Constr. Co.,*

1  *Inc. v. Pensacola Constr. Co.*, 29 F.3d 137, 142 (4th Cir. 1994); *Dana Corp. v.*
2  *American Standard, Inc.*, 866 F. Supp. 1481, 1498 (N.D. Ind. 1994) ("There must
3  be evidence beyond a witness effectively saying 'anything's possible,' because
4  such evidence is not sufficient to support a finding").

5  In *Textron, Inc. v. Barber-Colman Co.*, 903 F. Supp. 1558, 1567-68
6  (W.D.N.C. 1995), the court considered a challenge to expert Koon's opinion that
7  the defendant likely poured BTEX-containing Varsol down the sink in accordance
8  with industry custom at the time, such that the BTEX components would be
9  adsorbed into wastewater tank sludge.  Koon conceded that the time it would take
10  for the BTEX to degrade would depend upon the amount and frequency that BTEX
11  entered the system.  The only evidence concerning disposal of Varsol indicated
12  that the defendant had a standard procedure whereby Varsol was dumped on coal
13  piles that were burned to produce energy.

14  The court concluded that Koon's testimony as to some generalized industry
15  custom could not rebut the specific evidence of the defendant's disposal practices;
16  plaintiff and its experts were reduced to asserting that somebody must have poured
17  Varsol down a sink or toilet.  Even if the court assumed that some Varsol was
18  poured down the defendant's sinks or toilets, the court also would have to infer that
19  this occurred in amounts and with the frequency necessary to ensure that the BTEX
20  components had not biodegraded in the sludge.  The court declined to engage in
21  such conjecture, and granted summary judgment for the defendant.

22  **B.    THESE EXPERT OPINIONS DO NOT SATISFY DAUBERT.**

23  The Court should exclude the experts' opinions regarding whether the
24  Whittaker Site was the source of the VOCs in the wells, how long it took the VOCs
25  to travel from the surface of the Whittaker site to the SCVWA wells, and/or
26  whether there was sufficient travel time for the VOCs to reach the wells.  The
27  opinions do not meet the <u>Daubert</u> standard of reliability.  Opinion 4 in Dr.
28  Trudell's Report states that "VOCs from the Whittaker Site have impacted

12

municipal water supply wells including Saugus 1 and Saugus 2, V201 and V205." Trudell Report, pp. 1, 18.  Dr. Trudell bases the opinion on the general groundwater flow direction west and northwest from the Whittaker Site toward the Saugus and Valencia wells and the passage of what he estimates to be sufficient time for VOCs purportedly released at the Whittaker Site to migrate to the municipal water supply wells.  *Id.*  However, this "opinion" lacks sufficient data and is unreliable.

To the extent that Ms. Stanin offers any causation opinion based on the same "passage of time" theory, whether she relies on Dr. Trudell's opinion or adopts it herself, the opinion similarly should be excluded under *Daubert*.  Likewise, Dr. Gailey's affirmative opinion that VOCs would take a couple years to a decade to migrate vertically from the surface of the Whittaker site, through the unsaturated zone and down to the groundwater, lacks sufficient data and is not based on a reliable scientific methodology, and therefore should be excluded.

### 1.    Dr. Trudell Lacks Sufficient Data

Dr. Trudell's causation opinion assumes that there were surface spills of VOCs and perchlorate at the Whittaker Site, that the contamination migrated vertically through the soil down to the groundwater, and that there has been sufficient time for the contamination to then migrate northwesterly with the groundwater flow to the SCVWA wells.  However, Dr. Trudell has no data to support the first step of this analysis.  He does not know the disposal history at the Whittaker site.  He does not know how long the alleged spills may have stayed on the surface before heading downward[13] or the soil conditions such as moisture content or unsaturated hydraulic conductivity; or whether there may have been

---

[13] TCE is referred to as a volatile organic compound due to its volatility.  That means that the longer it remains on the surface the more of it evaporates or volatilizes.

other conditions affecting vertical migration. Dr. Trudell has not even looked at any soil data or soil gas data for the Whittaker site.

Dr. Trudell agreed that it is possible to construct a model to determine how long it would take surface spills to travel vertically to the groundwater. However, he admitted that he simply did not do that analysis. Consequently, he does not know how long vertical migration might take.

Dr. Trudell's "passage of time" calculations wholly ignores vertical migration. He calculates the lateral distance from the Whittaker site to the SCVWA wells, and opines that 75 years' time is enough time for the contaminants to migrate laterally. But that 75 years only refers to groundwater migration. It entirely ignores that any alleged contaminants released at the surface of the Whittaker site first must migrate vertically to get to the groundwater.

