NOSSAMAN LLP
FREDERIC A. FUDACZ (SBN 50546)
ffudacz@nossaman.com
BYRON GEE (SBN 190919)
bgee@nossaman.com
PATRICK J. RICHARD (SBN 131046)
prichard@nossaman.com
TARA E. PAUL (SBN 305366)
tpaul@nossaman.com
777 S. Figueroa Street, 34th Floor
Los Angeles, CA 90017
Telephone:  213.612.7800
Facsimile:   213.612.7801

Attorneys for Plaintiff SANTA CLARITA VALLEY
WATER AGENCY

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SANTA CLARITA VALLEY WATER AGENCY,<br><br>            Plaintiff,<br><br>    vs.<br><br>WHITTAKER CORPORATION and DOES 1-10, Inclusive,<br><br>            Defendant. | Case No: 2:18-cv-6825 SB (RAOx)<br><br>*Assigned to Hon. Stanley Blumenfeld, Jr.*<br><br>**PLAINTIFF'S OPPOSITION TO WHITTAKER'S MOTION AND CROSS-MOTION FOR SUMMARY JUDGMENT OR IN THE ALTERNATIVE PARTIAL SUMMARY JUDGMENT; AND CROSS-MOTION TO ESTABLISH WHITTAKER'S LIABILITY FOR NUISANCE**<br><br>Date:      January 8, 2021<br>Time:      8:30 am<br>Courtroom: 6C<br><br>Date Action Filed: August 8, 2018<br>Trial Date: TBD |
| AND RELATED CASES | |

PLAINTIFF'S OPPOSITION TO WHITTAKER'S MOTION FOR SUMMARY JUDGMENT
OR IN THE ALTERNATIVE PARTIAL SUMMARY JUDGMENT

# TABLE OF CONTENT

Page

I.    INTRODUCTION ...................................................................... - 9

II.   FACTUAL BACKGROUND ................................................... - 10

III.  ARGUMENT ............................................................................ - 17

    A.    Whittaker's Motion to Dismiss the RCRA Claim Fails. ........... - 17

        1.    The Court Clearly has Jurisdiction to Hear the RCRA
            Claim................................................................................ - 18

            a)    Federal Courts Are Not Barred from Reviewing
                  the DTSC's Actions ................................................. - 19

            b)    DTSC has not required Whittaker to address
                  offsite groundwater contamination. .......................... - 21

            c)    DTSC has not objected to SCV Water's RCRA
                  Complaint ................................................................. - 23

        2.    Whittaker Misconstrues "Imminent and Substantial
            Danger" and the Evidence Establishing the Blob of TCE
            Emanating from its Site. ................................................... - 24

            a)    Whittaker's Narrow Interpretation of "Imminent
                  and Substantial Endangerment" is Contradicts
                  Case Law ................................................................. - 24

            b)    The High Perchlorate and VOC Concentration in
                  the Groundwater beneath and near the Whittaker
                  Site Pose an Imminent And Substantial
                  Endangerment to SCV Water consumers.................. - 25

        3.    SCV Water RCRA Claims are not Moot............................ - 26

            a)    DTSC has relied on SCV Water and DDW to
                  Address Offsite Groundwater Contamination........... - 27

            b)    Offsite Contamination Characterization is an
                  essential element of the 97-005 evaluation to
                  obtain a permit......................................................... - 28

PLAINTIFF'S OPPO. TO WHITTAKER'S MOTION & CROSS-MOTION FOR SUMMARY JUDGMENT; &
PLAINTIFF'S CROSS-MOTION TO ESTABLISH WHITTAKER'S LIABILITY FOR NUISANCE

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

4.      Whittaker's Contentions as to the Certainty of Costs and Damages Do Not Support Summary Judgment ................... - 29

B.    Whittaker's CERCLA Preemption Argument is Frivolous .......... - 29

1.      Whittaker Ignores the Presumption Against Preemption and its Two-Step CERCLA Preemption Claim Fails ......... - 29

2.      CERCLA Expressly And Repeatedly Preserves Common Law Claims Related To A Polluter's Contamination. ......... - 30

3.      CERCLA Preserves Claims for Joint and Several Liability by an "Innocent Landowner" ................................ - 33

C.    The HSAA Does Not "Bar" Awarding Damages That Are Proven, Including Ongoing Damages ............................................ - 36

D.    Whittaker's Attempt To Rely On A Prior, Limited Settlement Agreement Is Frivolous .................................................................. - 37

IV.   WHITTAKER HAS ADMITTED AND THE UNDISPUTED FACTS ESTABLISH ITS LIABILITY FOR NUISANCE ................................. - 39

A.    Nuisance Liability Under California Law is Both Broad and Strict ......................................................................................... - 39

B.    Contamination Emanating from the Whittaker Site Constitutes a Nuisance. ........................................................................... - 40

C.    Whittaker's Continuing Nuisance is Abatable and Not Subject to the Three-year Statute of Limitations. ....................................... - 42

V.    CONCLUSION ........................................................................... - 43

PLAINTIFF'S OPPO. TO WHITTAKER'S MOTION & CROSS-MOTION FOR SUMMARY JUDGMENT; & PLAINTIFF'S CROSS-MOTION TO ESTABLISH WHITTAKER'S LIABILITY FOR NUISANCE

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Atl. Richfield Co. v. Christian,*
140 S. Ct. 1335 (2020) ............................................................... 19, 33, 34

*California v. Campbell,*
138 F.3d 772 (9th Cir. 1998) ........................................................... 40, 41

*Carolina Cas. Ins. Co. v. Oahu Air Conditioning Serv., Inc.,*
994 F. Supp. 2d 1082 (E.D. Cal 2014) ............................................. 30, 31

*Carter v. Chotiner,*
210 Cal. 288 (1930) ............................................................................... 40

*Chartis Specialty Ins. Co. v. United States,*
2013 U.S. Dist. LEXIS 101702 (N.D. CA 2013) .......................... 33, 34

*City of Emeryville v. Elementis Pigments, Inc.,*
No. C99-03719 WHA, 2008 WL 6742577 (N.D. Cal. Oct. 29,
2008) ....................................................................................................... 38

*City of Merced v. Fields,*
997 F. Supp. 1326 (E.D. Cal. 1998) ...................................................... 30

*Cooper Indus., Inc. v. Aviall Servs., Inc.,*
543 U.S. 157, 125 S. Ct. 577, 160 L. Ed. 2d 548 (2004) ..................... 34

*County of Santa Clara v. Atl. Richfield Co.,*
137 Cal. App. 4th 292 (2006) ................................................................ 39

*Dague v. City of Burlington*
935 F.2d 1343 (2nd Cir 1991) ............................................................... 24

*De Costa v. Massachusetts Flat Water & Mining Co.,*
17 Cal. 613 (1861) ................................................................................. 37

*Fireman's Fund Insurance, Co. v. City of Lodi,*
320 F.3d 928 (9th Cir. 2002) ........................................................... 31, 32

*GHK Associates v. Mayer Group, Inc.,*
224 Cal. App. 3d 856 (1990) ................................................................. 29

PLAINTIFF'S OPPO. TO WHITTAKER'S MOTION & CROSS-MOTION FOR SUMMARY JUDGMENT; &
PLAINTIFF'S CROSS-MOTION TO ESTABLISH WHITTAKER'S LIABILITY FOR NUISANCE

*Greenfield MHP Assocs,. L.P. v. Ametek*
  2018 WL 1757527 (S.D. Cal 2018) ...................................................20, 30, 36

*Hanford Downwinders Coalition, Inc. v. Dowdle*,
  71 F.3d 1469 (9th Cir.1995) ..............................................................................21

*Hardin v. Sin Claire*,
  115 Cal. 460 (1896).............................................................................................40

*Jordan v. City of Santa Barbara*,
  46 Cal. App. 4th 1245 (1996).............................................................................40

*Jordan v. City of Santa Barbara Jordan v. City of Santa Barbara*,
  46 Cal. App. 4th 1245,1256 ...............................................................................42

*KFC Western, Inc. v. Meghrig*,
  23 Cal. App. 4th 1167 (1994).............................................................................39

*Lincoln Properties,Ltd. v. Higgins*,
  823 F.Supp.1528 (E.D. Cal. 1992) ....................................................................35

*Los Angeles v. L.A. Terminals*,
  2018 WL 3046963 (C.D Cal. 2018) ..................................................................21

*Lowery v. Channel Comm'n, Inc.*,
  539 F.3d 1150 (9th Cir. 2008)...........................................................................37

*Maffei v. N. Ins. Co. of N.Y.*,
  12 F.3d 892 (9th Cir.1993) ................................................................................38

*Mangini v. Aerojet-General Corp.*,
  12 Cal. 4th 1087 (1996)......................................................................................42

*McClellan v. I-Flow Corp.*,
  776 F.3d 1035 (9th Cir. 2015)...........................................................................30

*Medtronic, Inc. v. Lohr*,
  518 U.S. 470, 116 S. Ct. 2240, 135 L. Ed. 2d 700 (1996) ..............................30

*Meghrig v. KFC Western, Inc*,
  516 U.S. 479 (1996) ............................................................................................24

*Meister v. Mensinger*,
  230 Cal. App. 4th 381 (2014).............................................................................29

PLAINTIFF'S OPPO. TO WHITTAKER'S MOTION & CROSS-MOTION FOR SUMMARY JUDGMENT; &
PLAINTIFF'S CROSS-MOTION TO ESTABLISH WHITTAKER'S LIABILITY FOR NUISANCE

*Miller v. Glenn Miller Prods., Inc.*,
   454 F.3d 975 (9th Cir. 2006) ............................................................... 38

*Newhall Land & Farming Co. v. Superior Court*
   (1993) 19 Cal.App.4th 334, *review denied* ................................. 39, 41

*Orange County Water Dist. V. Unocal, Inc.*,
   2016 U.S. Dist. LEXIS 193938 (C.D. CA 2016) ....................................... 36, 37

*People v. Kinder Morgan Energy Partners., L.P.*,
   569 F. Supp. 2d 1073 (S.D. Cal 2008) ............................................. 42

*Pinal Creek Grp. v. Newmont Min. Corp.*,
   118 F.3d 1298 (9th Cir. 1997) ...................................................... 34

*Pinal. Kotrous v. Goss-Jewett Co. of N. Cal.*,
   523 F.3d 924 (9th Cir. 2008) ...................................................... 34

*Price v. Navy*,
   39 F.3d 1011 (9th Cir. 1994) ...................................................... 24

*Razore v. Tulalip Tribes of Washington*,
   66 F.3d 236 (9th Cir.1995) ........................................................ 20

*Redevelopment Agency v. Burlington Northern & Santa Fe Ry*,
   2007 U.S. Dist. LEXIS 44287 .......................................................... 40

*Selma Pressure Treating Co. v. Osmose Wood Preserving Co.*,
   221 Cal.App.3d 1601 (1990) .................................................... 30, 40

*Starrh & Starrh Cotton Growers v. Aera Energy LLC*,
   153 Cal. App. 4th 583 (2007) ...................................................... 42

*Sunnyside Dev. Corp., LLC. v. Opsys United States Corp.*,
   2006 U.S. Dist. LEXIS 26655 ....................................................... 35

