FRED M. BLUM, ESQ. (SBN101586)
fblum@behblaw.com
MICHAEL E. GALLAGHER, ESQ. (SBN 195592)
mgallagher@behblaw.com
EARL L. HAGSTROM (SBN 150958)
ehagstrom@behblaw.com
DANIEL E. TROWBRIDGE, ESQ. (SBN 301301)
dtrowbridge@behblaw.com
BASSI, EDLIN, HUIE & BLUM LLP
500 Washington Street, Suite 700
San Francisco, CA 94111
Telephone:  (415) 397-9006
Facsimile:   (415) 397-1339

Attorneys for Defendant
AND THIRD-PARTY PLAINTIFF WHITTAKER CORPORATION

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SANTA CLARITA VALLEY WATER AGENCY,<br><br>　　　　Plaintiffs,<br><br>　　vs.<br><br>WHITTAKER CORPORATION and DOES 1-10, inclusive<br><br>　　　　Defendants.<br><br>WHITTAKER CORPORATION,<br><br>　　　　Third-Party Plaintiff,<br><br>　　vs.<br><br>KEYSOR-CENTURY CORP., a California Corporation; and SAUGUS INDUSTRIAL CENTER, LLC, a Delaware Limited Liability Company,<br><br>　　　　Third-Party Defendants. | Case No. 2:18-CV-6825-SB (RAOx)<br><br>*Assigned to Hon. Stanley Blumenfeld, Jr.*<br><br>**DEFENDANT WHITTAKER CORPORATION'S STATEMENT OF GENUINE DISPUTES IN SUPPORT OF ITS OPPOSITION TO PLAINTIFF SANTA CLARITA VALLEY WATER AGENCY'S MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>Date:　　　January 8, 2021<br>Time:　　　8:30 a.m.<br>Dept.:　　　6C<br><br><br>Action Filed:　August 8, 2018<br>Status Conf.:　January 19, 2021 |

2930843

Whittaker Corporation hereby provides its Statement of Genuine Disputes pursuant to the Central District Local Rules and Judge Blumenfeld's order:

| Plt's SSUF No. | UNDISPUTED FACTS | SUPPORTING EVIDENCE | |
|---|---|---|---|
| | | | |

***Perchlorate, TCE and PCE are "Hazardous Substances" Under CERCLA and the HSAA.***

| 1. | Trichloroethylene ("TCE") is a hazardous waste. | Request for Judicial Notice ("RJN") Ex. B (Title 40, section 302.4 of the United States | Not Disputed.<br><br>Whittaker objects this is not a fact but a "legal conclusion," in violation of Judge Blumenfeld's Standing Order regarding MSJs. |

2930843

WHITTAKER'S STATEMENT OF GENUINE DISPUTES IN
SUPPORT OF ITS OPP. TO PLAINTIFF'S MSJ

| | | Code of Federal Regulatio ns (2011)) | |
|---|---|---|---|
| 2. | Tetrachloroet hylene ("PCE") is a hazardous waste. | RJN Ex. B (Title 40, section 302.4 of the United States Code of Federal Regulation s (2011)) | Not Disputed.<br><br>Whittaker objects this is not a fact but a "legal conclusion." |
| 3. | Perchlorate is a hazardous substance. | RJN Ex. A (*Castaic Lake Water Agency v. Whittaker Corp.*, 272 F.Supp.2d 1053, | Not disputed.<br><br>Whittaker objects this is not a fact but a "legal conclusion." |

2930843

WHITTAKER'S STATEMENT OF GENUINE DISPUTES IN
SUPPORT OF ITS OPP. TO PLAINTIFF'S MSJ

| | | 1059 (C.D. Cal. 2003) ("*Castaic Lake*"); RJN Ex. D, at 212 (2008 U.S. Dept. of Health & Human Services Toxicological Profile for Perchlorates) | |
|---|---|---|---|
| 4. | The California State Water Resources Control Board's Division of Drinking Water ("DDW") adopted its 97-005 Policy Guidance for Direct Domestic Use of Extremely Impaired Sources | RJN Ex. E (DDW 1997 97-005 Policy Guidance). | Not Disputed. |

2930843

WHITTAKER'S STATEMENT OF GENUINE DISPUTES IN
SUPPORT OF ITS OPP. TO PLAINTIFF'S MSJ

| | | | |
|---|---|---|---|
| | ("97- 005") on November 5, 1997. | | |
| 5. | DDW issued its revised 97-005 on September 21, 2020. | RJN Ex. F (DDW's revised 97-005 Policy Guidance ). | Not Disputed. |
| 6. | DDW makes determinations of whether water is an "extremely impaired source." | Gee Decl. Ex. J, at 35:14-25 (O'Keefe Depo.). | Not Disputed. |

2930843

WHITTAKER'S STATEMENT OF GENUINE DISPUTES IN
SUPPORT OF ITS OPP. TO PLAINTIFF'S MSJ

| 7. | DDW has determined that the groundwater in the Saugus Formation near the Whittaker Site is an "extremely impaired source." | Gee Decl. Ex. J, at 37:17-21 (O'Keefe Depo.). | Not Disputed. |
| 8. | DDW has determined that the groundwater in the Saugus Formation near the Whittaker Site is an "extremely impaired source." | Gee Decl. Ex. J, at 37:17-21 (O'Keefe Depo.). | Duplicate |
| 9. | DTSC asked SCV Water to prepare a five-year review report in connection with SCV Water's 2005 Interim Remedial | Stone Decl. ¶ 7. | Not disputed. |

2930843

WHITTAKER'S STATEMENT OF GENUINE DISPUTES IN SUPPORT OF ITS OPP. TO PLAINTIFF'S MSJ

| | | | |
|---|---|---|---|
| | Action Plan ("2005 IRAP"), which addressed the groundwater contamination in the vicinity of SCV Water's wells from the Whittaker Site. | | |
| 10. | SCV Water advised DTSC that it does not believe it is appropriate for DTSC to close out the 2005 IRAP following a five-year review because SCV Water's actions under the 2005 IRAP have not achieved the two objectives of containing the off-site spread of Whittaker's | Stone Decl. ¶ 7, Ex. A. | Not disputed as to what SCV Water advised DTSC. |

2930843

WHITTAKER'S STATEMENT OF GENUINE DISPUTES IN
SUPPORT OF ITS OPP. TO PLAINTIFF'S MSJ

| | | | |
|---|---|---|---|
| | perchlorate contamination and restoring lost groundwater supply caused from the contamination. | | |
| 11. | DTSC advised SCV Water in July 2020 that instead of requiring a five-year review of the 2005 IRAP, SCV Water will submit an amended IRAP to include both wells V-201 and V-205 as additional containment wells with treatment facilities to contain the spread of perchlorate as well as VOCs that DDW has | Stone Decl. ¶¶ 7-8, Ex. B. | Disputed in Part.

Plainly, neither Plaintiff nor DDW believes VOCs pose an unacceptable risk to their customers.  In a recent October 2020 internal SCVWA email, Dirk Marks the Director of Water Resources for SCVWA, admitted that regulators have "declined to directly order . . . [SCVWA] to treat for VOC."  On the same e-mail thread, Mike Alvord, Director of Maintenance and Operations, stated "WE do not have an inherent VOC issue in any of our wells.  What we are faced with in 4 Saugus Wells (Saugus 1, Saugus 2, 201 and 205) |

2930843

WHITTAKER'S STATEMENT OF GENUINE DISPUTES IN
SUPPORT OF ITS OPP. TO PLAINTIFF'S MSJ

| | | | |
|---|---|---|---|
| concluded pose an unacceptable risk to SCV Water's customers. | | | wells is low levels of VOCs and the DDW 97-005 process.." Trowbridge Decl. II, ¶ 40, Ex. AI, e-mails from SCVWA's Associate Water Resources Planner to Mike Alvord, Director of Operations and Maintenance, Stephen Cole, Assistant General Manager, and Dirk Marks, Director of Water Resources, "VOC Treatment at Well 201," dated Thursday October 14, and Friday October 15, 2020, with Bates Label Range SCVWA-0694227-29.

Plaintiff has not offered any evidence to support its assertion that DDW has concluded VOCs pose an unacceptable risk to SCV Water's Customers.  DTSC only stated its agrees with SCVWA's proposal to submit a single amendment to the IRAP to include wells V-201 and V-205 which purportedly deals with contamination that SCVWA contends DDW has concluded |

2930843

WHITTAKER'S STATEMENT OF GENUINE DISPUTES IN
SUPPORT OF ITS OPP. TO PLAINTIFF'S MSJ

poses an unacceptable health risk.

DDW has stated the 97-005 process does not pertain to a health based standard. According to Mr. O'Keefe, the 97-005 Policy is not a health based standard, but one based on treatability.   Trowbridge Decl., ¶ 29, Ex. AA, O'Keefe Depo. at 10:11-18, 84:8-85:6.

After the installation of the perchlorate treatment systems, the concentrations of perchlorate in extracted well water were reduced to nondetectable and have been and continues to be served by SCVWA to its customers.  Trowbridge Decl., ¶ 6, Ex. D, February 97-005 Report, at Executive Summary – II – IV; Ex. W, *Water Information Sheet, "Well V201:· NPDES Exceedance,* SCVWA, July 17, 2018.

SCVWA and DDW have repeatedly determined that it is safe and that SCVWA has served water to its customers containing

2930843

WHITTAKER'S STATEMENT OF GENUINE DISPUTES IN
SUPPORT OF ITS OPP. TO PLAINTIFF'S MSJ

|  |  |  | detectable levels of VOCs below the MCLs. Trowbridge Decl., ¶ 23, Ex. U, Declaration of Keith Abercrombie in Support of Partial Summary Judgment, October 23, 2020 ("Abercrombie MSJ Decl.") at ¶¶ 8-9; Trowbridge Decl., ¶ 7, Ex. E, Alvord 12/12/19 30(b)(6) Depo. at 19:12-23; ¶ 24, Ex. V, Deposition of Michael Alvord (December 5, 2019)("Alvord Depo.") 30:15-31:14. Whittaker objects this fact is improperly compound in violation of Judge Blumfeld's standing order. |

Plaintiff Contends there have been Releases of TCE, PCE and Perchlorate at the Whittaker Facility.

2930843

WHITTAKER'S STATEMENT OF GENUINE DISPUTES IN
SUPPORT OF ITS OPP. TO PLAINTIFF'S MSJ

| | | | |
|---|---|---|---|
| 12. | The Whittaker Site is a 996-acre property located in the County of Los Angeles, California, at 22116 West Soledad Canyon Road in the City of Santa Clarita. | Gee Decl. Ex. C, at 12 (Hokkanen Report); Gee Decl. Ex. U, at Table 2-1 (1997 Acton Mickelson Remedial Investigation Report); RJN Ex. A, at 1061 (*Castaic Lake*) | Not Disputed. |
| 13. | The Whittaker Site is a former explosives and munitions manufacturing facility that was in active operation from at least 1934 to 1987. | Gee Decl. Ex. C, at 12 (Hokkanen Report); Gee Decl. Ex. P at 5:12-13 | Not disputed. |

2930843

12

| | | | |
|---|---|---|---|
| | | (Def.'s Resp. to Req. for Admis.); Gee Decl. Ex. U, at Table 2-1 (1997 Acton Mickelson Remedial Investigation Report); RJN Ex. A, at 1061 (*Castaic Lake*). | |
| 14. | Whittaker used perchlorate and VOCs in its operations at the Site, including in the manufacture of ammunition | Gee Decl. Ex. C, at 12 (Hokkanen Report); Gee Decl. Ex. E, at 11-13 | Not disputed. |

2930843

WHITTAKER'S STATEMENT OF GENUINE DISPUTES IN
SUPPORT OF ITS OPP. TO PLAINTIFF'S MSJ

| | | | |
|---|---|---|---|
| rounds, flares and signal cartridges, glow plugs, igniters and rocket mortars. | (Dawson Report); Gee Decl. Ex. L, at 20:9-21:14 and 210:7-211:11 (Dawson Depo.); Gee Decl. Ex. P, at 5:12-15 (Def.'s Resp. to Req. for Admis.); Gee Decl. Ex. U, at Tables 2-7 and 2-8 (1997 Acton Mickelson Remedial Investigati on Report). | |

2930843

WHITTAKER'S STATEMENT OF GENUINE DISPUTES IN
SUPPORT OF ITS OPP. TO PLAINTIFF'S MSJ

| | | | |
|---|---|---|---|
| 15. | Whittaker used TCE and PCE on the Site as a degreaser. | Gee Decl. Ex. C, at 12 (Hokkanen Report); Gee Decl. Ex. G, at 3 (Hughto Report). | Not disputed. |
| 16. | Whittaker buried "residual materials and excess product…indiscriminately in numerous landfill and surface dump locations widespread about the Site." | Gee Decl. Ex. G, at 4 (Hughto Report). | Disputed. From at least 1968 to 1986, the Defense Contractor's Adminstrative Services, known as the "DCAS", was charged with ensuring contractors complied with the relevant DOD Safety Manual. DCAS maintained an office at the site, and always had at least three |