The analogy discussed in the Introduction is apt. The experts' opinions are equivalent to an expert opining there is sufficient time to travel from Los Angeles to New York because he calculated the journey from Chicago to New York but skipped analysis of the Los Angeles to Chicago leg. He knows nothing about the traffic conditions, weather conditions, or road conditions from Los Angeles to Chicago. He does not know if they are the same as the Chicago to New York part; or if they are different, how they are different. Yet he still tries to state an opinion covering the full Los Angeles to New York itinerary.

Just as such a travel opinion would be excluded as speculative and lacking sufficient data, so too should any causation opinions in this case relying of the travel time for VOCs to migrate to SCVWA's wells. Such an opinion is based on pure speculation.

### 2.   <u>Dr. Trudell Has Not Ruled Out Alternate Sources</u>

A district court may take into account inconsistency between the case-specific data and an expert's scientific opinion in considering whether the opinion is reliable under *Daubert*. *Amorgianos v. Nat'l R.R. Pass. Corp.*, 303 F.3d 256,

270 (2d Cir. 2002).  In the present case, results from well V-205 showed the arrival of TCE approximately three years before the arrival of perchlorate.  Trudell Depo at 118:22-119:7.   This is inconsistent with Dr. Trudell's causation opinion, because perchlorate travels approximately 2.6 faster in groundwater than TCE; if both perchlorate and TCE entered the groundwater at the same time at the Whittaker site, then the perchlorate had to of arrived first.  Dr. Trudell conceded that a possible explanation for this result could be a source of TCE other than the Whittaker site, and he could not rule out that explanation.  *Id.*  Nevertheless, he persisted in his opinion that the Whittaker site was the source of the VOC contamination at SCVWA's wells, despite monitoring data to the contrary.

### 3.   Ms. Stanin Similarly Admitted The Lack of Data

Like Dr. Trudell, Ms. Stanin conceded that she had not seen anyone perform the necessary scientifically based calculations to determine how long it would take for VOCs released at the surface of the Whittaker site to travel through the unsaturated zone from the surface to the groundwater below.  Stanin Depo at 86:22-87:5.  Ms. Stanin agreed that not all VOC surface releases result in groundwater contamination; it was dependent on the existence or nonexistence of variables in the extremely heterogeneous unsaturated zone between the surface and the groundwater.  *Id.* at 75:12-77:5.  Ms. Stanin did not know these variables for the unsaturated zone beneath the Whittaker site, and did not know of any investigation of release points at the Whittaker-Bermite site.  *Id.* at 72:1-6.  These are very significant data holes when it comes to a causation opinion.

### 4.   Dr. Gailey's Lack of Reliable Methodology

Notwithstanding the same lack of data on factors affecting movement of perchlorate or VOCs through the unsaturated zone, Dr. Gailey boldly offered an opinion that the contaminants would take from a couple of years to a decade to migrate vertically from the surface at the Whittaker site to the groundwater.   This opinion fails to meet the *Daubert* standard for reliability.  Dr. Gailey could not

identify any methodology supporting his opinion that could be found in the published reliance documents cited in his expert report, nor in any regulatory documents. *Id.* at 94:2-98:13; 93:13-19. He did not use any equation or models. *Id.* at 105:17-22. Rather, Dr. Gailey took information from different sources that he had learned as a result of his experience, put them all together, and from that made his assessment that the travel time through the unsaturated zone would be small. *Id.* at 98:14-20.

In *Day, LLC v. Plantation Pipe Line Co.*, 315 F. Supp. 3d 1219, 1225 (S.D. Ala. 2018), the court excluded expert causation testimony under Rule 702 and the *Daubert* framework. Plaintiffs' expert Sulkin was an environmental consultant with over forty years of experience studying the impacts of a variety of pollutants on surface waters, ground waters, and wetlands. *Id.* at 1226. He had worked as an environmental regulator for the Tennessee Department of Environment and Conservation and for the EPA. *Id.* Sulkin opined there was an ongoing release of gasoline from Defendants' pipeline because it smelled too fresh to be two years old. *Id.* The court noted that "[m]erely demonstrating that an expert has experience, however, does not automatically render every opinion and statement by that expert reliable." *Id.* at 1227.

The Advisory Committee Notes to Rule 702 state:

> If the witness is relying solely or primarily on experience, then the witness must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts. The trial court's gatekeeping function requires more than simply "taking the expert's word for it." . . . The more subjective and controversial the expert's inquiry, the more likely the testimony should be excluded as unreliable.

*Id.* at 1227-28. Because Sulkin did not properly support the methodology by which he reached his conclusions, the court excluded his testimony. *Id.* at 1228.

Here, Dr. Gailey's testimony establishes that, like Sulkin, he cannot support the methodology behind his opinion that perchlorate would take "a couple years to

a decade" to migrate vertically through the unsaturated zone.  His opinion is made up of bits and pieces of experience he has accumulated over the years, but he cannot identify any source that lays out a step-by-step scientific process and he admits he used no equation or model.  This is not a reliable expert opinion grounded in science, but rather the same kind of speculative hunch based on experience which the court excluded in *Day, LLC*.  So too should this Court exclude Dr. Gailey's opinion under Rule 702 and *Daubert*.