*United States v. Conservation Chemical Co.*,
   619 F. Supp. 162 (W.D. Mo. 1985) ................................................ 25

*United States v. Sacramento Mun. Util. Dist.*,
   652 F.2d 1341 (9th Cir.1981) ...................................................... 38

*United States v. Valentine*,
   856 F. Supp. 621 (D. Wyo 1994) .................................................. 24

PLAINTIFF'S OPPO. TO WHITTAKER'S MOTION & CROSS-MOTION FOR SUMMARY JUDGMENT; &
PLAINTIFF'S CROSS-MOTION TO ESTABLISH WHITTAKER'S LIABILITY FOR NUISANCE

*United States v. Waste Industries Inc.*
    734 F.2d 159. (4th Cir. 1984) .......................................................................... 25

*Wilshire Westwood Associates v. Atl. Richfield Co.*,
    20 Cal. App. 4th 732 (1993) ...................................................................... 36, 42

**Statutes**

42 U.S.C. § 6972 ............................................................................................ 24

42 U.S.C. § 6972(a) ........................................................................................ 18

42 U.S.C. § 9602(a) ........................................................................................ 18

42 U.S.C. § 9613(h) ........................................................................................ 31

42 U.S.C. § 9614(a) .................................................................................... 30, 31

42 U.S.C. § 9652(d) .................................................................................... 30, 31

42 U.S.C. § 9659(h) .................................................................................... 30, 31

42 USC § 9620 ............................................................................................... 23

Cal. Civ. Code § 1542 .................................................................................... 38

Cal. Civ. Code § 3479 .................................................................................... 39

Cal. Civ. Code § 3480 .................................................................................... 39

Cal. Civ. Code § 3481 .................................................................................... 39

Cal. Civ. Code § 3491 .................................................................................... 32

Cal. Civ. Code § 3492 .................................................................................... 32

Cal. Civ. Code § 3493 .................................................................................... 39

Cal. Health & Safety Code § 25300 et seq. .................................................... 19

Cal. Health & Safety Code § 25356.1(g) ....................................................... 19

Cal. Health & Safety Code § 25356.1(g)(3) ................................................... 19

Cal. Health & Safety Code § 116540 ............................................................. 14

Cal. Penal Code § 370 ......................................................................................32

Cal. Water Code § 13000 et seq. .....................................................................41

Cal. Water Code § 13050(m).............................................................................41

**Rules**

Fed. R. Civ. P. 8(c) ...........................................................................................37

Fed. R. Civ. P. 56..............................................................................................43

PLAINTIFF'S OPPO. TO WHITTAKER'S MOTION & CROSS-MOTION FOR SUMMARY JUDGMENT; &
PLAINTIFF'S CROSS-MOTION TO ESTABLISH WHITTAKER'S LIABILITY FOR NUISANCE

## I.   __INTRODUCTION__

Because Whittaker's Motion for summary Judgment relies on disputed factual contentions and erroneous legal arguments, it should be denied; Plaintiff Santa Clarita Valley Water Agency ("SCV Water") brings a limited cross-motion only to establish liability—but not damages at this point—for nuisance under California law.

Defendant Whittaker Corporation's ("Whittaker") Motion rests principally on the false factual premise that the California Department of Toxic Substance Control ("DTSC") has already determined that Whittaker's contamination of SCV Water's wells and groundwater poses no significant risk to human health. Armed with this erroneous fact, Whittaker argues that state and federal claims for the damages caused by Whittaker's contamination must be dismissed as a "direct challenge" to the clean-up orders against Whittaker issued by DTSC.

Not only does the "evidence" offered by Whittaker not support its principal factual contention (a shortcoming that permeates Whittaker's papers), the evidence establishes that Whittaker is wrong. DTSC has made no determination as to the risk to human health or the required remedy for contamination of the water supply for SCV Water's drinking water wells. On the contrary, DTSC has expressly stated that it understands and expects the Division of Drinking Water of the California State Water Resources Board ("DDW") to work with SCV Water to address what DTSC has described as the "health risks posed by VOCs in the drinking water." Stone Decl. ISO Ptf.'s Mtn. Ex. B, at 1.

Whittaker simply ignores the key evidence that obliterates its erroneous factual contention, including: 1) DTSC has its own oversight agreement with SCV Water (Abercrombie Decl. ISO Ptf.'s Mtn. ¶ 5, Ex. A (Environmental Oversight Agreement)); 2) DTSC recently requested an update to SCV Water's 2005 Interim Remedial Action Plan for off-site groundwater contamination containment efforts (Stone Decl. ISO Ptf.'s Mtn. Ex. B, at 1); 3) DTSC has never said or suggested that

1    it considers SCV Water's lawsuit against Whittaker to be a challenge or

2    impediment to its own efforts to have Whittaker address contamination at the

3    Whittaker Bermite Site ("Whittaker Site") (Gee Decl. ISO Ptf.'s Mtn. ¶ 24); 4)

4    DTSC's representative testified in these proceedings and gave no such testimony

5    (Whittaker does not offer *any* of this testimony) (Gee Decl. ISO Oppo. ¶ 5).

6        Whittaker's other arguments, from its jurisdictional challenge of the RCRA

7    claim to its "preemption" arguments on the state common law claims, likewise rely

8    on erroneous factual and legal contentions.

9    **II.    FACTUAL BACKGROUND**

10       Whittaker's Motion for Summary Judgment relies on inaccurate facts and

11   misrepresents the actions taken by both Whittaker (claiming and/or suggesting that

12   it did much more than it did) and actions taken by SCV Water (by omitting the fact

13   that SCV Water has designed, permitted, constructed, operated and maintain all

14   offsite groundwater remedies) to address Whittaker's offsite groundwater

15   contamination. Below is a brief history of the prior litigation and the 2007

16   Settlement Agreement to clarify the inaccurate facts that Whittaker used to support

17   its legal arguments.

18   **Perchlorate Groundwater Contamination from the Whittaker Site**

19       In 1998, SCV Water tested its production wells for perchlorate. *See*

20   Abercrombie Decl. ISO Oppo. ¶ 10. Five of SCV Water's production wells near

21   the Whittaker Site were impacted with perchlorate. *See* Abercrombie Decl. ISO

22   Ptf.'s Mtn. Ex. A, at § 1.2 and Ex. A thereto (Environmental Oversight

23   Agreement). SCV Water's consultants conducted an investigation of the industries

24   in the vicinity and identified the Whittaker site as the source of perchlorate

25   contamination. *See* Abercrombie Decl. ISO Oppo. ¶ 10. In November 2000, after

26   failed settlement discussions, SCV Water filed a CERCLA based complaint against

27   Whittaker Corporation and others to address groundwater contamination

28   emanating from the Whittaker Site.

At the time SCV Water filed its complaint, Whittaker (and the now bankrupt property owner) were in the early stages of site and groundwater investigation and appeared many years away from remediating the site. *See* Gee Decl. ISO Ptf.'s Mtn. Ex. C, at 13 (Hokkanen Report). SCV Water had little hope that Whittaker, who suspended operations 13 years earlier, would be motivated to expeditiously remediate its groundwater contamination. In fact, Whittaker had installed only two groundwater monitoring wells at the time it shutdown and had only installed 13 on-site monitoring wells in 1998,[1] when perchlorate contamination was first detected in SCV Water wells. *See* Stanin Decl. ISO Oppo. Ex. A, at Fig. 6 (Stanin Report). In contrast, Whittaker has since installed 300 additional monitoring wells at its site over the past two decades. *See id.*

The perchlorate contamination that impacted SCV Water's wells moves quickly through groundwater and had threatened (and continues to threaten) additional Saugus Formation drinking water production wells. *See* Gee Decl. ISO Ptf.'s Mtn. Ex. F, at 12-13, 15-16 (Trudell Report, demonstrating the speed of perchlorate versus VOC migration). . Under Whittaker's proposed cleanup plan, on-site groundwater cleanup commenced after Whittaker removed the soil contamination at the Site.  *See* Gee Decl. ISO Oppo. Ex. K, at 11, Table 1 (2004 Public Participation Plan)[2]; Gee Decl. ISO Oppo. Ex. C, at 28:19-29:6 (Amini Depo.).  At the time, Whittaker did not have information on offsite groundwater flow characteristics and would not have offsite groundwater information until 2005 when a study that the United States Army Corps of Engineers ("ACOE") and SCV Water co-funded was completed. *See* Abercrombie Decl. ISO Oppo. Ex. D, at 1

---

[1] By comparison, Whittaker has installed over 321 monitoring wells of which 190 are active. *See* Gee Decl. ISO Oppo. Ex E, at 90:17-91:6 (Diaz Depo.); Stanin Decl. ISO Oppo. Ex. A, at fig. 6 (Stanin Report).

[2] DTSC's preliminary schedules are generally aggressive and in this instance was unrealistically optimistic. The OU2/6 soil remediation action plan that was scheduled to be completed six months after the date of the Public Participation Plan ("PPP") was not completed until 2010, some 6 years after the date of the PPP.

PLAINTIFF'S OPPO. TO WHITTAKER'S MOTION & CROSS-MOTION FOR SUMMARY JUDGMENT; &
PLAINTIFF'S CROSS-MOTION TO ESTABLISH WHITTAKER'S LIABILITY FOR NUISANCE

(ACOE June 2004 Press Release regarding Study). Whittaker began operating its on-site groundwater remediation plan in 2018 (*see* Gee Decl. ISO Oppo. Ex. A, at § 3.6.2 (Daus Report), and is expected to operate the treatment system for at least 30 years. Gee Decl. ISO Oppo. Ex. E, at 112:10-16 (Diaz Depo.). Whittaker does not have any current plans to address offsite contamination and likely will not conduct or pay for the remaining groundwater cleanup absent a court order.

### The Saugus Formation is a Critical source of Drinking Water

SCV Water relies on the Saugus Formation groundwater near the Site as a source of drinking water. *See* Abercrombie Decl. ISO Ptf.'s Mtn. ¶ 2. It could not wait several decades after its 1998 well closures for Whittaker to implement and complete its groundwater cleanup plan. In 2003, following Judge Matz's opinion that Whittaker is liable for perchlorate contamination, SCV Water entered into an Environmental Oversight Agreement ("EOA") with DTSC to oversee and review SCV Water's efforts to contain the perchlorate contamination plume and ensure that its actions were necessary and consistent with the NCP. Abercrombie Decl. ISO Ptf.'s Mtn. Ex. A (EOA). In 2005, DTSC approved of SCV Water's Interim Remedial Action Plan ("SCV Water IRAP") for projects designed to contain the spread of perchlorate contamination and restore SCV Water's water supply for the wells impacted by Whittaker's contamination from the Site. Durant Decl. ISO Oppo. ¶ 4, Ex. A (2005 SCV Water IRAP). Under the 2007 Settlement Agreement that implemented the SCV Water IRAP, ***SCV Water became the project manager to address and contain the off-site perchlorate groundwater contamination from the Whittaker Site.*** *Id*. at Ex. A, at Dec. 29, 2005 Cover Letter; *see also* Abercrombie Decl. ¶ 14; Trowbridge Decl. Ex. AH, at § 8.2 (2007 Settlement Agreement). However, little did SCV Water know at the time that DTSC (as discussed below) would no longer be looking to Whittaker to assist in offsite groundwater remediation.