2930843

WHITTAKER'S STATEMENT OF GENUINE DISPUTES IN SUPPORT OF ITS OPP. TO PLAINTIFF'S MSJ

| | | | |
|---|---|---|---|
| | | | inspectors deployed at the site, at all times when Whittaker employees were working overtime, who ensured Whittaker's burn pit to ensure compliance with DOD Safety Manual requirements, inspected the hog-out areas, and inspected facilities to ensure wastes were segregated properly and placed in appropriate containers by Bermite employees.<br><br>Trowbridge Decl., ¶ 63, Ex. BF, Findings of Facts and Law, Central District Case No. 2:09-cv-01734-GHK-RZ, Docket No. 180, June 30, 2010, ¶¶ 191-198. |
| 17. | Other "perchlorate wastes" and "ignitable materials" were burned in burn pits on the Site. | Gee Decl. Ex. G, at 3-4 (Hughto Report). | Not disputed that perchlorate and other ignitable materials were burned in burn pits on the Site at the direction of the United States Government.   Trowbridge Decl., ¶ 63, Ex. BF, Findings of Facts and Law, Central District Case No. 2:09-cv-01734-GHK-RZ, Docket No. 180, June 30, 2010, ¶¶ 191- |

2930843

WHITTAKER'S STATEMENT OF GENUINE DISPUTES IN
SUPPORT OF ITS OPP. TO PLAINTIFF'S MSJ

| | | | |
|---|---|---|---|
| | | | 198. |
| 18. | Environmental remedial investigations, directed by the U.S. Environmental Protection Agency, began at the Site in the mid-1980s, and included collecting samples of soil, gas, and groundwater. | Gee Decl. Ex. C, at 13 (Hokkanen Report). | Not disputed. |
| 19. | VOCs were detected in Whittaker's groundwater monitoring wells as early as April 1989, and in SCV Water's wells beginning in the early to mid-1990s. | Gee Decl. Ex. C, at 13 (Hokkanen Report); Gee Decl. Ex. D, at 9 (Mesard | Disputed in Part. Whittaker does not dispute VOCs were detected in Whittaker's monitoring wells. Whittaker does not dispute VOCs were detected in SCVWA's wells in the early to mid-1990s, however, it disputes the implication that the VOCs in |

2930843

WHITTAKER'S STATEMENT OF GENUINE DISPUTES IN
SUPPORT OF ITS OPP. TO PLAINTIFF'S MSJ

| | | | |
|---|---|---|---|
| | | Report). | SCVWA's wells migrated from the Whittaker site, which is not supported by the evidence cited by SCVWA, and is refuted by Whittaker. |
| 20. | During remedial investigation efforts conducted by Whittaker's consultants, the property was split into several areas called "Operable Units" (OU-1 through OU-6, and OU-7 for impacted groundwater) based on the location of known source areas, watersheds, manufacturing operations, and affected media. | Gee Decl. Ex. C, at 13 (Hokkanen Report); Stanin Decl. Ex. A at 17, and Fig. 14 (Stanin Report). | Not disputed. |

2930843

WHITTAKER'S STATEMENT OF GENUINE DISPUTES IN
SUPPORT OF ITS OPP. TO PLAINTIFF'S MSJ

| 21. | At OU1 through OU6, perchlorate and VOCs are co-located in varying detection levels in the soil up to 200 feet in depth. | Gee Decl. Ex. C, at 15-16 (Hokkanen Report); Gee Decl. Ex. F, at 4 (Trudell Report); Gee Decl. Ex. O, at 75:6-14 (Hokkanen Depo.); Gee Decl. Ex. V, at 4-3 (2010 CDM Smith Remedial Action Plan); Stanin Decl. Ex. A, at 22 (Stanin Report). | Not disputed. |

2930843

WHITTAKER'S STATEMENT OF GENUINE DISPUTES IN
SUPPORT OF ITS OPP. TO PLAINTIFF'S MSJ

| | | | |
|---|---|---|---|
| 22. | Whittaker is the only site in Santa Clarita with documented releases of all three contaminants that have impacted SCV Water's wells - perchlorate, TCE and PCE. | Stanin Decl. at ¶16; Gee Decl. Ex. C, at 9-11 (Hokkanen Report). | Not disputed.<br><br>The Hokkanen Report, cited as Ex. C does not support this proposition. |
| 23. | Soil, groundwater, and surface water were impacted as a result of Whittaker's manufacturing activities at the Site. | Gee Decl. Ex. C, at 12 (Hokkanen Report); Gee Decl. Ex. O, at 76:16-77:15 | Undisputed that some soil, groundwater, and surface water were "impacted" as a result of Whittaker's manufacturing actives at the Whittaker Site.  Not material as it does not specify where or what materials had what unspecified impacts. |

2930843

WHITTAKER'S STATEMENT OF GENUINE DISPUTES IN
SUPPORT OF ITS OPP. TO PLAINTIFF'S MSJ

| | | (Hokkanen Depo.); Gee Decl. Ex. F, at 6 (Trudell Report); Gee Decl. Ex. T, at 3, Table 2 (1987 Wenck Revised RCRA Closing Plan); Stanin Decl. at ¶11; Stanin Decl. Ex. A, at 1, 3, 15-18 (Stanin Report). | |

2930843

WHITTAKER'S STATEMENT OF GENUINE DISPUTES IN
SUPPORT OF ITS OPP. TO PLAINTIFF'S MSJ

| 24. | The primary contaminants in the groundwater beneath the Whittaker Site are perchlorate and VOCs, including TCE and PCE, and these contaminants are co-located within the groundwater. | Gee Decl. Ex. C, at 16 (Hokkanen Report); Gee Decl. Ex. O, at 76:11-77:15 (Hokkanen Depo.); Gee Decl. Ex. AB, at Table 3 (2014 AECOM Remedial Action Plan); Stanin Decl. at ¶12; Stanin Decl. Ex. A, at 23-27 (Stanin Report). | Not dispute that perchlorate and VOCs are generally co-located within the groundwater within the confines of the Whittaker Site.

Objection that this statement is "compound." |

2930843

WHITTAKER'S STATEMENT OF GENUINE DISPUTES IN
SUPPORT OF ITS OPP. TO PLAINTIFF'S MSJ

| | | | |
|---|---|---|---|
| | | | |
| 25. | Whittaker is the only site in the area with a co-location of perchlorate, TCE and PCE. | Stanin Decl. at ¶16; Stanin Decl. Ex. A, at 20-21, 31-34 (Stanin Report); Gee Decl. Ex. F, at 6-8 (Trudell Report). | Disputed that Plaintiff's evidence, a conclusory statement in an affidavit unsupported by any factual basis, establishes this fact. Perhclorate and Chlorinated Solvents. The Saugus Swap Meet Property, Envirostor Site Number 60000428, states that action is required pertaining to the cleanup, including perchlorate and VOCs. Envirostor Page, Saugus Swap Meet Property, https://www.envirostor.dtsc.ca.gov/public/profile_report?global_id=60000428. |

2930843

WHITTAKER'S STATEMENT OF GENUINE DISPUTES IN
SUPPORT OF ITS OPP. TO PLAINTIFF'S MSJ

| 26. | Whittaker is the only site with all three contaminants located upgradient from all of SCV Water's impacted wells, including Saugus-1 and Saugus-2. | Stanin Decl. ¶16. | Disputed that Plaintiff's evidence, a conclusory statement in an affidavit unsupported by any factual basis, establishes this fact. Perhclorate and Chlorinated Solvents. The Saugus Swap Meet Property, Envirostor Site Number 60000428, states that action is required pertaining to the cleanup, including perchlorate and VOCs. Envirostor Page, Saugus Swap Meet Property, https://www.envirostor.dtsc.ca.gov/public/profile_report?global_id=60000428. |
| 27. | Whittaker is the only site in Santa Clarita for which the California Department of Toxic Substances Control ("DTSC") has issued and Imminent and Substantial Endangerment Order that requires groundwater cleanup of the perchlorate, | Stanin Decl. ¶16. | Not disputed. |

2930843

WHITTAKER'S STATEMENT OF GENUINE DISPUTES IN SUPPORT OF ITS OPP. TO PLAINTIFF'S MSJ

| | | | |
|---|---|---|---|
| | TCE and PCE. | | |
| 28. | There are known pathways for releases from the Whittaker Site and SCV Water's wells, including through groundwater. | Stanin Decl. ¶¶8, 13; Stanin Decl. Ex. A, at 35-36 (Stanin Report); Gee Decl. Ex. O, at 116:24-117:17 (Hokkanen Depo.). | Not disputed that there are pathways for groundwater to travel from the Whittaker Site to Plaintiff's wells. |

2930843

WHITTAKER'S STATEMENT OF GENUINE DISPUTES IN
SUPPORT OF ITS OPP. TO PLAINTIFF'S MSJ

*While there is a "Plausible Pathway" from the Site to SCVWA's Water Wells, the Groundwater Monitoring Data Demonstrates VOCs have Not Migrated from the Whittaker Site to Plaintiff's Wells*

| 29. | There are known pathways for releases from the Whittaker Site and SCV Water's wells, including through groundwater. | Stanin Decl. ¶¶8, 13; Stanin Decl. Ex. A, at 35-36 (Stanin Report); Gee Decl. Ex. O, at 116:24-117:17 (Hokkanen Depo.). | Not disputed, that there are known pathways for unspecified releases to theoretically reach SCV Water wells through groundwater. |
|-----|------|------|------|

2930843

WHITTAKER'S STATEMENT OF GENUINE DISPUTES IN
SUPPORT OF ITS OPP. TO PLAINTIFF'S MSJ

| | | | |
|---|---|---|---|
| 30. | Perchlorate, TCE, and PCE on the Whittaker property reached the groundwater. | Stanin Decl. ¶8; Gee Decl. Ex. C, at 45-47 (Hokkanen Report). | Not disputed. |
| 31. | Whittaker's counsel acknowledged that one or more "probable pathways" exist for VOCs to migrate from the Whittaker Site to SCV Water's wells. | Gee Decl. ¶ 2. | Not disputed that Whittaker's counsel acknowledged the existence of possible pathways for VOCs to migrate from the Whittaker Site.  Disputed to the extent Plaintiff contends any specific pathway was acknowledged. |
| 32. | The release of VOCs on the Site are hydrologically upgradient from SCV Water's wells. | Stanin Decl. ¶¶8, 13; Stanin Decl. Ex. A, at 27, 48 (Stanin Report); Gee Decl. Ex. F, at 19 (Trudell | Disputed in part.  The site is 996 acres, and Plaintiff appears to refer to 4 separate wells in different locations.  Whittaker disputes all releases of VOCs at the Whittaker site are hydrologically upgradient from SCV's Water wells. |

2930843

WHITTAKER'S STATEMENT OF GENUINE DISPUTES IN
SUPPORT OF ITS OPP. TO PLAINTIFF'S MSJ

| | | | |
|---|---|---|---|
| | | Report). | |
| 33. | In the area of the Whittaker Site, the layers of the Saugus Formation dip to the northwest. | Gee Decl. Ex. C, at 14 and Fig. 3 (Hokkanen Report). | Disputed in Part, too general to be material. While there are areas of the Saugus Formation which dip, the Site has diverse geology. |
| | Groundwater flow from the Whittaker Site is in the direction of SCV Water's wells. | Stanin Decl. ¶¶8, 13; Gee Decl. Ex. C, at 14-15, 49-50 and Figs. 11-17 (Hokkanen Report); Gee Decl. Ex. O, at | Not disputed groundwater flow from the Whittaker Site is generally in the direction of SCVWA's Saugus 1, Saugus 2, V-201 and V-205 wells.

Disputed that all groundwater from the Whittaker site is migrating towards Plaintiff's wells. Groundwater elevation data indicate that flow in western OU-5 is not towards Plaintiff's Saugus 1, Saugus 2, V-201, and V-205 wells. |

2930843

WHITTAKER'S STATEMENT OF GENUINE DISPUTES IN SUPPORT OF ITS OPP. TO PLAINTIFF'S MSJ

| | | 76:11-77:15 (Hokkanen Depo.). | Expert Report of Anthony Daus "Daus Expert Report," at p. 22. The Saugus and Alluvial aquifers that exist in the Site are heterogeneous, and groundwater flow varies substantially in different portions of the aquifer systems.  Trowbridge Decl., Ex. AJ, Hokkanen Deposition Transcript, p. 120:2-18; 122:19-123:1; 178:6-16;  Trowbridge Decl., Ex. AK, Daus Deposition Transcript, p. 83:5-25; 106:19-107:1; 126:13-127:2. |
| --- | --- | --- | --- |
| | All of SCV Water's wells at issue in this case are completed in the Saugus Formation. | Gee Decl. Ex. C, at 7 (Hokkanen Report); Stanin Decl. Ex. A, at 27 (Stanin Report). | Not disputed, now that Plaintiff has dropped its claim regarding Q-2, which it previously pursued. |

2930843

WHITTAKER'S STATEMENT OF GENUINE DISPUTES IN
SUPPORT OF ITS OPP. TO PLAINTIFF'S MSJ

| | | |
|---|---|---|
| The shallowest aquifer of the subbasin groundwater units consists of the recent and older alluvium (collectively, the Alluvial aquifer), whereas the deeper aquifer units occur in the Saugus Formation, which is beneath all of the subbasin. | Stanin Decl. Ex. A, at 7 (Stanin Report); Gee Decl. Ex. C, at 4 (Hokkanen Report). | Not disputed. |
| Perchlorate has migrated through the groundwater in a northwesterly direction in the alluvium in the direction of groundwater flow. | Gee Decl. Ex. C, at 17 (Hokkanen Report); Gee Decl. Ex. L, at 255:13-256:17 (Dawson Depo.). | Not disputed that some perchlorate has migrated from the Whittaker Site in a northwesterly direction in the alluvium.<br><br>Disputed that perchlorate from all portions of the Site flow in a "northwesterly direction." Groundwater elevation data indicate that flow in western OU-5 is not towards Plaintiff's Saugus 1, Saugus 2, V-201, and V-205 wells. Expert Report of Anthony Daus "Daus Expert Report," at p. 22. |