## 5.   The Causation Opinions Should Be Excluded

The "passage of time" expert causation opinions, whether endorsed by Dr. Trudell, Ms. Stanin, or both of them, do not assist the trier of fact.  At its best, the opinion is based on Dr. Trudell's calculation that 75 years would be enough time for contamination to migrate from the groundwater beneath the Whittaker site to the SCVWA wells.  However, even that opinion is flawed since he cannot tell the Court when the VOCs first impacted the groundwater.

Dr. Trudell has no idea what the soil conditions are or were like between the surface and the groundwater, and thus cannot bracket the amount of time vertical migration to the groundwater would take.  Similarly, Ms. Stanin recognizes that the unsaturated zone between the Whittaker site and the groundwater below is "extremely heterogeneous" and due to many variables, determination of the amount of time for VOCs released at the surface to reach the groundwater would be "very difficult."  Ms. Stanin is not aware of anyone undertaking that calculation.

SCVWA's "passage of time" causation theory is merely speculation paired with insufficient data, and under *Daubert* the jury should not hear it.  Because the experts opinions that the Whittaker site was the source of the contamination at SCVWA's off-site wells is based in part on the "passage of time" sub-opinion, their ultimate causation opinion also should be excluded.

Similarly, Dr. Gailey's affirmative opinion that vertical migration through the unsaturated zone underneath the Whittaker site would take years to a decade

suffers the same data holes.  Dr. Gailey lacked information regarding factors such as hydraulic connectivity and infiltration rate which he conceded affect perchlorate and VOC movement through the unsaturated zone.  Moreover, his opinion was based on his experience rather than on calculations pursuant to a reliable methodology set out in a published text or regulatory guidance.  Lastly, his opinion was not disclosed in his expert report and therefore should be excluded under FRCP 26(a)(2)(B).  *See Baker v. Chevron USA, Inc.*, 680 F. Supp. 2d 865, 879 (S.D. Ohio 2010) (court declines to consider causation opinion not included in expert's report in ruling on motion for summary judgment and *Daubert* motion).

## C.   ABSENT CAUSATION, WHITTAKER IS ENTITLED TO JUDGMENT ON SCVWA'S COMMON LAW CLAIMS.

Causation of groundwater contamination is a subject beyond the knowledge of an ordinary person, and thus requires expert testimony.  Dr. Trudell is SCVWA's only disclosed expert on the subject of the source of the contamination.  His deposition testimony establishes that he lacks sufficient data to opine as to the source of the contamination, since he is completely in the dark as to the disposal history at the Whitaker site (i.e. the details of any alleged releases, such as what, where, when, how much, or how often); the soil or soil-gas information in the unsaturated zone through which any VOCs released through surface spills would have to travel in order to reach the groundwater; or how long the process of traveling through the unsaturated zone would take.  To the extent that Ms. Stanin's expertise on "contamination pathways" might be stretched to include any causation opinions, her deposition testimony likewise establishes that she is missing the same information.  Therefore, both Dr. Trudell and Ms. Stanin should be precluded from offering the opinions that (1) sufficient time has passed for contaminants released at the Whittaker site to have migrated through groundwater to the SCVWA wells, or (2) that the Whittaker site is the source of contamination found at the wells.

Should the Court exclude these opinions under *Daubert*, then SCVWA cannot prove the element of causation needed for the common law claims. Thus, Whittaker is entitled to judgment in its favor as a matter of law.

## V.    CONCLUSION

For the foregoing reasons, Whittaker respectfully requests that the Court will and hereby does move the Court:

1. For Partial Summary Judgment against Plaintiff SANTA CLARITA VALLEY WATER AUTHORITY ("SCVWA") on Counts 1, 2, 8 and 9 that SCVWA cannot prove that Whittaker is the actual source of the VOCs found in its wells;

2. For Partial Summary Judgment on Counts 3 through 8 and Count 10 as SCVWA cannot prove that Whittaker is the actual source of the VOCs found in its wells; and

3. To disallow, under *Daubert v. Merrell Dow Pharms., Inc.* 509 U.S. 579, 589 (1993), any expert testimony that there has been sufficient time for VOCs to migrate to SCVWA's wells and/or that Whittaker is the source of any VOCs found in the wells.

4. To disallow, under *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589 (1993), any expert testimony that draws any conclusions based on the time that it may take perchlorate and/or VOCs to migrate to SCVWA's wells.

Dated:  October 23, 2020            BASSI, EDLIN, HUIE & BLUM LLP

By:   */s/Michael E. Gallagher*
MICHAEL E. GALLAGHER
Attorneys for Defendant AND Third-Party
Plaintiff WHITTAKER CORPORATION

2921034_5

19