### The 2007 Settlement Agreement Requires Whittaker to Fund IRAP Costs

In April 2007, the parties executed the Castaic Lake Water Agency Litigation Settlement Agreement ("2007 Settlement Agreement") that identified specific projects to implement the SCV Water IRAP. *See* Trowbridge Decl. Ex. AH (2007 Settlement Agreement). Under the 2007 Settlement Agreement, Whittaker and its insurer were liable to fund the projects specified in the SCV Water IRAP, but was not involved with implantation of the IRAP activities. *E.g.*, *id.* at ¶¶ I-K. The 2007 Settlement Agreement required that all parties to the agreement participate in monthly technical meetings where the parties "consider technical, financial and other issues related to the planning, development, design, permitting, construction, installation, operations and maintenance of" the various projects covered in the 2007 Settlement Agreement. *See id.* at § 8.4. The stakeholders at the monthly technical meeting included regulatory agencies (DTSC and DDW) as well as Whittaker and other responsible parties. *See, e.g.*, Alvord Decl. ISO Ptf.'s Mtn. ¶ 7, Ex. C (Technical Meeting Agenda). As additional wells became contaminated, the newly contaminated wells were discussed in the monthly technical meeting. *See* e.g., Durant Decl. ISO Oppo. Ex. G, at 1 (Oct. 2014 Technical Meeting Agenda, showing well V-201 as an agenda item).

The main project to contain the perchlorate contamination was the Saugus Perchlorate Treatment System ("SPTF"), which extracts groundwater from the two Saugus Formation production wells closest to the Site (Saugus-1 and Saugus-2) and treats it for perchlorate contamination.[3]

---

[3] Whittaker counsel falsely claims that Whittaker constructed the SPTF, citing as support a passage from the Deposition of Tim Simpson that was completely unrelated to the SPTF (i.e., his response to question on DDW participation in technical meetings). *See* Trowbridge Decl. Ex. H, at 15:1-7 (Simpson Depo.). Simpson actually testified that he reviewed budgets, approved invoices and monitored resin performance. *See id.* at 20:22-22:1 (Simpson Depo.).

## DDW and Not DTSC (nor SCV Water)[4] Determines if Drinking Water is Safe to Consume

Prior to utilizing the water from the SPTF for drinking water, SCV Water was required to obtain a water supply permit for the SPTF from DDW. *See* Cal. Health & Safety Code § 116540. DDW has determined that the Saugus Formation Groundwater near the Site is an "extremely impaired source" drinking water source that was subject to DDW process memorandum 97-005 policy because Whittaker released multiple contaminants to the Saugus Formation, SCV Water submitted a permit application in January 2009, which was approved on December 30, 2010. Gee Decl. ISO Ptf.'s Mtn. Ex. J, at 37:17-21 (O'Keefe Depo.); *id*. at Ex. Y, at Dec. 30 2010 Cover Letter (SPTF Permit). One of the permit conditions set an "operational goal" that required SCV Water blend purchase water with treated SPTF water so that the Volatile Organic Compound ("VOC") contaminants are below the detection limits for perchloroethylene ("PCE") and trichloroethylene ("TCE"). *See* Gee Decl. ISO Ptf.'s Oppo. Ex. Y, at 6, ¶ 20. According to Jeff O'Keefe, the Southern California Section Chief for DDW, the operational goal permit condition mandates that SCV Water blend water to reduce VOC contamination in its blend heaters 100% of the time. *See, e.g.*, Trowbridge Decl. Ex. AA, at 49:23-50:21 (O'Keefe Depo.); Gee Decl. ISO Ptf.'s Mtn. Ex. M, at 56:5-59:8, 136:7-24 (Aug. 21, 2020 Alvord Depo., explaining that penalties can be imposed for noncompliance). It is not, as Whittaker states an aspiration, rather a permit requirement.[5]  SCV Water meets this permit condition approximately 90-95% of the time. Abercrombie Decl. ISO Ptf.'s Mtn. ¶ 8.

---

[4] Whittaker makes several irrelevant assertions that SCV Water believes that water is safe to drink. SCV Water is a water purveyor that follows DDW requirements to ensure that water is safe to drink. SCV Water does not issue permits to itself nor does it have regulatory authority to set drinking water standards.

[5] Whittaker counsel appears to suggest that SCV Water should ignore the operational goal permit condition, even though its primary offsite engineer has never advised its clients to violate a permit condition. *See* Trowbridge Decl. Ex.

PLAINTIFF'S OPPO. TO WHITTAKER'S MOTION & CROSS-MOTION FOR SUMMARY JUDGMENT; &
PLAINTIFF'S CROSS-MOTION TO ESTABLISH WHITTAKER'S LIABILITY FOR NUISANCE

**The SCV Water 2005 IRAP Remedy did not Prevent V-201 Perchlorate Contamination**

In August 2010, well V-201 became contaminated with perchlorate and was removed from service. SCV Water amended the EOA with DTSC in 2012 to install perchlorate treatment facilities at V-201 and to include V-201 as an additional Saugus Formation containment well. *See* Durant Decl. ISO Oppo. ¶ 6, Ex. C (2012 EOA Amendment). SCV Water commenced the V-201 amended water supply permit work plan in 2012 that included the requirements for the DDW 97-005 process documentation, knowing that the DDW considered the Saugus Formation groundwater in V-201 as an "extremely impaired source" and may take several years for DDW to approve. *Id.* at ¶ 7; *see also* Gee Decl. ISO Ptf.'s Mtn. Ex. J, at 33:11-34:4 (O'Keefe Depo.). SCV Water has yet to receive a water supply permit for well V-201.SCV Water submitted an addendum to the 2005 IRAP in August 2014 ("2014 IRAP Addendum"). *See* Durant Decl. ISO Oppo. ¶ 8, Ex. F (2014 IRAP Addendum). However, Jose Diaz, would not approve the 2014 IRAP addendum until DDW approved of the 97-005 process for the V-201 water supply permit. *See id.* at ¶ 9, Ex. G. Contrary to Whitaker's assertion, DTSC acknowledged that treating groundwater contamination to MCL concentrations may not be protective of human health and deferred to DDW to determine contamination levels that are protective of human health. *See, e.g.*, Stone Decl. ISO Ptf.'s Mtn. ¶¶ 7-8, Ex. A, and B (letter correspondence between DTSC and SCV Water).

**The V-201 Settlement Agreement Used Previously Purchased Treatment Vessels to Treat Perchlorate Contamination and did not address VOCs**

In July 2015, SCV Water entered into a settlement agreement with Whittaker that required Whittaker to fund "all costs associated with a wellhead extraction and treatment system for perchlorate in groundwater pumped from the

AH, at §§4, 5 (2007 Settlement Agreement).

PLAINTIFF'S OPPO. TO WHITTAKER'S MOTION & CROSS-MOTION FOR SUMMARY JUDGMENT; & PLAINTIFF'S CROSS-MOTION TO ESTABLISH WHITTAKER'S LIABILITY FOR NUISANCE

V-201 well. . .” *See* Abercrombie Decl. ISO Oppo. ¶ 4, Ex. C, at 1. Whittaker insisted on using previously purchased treatment equipment for a lower capacity well to for Well V-201. *See id.* at ¶ 5. SCV Water was concerned that the smaller equipment had the potential to limit V-201 pumping capacity. *Id.* Whittaker argued that the equipment would not reduce V-201 capacity. The parties agreed to move forward with the smaller treatment equipment and agreed that if the treatment equipment limited V-201 capacity, Whittaker would pay to increase the well capacity of the "Replacement Well" project that was included in the 2007 Settlement Agreement. If a technical dispute arose regarding lost capacity caused by Whittaker's use of undersized V-201 treatment equipment, the dispute would be resolved by the Cost Consultant Arbitrator. *Id.*

In contrast to the replacement water associated with treatment system limitations, the replacement water damages sought by SCV Water in this litigation is for the water that cannot be used for drinking water during the elongated permitting process associated with DDW's designated the Saugus Formation near the Site is an extremely impaired water source.[6]  See Abercrombie Decl. ISO Oppo. Ex. C (V-201 Settlement Agreement); Gee Decl. ISO Oppo. Ex. C, at 39:6-11 (Amini Deposition).

### **Whittaker Involvement with OU-7 Groundwater Remediation**

Whittaker argues that it is responsible for remediating groundwater beneath and near the Site. Whittaker is half-right – it has primary responsibility for installing groundwater extraction equipment at its site, but not for offsite groundwater contamination. As explained above, DTSC focused its effort on requiring Whittaker to remediate onsite contamination because SCV Water was addressing the offsite groundwater contamination. Gee Decl. ISO Oppo. Ex. E, at

---

[6] Currently, V-201 is being operated as a "containment" well to slow the spread of perchlorate contamination in the Saugus Formation as required by the V-201 settlement agreement and recommended by Whittaker consultants. *See, e.g.*, Stone Decl. ISO Ptf.'s Mtn. Ex. B (July 13, 2020 DTSC letter correspondence).

PLAINTIFF'S OPPO. TO WHITTAKER'S MOTION & CROSS-MOTION FOR SUMMARY JUDGMENT; & PLAINTIFF'S CROSS-MOTION TO ESTABLISH WHITTAKER'S LIABILITY FOR NUISANCE

89:10-14 (Diaz Depo.). Contrary to Whittaker's assertion that it "constructed" the Saugus Perchlorate Treatment Facility, its SPTF involvement was limited to reviewing budgets, invoices and resin performance. *See* Trowbridge Decl. Ex. H, at 21:11-22:1 (Simpson Depo.).  SCV Water, and not Whittaker, designed, permitted, constructed, operated and maintained the offsite groundwater cleanup remedy.[7] *Id.*

DTSC continues to look to SCV Water to address offsite groundwater contamination. In fact, on July 13, 2020, DTSC informed SCV Water that it is required to amend "the IRAP to include both Wells V-201 and V-205 as additional containment wells with the necessary treatment facilities to address the perchlorate and Volatile Organic Compound contamination that Division of Drinking Water has concluded poses unacceptable health risks to potable water consumers." Stone Decl. ISO Ptf.'s Mtn. Ex. B.

Whittaker's claim that SCV Water response costs are unnecessary because DTSC is requiring it to treat onsite groundwater to attain offsite MCL levels for VOCs is simply without merit – DTSC is requiring SCV Water to treat VOC contaminated groundwater to DDW health based standards as part of its remedial action plan.

## III.   ARGUMENT

### A.    Whittaker's Motion to Dismiss the RCRA Claim Fails.

As discussed above, DTSC has focused its efforts to require Whittaker to remediate the on-site contamination and has looked to SCV Water to address off-site groundwater contamination. SCV Water's offsite groundwater activities, as described in the currently approved *Interim* Remedial Action Plan consists of (1)

---

[7] Whittaker's primary offsite groundwater responsibility is to fund projects identified in the 2007 Settlement Agreement—an obligation that only arose because SCV Water filed a CERCLA claim against Whittaker and Judge Matz determined that Whittaker was liable for the contamination that impacted SCV Water's wells.