2930843

WHITTAKER'S STATEMENT OF GENUINE DISPUTES IN SUPPORT OF ITS OPP. TO PLAINTIFF'S MSJ

| | | | In some areas of the Site, including HSU S-IIIc, groundwater flows to the southeast near the Bermite Site, and in HSU S-Va is to the west and southwest.  Hokkanen Decl., Ex. 1, Hokkanen Expert Report, August 3, 2020, at p. 16. |
|---|---|---|---|
| 37. | Dissolved perchlorate and VOCs migrate in the groundwater along the same flow path as perchlorate contamination. | Gee Decl. Ex. C, at 24 (Hokkanen Report); Gee Decl. Ex. F, at 15-16 (Trudell Report); Gee Decl. Ex. AC, at 2-4 to 2-5 (2015 CH2M Hill VOC Investigation Report); Stanin Decl. ¶8; Stanin Decl. Ex. A, at 5 | Not disputed as to the general proposition that dissolved perchlorate and VOCs generally migrate in groundwater along the same flow path.<br><br>Disputed to the extent SCVWA implies that VOCs could have migrated in surface water as was determined to be the source of migration in the *Castaic Lake Water Agency v. Whittaker Corp.*, 272 F.Supp.2d 1053, 1067.  Perchlorate is a non-volatile chemical that is highly soluble in water.  Unlike perchlorate, TCE and PCE, volatile organic compounds, quickly volatilize (evaporate) in surface water. |

2930843

WHITTAKER'S STATEMENT OF GENUINE DISPUTES IN
SUPPORT OF ITS OPP. TO PLAINTIFF'S MSJ

| | | (Stanin Report). | Hokkanen Decl., ¶¶ 14, 16. Additionally, the TAC specifically alleges the VOCs migrated to groundwater beneath the Whittaker Site before allegedly migrating to SCVWA's Production Wells. Trowbridge Decl., ¶ 4, Ex. A, TAC ¶¶ 18-19. |
|---|---|---|---|
| 38. | Numerous other contaminates, [sic] besides perchlorate, TCE, and PCE found at the Whittaker Site have also been found in SCV Water's wells. | Gee Decl. Ex. AC, at 2-4 to 2- 5 (2015 CH2M Hill VOC Investigation Report); Gee | Disputed in part.  Several contaminants detected in SCVWA's wells are not detected at the Western Boundary of the Site, including Chloroform, which is prevalent in monitoring wells at or adjacent to the SIC Site, which are extremely close in proximity to Plaintiff's Saugus 1 and 2 Wells. Hokkanen Decl., ¶ 71-76, 84-87. The fact as described is not material as it is so vague as to be rendered meaningless.  It does not identify any other contaminates aside from Perchlorate, TCE and PCE. |

2930843

WHITTAKER'S STATEMENT OF GENUINE DISPUTES IN
SUPPORT OF ITS OPP. TO PLAINTIFF'S MSJ

| 39. | Perchlorate and VOC flow rates and flow paths towards SCV Water's wells varied over time depending on groundwater levels and groundwater pumping rates. | Gee Decl. Ex. C, at 46 (Hokkanen Report); Gee Decl. Ex. F, at 8-10 (Trudell Report); Stanin Decl. ¶8; Stanin Decl. Ex. A., at 5-6 (Stanin Report). | Not disputed that VOC Flow rates varied overtime.  Disputed in that flow paths varied.  Plaintiff's Expert, Mark Trudell, opines that the perchlorate plume and VOC plume are migrating on "**exactly the same flowpath**." Gee Decl., Ex. F. at 16-17.   This fact is plainly disputed by Plaintiff's own expert, Dr. Trudell, and appears to contradict Plaintiff's Statement at 37.

Mr. Hokkanen's report also conflicts with this statement "The primary mechanism controlling the migration of chemicals is the movement of groundwater itself….in other words, when a chemical is dissolved in groundwater it will move with and in the same direction groundwater is moving.  If you know where groundwater is moving, you know where the chemical is moving." Gee Decl. Ex. C, at 46 (Hokkanen Report). *See* Hokkanen Decl., 19-23. |

2930843

WHITTAKER'S STATEMENT OF GENUINE DISPUTES IN
SUPPORT OF ITS OPP. TO PLAINTIFF'S MSJ

| | | | |
|---|---|---|---|
| | | | |

Plaintiff has Not and Cannot Establish TCE and PCE Detected in its Water Wells came from the Whittaker Site

| 40. | TCE and PCE have been detected in the wells downgradient from the Whittaker Site. | Stanin Decl. ¶8; Stanin Decl. Ex. A, at 26-27 (Stanin Report); Gee Decl. Ex. C, at 8- 10 (Hokkanen Report). | Not disputed that TCE and PCE from sources Plaintiff does not identify have been detected in some wells downgradient from the Whittaker Site.<br><br>Disputed that TCE and PCE from the Whittaker Site have been detected in downgradient wells off of the Whittaker Site. Hokkanen Decl., ¶ 5; 19-30.  Daus Decl. ¶¶ 3-11.  The groundwater quality data demonstrates that VOCs have not |

2930843

WHITTAKER'S STATEMENT OF GENUINE DISPUTES IN
SUPPORT OF ITS OPP. TO PLAINTIFF'S MSJ

| | | | migrated beyond the OU-4 boundary. Hokkanen Decl., ¶¶ 5; 19-30. Daus Decl. ¶¶ 3-11; Ex. 1, Daus Expert Report, p. 23.<br><br>Notably, another one of Plaintiff's wells, NC-11 is located immediately west of OU-2 and OU-3 and is screened from 200 feet bgs to 1075 feet bgs. The CDPH database indicates that PCE and TCE were never detected in NC-11 from 1985-2001 (when it was rendered inactive). Daus Decl. ¶ 3; Ex. 1, Daus Expert Report, FN, 6.<br><br>Whittaker objects that this fact is compound. |
|---|---|---|---|
| 41. | SCV Water's Saugus-1 and Saugus- 2 wells are impacted with perchlorate, TCE, and PCE. | Stanin Decl. ¶14; Stanin Decl. Ex. A, at 27 (Stanin Report); Gee Decl. Ex. C, at 4, 8-10 (Hokkanen | Not disputed that perchlorate, TCE and PCE have been detected in Saugus 1 and Saugus 2 wells.<br><br>Disputed to the extent SCVWA contends TCE and PCE detected in the Saugus 1 and 2 Wells migrated from the Whittaker Site and that TCE and PCE from the Whittaker |

2930843

| | | | |
|---|---|---|---|
| | | Report). | Site have been detected in downgradient wells off of the Whittaker Site.<br><br>Hokkanen Decl., ¶¶ 5; 19-30. Daus Decl. ¶¶ 3-11.  ; Ex. 1, Daus Expert Report, p. 23.<br><br>The groundwater quality data demonstrates that VOCs have not migrated beyond the OU-4 boundary, and that that they have migrated to Plaintiff's Saugus 1, Saugus 2, V-201, or V-205 wells. Hokkanen Decl., ¶¶ 5; 19-30. Daus Decl. ¶¶ 3-11.  ; Ex. 1, Daus Expert Report, p. 23.<br><br>Notably, another one of Plaintiff's wells, NC-11 is located immediately west of OU-2 and OU-3 and is screened from 200 feet bgs to 1075 feet bgs.  The CDPH database indicates that PCE and TCE were never detected in NC-11 from 1985-2001 (when it was rendered inactive).  Daus Decl. ¶ 3; Ex. 1, Daus Expert Report, |

2930843

WHITTAKER'S STATEMENT OF GENUINE DISPUTES IN
SUPPORT OF ITS OPP. TO PLAINTIFF'S MSJ

| | | | FN, 6. |
|---|---|---|---|
| 42. | SCV Water's V-201 and V-205 wells have been impacted by perchlorate and TCE. | Stanin Decl. ¶14; Stanin Decl. Ex. A, at 27 (Stanin Report); Gee Decl. Ex. C, at 4, 8-10 (Hokkanen Report). | Not disputed to the extent SCVWA contends the V-201 and V-205 have been impacted by perchlorate and TCE from an unspecified source. Disputed to the extent SCVWA contends TCE that impacted its V-201 and V-205 Wells. Plaintiff's own expert Hydrogeologist, Mark Trudell, testified that Whittaker was not the source of VOC contamination in at least two (2) of the wells at issue. Trowbridge Decl. II, ¶ 43, Ex. AL Deposition of Dr. Mark Trudell ("Trudell Depo.") at 165:8-13; 170:12-171:3. The groundwater quality data |

2930843

| | | | |
|---|---|---|---|
| | | | demonstrates that VOCs have not migrated beyond the OU-4 boundary, and that that they have migrated to Plaintiff's Saugus 1, Saugus 2, V-201, or V-205 wells. Hokkanen Decl., ¶¶ 5; 19-30. Daus Decl. ¶¶ 3-11; Ex. 1, Daus Expert Report, p. 23. |
| 43. | TCE and PCE were first detected in the wells closest to the Whittaker Site, Saugus-1 and Saugus-2, in the early 1990s; TCE has been consistently detected in wells V-201 and V-205, which are further downgradient, beginning in 2010. | Stanin Decl. ¶14; Stanin Decl. Ex. A, at 27 (Stanin Report). | Not disputed that TCE and PCE were detected in Plaintiff's wells in the early 1990s.<br><br>Disputed that TCE has been consistently detected in Wells V-201, and V-205. TCE was first detected in V-205 in 2012. TCE was first detected in 2017 in V-201. Hokkanen Decl., ¶¶ 45.<br><br>Whittaker objects this purported fact is "compound." |

2930843

WHITTAKER'S STATEMENT OF GENUINE DISPUTES IN SUPPORT OF ITS OPP. TO PLAINTIFF'S MSJ

*SCVWA Does not establish that TCE or PCE detected in its Wells Threaten its Water Supply or Any Other Wells*

| | | | |
|---|---|---|---|
| 44. | TCE and PCE have been detected in monitoring wells located at the Whittaker Site. | Stanin Decl. ¶14; Stanin Decl. Ex. A, at 27-30 (Stanin Report); Gee Decl. Ex. C, at 23 (Hokkanen Report); Gee Decl. Ex. F, at 10 (Trudell Report). | Not disputed that TCE and PCE have been detected in some unspecified, but not all, monitoring wells at the Whittaker Site. Hokkanen Decl. ¶ 35-43.<br><br>Whittaker objects this purported fact is "compound." |

2930843

WHITTAKER'S STATEMENT OF GENUINE DISPUTES IN
SUPPORT OF ITS OPP. TO PLAINTIFF'S MSJ

| 45. | TCE and PCE emanating from the Whittaker Site are following the same pathway as the perchlorate that has impacted SCV Water's Saugus 1, Saugus 2, V-201 and V-205 wells. | Stanin Decl. ¶¶ 8, 13; Stanin Decl. Ex. A, at 27, 48 (Stanin Report); Gee Decl. Ex. C, at 21-22 and Figs. A and B (Hokkanen Report). | Disputed that TCE and PCE are "emanating from the Site." Plaintiff's own expert Hydrogeologist, Mark Trudell, testified that Whittaker was not the source of VOC contamination in at least two (2) of the wells at issue. Trowbridge Decl. II, ¶ 43, Ex. AL Deposition of Dr. Mark Trudell ("Trudell Depo.") at 165:8-13; 170:12-171:3.

The groundwater quality data demonstrates that VOCs have not migrated beyond the OU-4 boundary, and that that they have migrated to Plaintiff's Saugus 1, Saugus 2, V-201, or V-205 wells. Hokkanen Decl., ¶¶ 5; 19-30. Daus Decl. ¶¶ 3-11; Ex. 1, Daus Expert Report, p. 23. Further, the data suggests that Whittaker's remedial measures are capturing the VOC plume on site and preventing it from migrating to Plaintiff's Saugus 1, Saugus 2, V-201 and V-205 wells. Daus Decl. ¶¶ 3-12. |

2930843

| | | | |
|---|---|---|---|
| | | | Whittaker objects this purported fact is "compound." |

**SCVWA has not Demonstrated it has Incurred Necessary Response Costs**

| 46. | SCV Water is a public water agency whose mission is to "ensure the Santa Clarita Valley has reliable supplies of high quality water at a reasonable cost." | Stone Decl. ¶ 2. | Not disputed. |
|---|---|---|---|

2930843

WHITTAKER'S STATEMENT OF GENUINE DISPUTES IN
SUPPORT OF ITS OPP. TO PLAINTIFF'S MSJ

| 47. | SCV Water has two primary sources of drinking water to provide to customers—groundwater and imported purchased water from the State Water Project. | Abercrombie Decl. ¶ 2; Abercrombie Decl. Ex. C, at ¶ 2. | Not disputed. |
|---|---|---|---|
| 48. | Purchased water from the State Water Project is more expensive because it must be imported, treated and transported through the California Aqueduct to Southern California, whereas groundwater is less costly to | Abercrombie Decl. ¶ 2; Abercrombie Decl. Ex. C, at ¶¶ 3-4. | Disputed that cost is the only consideration in deciding whether to purchase State Water Project imported water, or even a relevant consideration. SCVWA's Urban Water Management Plan prescribes specific uses of water and breakdowns between the pumped water, and purchased water, both in order to ensure the groundwater sources remain sustainable by preventing over pumping. Plaintiff has consistently pumped, and reported to its customers, that the pumping capacity in the Saugus Formation is well within the normal prescribed pumping range. In its 2014-2019 annual reports, despite V-201 and |

2930843

WHITTAKER'S STATEMENT OF GENUINE DISPUTES IN
SUPPORT OF ITS OPP. TO PLAINTIFF'S MSJ

| | | | |
|---|---|---|---|
| | extract and treat. | | V-205 wells being out of service in various years, SCVWA reported to its customers it maintained sufficient pumping capacity in the Saugus formation to meet the planned normal range[1] of pumping as described in the 2010 Urban Water Management Plan. Trowbridge Decl. II, ¶¶ 52-57, Ex. AU, 2014 Santa Clarita Valley Water Report, at ES6, Ex AV, 2015 Santa Clarita Valley Water Report, at ES-6; Ex. AW 2016 Santa Clarita Valley Water Report, at ES-5; Ex. AX 2017 Santa Clarita Valley Water Report, at ES-5; Ex. AY 2018 Santa Clarita Valley Water Report, at ES-5, Ex. AZ 2019 Santa Clarita Valley Water Report, at ES-2.  It also stated that it had vast reserves of "banked" water available to provide to its customers in the event of a dry year or an emergency.  *Id.* at Tables 4-1. |

---

[1] To comply with its Urban Water Management Plans and to ensure the Saugus Aquifer remains sustainable, as groundwater elevations are generally decreasing.