1    operating production wells to contain the spread of perchlorate and (2) treating the

2    extracted groundwater to meet drinking water standards, two activities that align

3    with SCV Water's core business. *See, e.g.*, Durant Decl. Ex. A, at 2 (SCV Water

4    IRAP). SCV Water's core business activities, however, do not involve

5    characterizing the contamination caused by Whittaker. Nor does it have the

6    expertise to develop plans (once the investigation is complete) to restore the

7    Saugus Formation water quality such that it is no longer an "extremely impaired

8    source" subject to DDW's 97-005 evaluation process – two steps that would be

9    necessary for a *final* Remedial Action Plan for the offsite groundwater

10   contamination near the Whittaker site.

11         While SCV Water was motivated to partake in the off-site groundwater to

12   preserve/restore the Saugus Formation as a source of potable water, it is not

13   responsible for the contamination released from the Site. The 2007 Settlement

14   Agreement provided funds to "contain the spread of perchlorate and replace the

15   lost drinking water capacity lost to Whittaker's perchlorate contamination (See

16   recital G to the Settlement Agreement). Whittaker did not provide funds to assess

17   the offsite contamination, remediate VOC contamination, or cleanup the offsite

18   Saugus Formation contamination such that it would no longer be and "extremely

19   impaired source."

20              **1.     The Court Clearly has Jurisdiction to Hear the RCRA Claim.**

22         The purpose of RCRA is to "promote the protection of health and the

23   environment. . . ." See 42 U.S.C. § 9602(a). Contrary to Whittaker's contention,

24   federal courts have jurisdiction over RCRA claims. The RCRA Citizen Action

25   Provision states that:

26              "Any action under paragraph (a)(2) of this section
               [referring to releases that pose an imminent and
27             substantial endangerment to health or the environment]
               may brought in the district court for the district in which
28             the alleged violation occurred. . ." 42 U.S.C. § 6972(a).

PLAINTIFF'S OPPO. TO WHITTAKER'S MOTION & CROSS-MOTION FOR SUMMARY JUDGMENT; &
PLAINTIFF'S CROSS-MOTION TO ESTABLISH WHITTAKER'S LIABILITY FOR NUISANCE

1   Whittaker's argument, however, appears to be that SCV Water cannot
2   challenge DTSC's CERCLA based cleanup decision in federal court pursuant to
3   CERCLA § 113(h) and thus the court must dismiss its challenge DTSC's actions
4   under RCRA. Whittaker's argument is also premised on its claim that DTSC has
5   required Whittaker to address the offsite contamination. Whittaker is wrong on
6   both the facts and the law.

7        **a)**    **Federal Courts Are Not Barred from Reviewing the DTSC's Actions**
8

9   DTSC used its authority under the California Hazardous Substance Accounts
10  Act, California Health and Safety Code ("Cal. H&SC") §§ 25300 et seq.,
11  ("HSAA") and not CERCLA to issue the 2002 Imminent and Substantial
12  Endangerment Order to Whittaker. *See* 2002 Imminent and Substantial
13  Endangerment Order. Unlike CERCLA prohibition on federal court review to
14  review private party review of EPA cleanup orders, the HSAA specifically
15  provides that a person "may seek judicial review of the final remedial action plan .
16  . . issued by the [DTSC] or the regional board." See Cal. H&SC §25356.1(g).
17  Further, HSAA clearly states that the development of HSAA removal and
18  remediation plans "does not prohibit the court from granting any appropriate relief
19  within its jurisdiction." Cal. H&SC § 25356.1(g)(3). Thus, SCV Water's RCRA
20  claim that seeks a court order to require Whittaker to conduct further investigation
21  and remediation plans to address offsite VOC contamination is expressly allowed
22  under HSAA.

23  Whittaker cites to the *Atlantic Richfield Company v. Christian* in support of
24  its argument that CERCLA § 113(h) prohibits Federal Court jurisdiction to review
25  EPA remedial and removal actions. While the US Supreme Court ruled that nearby
26  property owners could not seek judicial review of EPA approval of its off-site
27  restoration plan, the Supreme Court ruled that courts have jurisdiction over state
28  law claims that were not within the CERCLA Act. *Atl. Richfield Co. v. Christian*,

1   140 S. Ct. 1335, 1351 (2020). The Court did not rule that CERCLA § 113(h)

2   prohibits Federal Courts from reviewing state law claims as Whittaker suggests.

3       This precise issue of Federal Court jurisdiction over DTSC actions under

4   HSAA was addressed in *Greenfield MHP Assocs,. L.P. v. Ametek* 2018 WL

5   1757527 (S.D. Cal 2018) ("*Greenfield MHP*"). In Greenfield, mobile home owner

6   plaintiffs challenged DTSC's oversight of remediation defendant's property,

7   claiming that DTSC's oversight did not address contamination at the mobile home

8   park. *Id*. at 2-3. Like Whittaker, defendant argued that state law claims challenging

9   HSAA remediation plans under DTSC oversight were a challenge to a CERCLA

10  remediation and thus barred under CERCLA § 113(h). *Id*. at 5. The court rejected

11  defendant's argument because there was no evidence of federal agency (EPA)

12  oversight of the contaminated site. *Id*. at 8.

13      Whittaker's reliance on *Greenfield MHP* to argue preemption for future

14  damages under HSAA (*see* Whittaker Mtn. at 30-31) likewise fails: Here, unlike

15  *Greenfield MHP*, any and all future treatment costs incurred by SCV Water will be

16  in response to permit requirements imposed by DDW, *with the approval of DTSC*.

17  *See* Ptf.'s Sep. Stmt. of Undisputed Facts ISO Mtn. ("Ptf.'s Facts") at ¶¶ 9-11 56,

18  58-60, 62-65, 69 (DTSC expressly recognized the role of DDW to address the

19  health hazards posed by Whittaker's contamination of drinking water).

20      Likewise, Whittaker's reliance on *Razore v. Tulalip Tribes of Washington*,

21  66 F.3d 236, 239 (9th Cir.1995) to support its "collateral attack" argument fails.

22  First, Whittaker does not suggest that SCW Water's RCRA or other claims "slow

23  or halt" DTSC's decades old efforts to have Whittaker clean up its heavily

24  contaminated site. As the court noted in *Razore*:

25          CERCLA is the federal government's statutory
            framework for cleaning up hazardous wastes. To ensure
26          that the cleanup of contaminated sites will not be slowed
            or halted by litigation, Congress enacted section 113(h)
27          in its 1986 amendments to CERCLA. *Id*. at 239.

28      Importantly, of the three decisions Whittaker offers as authority to support

its section 113(h) argument, in two of the cases the government was a party and demonstrated that the state law claims would impede the CERCLA clean-up (*Razor* [EPA and Defendant Tribes brought motion to dismiss suit for lack of subject matter jurisdiction]; *Hanford Downwinders Coalition, Inc. v. Dowdle*, 71 F.3d 1469, 1482 (9th Cir.1995)[Court granted Agency's motion to dismiss suit against the Agency and its director seeking to compel the Agency to implement medical surveillance sooner]). In the third case, where the government was not a party and did not object to the suit, the court *rejected* the preemption argument. *Los Angeles v. L.A. Terminals*, 2018 WL 3046963, *4-5 (C.D Cal. 2018) (See Whittaker Brief, pp 17-18.)

In other words, the best evidence as to whether SCV Water's actions to treat contaminated groundwater reflect a "collateral attack" on DTSC's oversight is DTSC. And, far from objecting to those treatment efforts or this lawsuit—ever—DTSC has invited SCV Water to include in the next amendment of its IRAP the steps taken to address DDW's concerns as to contaminants in the water. Ptf.'s Facts at ¶¶ 9-11; *see also* Ptf.'s Additional Material Facts ("Additional Facts") ¶¶ at 40-41.

### b)  DTSC has not required Whittaker to address offsite groundwater contamination.

Whittaker further argues that Whittaker has complied with DTSC orders to cleanup offsite groundwater and that SCV Water is asking the court to approve a remedy that is inconsistent with DTSC's orders. Whittaker, however, is wrong on both accounts. First, Whittaker has not presented any evidence that it has undertaken any actions with regards off-site groundwater in response to a DTSC order. If fact, when asked about DTSC's activities associated with off-site contamination, Jose Diaz, Senior Environmental Scientist Supervisor, who oversaw Whittaker's activities since 2004, only referred to the review of reports produced by SCV Water consultants and containment remedies designed and

PLAINTIFF'S OPPO. TO WHITTAKER'S MOTION & CROSS-MOTION FOR SUMMARY JUDGMENT; &
PLAINTIFF'S CROSS-MOTION TO ESTABLISH WHITTAKER'S LIABILITY FOR NUISANCE

1   installed by SCV Water. See Gee Decl. ISO Oppo. Ex. E at 19:16-20:21, 93:12-

2   94:11(Diaz Depo.).

3        SCV Water has been implementing projects to contain the perchlorate

4   contamination from the Whittaker site and treating the water from its Saugus 1 and

5   2 containment wells for use as potable water. SCV Water's activities have been

6   overseen by DTSC through a 2005 Environmental Oversight Agreement that

7   required DTSC to review SCV Water's IRAP activities to determine if they were

8   necessary and consistent with the NCP. Abercrombie Decl. ISO Ptf.'s Mtn. ¶ 4, Ex.

9   A (EOA). Recently, DTSC asked SCV Water to submit a five-year report for the

10  IRAP. *See* Stone Decl. ISO Plt.'s Mtn. ¶ 7, Ex. A (Jan. 22, 2020 DTSC letter

11  correspondence approving the amendment to the 2005 IRAP). SCV Water

12  responded by informing DTSC that the IRAP did not accomplish its goal of

13  containing perchlorate and producing potable water from V-201. *See id*. DTSC

14  agreed that the IRAP did not accomplish its goal and approved SCV Water's

15  approach to modifying the IRAP as follows:

16      DTSC agrees with your proposal to submit a single amendment
        to the IRAP to include both Wells V-201 and V-205 as
17      additional containment wells with the necessary treatment
        facilities to address the perchlorate and volatile organic
18      compound contamination the Division of Drinking Water has
        concluded poses an unacceptable health risks to potable water
19      consumers. Stone Decl. ISO Ptf.'s Mtn. ¶ 8, Ex. B (July 13,
20      2020 DTSC letter corresp.).
21

22       This one paragraph alone establishes that (1) DTSC acknowledges that VOC

23  concentrations below the MCLs can pose a threat to human health, (2) DTSC is

24  looking to SCV Water, and not Whittaker, to address offsite contamination from

25  the Whittaker site and (3) DTSC's requirement to reduce offsite groundwater VOC

26  concentrations below the MCL does not conflict with DTSC's approval of

27  Whittaker's OU-7 remedial action plan. The evidence plainly creates an issue of

28  fact regarding Whittaker's flawed contentions; Whittaker's failure to cite this

1    evidence or address the actual roles of DDW, DTSC and SCV Water more than

2    undercuts its facile and misleading Motion.

3              c)    **DTSC has not objected to SCV Water's RCRA Complaint**

4

5         The cases cited by Whittaker involved either EPA or United States

6    Department of Defense[8] ("DOD") oversight of a CERCLA site cleanup in which a

7    party challenged EPA's or DOD's response actions through a RCRA citizen action

8    suit. EPA and DOD opposed the RCRA claim under CERCLA § 113(h) which

9    prohibits federal courts from reviewing any EPA[9] removal or remedial actions or

10   EPA actions to abate an imminent and substantial endangerment. SCV Water's

11   RCRA claim does not challenge an EPA action because EPA is not involved in the

12   site cleanup (as discussed above).