2930843

| 49. | SCV Water uses groundwater to the maximum extent possible to maintain a reasonable cost of water to its customers. | Abercrombie Decl. ¶ 2. | Disputed.  This is not the only, or even a significant consideration in deciding whether to purchase State Water Project imported water according to what SCVWA tells its customers.  SCVWA's Urban Water Management Plan prescribes specific uses of water and breakdowns between the pumped water, and purchased water, both in order to ensure the groundwater sources remain sustainable by preventing over pumping.  Plaintiff has consistently pumped, and reported to its customers, that the pumping capacity in the Saugus Formation is well within the normal prescribed pumping range.  In its 2014-2019 annual reports, despite V-201 and V-205 wells being out of service in various years, SCVWA reported to its customers it maintained sufficient pumping capacity in the Saugus formation to meet the planned normal range of pumping as described in the 2010 Urban Water Management Plan.  It also reported that in dry years, it could pump up to three times that amount from the Saugus Formation for a |

2930843

WHITTAKER'S STATEMENT OF GENUINE DISPUTES IN
SUPPORT OF ITS OPP. TO PLAINTIFF'S MSJ

maximum of three years in order to maintain the sustainability of the aquifer.  Trowbridge Decl. II, ¶¶ 52-57, Ex. AU, 2014 Santa Clarita Valley Water Report, at ES6, Ex AV, 2015 Santa Clarita Valley Water Report, at ES-6; Ex. AW 2016 Santa Clarita Valley Water Report, at ES-5; Ex. AX 2017 Santa Clarita Valley Water Report, at ES-5; Ex. AY 2018 Santa Clarita Valley Water Report, at ES-5, Ex. AZ 2019 Santa Clarita Valley Water Report, at ES-2.  Each and every year of the available reports on SCVWA's website state that Saugus Formation pumping has been over the average amount pumped from the Saugus Formation since 1980. *Id.*  It also stated that it had vast reserves of "banked" water available to provide to its customers in the event of a dry year or an emergency. *Id.* at Tables 4-1.

SCVWA repeatedly reported to its customers that pumping from the Saugus formation was within the normal range as projected by its Urban Water

2930843

WHITTAKER'S STATEMENT OF GENUINE DISPUTES IN SUPPORT OF ITS OPP. TO PLAINTIFF'S MSJ

| | | | Management Plans, and that if it were necessary, SCVWA could pump more than 3 times that production from the Saugus formation alone to account for dry years. SCVWA offers no explanation as to why they would not use one of the other 10 wells located in the Saugus Formation to pump additional groundwater.  Trowbridge Decl. II, ¶¶ 52-57, Ex. AU-AZ, 2014 Santa Clarita Valley Water Report, at Tables 3-1. |
|---|---|---|---|
| 50. | When groundwater wells become contaminated, SCV Water turns off the contaminated well and supplement the lost water supply with purchased water from the State Water | Abercrombie Decl. ¶ 3. | Disputed.  SCVWA's Urban Water Management Plan prescribes specific uses of water and breakdowns between the pumped water, and purchased water, both in order to ensure the groundwater sources remain sustainable by preventing over pumping.  Plaintiff has consistently pumped, and reported to its customers, that the pumping capacity in the Saugus Formation is well within the normal prescribed pumping range.  In its 2014-2019 annual reports, despite V-201 and V-205 wells being out of |

2930843

| | | | |
|---|---|---|---|
| | Project. | | service in various years, SCVWA reported to its customers it maintained sufficient pumping capacity in the Saugus formation to meet the planned normal range of pumping as described in the 2010 Urban Water Management Plan.  It also reported that in dry years, it could pump up to three times that amount from the Saugus Formation for a maximum of three years in order to maintain the sustainability of the aquifer.  Trowbridge Decl. II, ¶¶ 52-57, Ex. AU, 2014 Santa Clarita Valley Water Report, at ES6, Ex AV, 2015 Santa Clarita Valley Water Report, at ES-6; Ex. AW 2016 Santa Clarita Valley Water Report, at ES-5; Ex. AX 2017 Santa Clarita Valley Water Report, at ES-5; Ex. AY 2018 Santa Clarita Valley Water Report, at ES-5, Ex. AZ 2019 Santa Clarita Valley Water Report, at ES-2.  Each and every year of the available reports on SCVWA's website state that Saugus Formation pumping has been over the average amount pumped from the Saugus Formation since 1980.  *Id.*  It also stated |

2930843

WHITTAKER'S STATEMENT OF GENUINE DISPUTES IN
SUPPORT OF ITS OPP. TO PLAINTIFF'S MSJ

that it had vast reserves of "banked" water available to provide to its customers in the event of a dry year or an emergency. *Id.* at Tables 4-1.

SCVWA repeatedly reported to its customers that pumping from the Saugus formation was within the normal range as projected by its Urban Water Management Plans, and that if it were necessary, SCVWA could pump more than 3 times that production from the Saugus formation alone to account for dry years. Trowbridge Decl. II, ¶¶ 52-57, Ex. AU-AZ, 2014 Santa Clarita Valley Water Report, at Tables 3-1. SCVWA offers no explanation as to why they would not use one of the other 10 wells located in the Saugus Formation to pump additional groundwater.

This also likely depends on yearly demand, for example in 2014, compared to 2013, total water use in the Santa Clarita Valley in 2014 was almost ten percent lower, and it was below the

2930843

WHITTAKER'S STATEMENT OF GENUINE DISPUTES IN SUPPORT OF ITS OPP. TO PLAINTIFF'S MSJ

| | | | short-term projected water requirement estimated in last year's Annual Water Report. The decrease in demand was more than 10x the purported lost capacity, suggesting SCVWA would not have to make any accommodation to account for the lost production from V-205.  Trowbridge Decl. II, ¶¶ 52, Ex. AU, 2014 Santa Clarita Valley Water Report, at p. 7. |
|---|---|---|---|
| 51. | SCV Water entered into an Environmental Oversight Agreement ("EOA") with DTSC in 2003. | Abercrombie Decl. ¶ 5. | Not disputed. |

2930843

WHITTAKER'S STATEMENT OF GENUINE DISPUTES IN
SUPPORT OF ITS OPP. TO PLAINTIFF'S MSJ

| 52. | Under the EOA, DTSC provides oversight of SCV Water's actions to respond to perchlorate contamination, caused by the actions of Whittaker, in the vicinity of its wells. | Abercrombie Decl. Ex. A, at 1- 2. | Partially disputed to the extent it only refers to Whittaker. |
| --- | --- | --- | --- |
| 53. | The purpose of the EOA is also to ensure that SCV Water's response actions comply with the National Contingency Plan. | Abercrombie Decl. Ex. A, at 1. | Not disputed. |

2930843

WHITTAKER'S STATEMENT OF GENUINE DISPUTES IN
SUPPORT OF ITS OPP. TO PLAINTIFF'S MSJ

| 54. | DDW has determined that the groundwater near the Whittaker Site is an "extremely impaired" water source. | Gee Decl. Ex. J, at 37:17-21 (O'Keefe Depo.). | Not disputed. |
|---|---|---|---|
| 55. | SCV Water obtains permits to use its groundwater as a source for drinking water from DDW. | Gee Decl. Ex. M, at 38:19-39:13 (Alvord Depo). | Not disputed. |
| 56. | As part of the permitting process, DDW reviews and approves any proposed treatment efforts to be applied to the water to address any | Gee Decl. Ex. J, at 14:21-17:11 (O'Keef e Depo.). | Not disputed. |

2930843

WHITTAKER'S STATEMENT OF GENUINE DISPUTES IN
SUPPORT OF ITS OPP. TO PLAINTIFF'S MSJ

| | | | |
|---|---|---|---|
| | contamination. | | |
| 57. | SCV Water's permit issued by DDW requires blending water from the Saugus Perchlorate Treatment Facility ("SPTF") with purchased State Water Project water to achieve the operational goal of non-detectable levels of VOCs in the distribution system. | Gee Decl. Ex. M, at 56:5-59:8, 136:7-24 (Alvord Depo.); Gee Decl. Ex. Y, at 6, ¶ 20 (2010 Amended SPTF Permit No. 1910048). | Not disputed. |

2930843

WHITTAKER'S STATEMENT OF GENUINE DISPUTES IN
SUPPORT OF ITS OPP. TO PLAINTIFF'S MSJ

| 58. | DDW will not issue permits for SCV Water to utilize water from extremely impaired water sources until it completes its evaluation of the water source under DDW policy 97-005. | Abercrombie Decl. ¶¶ 7-9; Gee Decl. Ex. J, at 74:10-80:2 (O'Keefe Depo.). | Not disputed. |
|---|---|---|---|
| 59. | The 97-005 review process requires the permit applicant to "address all contaminants of health concern…." | RJN Ex. F, at 10. | Disputed that it is intended to be a health base standard. The DDW requirements under DDW Policy 97-005 are not based on DDW's determination that SCVWA's well water is unsafe to drink. According to Mr. O'Keefe, the 97-005 Policy is not a health based standard, but one based on treatability. Trowbridge Decl., ¶ 29, Ex. AA, O'Keefe Depo. at 10:11-18, 84:8-85:6. The 97-005 Policy uses an equation called the MCL Equivalent to determine if additional treatment is necessary before the water can be distributed to households. Trowbridge Decl., ¶ 31, |

2930843

WHITTAKER'S STATEMENT OF GENUINE DISPUTES IN
SUPPORT OF ITS OPP. TO PLAINTIFF'S MSJ

Ex. AC, Process Memo, pp. 13-16; Mr. O'Keefe testified that the equation "is not intended to be a risk assessment at all . . . It's a treatability assessment." Trowbridge Decl., ¶ 29, Ex. AA, O'Keefe Depo. at 89:9-20. This sworn testimony is consistent with the September 2020 DDW *Process Memo 97-005 Users Guide* ("DDW Users Guide"). Trowbridge Decl. II, ¶ 61, Ex. BD.

In determining whether the MCL Equivalent is below 1, DDW does not require any health risk assessment. Trowbridge Decl., ¶ 29, Ex. AA, O'Keefe Depo, at 89:9-20. SCVWA has completed the work necessary to determine the MCL Equivalent for V-201. They have concluded that the MCL Equivalent score for V-201 is below 1. Trowbridge Decl., ¶ 6, Ex. D February 97-005 Report at Executive Summary – VI.