13        In addition, even if CERCLA section 113(h) applied to state actions (which

14   it does not), DTSC has not opposed the actions sought by SCV Water. DTSC did

15   not respond to SCV Water's 90 day RCRA Notice of suit letter and Jose Diaz of

16   DTSC did not object to SCV Water's lawsuit.

17             Q. Are you aware that a lawsuit has been filed [against
               Whittaker for offsite VOC contamination]?

18             A. That's a solution. Gee Decl. ISO Oppo. Ex. E at 108:
               21-22 (Diaz Depo.)

19

20        Mr. Diaz' response was consistent with the rest of his testimony where he

21   appeared content to continue to allow SCV Water to address Whittaker's offsite

22   contamination through ongoing litigation.

23

24   _____

25   [8] Under the 1986 Defense Environmental Restoration Program enabled the
     Secretary of Defense to act as the lead agency to carry out all responses actions for
     releases of hazardous substances owned or under the jurisdiction of the Department
     of Defense. Such actions are conducted pursuant to 42 USC § 9620 in cooperation
     with EPA.

26

27   [9] While 113(h) does not specifically reference EPA, it bars review of actions taken
     under CERCLA sections 9604 and 9606(a) which are actions taken by the
     President (executive branch).

28

### 2. Whittaker Misconstrues "Imminent and Substantial Danger" and the Evidence Establishing the Blob of TCE Emanating from its Site.

Whittaker argues that in order for VOC releases to present an "imminent and substantial endangerment" to human health the VOC concentration in SCV Water's wells must exceed the MCL.[10] Whittaker is wrong.

#### a) Whittaker's Narrow Interpretation of "Imminent and Substantial Endangerment" is Contradicts Case Law

Contrary to Whittaker's assertion, courts have repeatedly recognized that the language allowing a citizen to bring suit under 42 U.S.C. § 6972 endangerment standard of RCRA to be quite broad. Courts have the interpreted the scope of the term "releases of hazardous waste which may present an imminent and substantial endangerment to human health and the environment" and found that:

(1) An "endangerment" is an actual, _threatened or potential harm to human health_ or the environment. *See United States v. Valentine,* 856 F. Supp. 621, 626 (D. Wyo 1994) ("*Valentine*"). As underscored by the words "may present" in the endangerment standard that neither certainty nor proof of actual harm is required, only a risk of harm. *See Dague v. City of Burlington* 935 F.2d 1343, 1356 (2nd Cir 1991) ("*Dague*").

(2) An endangerment is "imminent" if the present conditions indicate that there may be a future risk to health or the environment (*id*), even though the harm may not be realized for years. *See Valentine*, 856 F. Supp. at 626-527. It is not necessary for the endangerment to be immediate (*See Dague* at 1356) or

---

[10] Whittaker cites to a number of cases that are distinguishable from the current matter. In *Meghrig v. KFC Western, Inc*,516 U.S. 479, 483 (1996) the Supreme Court ruled that a plaintiff could not recover past response costs under RCRA since all the contamination had already been removed (here, there are very high concentrations of perchlorate and VOCs in the groundwater that have not been removed). In *Price v. Navy*, 39 F.3d 1011, 1019 (9th Cir. 1994) the court ruled that surface metals and asbestos do not pose an imminent and substantial endangerment to groundwater because these contaminants do not migrate through groundwater (here, there is no dispute that perchlorate and VOCs have already impacted groundwater).

PLAINTIFF'S OPPO. TO WHITTAKER'S MOTION & CROSS-MOTION FOR SUMMARY JUDGMENT; & PLAINTIFF'S CROSS-MOTION TO ESTABLISH WHITTAKER'S LIABILITY FOR NUISANCE

1  tantamount to an emergency. *See United States v. Waste Industries Inc.* 734 F.2d

2  159, 165. (4ᵗʰ Cir. 1984).

3          (3) An endangerment is "substantial" if there is reasonable cause for

4  concern that health or the environment may be seriously harmed. *See United States*

5  *v. Conservation Chemical Co.,* 619 F. Supp. 162, 194 (W.D. Mo. 1985). It is not

6  necessary that the risk be quantified. *Id.*

7          **b)      The High Perchlorate and VOC Concentration in the**
           **Groundwater beneath and near the Whittaker Site**
8          **Pose an Imminent And Substantial Endangerment to**
           **SCV Water consumers.**
9

10         SCV Water's RCRA claim is based on the high concentrations of

11  perchlorate and VOCs beneath and near the Whittaker site. First, the maximum

12  TCE concentrations in the Saugus Formation beneath the Whittaker site have been

13  measured as high as 17,000 ppb, over 3,400 times the MCL and 34,000 times the

14  DLR levels that trigger a 97-005 evaluation by DDW.[11] *See* Stanin Decl. ISO

15  Oppo. ¶ 4, Ex. A, at Table 5 (Stanin Report). Further, TCE contamination on the

16  western boundary of OU-3 (closest portion of OU-3 to the impacted wells) exceeds

17  100 times the MCL for TCE. *See* Stanin Decl. ISO Oppo. ¶ 7, Ex. A, at fig. 27

18  (Stanin Report) .

19         As discussed above, both Whittaker and SCV Water experts agree that

20  VOCs will travel along the same pathways as perchlorate. According to AECOM's

21  perchlorate groundwater elevation and contamination concentration maps, the

22  contamination from the west side of OU-3 migrate toward the SCV Water's

23  impacted wells. *See* Stanin Decl. ISO Oppo. ¶ 7, Ex. A, at figs. 21-27 (Stanin

24  Report). While Whittaker argues that its onsite extraction wells intercept

25  contamination leaving the Whittaker site, the extraction wells pump at low rates

26  _____

27  [11] Similarly maximum PCE and perchlorate concentrations in the Saugus
    Formation beneath the Whittaker site have been measured at 19.000 ppb and
28  82,000 ppb, respectively. Stanin Decl. ISO Oppo. ¶ 4, Exh. A, at Table 5 (Stanin
    Report).

PLAINTIFF'S OPPO. TO WHITTAKER'S MOTION & CROSS-MOTION FOR SUMMARY JUDGMENT; &
PLAINTIFF'S CROSS-MOTION TO ESTABLISH WHITTAKER'S LIABILITY FOR NUISANCE

that are insufficient to draw contamination that has migrated from the Whittaker site. Stanin Decl. ISO Oppo. ¶ 8, Ex. A, at 45 (Stanin Report). The VOC concentrations in SCV Water's Saugus Formation wells will undoubtedly exceed the MCL at some time in the future if left unabated.

Contrary to Whittaker's contention, Whittaker' perchlorate and VOC contamination has caused contamination that exceed MCLs in SCV Water wells. For example, the Mall wells located near the V-205 production well have had detections of TCE at twice the MCL and perchlorate contamination at up to 72 ppb, which is higher than recorded in V-205. Stanin Decl. ¶ 9, Ex. A, at 27, 49 (Stanin Report). TCE and PCE contamination have already impacted Saugus 1 and Saugus 2. Stanin Decl. ISO Oppo. Ex. A, at 27 (Stanin Report); Gee Decl. ISO Ptf.'s Mtn. Ex. C, at 4, 8-10 (Hokkanen Report). TCE has impacted wells V-201 and V-205. *Id.*

### 3.    SCV Water RCRA Claims are not Moot.

SCV Water has a continuing need to utilize the Saugus Formation as a source of drinking water and had taken steps toward that goal through projects identified in the 2007 Settlement Agreement. However, the Settlement Agreement did not address the VOC contamination from the Whittaker site that has resulted in SCV Water's inability to comply with the VOC requirements of the SPTF permit and to obtain water supply permits for other impacted Saugus Formation wells. *See* Trowbridge Decl. Ex. AH, at ¶¶ G, I (2007 Settlement Agreement). SCV Water brings its RCRA claim because (1) contamination from the Whittaker site poses an imminent and substantial endangerment to SCV Water's consumers (as discussed above) (2) DTSC has not required Whittaker to address the contamination that has migrated from its site and (3) comprehensive offsite VOC contamination information will facilitate current and future permitting activities associated with DDW's 97-005 evaluation process.

### a) DTSC has relied on SCV Water and DDW to Address Offsite Groundwater Contamination

To date, DTSC has not required Whittaker to (1) conduct a comprehensive investigation of offsite groundwater contamination that defines the leading edge of each of the contamination plumes, (2) install or develop a plan to contain the spread of offsite contamination, or (3) make any effort to restore the Saugus Formation groundwater as an unimpaired source of drinking water. *See, e.g.*, Stanin Decl. ISO Oppo. ¶ 8. In fact, DTSC has relied on SCV Water, pursuant to the July 13, 2020 DTSC directive, to update the 2005 IRAP to address offsite groundwater contamination. *See* Stone Decl. ISO Ptf.'s Mtn. ¶¶ 7-8, Ex. B. According to Jose Diaz, DTSC's Senior Environmental Scientist Supervisor, DTSC's offsite groundwater oversight consist of (1) reviewing SCV Water's 2005 IRAP, (2) monitoring contamination in SCV Water's production wells and related sentinel wells,[12] and (3) reviewing SCV Water's offsite groundwater investigation. See " Gee Decl. ISO Oppo. Ex. E at 100:5-13, 91:17-92:14, and 93:12-94:11 (Diaz Depo.).

According to Mr. Diaz, DTSC rarely interfaces with DDW (two to three times since 2004) and has not discussed DDW health standards for drinking water (Gee Decl. ISO Oppo. Ex. E at 97:9-10 and 98:9-15, Diaz Depo.). Jose Diaz only knows of DDW's 97-005 requirements through communication with SCV Water and deferred the requirement to restore offsite groundwater to DDW drinking water standards to SCV Water. *Id.* at 98:9-99:10. Further, DTSC did not respond to SCV Water's request to require Whittaker to install monitoring wells to assist in SCV Water's offsite VOC investigation because "it was not going to change the

---

[12] A sentinel well is a monitoring well located in relatively close proximity to a production well down gradient from the source of pollution to provide early detection of contamination that may impact the production well. The wells are required by DDW for extremely impaired sources. See Ptf.'s RJN Ex. F, at 11 (97-005 Process Memo). They were not mandated by DTSC as part of a remedial investigation or remedial action plan.

1  [Whittaker's onsite] remedy." Gee Decl. ISO Oppo. Ex. E at 94:12 95:21 (Diaz
2  Depo.).

### b)   Offsite Contamination Characterization is an essential element of the 97-005 evaluation to obtain a permit

As discussed above, obtaining a water supply permit from an "extremely impaired source" of groundwater has already taken eight years and can take much longer due to the 97-005 information requirements. The 97-005 process memorandum articulates the sequence of DDW's evaluation process and includes (in the order listed in 97-005):

- Drinking Water Source Assessment and Containment Assessment – which involves determining the levels of contaminants that can impact a well and the containment of the contaminants that may reduce the well's contamination exposure. *See* Ptf.'s RJN Ex. F, at 5-6 (97-005 Process Memo).