According to the DDW Users Guide, and SCVWA's interpretation of its

2930843

WHITTAKER'S STATEMENT OF GENUINE DISPUTES IN SUPPORT OF ITS OPP. TO PLAINTIFF'S MSJ

| | | | |
|---|---|---|---|
| | | | obligations, no additional treatment for VOCs is necessary if the score is below 1. SCVWA's consultants have submitted many reports to DDW in which they determined the MCL Equivalent. In each case the number has been below 1. Trowbridge Decl., ¶ 6, Ex. D February 97-005 Report at at 7-1, 7-3. According to their consultant Meredith Durant, "less than 1 is . . . [a] green light. . . ." Trowbridge Decl., ¶ 27, Ex. Y, Durant Depo at 32:15. |
| 60. | The 97-005 review process requires the permit applicant to treat all contaminants of health concern "down to the lowest concentration feasible," which "[i]n many cases, this may | RJN Ex. F, at 10; Abercrombie Decl. ¶¶ 7-8; Alvord Decl. ¶ 8. | Disputed that the permit process requires the permit application to treat all contaminants. This isc considered a goal, and no treatment is required if<br><br>The VOCs found in the water wells have uniformly been detected at concentrations below those levels that the Federal and State deem a threat to human health or the environment. SCVWA concedes that it is unlikely this will change and that |

2930843

WHITTAKER'S STATEMENT OF GENUINE DISPUTES IN
SUPPORT OF ITS OPP. TO PLAINTIFF'S MSJ

| | | | |
|---|---|---|---|
| | turn out to be the level of non-detection (ND) or to the detection limit for purposes of reporting (DLR)." | | as long as the concentrations stay below these levels that the water is safe to drink.  Moreover, in a recent October 2020 internal SCVWA email, Dirk Marks the Director of Water Resources for SCVWA, admitted that regulators have "declined to directly order . . . [SCVWA] to treat for VOC." Trowbridge Decl. II, ¶ 40, Exh. AI, Internal Corres. among directors of SCVWA, October 14-15, 2020 ("10/15/20 V-201 Corres.").<br><br>In determining whether the MCL Equivalent is below 1, DDW does not require any health risk assessment. Trowbridge Decl., ¶ 29, Ex. AA, O'Keefe Depo, at 89:9-20.  SCVWA has completed the work necessary to determine the MCL Equivalent for V-201.  They have concluded that the MCL Equivalent score for V-201 is below 1.  Trowbridge Decl., ¶ 6, Ex. D February 97-005 Report at Executive Summary – VI. |

2930843

WHITTAKER'S STATEMENT OF GENUINE DISPUTES IN
SUPPORT OF ITS OPP. TO PLAINTIFF'S MSJ

| | | | According to the DDW Users Guide, and SCVWA's interpretation of its obligations, no additional treatment for VOCs is necessary if the score is below 1.  SCVWA's consultants have submitted many reports to DDW in which they determined the MCL Equivalent.  In each case the number has been below 1.  Trowbridge Decl., ¶ 6, Ex. D February 97-005 Report at at 7-1, 7-3.  According to their consultant Meredith Durant, "less than 1 is . . . [a] green light. . . ."  Trowbridge Decl., ¶ 27, Ex. Y, Durant Depo at 32:15. |
|---|---|---|---|
| 61. | DDW has required SCV Water to treat VOC contamination in groundwater pumped from its Saugus-1 and Saugus-2 wells at the SPTF to below the DLR | Gee Decl. Ex. Y, at 6, ¶ 20. | Disputed that it is a condition of the permit. SCVWA considers contamination below the MCLs to be safe to drink and admits that up to 10% of the water delivered to households contains detectable levels of VOCs.  Declaration of Keith Abercrombie in Support of Partial Summary Judgment, October 23, 2020 ("Abercrombie MSJ Decl.") at ¶¶ 8-9; Alvord |

2930843

WHITTAKER'S STATEMENT OF GENUINE DISPUTES IN
SUPPORT OF ITS OPP. TO PLAINTIFF'S MSJ

| | | |
|---|---|---|
| as a condition in its permit to use that water as a drinking supply source. | | 12/12/19 30(b)(6) Depo. at 19:12-23; . Deposition of Michael Alvord (December 5, 2019)("Alvord Depo.") 30:15-31:14.<br><br>In a recent October 2020 internal SCVWA email, Dirk Marks the Director of Water Resources for SCVWA, admitted that regulators have "declined to directly order . . . [SCVWA] to treat for VOC." Trowbridge Decl. II, ¶ 40, Exh. AI, 10/15/20 V-201 Corres. |
| 62. SCV Water initiated efforts to acquire a drinking water supply permit from DDW for its V-201 well in 2012, under the 97-005 review process. | Abercrombie Decl. ¶ 7; Gee Decl. Ex. J, at 71:12-15 (O'Keefe Depo.). | Not disputed. |

2930843

WHITTAKER'S STATEMENT OF GENUINE DISPUTES IN SUPPORT OF ITS OPP. TO PLAINTIFF'S MSJ

| | 63. | DDW has informed SCV Water that SCV Water must address VOCs detected in V-201 even though TCE is currently detected in that well at a level below the MCL. | Alvord. Decl. ¶ 8. | Disputed.<br><br>SCVWA's Director of Water Resources, Dirk Mark, in internal communications among other directors that from its discussions with DDW "the best that I can decern [sic] is that DDW declined to directly order us to treat for VOC…therefore our report showing V201 coming on in 2021 without VOC is a reasonable assumption for the report."<br><br>Directly contradicting Mr. Alvord's statement, correspondence between Dirk Marks, Mr. Alvord himself, Steve Cole and others re "VOC Treatment at Well V201," dated October 15, 2020.  In an earlier e-mail from the same thread, Mike Alvord stated "We do not have an inherent VOC issue in any of our wells.  What we are faced with in 4 Saugus (Saugus 1, Saugus 2, 201, and 205) wells is low levels of VOCs and the DDW 97-005 |
|---|---|---|---|---|

2930843

WHITTAKER'S STATEMENT OF GENUINE DISPUTES IN
SUPPORT OF ITS OPP. TO PLAINTIFF'S MSJ

| | | | process, which is for "extremely impaired sources with multiple contaminants….Saugus 1 & 2…there are detections of VOCs above the DLR but below the MCL.  In the permit, DDW states we have an "operational goal" of <DLR,  We accomplish this most of the time through blending with import water in the treated water pipeline.  However, there are times where we have detections of VOCS (again <MCL) in some of our turnouts…" Trowbridge Decl. II, ¶ 40, Exh. AI, 10/15/20 V-201 Corres. |
|---|---|---|---|
| 64. | DDW has not yet issued a drinking water supply permit for the V-201 well. | Abercrombie Decl. ¶ 9; Alvord Decl. ¶¶ 8-9; Gee Decl. Ex. J, at 76:23-77:5 (O'Keefe Depo.). | Not disputed. |

2930843

WHITTAKER'S STATEMENT OF GENUINE DISPUTES IN
SUPPORT OF ITS OPP. TO PLAINTIFF'S MSJ

| 65. | DDW has stated that SCV Water will likely have to follow the 97-005 review process when it seeks a permit for its V-205 well. | Gee Decl. Ex. J, at 38:10-39:5 (O'Keefe Depo.). | Disputed. O'Keefe testified he was not involved in the day to day review and needs more information. O'Keefe testified in response to a question about whether V-205 would not be subject to the 97-005 Process: "I think that remains to be seen." Gee Decl. Ex. J, 76:3-15. |
|---|---|---|---|
| 66. | SCV Water currently operates its V-201 well in order to contain the spread of perchlorate contamination. | Abercrombie Decl. ¶ 9; Gee Decl. Ex. H, at 38:17-39:4 (Amini Depo.); Zelikson Decl. ¶ 4. | Not disputed. |

2930843

WHITTAKER'S STATEMENT OF GENUINE DISPUTES IN SUPPORT OF ITS OPP. TO PLAINTIFF'S MSJ

| | | | |
|---|---|---|---|
| 67. | Because SCV Water does not yet have a drinking water supply permit for V-201 well water, it discharges that pumped water as waste to the Santa Clarita River. | Abercrombie Decl. ¶ 9; Gee Decl. Ex. AF (2018 SCV Water Notice of NPDES Violation). | Not disputed. |
| 68. | In order to comply with its National Pollutant Discharge Elimination System ("NPDES") permit contamination limitations, SCV Water blends waste water from V- 201 | Abercrombie Decl. ¶¶ 6, 9. | Disputed as to the extent the water is considered "waste water." SCVWA disclosed to its customers that the blending is required to deal with TDS and Sulfates, not VOCs, and that the water would be safe to drink.  Trowbridge Decl., Ex. W, V-201 Information Sheet. |

2930843

| | | | |
|---|---|---|---|
| | with imported State Water Project Water when discharged to the Santa Clarita River. | | |
| 69. | SCV Water has incurred costs related to technical reports and investigations by consultants related to VOC contamination. | Abercrombie Decl. ¶¶ 8-9. | Not disputed. |

2930843

WHITTAKER'S STATEMENT OF GENUINE DISPUTES IN
SUPPORT OF ITS OPP. TO PLAINTIFF'S MSJ

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*SCVWA has failed to establish Response Costs are Consistent with the NCP, and Certainly has not Establish the pre-requisites governing a "time critical removal action," much less a removal action.*

| 70. | SCV Water works with DDW to provide for robust public notice and participation as to its water quality, permit status and water treatment. | Abercrombie Decl. ¶ 10; Alvord Decl. ¶ 6. | Disputed. It is abundantly clear from Plaintiff's Annual Reports that Plaintiff has failed to comply with the public participation requirements imposed by the NCP, in fact, their Trowbridge Decl. II, ¶¶ 52-57, Ex. AU, 2014 Santa Clarita Valley Water Report, at ES6, Ex AV, 2015 Santa Clarita Valley Water Report, at ES-6; Ex. AW 2016 Santa Clarita Valley Water Report, at ES-5; Ex. AX 2017 Santa Clarita Valley Water Report, at ES-5; Ex. AY 2018 Santa Clarita Valley Water Report, at ES-5, Ex. AZ 2019 Santa Clarita Valley Water Report, at ES-2. |

2930843

WHITTAKER'S STATEMENT OF GENUINE DISPUTES IN
SUPPORT OF ITS OPP. TO PLAINTIFF'S MSJ

| 71. | SCV Water provided notice to DDW when its V-201 and V-205 wells became impacted with perchlorate and were taken out of service (i.e. changed to "inactive"). | Gee Decl. Ex. AD (Jan. 22, 2018 SCV Water letter to State Water Resource Control Board); Gee Decl. Ex. W (Dec. 7, 2010 Email Corresp.). | Not disputed. |
|---|---|---|---|
| 72. | SCV Water provides notice to the public when its wells become impacted with contaminants. | Alvord Decl. ¶ 6, Ex. B. | Disputed in part. Ex. B to the Alvord declaration is a single notice, and does not demonstrate that SCVWA consistently provides notice to the public when its wells are "impacted" by contaminants. Disputed that SCVWA held public comment periods with respect to VOC contamination or its purchases. Plaintiff's Annual Water Reports issued to its customers clearly demonstrate they have not performed such public participation. |

2930843

WHITTAKER'S STATEMENT OF GENUINE DISPUTES IN
SUPPORT OF ITS OPP. TO PLAINTIFF'S MSJ

Trowbridge Decl. II, ¶¶ 52-57, Ex. AU, 2014 Santa Clarita Valley Water Report, at ES6, Ex AV, 2015 Santa Clarita Valley Water Report, at ES-6; Ex. AW 2016 Santa Clarita Valley Water Report, at ES-5; Ex. AX 2017 Santa Clarita Valley Water Report, at ES-5; Ex. AY 2018 Santa Clarita Valley Water Report, at ES-5, Ex. AZ 2019 Santa Clarita Valley Water Report, at ES-2.  The lack of any such notice and public comment period on the Castaic Lake Water Agency – Whittaker Off-Site Groundwater Contamination Page (60000168) further demonstrates SCVWA's failure to comply with the public participation requirements under the NCP.  *Castaic Lake Water Agency – Whittaker –Off-Site Groundwater Contamination,* Site No. 60000168; https://www.envirostor.dtsc.ca.gov /public/profile_report?global_id=6 0000168, lasted visited, December

2930843

WHITTAKER'S STATEMENT OF GENUINE DISPUTES IN
SUPPORT OF ITS OPP. TO PLAINTIFF'S MSJ

| 73. | SCV Water provides notice to DDW and any impacted member of the public when it purchases replacement water from the State Water Project. | Gee Decl. Ex. Z (June 9, 2011 CLWA Press Release). | Disputed. Ex. Z says nothing about replacement water or the State Water Project.  In fact, SCVWA actually informed their customers the opposite, "**The closing of this well will not impact the Santa Clarita Valley Family of Water Suppliers' ability to adequately provide water to our customers and will not have a negative impact on the Valley's water supply**." (emphasis added).  Gee Decl. Ex. Z.  Even if this particular release indicated SCVWA purchased replacement water, a single press release is not sufficient to evidence a patter.   Disputed that SCVWA |

2930843

always provides notice to DDW and any impacted member of the public. This single press release does not demonstrate that SCVWA consistently provides notice to the public when its wells are "impacted" by contaminants. Disputed that SCVWA held public comment periods with respect to VOC contamination or its purchases. Plaintiff's Annual Water Reports issued to its customers clearly demonstrate they did not informed their customers of any emergency water purchase to replace lost supply from V-201 or V-205. Trowbridge Decl. II, ¶¶ 52-57, Ex. AU, 2014 Santa Clarita Valley Water Report, at ES6, Ex AV, 2015 Santa Clarita Valley Water Report, at ES-6; Ex. AW 2016 Santa Clarita Valley Water Report, at ES-5; Ex. AX 2017 Santa Clarita Valley Water Report, at ES-5; Ex. AY 2018 Santa Clarita Valley Water Report, at ES-5, Ex. AZ 2019 Santa Clarita

2930843

WHITTAKER'S STATEMENT OF GENUINE DISPUTES IN SUPPORT OF ITS OPP. TO PLAINTIFF'S MSJ

| | | | |
|---|---|---|---|
| | | | Valley Water Report, at ES-2. The lack of any such notice and public comment period on the Castaic Lake Water Agency – Whittaker Off-Site Groundwater Contamination Page (60000168) further demonstrates SCVWA's failure to comply with the public participation requirements under the NCP. *Castaic Lake Water Agency – Whittaker –Off-Site Groundwater Contamination,* Site No. 60000168; https://www.envirostor.dtsc.ca.gov/public/profile_report?global_id=60000168, lasted visited, December 14, 2020. |
| 74. | Purchasing replacement water from the State Water Project generally does not affect SCV Water's citizens | Abercrombie Decl. ¶ 3. | Disputed as the cited evidence does not reflect the facts cited. As Plaintiff frequently reports to its customers, of the total water served to its customers, more than half of it is from the SWP every year. Trowbridge Decl. II, ¶¶ 52-57, Ex. AU, 2014 Santa Clarita Valley Water Report, at ES6, Ex AV, 2015 Santa Clarita Valley Water |