- Full Characterization of the Raw Water Quality, which includes both the current water quality and a projection of contamination levels in the future. *Id*. at 8.

- Drinking Water Source Protection which includes control measures that prevent the level of contamination from rising and minimizing the dependence of treatment for contamination removal. *Id*. at 9.

- Evaluation of Treatment for targeted contaminants to DLR levels and monitoring of contaminants. *Id*. at 10.

A comprehensive offsite investigation will provide information on the contamination concentrations located between the Whittaker Site and the impacted wells and provide a basis for estimating the potential for high concentrations of contaminants from the Whittaker Site to impact SCV Water's wells and assist in projecting future contamination levels.  The investigation would also provide the basis of a containment study and the level of treatment required at the impacted wells – both now and in the foreseeable future. The information from a comprehensive offsite investigation would clearly provide the foundation data for DDW to make a more expeditious 97-005 groundwater evaluation.

### 4. Whittaker's Contentions as to the Certainty of Costs and Damages Do Not Support Summary Judgment

Without the benefit of citing any legal authority, Whittaker argues that it is entitled to summary judgment because the "ultimate remedy [to treat the groundwater] is unknown." (Whittaker Motion, pp. 24-25.) This argument fails for two reasons: 1) The notion misstates the law, which requires only certainty as to the *fact* of damages and a reasonable basis at the time of trial for computing damages, and 2) the remedy has been identified, though, in the case of the VOC carbon treatment, not specifically deployed. *See* Abercrombie Decl. ISO Oppo. ¶ 8; Takaichi Decl. ISO Oppo. ¶ 7. "Where the fact of damages is certain, the amount of damages need not be calculated with absolute certainty. The law requires only that some reasonable basis of computation of damages be used, and the damages may be computed even if the result reached is an approximation." *Meister v. Mensinger*, 230 Cal. App. 4th 381, 396 (2014), citing *GHK Associates v. Mayer Group, Inc.*, 224 Cal. App. 3d 856, 873 (1990).

Whittaker's contention that the remedy is "unknown" is therefore wrong as a matter of law and fact.

### B. Whittaker's CERCLA Preemption Argument is Frivolous

#### 1. Whittaker Ignores the Presumption Against Preemption and its Two-Step CERCLA Preemption Claim Fails

One of Whittaker's principal contentions throughout its Motion rests on the fallacy that because Whittaker's contamination reached SCV Water's groundwater, SVC Water is a "potentially responsible party" or PRP under CERCLA and, therefore, claims permitting joint and several liability either fail as a matter of law or, in the case of state law tort claims, are preempted. *See* Whittaker's Mtn. at 17-18, 20-29. Whittaker's attempt to avoid joint and several liability fails.

There is a reason no Court has adopted Whittaker's argument: Whittaker is wrong. Its "preemption" argument runs contrary to the language and purpose of

1   CERCLA. 42 U.S.C. § 9652(d). Indeed, even for those claimants who are PRPs

2   and who are responsible for the contamination at issue under CERCLA, joint and

3   several liability under California law remains and is *not preempted. City of Merced*

4   *v. Fields,* 997 F. Supp. 1326, 1335-1336 (E.D. Cal. 1998). "Therefore, the court

5   holds that while liability for the CERCLA claims is several, liability of all parties

6   to the City under state-law theories is joint and several." *Id.*

7       As the Ninth Circuit has repeatedly recognized, proper analysis of a

8   polluter's preemption argument begins with the "presumption against preemption."

9   "Even when a party presents a theory of implied conflict preemption, however, the

10  'presumption against preemption [still] applies.'" *Greenfield MHP Associates, L.P*

11  *v. Ametek, Inc.* 2018 WL 1757527, at *16 (S.D. Cal 2018)(citing *McClellan v. I-*

12  *Flow Corp.*, 776 F.3d 1035, 1039 (9th Cir. 2015).

13      "Because courts 'presume that Congress does not cavalierly pre-empt state-

14  law causes of action,' preemption analysis 'starts with the assumption that the

15  historic police powers of the States were not to be superseded . . . unless that was

16  the clear and manifest purpose of Congress.'" *Carolina Cas. Ins. Co. v. Oahu Air*

17  *Conditioning Serv., Inc.*, 994 F. Supp. 2d 1082, 1089 (E.D. Cal 2014) (rejecting

18  CERCLA preemption of state law claims and quoting *Medtronic, Inc. v. Lohr*, 518

19  U.S. 470, 485, 116 S. Ct. 2240, 135 L. Ed. 2d 700 (1996).)

20      Not only does Whittaker utterly fail to address the presumption against

21  preemption, it ignores that CERCLA expressly preserves state law claims, a point

22  emphasized in the authorities mis-cited by Whittaker, as set forth below.

23          **2.    CERCLA Expressly And Repeatedly Preserves Common**
            **Law Claims Related To A Polluter's Contamination.**
24

25      CERCLA contains no express preemption provision of state common law

26  tort claims. On the contrary, CERCLA contains at least three provisions expressly

27  *preserving* state law claims against polluters. 42 U.S.C. § 9614(a), 42 U.S.C. §

28  9652(d). 42 U.S.C. § 9659(h).

1    Whittaker's heavy reliance on *Fireman's Fund Insurance, Co. v. City of*
2    *Lodi*, 320 F.3d 928 (9th Cir. 2002) is entirely misplaced. *See* Whittaker's Mtn. at
3    24-27. Indeed, *Fireman's Fund* confirms that CERCLA does not preempt common
4    law tort claims under state law—not on a theory of "field preemption" and not on a
5    theory of "conflict" or issue preemption. 320 F.3d at 941. On the contrary, the
6    Ninth Circuit addressed an "innovative" ordinance that sought to insulate the City
7    of Lodi from liability for contribution claims.  The Ninth Circuit remanded on the
8    issue of whether the City was a PRP. "If Lodi is indeed a PRP, it cannot simply
9    legislate away this potential contribution liability under state and federal law."
10   *Fireman's Fund Insurance,* 320 F.3d at 947.[13]

11   The Ninth Circuit in *Fireman's Fund* explained that "CERCLA contains
12   three separate savings clauses to preserve the ability of states to regulate in the
13   field of hazardous waste cleanup." 320 F.3d at 941. First, CERCLA § 114(a) states
14   that "nothing in this chapter shall be construed or interpreted as preempting any
15   State from imposing any additional liability or requirements with respect to the
16   release of hazardous substances within such State." 42 U.S.C. § 9614(a). Second,
17   CERCLA § 302(d) states that nothing in this chapter shall affect or modify in any
18   way the obligations or liabilities of any person under other Federal or State law,
19   including common law, with respect to release of hazardous substances or other
20   pollutants or contaminants …." 42 U.S.C. § 9652(d). And third, CERCLA § 310(h)
21   states that "this chapter does not affect or otherwise impair the rights of any person
22   under Federal, State, or common law, except with respect to the timing of review
23   as provided in section 9613(h)," a CERCLA provision that is not at issue in the
24   present case. 42 U.S.C. § 9659(h).

25
26
27   ------
28   [13] Subsequent preemption decisions have distinguished *Fireman's Fund* on
     precisely this ground, noting the rather obvious difference between common law
     tort claims and a city ordinance seeking to "legislate away" the city's liability.
     *Carolina Cas. Ins. Co*, 994 F. Supp. at 1090.

PLAINTIFF'S OPPO. TO WHITTAKER'S MOTION & CROSS-MOTION FOR SUMMARY JUDGMENT; &
PLAINTIFF'S CROSS-MOTION TO ESTABLISH WHITTAKER'S LIABILITY FOR NUISANCE

In a related proceeding in State court, an administrative order based on the same preempted City ordinance was also subject to preemption. *City of Lodi v. Randtron*, 118 Cal.App.4th 337, 356 (2004). Whittaker's reliance on this state court decision is likewise misplaced. There the Court of Appeal expressly distinguished between, on the one hand, a City's unlawful ordinance purporting to grant the City the ability to issue abatement orders with, on the other, viable common law tort claims. The Court emphasized that **Section 25366 fully preserved common law claims**, quoting the section in full:

> (a) This chapter shall not be construed as imposing any new liability associated with acts that occurred on or before January 1, 1982, if the acts were not in violation of existing state or federal laws at the time they occurred. (b) Nothing in this chapter shall be construed as authorizing recovery for response costs or damages resulting from any release authorized or permitted pursuant to state law or a federally permitted release. (c) Except as provided in Sections 25360, 25361, 25362, and 25363, *nothing in this chapter shall affect or modify in any way the obligations or liability of any person under any other provision of state or federal law, including common law*, for damages, injury, or loss resulting from a release of any hazardous substance or for removal or remedial action or the costs of removal or remedial action of the hazardous substance.
>
> *City of Lodi*, 118 Cal.App.4th at 356 and n25 (emphasis in original).

The point could not be clearer. Indeed, the appellate court emphasized the distinction between common law actions for damages and for public nuisance with the local ordinance adopted by the City of Lodi:

> 3. Liability for Public Nuisance
>
> The construction clause does, however, serve to preserve "obligations or liability of any person under any other provision of state ... law, **including common law** ...." [*citation*] **We construe this language to preserve the substantive law imposing liability and obligations upon parties responsible for hazardous waste contamination**. The pollution of water constitutes a public nuisance under common law, which has long been codified by state law. [*citations*] Under state law governing public nuisance, a city is authorized to prosecute an RP in a criminal action for maintaining a public nuisance (Civ.Code, §§ 3491, 3492; Pen.Code 370) **or may file a civil action for damages and abatement for the pollution of its groundwater**. [*citations*]. City *of Lodi,* 118 Cal.App.4th at 120, emphasis added (internal citations omitted).

Whittaker's argument altogether ignores 25366 and confuses enforcement of a remediation order under section 25356 with common law claims for damages under state law.

### 3. CERCLA Preserves Claims for Joint and Several Liability by an "Innocent Landowner"

Whittaker also urges preemption of all state claims based on the erroneous view that the owner of contaminated property, as a PRP, cannot sue the polluter for state law claims that claims permit joint and several liability. Whittaker's Mtn. at 27-28. Whittaker's effort to avoid joint and several liability fails because Section 107(a) plainly provides for joint and several liability. *Atl. Richfield Co. v. Christian*, 140 S. Ct. at 1345.

In addition to the shortcomings noted above, Whittaker's argument as to the relevance of Whittaker's status as an "innocent landowner" –a defense provided by Section 9607(b) of CERCLA—is fully rebutted by authority Whittaker did not bother to cite, including a case in which Whittaker argued that a PRP could sue for joint and several liability under Section 107. *Chartis Specialty Ins. Co. v. United States,* 2013 U.S. Dist. LEXIS 101702 *55-56, (N.D. CA 2013) ("Plaintiffs argue that such a § 113 counterclaim is the proper vehicle for ensuring equitable distribution, not dismissing their request for joint and several liability. Whittaker Opp. at 5.").

Here, Whittaker has brought a counterclaim for contribution, and SCV Water has properly asserted the defense that it is an "innocent landowner."