2930843

| | | | |
|---|---|---|---|
| because SWP water has less contaminants than groundwater pumped from SCV Water's Saugus Formation wells. | | | Report, at ES-6; Ex. AW 2016 Santa Clarita Valley Water Report, at ES-5; Ex. AX 2017 Santa Clarita Valley Water Report, at ES-5; Ex. AY 2018 Santa Clarita Valley Water Report, at ES-5, Ex. AZ 2019 Santa Clarita Valley Water Report, at ES-2.<br><br>In light of the fact that groundwater is blended with the State Water Project water before it is served to its customers, this statement is baseless and non-sensical. Gee Decl. Ex. Y, at 6, ¶ 20 (2010 Amended SPTF Permit No. 1910048). |
| 75. | Before DDW issues a permit to SCV Water to allow a well to be used for drinking water, DDW requires and | Alvord Decl. ¶ 10; Gee Decl. Ex. J, at 77:24-78:14 (O'Keefe Depo.); Gee Decl. Ex. X (Cal. Dept. of Pub. | Not disputed. |

2930843

WHITTAKER'S STATEMENT OF GENUINE DISPUTES IN
SUPPORT OF ITS OPP. TO PLAINTIFF'S MSJ

| | | | |
|---|---|---|---|
| | facilitates a "public comment" period. | Health Notice of Pub.). | |
| 76. | SCV Water participates in monthly technical meetings, as required under the 2007 Settlement Agreement between the parties. | Gee Decl. Ex. I, at 14:25-16:14 (Simpson Depo.); Alvord Decl. ¶¶ 6-7, Ex. C. | Not disputed. |
| 77. | The monthly technical meetings are also attended by representatives from Whittaker, DTSC, the Regional Water | Gee Decl. Ex. I, at 14:25-16:14 (Simpson Depo.); Alvord Decl. 7; Abercrombie | Generally not disputed. |

2930843

WHITTAKER'S STATEMENT OF GENUINE DISPUTES IN
SUPPORT OF ITS OPP. TO PLAINTIFF'S MSJ

| | | | |
|---|---|---|---|
| | Quality Control Board, and DDW. | Decl. ¶ 10. | |
| 78. | Information concerning the progress of SCV Water's permitting efforts with DDW for well V-201, including the 97-005 process, are regular topics at the monthly technical meetings. | Gee Decl. Ex. I, at 14:25-16:14 (Simpson Depo.); Gee Decl. Ex. AA (Sept. 13, 2011 and March 5, 2014 Technical Meeting Agendas). | Disputed that 2 agendas from 2011 and 2014 demonstrate that well V-201, and the 97-005 permitting processes establish that they are "regular topics of monthly technical meetings." Gee Decl. Ex. AA (Sept. 13, 2011 and March 5, 2014 Technical Meeting Agendas).

Further, Whittaker is informed and believes the meetings are not ongoing. |

2930843

WHITTAKER'S STATEMENT OF GENUINE DISPUTES IN SUPPORT OF ITS OPP. TO PLAINTIFF'S MSJ

| 79. | The presence of hazardous substances in SCV Water's wells has been documented in its publicly available annual water quality report and press releases. | Zelikson Decl. Ex. A, at 32 (Zelikson Report). | Disputed.  Plaintiff offers a vague description of a hearsay statement in Plaintiff's Expert Report to assert the presence of hazardous substances "has been well documented."  It does not refer to hazardous substances at all, but vaguely states documents available from SCVWA's website "keep the public informed on the "response acitvities conducted by and on behalf of SCV Water including when and why groundwater supply wells are removed from service and the status of their treatment." Zelikson Decl. Ex. A, at 32-33.<br><br>This statement is contradicted as Plaintiff's Annual Reports only advise the public as to its usual allocation of State Water and the amount of its use, there is no reference to emergency purchases of replacement water as suggested by SCVWA. |

2930843

WHITTAKER'S STATEMENT OF GENUINE DISPUTES IN
SUPPORT OF ITS OPP. TO PLAINTIFF'S MSJ

| 80. | SCV Water has been required to purchase water from the State Water Project on an emergency basis and could not reasonably wait 6 months or more to respond to the shut-down of its wells due to contamination. | Abercrombie Decl. ¶ 3; Gee Decl. Ex. N, at 51:7-52:23, 150:14-151:8 (Mesard Depo.). | This is a legal conclusion, not a fact.

Disputed.  In fact, SCVWA actually informed their customers the opposite, "**The closing of this well will not impact the Santa Clarita Valley Family of Water Suppliers' ability to adequately provide water to our customers and will not have a negative impact on the Valley's water supply**." (emphasis added).  Gee Decl. Ex. Z.

SCVWA has provided no evidence to suggest it was required to purchase water from the State Water Project on an emergency basis.  SCVWA's Urban Water Management Plan prescribes specific uses of water and breakdowns between the pumped water, and purchased water, both in order to ensure the groundwater sources remain sustainable by preventing over pumping. Plaintiff has consistently pumped, and reported to its customers, that the |

2930843

WHITTAKER'S STATEMENT OF GENUINE DISPUTES IN
SUPPORT OF ITS OPP. TO PLAINTIFF'S MSJ

|  |  |  | pumping capacity in the Saugus Formation is well within the normal prescribed pumping range.  In its 2014-2019 annual reports, despite V-201 and V-205 wells being out of service in various years, SCVWA reported to its customers it maintained sufficient pumping capacity in the Saugus formation to meet the planned normal range[2] of pumping as described in the 2010 Urban Water Management Plan.  It also reported that in dry years, it could pump up to three times that amount from the Saugus Formation for a maximum of three years in order to maintain the sustainability of the aquifer.  Trowbridge Decl. II, ¶¶ 52-57, Ex. AU, 2014 Santa Clarita Valley Water Report, at ES6, Ex AV, 2015 Santa Clarita Valley Water Report, at ES-6; Ex. AW 2016 Santa Clarita Valley Water Report, at ES-5; Ex. AX 2017 Santa Clarita Valley Water Report, at ES-5; Ex. AY 2018 Santa Clarita Valley Water Report, at ES-5, |

[2] To comply with its Urban Water Management Plans and to ensure the Saugus Aquifer remains sustainable, as groundwater elevations are generally decreasing.

2930843

WHITTAKER'S STATEMENT OF GENUINE DISPUTES IN
SUPPORT OF ITS OPP. TO PLAINTIFF'S MSJ

Ex. AZ 2019 Santa Clarita Valley Water
Report, at ES-2. Each and every year of
the available reports on SCVWA's
website state that Saugus Formation
pumping has been over the average
amount pumped from the Saugus
Formation since 1980. *Id.* It also stated
that it had vast reserves of "banked"
water available to provide to its
customers in the event of a dry year or
an emergency. *Id.* at Tables 4-1.

SCVWA repeatedly reported to its
customers that pumping from the
Saugus formation was within the normal
range as projected by its Urban Water
Management Plans, and that if it were
necessary, SCVWA could pump more
than 3 times that production from the
Saugus formation alone to account for
dry years. Trowbridge Decl. II, ¶¶ 52-
57, Ex. AU-AZ, 2014 Santa Clarita
Valley Water Report, at Tables 3-1.
SCVWA offers no explanation as to
why they would not use one of the other
10 wells located in the Saugus

2930843

WHITTAKER'S STATEMENT OF GENUINE DISPUTES IN
SUPPORT OF ITS OPP. TO PLAINTIFF'S MSJ

| | | | |
|---|---|---|---|
| | | | Formation to pump additional groundwater.<br><br>This also likely depends on yearly demand, for example in 2014, compared to 2013, total water use in the Santa Clarita Valley in 2014 was almost ten percent lower, and it was below the short-term projected water requirement estimated in last year's Annual Water Report. The decrease in demand was more than 10x the purported lost capacity, suggesting SCVWA would not have to make any accommodation to account for the lost production from V-205.  Trowbridge Decl. II, ¶¶ 52, Ex. AU, 2014 Santa Clarita Valley Water Report, at p. 7. |
| 81. | Purchasing replacement water due to the shut-down of drinking water well V-201 is a time critical removal action. | Gee Decl. Ex. N, at 51:7- 52:23, 145:25-146:20 (Mesard Depo.); Zelikson Decl. | Disputed.  The cited testimony does not state "hiring consultants to perform an EE/CA is a non-time critical removal action."<br>Disputed.  In fact, SCVWA actually informed their customers the opposite, "**The closing of this** |

2930843

| | | ¶ 3. | **well will not impact the Santa Clarita Valley Family of Water Suppliers' ability to adequately provide water to our customers and will not have a negative impact on the Valley's water supply**." (emphasis added).  Gee Decl. Ex. Z.<br><br>SCVWA has provided no evidence to suggest it was required to purchase water from the State Water Project on an emergency basis.  SCVWA's Urban Water Management Plan prescribes specific uses of water and breakdowns between the pumped water, and purchased water, both in order to ensure the groundwater sources remain sustainable by preventing over pumping.  Plaintiff has consistently pumped, and reported to its customers, that the pumping capacity in the Saugus Formation is well within the normal prescribed pumping range.  In its 2014-2019 annual reports, despite V-201 and V-205 wells being out of service in various years, SCVWA reported to its customers it maintained sufficient |

2930843

WHITTAKER'S STATEMENT OF GENUINE DISPUTES IN
SUPPORT OF ITS OPP. TO PLAINTIFF'S MSJ

pumping capacity in the Saugus formation to meet the planned normal range[3] of pumping as described in the 2010 Urban Water Management Plan. It also reported that in dry years, it could pump up to three times that amount from the Saugus Formation for a maximum of three years in order to maintain the sustainability of the aquifer. Trowbridge Decl. II, ¶¶ 52-57, Ex. AU, 2014 Santa Clarita Valley Water Report, at ES6, Ex AV, 2015 Santa Clarita Valley Water Report, at ES-6; Ex. AW 2016 Santa Clarita Valley Water Report, at ES-5; Ex. AX 2017 Santa Clarita Valley Water Report, at ES-5; Ex. AY 2018 Santa Clarita Valley Water Report, at ES-5, Ex. AZ 2019 Santa Clarita Valley Water Report, at ES-2. Each and every year of the available reports on SCVWA's website state that Saugus Formation pumping has been over the average amount pumped from the Saugus Formation since 1980. *Id.* It also stated

---

[3] To comply with its Urban Water Management Plans and to ensure the Saugus Aquifer remains sustainable, as groundwater elevations are generally decreasing.

2930843

WHITTAKER'S STATEMENT OF GENUINE DISPUTES IN SUPPORT OF ITS OPP. TO PLAINTIFF'S MSJ

that it had vast reserves of "banked" water available to provide to its customers in the event of a dry year or an emergency. *Id.* at Tables 4-1.

SCVWA repeatedly reported to its customers that pumping from the Saugus formation was within the normal range as projected by its Urban Water Management Plans, and that if it were necessary, SCVWA could pump more than 3 times that production from the Saugus formation alone to account for dry years. Trowbridge Decl. II, ¶¶ 52-57, Ex. AU-AZ, 2014 Santa Clarita Valley Water Report, at Tables 3-1. SCVWA offers no explanation as to why they would not use one of the other 10 wells located in the Saugus Formation to pump additional groundwater.

This also likely depends on yearly demand, for example in 2014, compared to 2013, total water use in the Santa Clarita Valley in 2014 was almost ten percent lower, and it was below the

2930843

WHITTAKER'S STATEMENT OF GENUINE DISPUTES IN
SUPPORT OF ITS OPP. TO PLAINTIFF'S MSJ

short-term projected water requirement estimated in last year's Annual Water Report. The decrease in demand was more than 10x the purported lost capacity, suggesting SCVWA would not have to make any accommodation to account for the lost production from V-205. Trowbridge Decl. II, ¶¶ 52, Ex. AU, 2014 Santa Clarita Valley Water Report, at p. 7.

SCVWA has provided no evidence to suggest it was required to purchase water from the State Water Project on an emergency basis. SCVWA's Urban Water Management Plan prescribes specific uses of water and breakdowns between the pumped water, and purchased water, both in order to ensure the groundwater sources remain sustainable by preventing over pumping. Plaintiff has consistently pumped, and reported to its customers, that the pumping capacity in the Saugus Formation is well within the normal prescribed pumping range. In its 2014-

2930843

WHITTAKER'S STATEMENT OF GENUINE DISPUTES IN
SUPPORT OF ITS OPP. TO PLAINTIFF'S MSJ

|  |  |  | 2019 annual reports, despite V-201 and V-205 wells being out of service in various years, SCVWA reported to its customers it maintained sufficient pumping capacity in the Saugus formation to meet the planned normal range[4] of pumping as described in the 2010 Urban Water Management Plan.  It also reported that in dry years, it could pump up to three times that amount from the Saugus Formation for a maximum of three years in order to maintain the sustainability of the aquifer.  Trowbridge Decl. II, ¶¶ 52-57, Ex. AU, 2014 Santa Clarita Valley Water Report, at ES6, Ex AV, 2015 Santa Clarita Valley Water Report, at ES-6; Ex. AW 2016 Santa Clarita Valley Water Report, at ES-5; Ex. AX 2017 Santa Clarita Valley Water Report, at ES-5; Ex. AY 2018 Santa Clarita Valley Water Report, at ES-5, Ex. AZ 2019 Santa Clarita Valley Water Report, at ES-2.  Each and every year of the available reports on SCVWA's |
|---|---|---|---|

[4] To comply with its Urban Water Management Plans and to ensure the Saugus Aquifer remains sustainable, as groundwater elevations are generally decreasing.