Whittaker nevertheless argues: "Whether SCV Water is also an innocent landowner is irrelevant to a determination of PRP status." (Whittaker Motion, p. 29.) Whittaker's reliance on the recent decision of *Atl. Richfield Co. v. Christian* to suggest that a PRP may not sue for joint and several liability is entirely misplaced. The case made no such suggestion. In particular, the plaintiff in *Atl. Richfield Co. v. Christian* argued that it could not be liable as a PRP due to the statute of

1   limitations, and "therefore did not need EPA approval to take remedial action"

2   under CERCLA Section 122(e)(6). *Atl. Richfield Co. v. Christian*, 140 S. Ct. at

3   1352. The Supreme Court rejected this argument because, like Whittaker's

4   argument here, "This argument collapses status as a potentially responsible party

5   with liability for the payment of response costs." 140 S. Ct. at 1352.

6        On the issue of joint and several liability, the Supreme Court merely noted

7   that under Section 107 "responsible parties are jointly and severally liable for the

8   full cost of the cleanup." 140 S. Ct. at 1345. It did not disturb its earlier decision in

9   *Atlantic Research* regarding joint and several liability.

10        Prior to *Atlantic Research*, a number of circuits, including the Ninth Circuit,

11   had held that a PRP bringing suit against another PRP could only seek contribution

12   under § 113, and could not bring a claim for full recovery of costs under § 107(a).

13   *Cooper Indus., Inc. v. Aviall Servs., Inc.*, 543 U.S. 157, 169, 125 S. Ct. 577, 160 L.

14   Ed. 2d 548 (2004) (collecting cases); *Pinal Creek Grp. v. Newmont Min. Corp.*,

15   118 F.3d 1298, 1301-06 (9th Cir. 1997).

16        *Atlantic Research*, however, overruled *Pinal. Kotrous v. Goss-Jewett Co. of*

17   *N. Cal.*, 523 F.3d 924 (9th Cir. 2008). [14]

18        Subsequent decisions have recognized that the Supreme Court in *Atlantic*

19   *Research* "assumed, without so holding, that § 107(a) provides for joint and

20   several liability. [*citation*] The Court nevertheless rejected arguments that it was

21   inequitable to allow PRPs to pursue § 107(a) actions." *Chartis Specialty Ins. Co. v.*

22   *United States*, 2013 U.S. Dist. LEXIS 101702 *55, (N.D. CA 2013).

23        Moreover, the Court's holding as to joint and several liability in *Chartis*

24   *Specialty Ins. Co.* is entirely consistent with earlier decisions holding that an

25   innocent landowner may hold a polluter jointly-and-severally liable. Courts

---

26   [14] Although Whittaker suggests that *Kotrous* supports its position, Whittaker is

27   again incorrect: "Though no party in *Kotrous* appears to have made the argument that PRPs bringing suit under § 107(a) are precluded from seeking to impose joint and several liability, **this argument is clearly precluded by the court's holding**."

28   *Chartis Specialty Ins. Co.*, 2013 LEXIS at 57-58.

PLAINTIFF'S OPPO. TO WHITTAKER'S MOTION & CROSS-MOTION FOR SUMMARY JUDGMENT; &
PLAINTIFF'S CROSS-MOTION TO ESTABLISH WHITTAKER'S LIABILITY FOR NUISANCE

addressing *that* issue have squarely rejected Whittaker's argument. *Sunnyside Dev. Corp., LLC. v. Opsys United States Corp.,* 2006 U.S. Dist. LEXIS 26655 *7; 36 ELR 20083 (N.D. CA 2006) ["**Alternatively, plaintiff may seek joint and several liability against defendants if plaintiff pleads it is an 'innocent landowner**.'"]; *Lincoln Properties,Ltd. v. Higgins*, 823 F.Supp.1528, (E.D. Cal. 1992) (holding that County well-owner was entitled to the defense even if also a PRP).

　　　　For example, in *1325 "G" St. Assocs. v. Rockwood Pigments NA, Inc.,* the defendant polluter argued that Plaintiff's status as a PRP barred recovery under Section 107(a) and limited recovery to contribution under section 113(h). The distinction between the two sections is critical, as 107(a) imposes joint and several liability:

> The distinction [between a 113(h) and 107(a) claim] is crucial because in a cost recovery action under CERCLA § 107(a), "a party can impose *joint* and *several* liability for all its cleanup costs upon the defendant." *Axel Johnson*, 191 F.3d at 415 (emphasis in original) ("any claim for damages made by a potentially responsible person—even a claim ostensibly made under § 107—is considered a contribution claim under § 113"). Therefore, a PRP may pursue a cost recovery action under CERCLA § 107(a) "only by proving an affirmative defense provided in § 9607(b)." *Crofton Ventures*, 258 F.3d at 297.

> Plaintiff argues that, despite its ownership of the land containing the CSG Facility, it is entitled to the full recovery of its response costs because it is an "innocent landowner" under CERCLA § 107(b) (3). 2004 U.S. Dist. LEXIS 19178 *15,22 (D.C. Md. 2004).

　　　　The Court granted summary judgment as to the "innocent landowner" issue, and held plaintiff was therefore entitled to "full recovery of necessary response costs under CERCLA § 107." *Id.* at *22. Here, Whittaker assumes that SCV Water is an innocent landowner (Whittaker's Mtn. at 29); moreover, SCV Water has

submitted evidence to establish that fact. *See* Ptf.'s Facts at ¶¶ 12-27, 40-45; *see also* Additional Facts at ¶¶ 1-33. For purposes of Whittaker's "preemption" argument, and its erroneous contention that an innocent landowner cannot seek recovery under section 107(a), there is at least a disputed issue of fact as to whether SCV Water is an innocent landowner.

### C. The HSAA Does Not "Bar" Awarding Damages That Are Proven, Including Ongoing Damages

Whittaker's reliance on *Greenfield MHP* to argue preemption of future damages under the HSAA likewise fails: Here, unlike *Greenfield MHP*, any and all future treatment costs incurred by SCV Water will be in response to permit requirements imposed by DDW, ***with the approval of DTSC***. Ptf.'s Facts at ¶¶ 9-11 56, 58-60, 62-65, 69. Contrary to Whittaker's flatly erroneous contention, SCV Water has its own Oversight Agreement with DTSC, and has its own IRAP for OU-7 with DTSC, and DTSC has expressly recognized the role of DDW to address the health hazards posed by Whittaker's contamination of drinking water:

> DTSC agrees with your proposal to submit a single amendment to the IRAP to include both Wells V-201 and V-205 as additional containment wells with the necessary treatment facilities to address the perchlorate and volatile organic compound contamination that Division of Drinking Water has concluded poses unacceptable health risks to potable water consumers. Stone Decl. ISO Ptf.'s Mtn. Ex. B (July 13, 2020 DTSC letter corresp. to Matthew Stone).

Whittaker's attempt to cobble together an argument to bar or limit the remedies available to SCV Water ignores evidence directly rebutting its erroneous factual contentions. Those contentions do not improve with repetition.

Damages for nuisance include not only damages for loss of use but costs of abatement of the nuisance, including post-filing, prejudgment costs of remediation. *Orange County Water Dist. V. Unocal, Inc.,* 2016 U.S. Dist. LEXIS 193938 *23 (C.D. CA 2016), citing, *inter alia, Wilshire Westwood Associates v. Atl. Richfield*

1  *Co.,* 20 Cal. App. 4th 732, 744-45, (1993) and *De Costa v. Massachusetts Flat*

2  *Water & Mining Co.,* 17 Cal. 613, 617 (1861)

> Sometimes, courts award plaintiffs the cost of abatement, rather than issue an injunction ordering defendants' abatement of a nuisance. This occurs even when abatement has not yet occurred and therefore the damages accrued by bearing future remediation costs are necessarily prospective. *Orange County Water Dist. v. Unocal Corp.*, 2016 U.S. Dist. LEXIS 193938, *23

The *Orange County Water District* ruling is particularly instructive because the Court denied defendants' motions for summary judgment in favor of the water district where defendants made many of the same arguments Whittaker now offers.

## D.    Whittaker's Attempt To Rely On A Prior, Limited Settlement Agreement Is Frivolous

Whittaker's final argument regarding prior settlements requires no extended discussion. Whittaker's Mtn. at 32-33. First, Whittaker cannot now raise waiver or release based on earlier settlement agreements because it failed to do so in its affirmative defenses. Federal Rule of Civil Procedure 8(c) specifically states: "[i]n responding to a pleading, a party must affirmatively state any avoidance or affirmative defense, including … release." Fed. R. Civ. P. 8(c). Failure to do so is a waiver and party may later rely on a purported earlier settlement agreement. *Lowery v. Channel Comm'n, Inc.*, 539 F.3d 1150, 1155 (9th Cir. 2008) (holding "settlement and release is an affirmative defense and is generally waived if not asserted in the answer to a complaint."). Whittaker points to no affirmative defense and offers no legal authority to support its argument. Had Whittaker raised one or more settlement agreements in an affirmative defense, the parties could have conducted discovery, and certainly would have questioned Whittaker's declarant, Mr. Lardier, at his deposition as to the meaning and purpose of particular provisions.

Second, prior agreements related to aspects of perchlorate contamination are

1    quite specific and do not preclude or impact any of the claims in this litigation. *See,*

2    *e.g.*, Trowbridge Decl. Ex. AH (2007 Settlement Agreement); Abercrombie Decl.

3    ISO Oppo. ¶¶ 4-9, Ex. C (2015 Settlement Agreement). Even if Whittaker had

4    raised prior settlement agreements as an affirmative defense, which it did not do,

5    its factual contentions as to the scope of those agreements plainly raise disputed

6    factual issues. Summary judgment cannot be granted where the contract has

7    ambiguous terms subject to conflicting interpretation. *Miller v. Glenn Miller*

8    *Prods., Inc.*, 454 F.3d 975, 990 (9th Cir. 2006). When a contract provision is

9    ambiguous, "ordinarily summary judgment is improper because differing views of

10   the intent of parties will raise genuine issues of material fact." *Maffei v. N. Ins. Co.*

11   *of N.Y.*, 12 F.3d 892, 898 (9th Cir.1993) (quoting *United States v. Sacramento*

12   *Mun. Util. Dist.*, 652 F.2d 1341, 1344 (9th Cir.1981))

13          Third, Whittaker's apparent reliance on the waiver of Cal. Civ. Code § 1542

14   protections is entirely misplaced. Whittaker's contention that the V-201 Well

15   Treatment Agreement must be interpreted as releasing all claims against Whittaker

16   arising from their contaminating activities is wrong as a matter of contract

17   interpretation and, further, contrary to law. *City of Emeryville v. Elementis*

18   *Pigments, Inc.*, No. C99-03719 WHA, 2008 WL 6742577, at *6 (N.D. Cal. Oct.

19   29, 2008).

20          In *City of Emeryville*, the polluters argued that a prior settlement agreement

21   regarding contamination emanating from one specific site should be interpreted "as

22   extending to any and all claims concerning contamination caused by [the

23   polluters'] historic pesticide-handling operations, wherever in Emeryville such

24   contamination may be found" because City of Emeryville waived California Civil

25   Code Section 1542. 2008 WL 6742577 at *3. The court held that such an

26   interpretation of a release with waiver of California Civil Code Section 1542 was

27   overly broad and looked to the language of the agreement to determine that the

28   release was narrowed by geographic scope. *Id.* at *4.