2930843

WHITTAKER'S STATEMENT OF GENUINE DISPUTES IN
SUPPORT OF ITS OPP. TO PLAINTIFF'S MSJ

website state that Saugus Formation pumping has been over the average amount pumped from the Saugus Formation since 1980. *Id.* It also stated that it had vast reserves of "banked" water available to provide to its customers in the event of a dry year or an emergency. *Id.* at Tables 4-1.

SCVWA repeatedly reported to its customers that pumping from the Saugus formation was within the normal range as projected by its Urban Water Management Plans, and that if it were necessary, SCVWA could pump more than 3 times that production from the Saugus formation alone to account for dry years. Trowbridge Decl. II, ¶¶ 52-57, Ex. AU-AZ, 2014 Santa Clarita Valley Water Report, at Tables 3-1. SCVWA offers no explanation as to why they would not use one of the other 10 wells located in the Saugus Formation to pump additional groundwater.

2930843

WHITTAKER'S STATEMENT OF GENUINE DISPUTES IN SUPPORT OF ITS OPP. TO PLAINTIFF'S MSJ

| | | | This also likely depends on yearly demand, for example in 2014, compared to 2013, total water use in the Santa Clarita Valley in 2014 was almost ten percent lower, and it was below the short-term projected water requirement estimated in last year's Annual Water Report. The decrease in demand was more than 10x the purported lost capacity, suggesting SCVWA would not have to make any accommodation to account for the lost production from V-205.  Trowbridge Decl. II, ¶¶ 52, Ex. AU, 2014 Santa Clarita Valley Water Report, at p. 7. |
|---|---|---|---|
| 82. | Hiring consultants to perform an EE/CA is a non-time critical removal action. | Gee Decl. Ex. N, at 51:7-52:23, (Mesard Depo.). | Disputed.  The cited testimony does not state "hiring consultants to perform an EE/CA is a non-time critical removal action." Further, while Plaintiff con

This constitutes a legal conclusion, not a fact. |

2930843

WHITTAKER'S STATEMENT OF GENUINE DISPUTES IN
SUPPORT OF ITS OPP. TO PLAINTIFF'S MSJ

| 83. | Plans for installing wellhead treatment to address contamination are non-time critical removal action. | Zelikson Decl. Ex. A, at 31 (Zelikson Report). | Disputed.  This is not a fact, but a legal conclusion. |
|-----|-----|-----|-----|
| 84. | SCV Water has had to take its wells V-201 and V-205 out of service due to the spread of perchlorate contamination. | Abercrombie Decl. ¶ 5; Gee Decl. Ex. W (Dec. 7, 2010 Email Corresp.); Gee Decl. Ex. AD (Jan. 22, 2018 SCV Water letter to State Water Resource Control Board) | Not disputed. |

2930843

WHITTAKER'S STATEMENT OF GENUINE DISPUTES IN
SUPPORT OF ITS OPP. TO PLAINTIFF'S MSJ

| 85. | In 2015, the Parties entered a settlement agreement to install perchlorate treatment at well V-201. | Abercrombie Decl. ¶ 6. | Not disputed. |
|---|---|---|---|
| 86. | Well water from V-201 must be discharged to the Santa Clara River in order to contain the spread of perchlorate because DDW has not issued a drinking water supply permit for the well. | Abercrombie Decl. ¶ 6. | Not disputed. |

2930843

WHITTAKER'S STATEMENT OF GENUINE DISPUTES IN
SUPPORT OF ITS OPP. TO PLAINTIFF'S MSJ

| 87. | SCV Water incurred blend water response costs because it must blend water from V-201 with purchased imported State Water Project water in order to comply with the water quality specifications for Total Dissolved Solids and Sulfates in its NPDES permit. | Abercrombie Decl. ¶¶ 6, 9. | Not disputed that SCVWA was required to purchase water to blend with water from V-201 to meet the water quality specifications for Total Dissolved Solids and Sulfates in its NPDES permit. Disputed to the extent Plaintiff contends VOCs required the purchase of blend water for well V-201. |
| --- | --- | --- | --- |
| 88. | SCV Water has expended $1,989,991 for blend water at the V- 201 well as of June 30, 2020. | Abercrombie Decl. ¶ 9. | Not disputed. |

2930843

WHITTAKER'S STATEMENT OF GENUINE DISPUTES IN
SUPPORT OF ITS OPP. TO PLAINTIFF'S MSJ

| 89. | SCV Water is in the process of seeking a drinking water supply permit with DDW for V-201 under the 97-005 process, which requires SCV Water to address all contaminants that exceed the contaminant detection level ("DLR"). | Abercrombie Decl. ¶ 7; RJN, Ex. F, at 10 (DDW's revised 97-005 Policy Guidance); Gee Decl. Ex. J, at 17:2-23, 33:11-34:16 (O'Keefe Depo.) | Disputed.  While the stated assertion is vague as to "address" all contaminants that exceed the detection level, Whittaker disputes that DDW has required, or will require Plaintiff to treat VOCS below the MCL at Well V-201 as a condition of its permit.  In a recent October 2020 internal SCVWA email, Dirk Marks the Director of Water Resources for SCVWA, admitted that regulators have "declined to directly order . . . [SCVWA] to treat for VOC."  Trowbridge Decl. II, ¶ 40, Exh. AI, 10/15/20 V-201 Corres.  The DDW requirements under DDW Policy 97-005 are not based on DDW's determination that SCVWA's well water is unsafe to drink.  According to Mr. O'Keefe, the 97-005 Policy is not a health based standard, but one based on treatability.  Trowbridge Decl., ¶ 29, Ex. AA, O'Keefe Depo. at 10:11-18, 84:8-85:6.  The 97-005 Policy uses an equation called the MCL Equivalent to determine if additional treatment is necessary before the water can be distributed to households.  Trowbridge Decl., ¶ 31, |

2930843

Ex. AC, Process Memo, pp. 13-16;  Mr. O'Keefe testified that the equation "is not intended to be a risk assessment at all . . . It's a treatability assessment." Trowbridge Decl., ¶ 29, Ex. AA, O'Keefe Depo. at 89:9-20.  This sworn testimony is consistent with the September 2020 DDW *Process Memo 97-005 Users Guide* ("DDW Users Guide").  Trowbridge Decl. II, ¶ 61, Ex. BD.

In determining whether the MCL Equivalent is below 1, DDW does not require any health risk assessment. Trowbridge Decl., ¶ 29, Ex. AA, O'Keefe Depo, at 89:9-20.  SCVWA has completed the work necessary to determine the MCL Equivalent for V-201.  They have concluded that the MCL Equivalent score for V-201 is below 1.  Trowbridge Decl., ¶ 6, Ex. D February 97-005 Report at Executive Summary – VI.

According to the DDW Users Guide, and SCVWA's interpretation of its

2930843

WHITTAKER'S STATEMENT OF GENUINE DISPUTES IN SUPPORT OF ITS OPP. TO PLAINTIFF'S MSJ

| | | | |
|---|---|---|---|
| | | | obligations, no additional treatment for VOCs is necessary if the score is below 1. SCVWA's consultants have submitted many reports to DDW in which they determined the MCL Equivalent. In each case the number has been below 1. Trowbridge Decl., ¶ 6, Ex. D February 97-005 Report at at 7-1, 7-3. According to their consultant Meredith Durant, "less than 1 is . . . [a] green light. . . ." Trowbridge Decl., ¶ 27, Ex. Y, Durant Depo at 32:15. |
| 90. | Treatment through either removing the VOCs or blending with imported water will be required to keep VOC contamination below the DLR in SCV Water's distribution system in order to | Abercrombie Decl. ¶ 7; Gee Decl. Ex. J, at 74:23-75:2 (O'Keefe Depo.) | Disputed. Whittaker disputes that DDW has required, or will require Plaintiff to treat VOCS below the MCL at Well V-201 as a condition of its permit. In a recent October 2020 internal SCVWA email, Dirk Marks the Director of Water Resources for SCVWA, admitted that regulators have "declined to directly order . . . [SCVWA] to treat for VOC." Trowbridge Decl. II, ¶ 40, Exh. AI, 10/15/20 V-201 Corres. The DDW requirements under DDW Policy 97-005 are not based on DDW's determination that SCVWA's well water |

2930843

WHITTAKER'S STATEMENT OF GENUINE DISPUTES IN
SUPPORT OF ITS OPP. TO PLAINTIFF'S MSJ

| | use this water pursuant to a DDW permit. | | is unsafe to drink.  According to Mr. O'Keefe, the 97-005 Policy is not a health based standard, but one based on treatability.   Trowbridge Decl., ¶ 29, Ex. AA, O'Keefe Depo. at 10:11-18, 84:8-85:6.  The 97-005 Policy uses an equation called the MCL Equivalent to determine if additional treatment is necessary before the water can be distributed to households.  Trowbridge Decl., ¶ 31, Ex. AC, Process Memo, pp. 13-16;  Mr. O'Keefe testified that the equation "is not intended to be a risk assessment at all . . . It's a treatability assessment."  Trowbridge Decl., ¶ 29, Ex. AA, O'Keefe Depo. at 89:9-20. This sworn testimony is consistent with the September 2020 DDW *Process Memo 97-005 Users Guide* ("DDW Users Guide").  Trowbridge Decl. II, ¶ 61, Ex. BD. |
| | | | In determining whether the MCL Equivalent is below 1, DDW does not require any health risk assessment. Trowbridge Decl., ¶ 29, Ex. AA, O'Keefe Depo, at 89:9-20.  SCVWA |

2930843

WHITTAKER'S STATEMENT OF GENUINE DISPUTES IN
SUPPORT OF ITS OPP. TO PLAINTIFF'S MSJ

has completed the work necessary to determine the MCL Equivalent for V-201. They have concluded that the MCL Equivalent score for V-201 is below 1. Trowbridge Decl., ¶ 6, Ex. D February 97-005 Report at Executive Summary – VI.

According to the DDW Users Guide, and SCVWA's interpretation of its obligations, no additional treatment for VOCs is necessary if the score is below 1. SCVWA's consultants have submitted many reports to DDW in which they determined the MCL Equivalent. In each case the number has been below 1. Trowbridge Decl., ¶ 6, Ex. D February 97-005 Report at at 7-1, 7-3. According to their consultant Meredith Durant, "less than 1 is . . . [a] green light. . . ." Trowbridge Decl., ¶ 27, Ex. Y, Durant Depo at 32:15.

To this day, and about 10% of the time, SCVWA serves customers water with VOCs above the DLR but below the MCL.

2930843

| | | | |
|---|---|---|---|
| | | | SCVWA considers contamination below the MCLs to be safe to drink and admits that up to 10% of the water delivered to households contains detectable levels of VOCs.  Trowbridge Decl., ¶ 23, Ex. U, Abercrombie MSJ Decl. at ¶¶ 8-9; ¶ 7, Ex. E, Alvord 12/12/19 30(b)(6) Depo. at 19:12-23; ¶ 24, Ex. V, Deposition of Michael Alvord (December 5, 2019)("Alvord Depo.") 30:15-31:14. |
| 91. | SCV Water incurred replacement water response costs because it cannot use V-201 water for drinking water supply and cannot operate well V-205 due to perchlorate and VOC contamination | Abercrombie Decl. Ex. C, at ¶¶ 7-10, 16-10. | Disputed.  In fact, SCVWA actually informed their customers the opposite, "**The closing of this well will not impact the Santa Clarita Valley Family of Water Suppliers' ability to adequately provide water to our customers and will not have a negative impact on the Valley's water supply**." (emphasis added).  Gee Decl. Ex. Z.<br><br>SCVWA has provided no evidence to suggest it was required to purchase |

2930843

| | from the Whittaker Site. | | water from the State Water Project on an emergency basis.  SCVWA's Urban Water Management Plan prescribes specific uses of water and breakdowns between the pumped water, and purchased water, both in order to ensure the groundwater sources remain sustainable by preventing over pumping.  Plaintiff has consistently pumped, and reported to its customers, that the pumping capacity in the Saugus Formation is well within the normal prescribed pumping range.  In its 2014-2019 annual reports, despite V-201 and V-205 wells being out of service in various years, SCVWA reported to its customers it maintained sufficient pumping capacity in the Saugus formation to meet the planned normal range[5] of pumping as described in the 2010 Urban Water Management Plan.  It also reported that in dry years, it could pump up to three times that amount from the Saugus Formation for a maximum of three years in order to |

---

[5] To comply with its Urban Water Management Plans and to ensure the Saugus Aquifer remains sustainable, as groundwater elevations are generally decreasing.

2930843

WHITTAKER'S STATEMENT OF GENUINE DISPUTES IN
SUPPORT OF ITS OPP. TO PLAINTIFF'S MSJ

| | | | maintain the sustainability of the aquifer.  Trowbridge Decl. II, ¶¶ 52-57, Ex. AU, 2014 Santa Clarita Valley Water Report, at ES6, Ex AV, 2015 Santa Clarita Valley Water Report, at ES-6; Ex. AW 2016 Santa Clarita Valley Water Report, at ES-5; Ex. AX 2017 Santa Clarita Valley Water Report, at ES-5; Ex. AY 2018 Santa Clarita Valley Water Report, at ES-5, Ex. AZ 2019 Santa Clarita Valley Water Report, at ES-2.  Each and every year of the available reports on SCVWA's website state that Saugus Formation pumping has been over the average amount pumped from the Saugus Formation since 1980.  *Id.*  It also stated that it had vast reserves of "banked" water available to provide to its customers in the event of a dry year or an emergency.  *Id.* at Tables 4-1.