Fourth, it is unclear which agreement or agreements Whittaker actually relies on: Whittaker refers to two agreements but submits only an agreement from 2007; that 2007 Settlement Agreement makes no reference to Well V 201. The 2015 Agreement regarding Well V-201 is quite specific and is limited to the specific perchlorate treatment regimen identified in the Agreement. *See* Abercrombie Decl. ISO Oppo. ¶¶ 4-7, Ex. C.

## IV. WHITTAKER HAS ADMITTED AND THE UNDISPUTED FACTS ESTABLISH ITS LIABILITY FOR NUISANCE

### A. Nuisance Liability Under California Law is Both Broad and Strict

Under California law, Civil Code section 3479 defines a nuisance as "[a]nything which is injurious to health . . . or is indecent or offensive to the senses, or an obstruction to the free use of property, so as to interfere with the comfortable enjoyment of life or property." A public nuisance is one that affects at the same time an entire community or neighborhood, or any considerable number of persons, although the extent of the annoyance or damage inflicted upon individuals may be unequal. Civ. Code, § 3480. Every other nuisance is private. Civ. Code, § 3481.

A plaintiff may maintain a private nuisance action based on a public nuisance when the nuisance causes an injury to plaintiff's private property or to a private right incidental to such private property. Civ. Code, § 3493; *Newhall Land & Farming Co. v. Superior Court* (1993) 19 Cal.App.4th 334, 342, *review denied*; *KFC Western, Inc. v. Meghrig*, 23 Cal. App. 4th 1167, 1178 (1994). "Liability for nuisance does not hinge on whether the defendant owns, possesses or controls the property, nor on whether he is in a position to abate the nuisance; is the critical question whether the defendant *created or assisted in the creation of the nuisance*." *County of Santa Clara v. Atl. Richfield Co.,* 137 Cal. App. 4th 292, 306 (2006), *emphasis in original* (citations and internal quotations omitted).

1    Unlike CERCLA, California law has long imposed liability on any person

2    who maintains a nuisance—regardless of whether that person has an interest in the

3    land. *Hardin v. Sin Claire,* 115 Cal. 460, 463-64 (1896) (holding administrator of

4    an estate liable for maintaining a nuisance even though it was the decedent who

5    had originally created the nuisance). The Ninth Circuit relied on the California

6    Supreme Court's long-established precedent to uphold summary judgment for

7    groundwater contamination in *Campbell*, 138 F.3d at 782.

8    In *Campbell*, the Ninth Circuit upheld summary judgment on a state law

9    claim of nuisance against executors of an estate responsible for administering

10   property because "hazardous chemicals were polluting the water. Therefore, the

11   appellants are liable under California law regardless of whether they were owners

12   or operators under CERCLA." *Campbell*, 138 F.3d at 772.

13   For these reasons, courts have long recognized the "nuisance liability in

14   California is both broad and strict." *Redevelopment Agency v. Burlington Northern*

15   *& Santa Fe Ry*, 2007 U.S. Dist. LEXIS 44287 *30; 2007 WL 1793755 (E.D. Cal

16   2007). In *Burlington Northern,* the district court, after carefully canvassing

17   California law and discussing the Ninth Circuit's decision in *Campbell,* granted

18   summary judgment in favor of plaintiff based on the presence of petroleum on the

19   property.

20   These broad principles of nuisance apply to Whittaker's acknowledged

21   contamination of the soil and groundwater beneath and beyond its site.

22   **B.    Contamination Emanating from the Whittaker Site Constitutes a Nuisance.**

23

24   There is no question that Whittaker's contamination of groundwater

25   constitutes nuisance: "Pollution of water constitutes a public nuisance." *Jordan v.*

26   *City of Santa Barbara*, 46 Cal. App. 4th 1245, 1257 (1996); *Carter v. Chotiner*,

27   210 Cal. 288, 291 (1930); *Selma Pressure Treating Co. v. Osmose Wood*

28   *Preserving Co.*, 221 Cal.App.3d 1601, 1619 (1990).

PLAINTIFF'S OPPO. TO WHITTAKER'S MOTION & CROSS-MOTION FOR SUMMARY JUDGMENT; & PLAINTIFF'S CROSS-MOTION TO ESTABLISH WHITTAKER'S LIABILITY FOR NUISANCE

1    In fact, water pollution occurring as a result of treatment or discharge of

2    wastes in violation of Water Code section 13000 et seq., as occurred here, is a

3    public nuisance *per se*. Cal. Wat. Code, § 13050(m); *Newhall Land & Farming Co.*

4    *v. Superior Court,* 19 Cal. App. 4th 334, 368 (1993).

5    Contaminants like perchlorate and VOCs in groundwater are a nuisance

6    because they are injurious to human health and directly impede SCV Water's

7    ability to provide safe drinking water to its customers. *See*, Facts at ¶¶ 1-3, 54. The

8    presence of perchlorate and VOCs have unquestionably interfered with SCV

9    Water's ability to use certain wells (V-201 and V-205) for drinking water purposes

10   and have created a condition where SCV Water cannot comply with its water

11   supply permit for the SPTF. *See*, Ptf.'s Facts at ¶¶ 50, 54-58, 62, 64-69.

12   Finally, given the presence of trichloroethylene and other dangerous VOCs

13   in the soil and groundwater, SCV Water need not prove the cause of the pollution

14   or that the pollution actually migrated to its property. The plaintiff need only prove

15   that the property itself is contaminated:

16        "Thus, to state a claim under California law, California
          need not prove that trichlorethylene migrated from the
17        20th Street Property to other areas. It is enough that the
          water under the 20th Street Property itself was
18        contaminated. In other words, the polluted water at the
          20th Street Property created a public nuisance and
19        endangered the environment. The cause of the
          trichloroethylene contamination at Stanley Park and other
20        off-site areas is therefore immaterial to California's state
          law claims." *California v. Campbell*, 138 F.3d 772, 782
21        (9th Cir. 1998).

22   Here, of course, Whittaker and its retained experts have both admitted the

23   presence of TCE in the groundwater, often tested at many times the MCL, and in

24   the soil. *See*, Ptf.'s Facts at ¶¶ 19, 21, 23-24; *see also* Stanin Decl. ISO Ptf.'s Mtn.

25   Ex. A, at 25-26 (Stanin Report). But Whittaker's experts also claim that further

26   migration off site can be fully abated, a fact establishing that the contamination has

27   caused a "continuing" nuisance, as addressed in the following Section. *See*,

28   Additional Facts at ¶¶ 37-39.

PLAINTIFF'S OPPO. TO WHITTAKER'S MOTION & CROSS-MOTION FOR SUMMARY JUDGMENT; &
PLAINTIFF'S CROSS-MOTION TO ESTABLISH WHITTAKER'S LIABILITY FOR NUISANCE

### C. Whittaker's Continuing Nuisance is Abatable and Not Subject to the Three-year Statute of Limitations.

"Because every continuing nuisance and trespass gives rise to a separate claim for damages, the three-year statute of limitations does not bar any of Plaintiffs' claims." *People v. Kinder Morgan Energy Partners., L.P.*, 569 F. Supp. 2d 1073, 1086 (S.D. Cal 2008) (addressing contamination of soil and groundwater.

The commencement of the statute of limitations for a nuisance action varies, depending whether the nuisance is permanent or continuing. *Jordan v. City of Santa Barbara Jordan v. City of Santa Barbara*, 46 Cal. App. 4th 1245,1256; *Wilshire Westwood Associates v. Atlantic Richfield Co.* (1993) 20 Cal. App. 4th 732, 744. Where the nuisance is abatable, it is deemed continuing, and persons harmed by it may bring successive actions for damages until the nuisance is abated. Ibid.

Further, a nuisance is abatable if it can be "diminished." *Starrh & Starrh Cotton Growers v. Aera Energy LLC*, 153 Cal. App. 4th 583, 596 (2007). Contamination is abatable when it is subject to reasonable remediation or cleanup. *Mangini v. Aerojet-General Corp.*, 12 Cal. 4th 1087, 1090 (1996).

Here, undisputed facts establish that this standard is met because reasonable remediation is available.[15] Reasonable steps can be taken to treat the groundwater to remove the contaminants that Whittaker's waste disposal practices caused. *See*, Additional Facts at ¶ 34-39; *see also* Takaichi Decl. at ¶¶ 7-8. In particular, the undisputed evidence establishes that the nuisance can be abated with the use of

---

[15] Although Whittaker *argues* that the VOC contamination is not reasonably abatable, it offers no evidence on that point. Despite having retained a half dozen experts in this matter, Whittaker submits no expert declaration as to whether existing carbon filtration systems can treat groundwater to remove VOCs as part of a drinking water system. SCV Water's expert, Mr. Takaichi, has been involved in many such successful treatment systems. *See* Takaichi Decl. ¶¶ 7-8. Further, Whittaker's reference to the prior ruling in this case provide no substitute for actual evidence: the prior ruling in the prior case addressed abatability of perchlorate, not VOCs, and, further, the water agencies did not submit the affidavit of Mr. Takaichi or any other expert.

PLAINTIFF'S OPPO. TO WHITTAKER'S MOTION & CROSS-MOTION FOR SUMMARY JUDGMENT; & PLAINTIFF'S CROSS-MOTION TO ESTABLISH WHITTAKER'S LIABILITY FOR NUISANCE

1   adequate carbon treatment of the groundwater at SCV Water's drinking water

2   wells. *Id*. The installation of the carbon treatment system will allow SCV Water to

3   use contaminated wells for drinking water and allow SCV Water to comply with

4   the requirements of its SPTF water supply permit. *Id*. Whittaker concedes that the

5   nuisance can be "technically abated" (Whittaker's Mtn. at 3) and offers no

6   evidence challenging the recognized go-to technology to address these conditions.

7   *See* Takaichi Decl. ¶¶ 7-8 (addressing "Best Available Technology" or BAT

8   standards).

9        Accordingly, with respect to Whittaker's liability for the state law nuisance

10  claim, there are no triable issues of fact. Addressing liability now will meet the

11  goals of FRCP Rule 56 to streamline this proceeding, narrowing the issues for trial

12  to primarily the scope of the appropriate remedies, including damages.

13  **V.   CONCLUSION**

14       Whittaker's Motion for Summary Judgment and/or Partial Summary

15  Judgment must be denied because it relies on disputed facts and a gross

16  misstatement of the law. DTSC has not pronounced the groundwater "safe to

17  human health" as urged by Whittaker, nor has DTSC ever suggested that the

18  efforts of SCV Water and DDW to address the contamination constitute a

19  "challenge" to DTSC's efforts to have Whittaker address the massive

20  contamination at the Whittaker Site. On the contrary, because Whittaker concedes,

21  as the undisputed evidence establishes, that the contamination can be reasonably

22  abated, Whittaker's liability for nuisance is also undisputed.

23  Date:   December 14, 2020          NOSSAMAN LLP
                                        FREDERIC A. FUDACZ
24                                      BYRON GEE
                                        PATRICK J. RICHARD
25                                      TARA E. PAUL

26                                      By: /s/ Tara E. Paul
                                            Tara E. Paul
27                                      Attorneys for Plaintiff SANTA CLARITA
                                        VALLEY WATER AGENCY
28