SCVWA repeatedly reported to its customers that pumping from the Saugus formation was within the normal range as projected by its Urban Water Management Plans, and that if it were |

2930843

necessary, SCVWA could pump more than 3 times that production from the Saugus formation alone to account for dry years. Trowbridge Decl. II, ¶¶ 52-57, Ex. AU-AZ, 2014 Santa Clarita Valley Water Report, at Tables 3-1. SCVWA offers no explanation as to why they would not use one of the other 10 wells located in the Saugus Formation to pump additional groundwater.

This also likely depends on yearly demand, for example in 2014, compared to 2013, total water use in the Santa Clarita Valley in 2014 was almost ten percent lower, and it was below the short-term projected water requirement estimated in last year's Annual Water Report. The decrease in demand was more than 10x the purported lost capacity, suggesting SCVWA would not have to make any accommodation to account for the lost production from V-205. Trowbridge Decl. II, ¶¶ 52, Ex. AU, 2014 Santa Clarita Valley Water Report, at p. 7.

2930843

WHITTAKER'S STATEMENT OF GENUINE DISPUTES IN SUPPORT OF ITS OPP. TO PLAINTIFF'S MSJ

| 92. | June 30, 2020, SCV Water has expended $3,858,974 for replacement water for Saugus Formation Wells V-201 and V-205. | Abercrombie Decl. ¶ 8. | Disputed.<br><br>In fact, SCVWA actually informed their customers the opposite, "**The closing of this well will not impact the Santa Clarita Valley Family of Water Suppliers' ability to adequately provide water to our customers and will not have a negative impact on the Valley's water supply**." (emphasis added). Gee Decl. Ex. Z.<br><br>SCVWA has provided no evidence to suggest it was required to purchase water from the State Water Project on an emergency basis. SCVWA's Urban Water Management Plan prescribes specific uses of water and breakdowns between the pumped water, and purchased water, both in order to ensure the groundwater sources remain sustainable by preventing over pumping. Plaintiff has consistently pumped, and reported to its customers, that the pumping capacity in the Saugus |
|---|---|---|---|

2930843

Formation is well within the normal prescribed pumping range.  In its 2014-2019 annual reports, despite V-201 and V-205 wells being out of service in various years, SCVWA reported to its customers it maintained sufficient pumping capacity in the Saugus formation to meet the planned normal range[6] of pumping as described in the 2010 Urban Water Management Plan.  It also reported that in dry years, it could pump up to three times that amount from the Saugus Formation for a maximum of three years in order to maintain the sustainability of the aquifer.  Trowbridge Decl. II, ¶¶ 52-57, Ex. AU, 2014 Santa Clarita Valley Water Report, at ES6, Ex AV, 2015 Santa Clarita Valley Water Report, at ES-6; Ex. AW 2016 Santa Clarita Valley Water Report, at ES-5; Ex. AX 2017 Santa Clarita Valley Water Report, at ES-5; Ex. AY 2018 Santa Clarita Valley Water Report, at ES-5, Ex. AZ 2019 Santa Clarita Valley Water

---

[6] To comply with its Urban Water Management Plans and to ensure the Saugus Aquifer remains sustainable, as groundwater elevations are generally decreasing.

2930843

WHITTAKER'S STATEMENT OF GENUINE DISPUTES IN
SUPPORT OF ITS OPP. TO PLAINTIFF'S MSJ

Report, at ES-2.  Each and every year of the available reports on SCVWA's website state that Saugus Formation pumping has been over the average amount pumped from the Saugus Formation since 1980.  *Id.*  It also stated that it had vast reserves of "banked" water available to provide to its customers in the event of a dry year or an emergency.  *Id.* at Tables 4-1.

SCVWA repeatedly reported to its customers that pumping from the Saugus formation was within the normal range as projected by its Urban Water Management Plans, and that if it were necessary, SCVWA could pump more than 3 times that production from the Saugus formation alone to account for dry years. Trowbridge Decl. II, ¶¶ 52-57, Ex. AU-AZ, 2014 Santa Clarita Valley Water Report, at Tables 3-1. SCVWA offers no explanation as to why they would not use one of the other 10 wells located in the Saugus Formation to pump additional groundwater.

2930843

WHITTAKER'S STATEMENT OF GENUINE DISPUTES IN
SUPPORT OF ITS OPP. TO PLAINTIFF'S MSJ

| | | | |
|---|---|---|---|
| | | | This also likely depends on yearly demand, for example in 2014, compared to 2013, total water use in the Santa Clarita Valley in 2014 was almost ten percent lower, and it was below the short-term projected water requirement estimated in last year's Annual Water Report. The decrease in demand was more than 10x the purported lost capacity, suggesting SCVWA would not have to make any accommodation to account for the lost production from V-205. Trowbridge Decl. II, ¶¶ 52, Ex. AU, 2014 Santa Clarita Valley Water Report, at p. 7. |
| 93. | SCV Water's blend water and replacement water costs will continue to accrue until DDW issues a water supply permit for V-201 | Abercrombie Decl. ¶¶ 8-9. | Not disputed. |

2930843

WHITTAKER'S STATEMENT OF GENUINE DISPUTES IN
SUPPORT OF ITS OPP. TO PLAINTIFF'S MSJ

| | | | |
|---|---|---|---|
| | well. | | |
| 94. | Whittaker owned the Site from 1967 to January 1999. | RJN, Ex. A, at 1058 (*Castaic Lake*). | Not disputed. |
| 95. | Whittaker operated the Site from 1967 to 1987. | RJN, Ex. A, at 1058 (*Castaic Lake*). | Not disputed. |

2930843

WHITTAKER'S STATEMENT OF GENUINE DISPUTES IN
SUPPORT OF ITS OPP. TO PLAINTIFF'S MSJ

| 96. | Prior to 1967, the Site was owned by the Bermite Powder Company between 1943 and 1967; Whittaker purchased the stock of the Bermite Company in 1967. | Gee Decl. Ex. U, at Table 2-1 (1997 Acton Mickelson Remedial Investigation). | Not disputed. |
|---|---|---|---|
| 97. | Soil, groundwater, and surface water were impacted as a result of Whittaker's manufacturing activities at the Site. | Gee Decl. Ex. C, at 12 (Hokkanen Report); Gee Decl. Ex. F, at 6 (Trudell Report); Gee Decl. Ex. O, at 76:16-77:15 (Hokkanen Depo.); Gee Decl. Ex. T, at 3, Table 2 | Not disputed that soil groundwater were somehow "impacted" as a result of Whittaker's manufacturing activities at the site. |

2930843

WHITTAKER'S STATEMENT OF GENUINE DISPUTES IN
SUPPORT OF ITS OPP. TO PLAINTIFF'S MSJ

| | | | |
|---|---|---|---|
| | | (1987 Wenck Revised RCRA Closing Plan); Stanin Decl. ¶11; Stanin Decl. Ex. A, at 1, 3, 15-18 (Stanin Report). | |

*Plaintiff has Failed to Carry its Burden to Demonstrate Whittaker's affirmative defenses were not factually supported, and that it has been prejudiced by the inclusion of the Same. Whittaker has sufficiently plead and supported its affirmative defenses.*

| 98. | Whittaker's Amended Answer includes 51 Affirmative Defenses. | Gee Decl. Ex. S, at 13:1-21:24 (Def.'s Amended Answer, ECF 116). | Not disputed. |

2930843

| 99. | The Affirmative Defenses in Whittaker's Amended Answer are verbatim exactly the same as those in its original answer filed on April 1, 2019. | Gee Decl. Ex. S, at 13:1-21:24 (Def.'s Amended Answer, ECF 116); Gee Decl. Ex. R, at 12:16-20:27 (Def.'s Answer to Plaintiff's Compl.). | Not disputed. |
|---|---|---|---|
| 100. | SCV Water sought written discovery of all facts and persons with knowledge of facts supporting Whittaker's affirmative defenses in its Interrogatory No. 21. | Gee Decl. Ex. Q, at 4:3-6 (Plt.'s Interrog. No. 21). | Not material, nor does it show the absence of allegations. This interrogatory was improperly served in violation of maximum number of interrogatories, and was properly objected to. Whittaker and Plaintiff met and conferred and agreed to additional interrogatories, SCVWA opted not to serve this previously improperly served interrogatory. |

2930843

| | | | |
|---|---|---|---|
| | | | |
| 101. | Whittaker's responses to Interrogatory No. 21 state that SIC is responsible for VOCs and perchlorate contamination in SCV Water's wells, that SCV Water is responsible for the contamination in its wells due to deficient construction | Gee Decl. Ex. Q, at 4:3-5:3 (Def.'s Resp. to Interrog. No. 21). | Not material, nor does it show the absence of allegations. Plaintiff has not established a lack of evidence as to Whittaker's affirmative defenses. <br><br> This interrogatory was improperly served in violation of maximum number of interrogatories, and was properly objected to. Plainly, as Whittaker had 51 defenses, this request alone (in addition constitutes 51 separate interrogatories) Whittaker and Plaintiff met and conferred and agreed to additional interrogatories, SCVWA opted not to serve this previously improperly served interrogatory. |

2930843

WHITTAKER'S STATEMENT OF GENUINE DISPUTES IN
SUPPORT OF ITS OPP. TO PLAINTIFF'S MSJ

| | | |
|---|---|---|
| and/or maintenance. | | Whittaker provided extensive notice of its allegations against Plaintiff, and has subsequently produced hundreds of thousands of pages in support of its Claims. Whittaker adequately pleaded and has provided extensive supporting facts in response to various discovery requests propounded by Plaintiff. Trowbridge Decl. II, ¶ 64-71, Ex. BE, Whittaker's Supplemental Interrogatory Responses to Plaintiff's Interrogatories Set One; Ex. BF, Findings of Fact and Law, Central District, Case No. 2:09-cv-01734-GHK-RZ, Docket No. 180, June 30, 2010; Plaintiff's Consultant, Mr. Slade, involved with the siting and construction of Plaintiff's Saugus 1 and 2, V-201 and V-205 suggested SCVWA perform additional investigations prior to siting wells in the Saugus Formation, which, as a 30(b)6 witness, he testified he had no knowledge that SCVWA had |

2930843

WHITTAKER'S STATEMENT OF GENUINE DISPUTES IN
SUPPORT OF ITS OPP. TO PLAINTIFF'S MSJ

| | | | |
|---|---|---|---|
| | | | performed.  Trowbridge Decl. II, Ex. BG at p. 64:11-68:17, 85:12-85:24; 87:9-89:11; and 91:8-22.<br><br>Whittaker also refers to its Motion and MPA in support of its Affirmative Motion (Docket No. 253), at pp. 28:16-30:5; 32:1-33:8; and the factual allegations in its answer and counter claim, which Plaintiff ignored.  Whittaker's Second Amended Answer and Counter Claim, Docket No. 116, January 13, 2020, pp. 22:1-27:26. |
| 102. | Whittaker did not supplement or amend<br>its responses to Interrogatories, Set 2. | Gee Decl. Ex. A (Aug. 5, 2020 Email Corresp.). | Not material, nor does it show the absence of allegations.<br>This interrogatory was improperly served in violation of maximum number of interrogatories, and was properly objected to.  Whittaker and Plaintiff met and conferred and agreed to additional interrogatories, SCVWA opted not to serve this previously improperly |

2930843

WHITTAKER'S STATEMENT OF GENUINE DISPUTES IN
SUPPORT OF ITS OPP. TO PLAINTIFF'S MSJ

| | | | served interrogatory. |
|---|---|---|---|
| 103. | Whittaker's counsel agreed to withdraw Affirmative Defense No. 41 (Business Judgment Rule). | Gee Decl. ¶ 4. | Not disputed.  SCVWA did not take Whittaker up on its offer, and instead wasted the Court's time with this motion. |
| 104. | Whittaker's counsel agreed to withdraw its statute of limitations defense if SCV Water would confirm in writing that its nuisance and trespass claims are continuing. | Gee Decl. ¶ 4. | Not disputed.  SCVWA did not take Whittaker up on its offer, SCVWA did not take Whittaker up on its offer, and instead wasted the Court's time with this motion |

## Conclusions of Law

2930843

WHITTAKER'S STATEMENT OF GENUINE DISPUTES IN
SUPPORT OF ITS OPP. TO PLAINTIFF'S MSJ

Plaintiff has failed to carry its burden to demonstrate it is entitled to relief under CERCLA as it has plainly failed to establish that its response actions constituted removal actions, much less time-critical removal actions.  Plaintiff has faield to carry its burden to demonstrate that the VOCs below MCLs in its production wells pose an environmental or health risk, as it has and continues to serve such water to its customers for nearly a decade.  Plaintiff has failed to carry its burden to establish that Whittaker's affirmative defenses are insufficiently plead or supported, and has not established and cannot establish that it suffers any prejudice as a result of their inclusion in Whittaker's pleading.  Plaintiff further has failed to establish it is entitled to relief as it has failed to establish it has properly documented NCP Compliant Costs.

Dated: December 14, 2020          BASSI, EDLIN, HUIE & BLUM LLP

                                  By:_____/s/Michael E. Gallagher_____
                                       MICHAEL E. GALLAGHER
                                  Attorneys for Defendant and Third-Party Plaintiff
                                  WHITTAKER CORPORATION

2930843

WHITTAKER'S STATEMENT OF GENUINE DISPUTES IN
SUPPORT OF ITS OPP. TO PLAINTIFF'S MSJ

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

2930843

WHITTAKER'S STATEMENT OF GENUINE DISPUTES IN
SUPPORT OF ITS OPP. TO PLAINTIFF'S MSJ