FRED M. BLUM, ESQ. (SBN 101586)
fblum@behblaw.com
MICHAEL E. GALLAGHER, ESQ. (SBN 195592)
mgallagher@behblaw.com
EARL L. HAGSTROM (SBN 150958)
ehagstrom@behblaw.com
CHRISTOPHER J. DOW (SBN 250032)
cdow@behblaw.com
DANIEL E. TROWBRIDGE (SBN 301301)
dtrowbridge@behblaw.com
BASSI, EDLIN, HUIE & BLUM LLP
500 Washington Street, Suite 700
San Francisco, CA 94111
Telephone:   (415) 397-9006
Facsimile:   (415) 397-1339

Attorneys for Defendant and Third-Party Plaintiff
WHITTAKER CORPORATION

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SANTA CLARITA VALLEY WATER AGENCY, <br><br> Plaintiffs, <br><br> vs. <br><br> WHITTAKER CORPORATION, <br><br> Defendants. | Case No. 2:18-CV-6825-SB (RAOx) <br><br> *Assigned to Hon. Stanley Blumenfeld, Jr.* <br><br> **WHITTAKER CORPORATION'S SEPARATE STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW IN SUPPORT OF WHITTAKER CORPORATION'S IN SUPPORT OF ITS CROSS MOTION FOR PARITAL SUMMARY JUDGMENT ON PLAINTIFF SCVWA'S CERCLA AND HSAA CLAIMS** |
| WHITTAKER CORPORATION, <br><br> Third-Party Plaintiff, <br><br> vs. <br><br> KEYSOR-CENTURY CORP., a California Corporation; and SAUGUS INDUSTRIAL CENTER, LLC, a Delaware Limited Liability Company, <br><br> Third-Party Defendants. | Date: January 8, 2021 <br> Time: 8:30 a.m. <br> Dept.: 6C <br><br> Action Filed:   August 8, 2018 <br> Trial Date:     January 19, 2021 |

2916249

1

WHITTAKER CORPORATION'S SEPARATE STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW IN SUPPORT OF PARTIAL MOTION FOR SUMMARY JUDGMENT

Pursuant to Local Rule 56-1, Defendant, <u>WHITTAKER CORPORATION</u> ("Whittaker") hereby presents its Statement of Uncontroverted Facts and Conclusions of Law in support of its Cross Motion for Partial Summary Judgment on Plaintiff <u>SANTA CLARITA VALLEY WATER AGENCY</u>'s ("Plaintiff") FOR PARTIAL SUMMARY JUDGMENT ON PLAINTIFF'S FIRST, SECOND, EIGHTH AND NINTH CLAIMS FOR RELIEF FOR PAST AND FUTURE RESPONSE COSTS UNDER CECLA AND THE HSAA.

## UNCONTROVERTED MATERIAL FACTS

| No. | Uncontroverted Material Fact | Citation(s) | Opposing Party Response |
|---|---|---|---|
| 1. | Perchlorate moves in the subsurface at least 2.5 times faster than VOCs. | Declaration of Daniel Trowbridge ("Trowbridge Decl."), ¶ 5, Ex. C, Declaration of Gary Hokkanen (Hokkanen Decl."), ¶¶ 14, 16, 25. | |
| 2. | Whittaker has paid for the installation of perchlorate treatment systems for wells Saugus 1 and 2 and for well V-201. | Trowbridge Decl., ¶ 6, Ex. D, February 97-005 Report at Executive Summary III- IV; ¶ 22, Ex. T, Deposition of Lynn Takaichi ("Takaichi Depo."), at 86:2-4; ¶ 22, Ex. AH, V-201 Well Treatment | |

2916249

WHITTAKER CORPORATION'S SEPARATE STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW IN SUPPORT OF PARTIAL MOTION FOR SUMMARY JUDGMENT

| No. | Uncontroverted Material Fact | Citation(s) | Opposing Party Response |
|-----|------------------------------|-------------|-------------------------|
|     |                              | System Funding and Implementation Agreement ("V-201 Well Treatment Agreement"); Trowbridge Decl. II, ¶ 44, Ex. AM, *Castaic Lake Water Agency Litigation Settlement Agreement*, ("2007 Settlement Agreement"), dated April 6, 2007. |   |
| 3.  | Saugus 1 and 2 have been supplying water for consumers since 2011; notwithstanding the presence of VOC's in the water. | Trowbridge Decl., ¶ 6, Ex. D, February 97-005 Report; , Executive Summary I-IV; ¶ 7, Ex. E, Deposition of Michael Alvord as FRCP 30(b)(6) Witness (December 12, 2019)("Alvord 12/12/19 30(b)(6) Depo.") 19:12-23. |   |

2916249

| No. | Uncontroverted Material Fact | Citation(s) | Opposing Party Response |
|---|---|---|---|
| 4. | SCVWA has not obtained a permit to use water from V-201 or 205 for household use. | Trowbridge Decl., ¶ 6, Ex. D, February 97-005 Report, Executive Summary I-IV. | |
| 5. | The fact that perchlorate moves 2.5 times faster through the soil and groundwater has given Whittaker sufficient time to install on-Site remediation systems to prevent the migration of the VOCs to SCVWA's wells. | Hokkanen Decl., ¶ Trowbridge Decl., ¶ 5, Ex. C, Hokkanen Decl., ¶¶ 14, 16, 25; Declaration of Anthony Daus ("Daus Decl."), ¶ 3-12. | |
| 6. | Whittaker has been remediating the contamination at the Site under the supervision of DTSC since 1986. As part of that remediation it has installed a series of treatment systems to remove VOCs from the soil and groundwater. These include soil vapor extraction systems for the soil and pump and | Daus Decl., ¶¶ 3-5, Ex. 1. | |

2916249

WHITTAKER CORPORATION'S SEPARATE STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW IN SUPPORT OF PARTIAL MOTION FOR SUMMARY JUDGMENT

| No. | Uncontroverted Material Fact | Citation(s) | Opposing Party Response |
|-----|------------------------------|-------------|-------------------------|
|     | treat systems for the groundwater. |  |  |
| 7. | DTSC has acknowledged that Whittaker's compliance with its orders has resulted in significant success in removing VOCs from the subsurface of the Site.  As a result, DTSC has allowed Whitaker to cease a significant portion of its remediation activities. | Trowbridge Decl., ¶ 19, Ex. Q, Correspondence titled Approval of Remedial Action Completion Report OUs 2 through 6 – Former Whittaker Bermite Facility, from DTSC's Haissam Y. Salloum to Whittaker's Consultant, Hassan Amini dated August 31, 2020; ¶ 16; Ex. N, Correspondence from DTSC's Javier Hinojosa, dated September 12, 2012, approving Whittaker's completion report pertaining to Whittaker's OU1 RAP. |  |
| 8. | The data derived from a series of numerous groundwater monitoring | Hokkanen Decl., ¶ 19-30. |  |

2916249

WHITTAKER CORPORATION'S SEPARATE STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW IN SUPPORT OF PARTIAL MOTION FOR SUMMARY JUDGMENT

| No. | Uncontroverted Material Fact | Citation(s) | Opposing Party Response |
|-----|------------------------------|-------------|-------------------------|
|     | wells supports the conclusion that the VOCs have not migrated off-Site. |  |  |
| 9.  | VOCs and perchlorate both migrate along the same migration pathway. According to SCVWA's expert, Dr. Mark Trudell, "they are migrating on exactly the same groundwater flow path." Thus, if both VOCs and perchlorate have migrated off site to Saugus 1, Saugus 2, V-201 and V-205, the groundwater monitoring wells between the Site and the groundwater wells should show similar patterns of consistent detections of both perchlorate and VOCs. Yet, they do not. | Hokkanen Decl., ¶¶ 31-47, Trowbridge Decl., ¶ 5, Ex. C, Trudell Report, at 14-15. |  |
| 10. | There are three monitoring wells on the western edge of the Site and immediately | Daus Decl. ¶ 9, Hokkanen Decl., ¶¶ 23, 31-34, 40-41 |  |

2916249

WHITTAKER CORPORATION'S SEPARATE STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW IN SUPPORT OF PARTIAL MOTION FOR SUMMARY JUDGMENT

| No. | Uncontroverted Material Fact | Citation(s) | Opposing Party Response |
|---|---|---|---|
| | upgradient of Saugus 1 and 2. These wells consistently show the presence of perchlorate, but not VOCs. The consistent presence of perchlorate, but not VOC, supports the conclusion that Whittaker is not the source of any VOCs found in Saugus 1 or 2.   Further, Dr. Trudell testified that if Whittaker was the source of VOCs that they should have been detected in the CW – a, b, and c wells. They are not. | Trowbridge Decl. II, ¶ 43, Ex. AL, Trudell Depo., at 231:15-232:2 | |
| 11. | Whittaker is not the source of the VOCs found in SCVWA's wells. | Hokkanen Decl., *¶ 30, 34, 41, 48-49.* | |
| 12. | Dr. Trudell identified significant detections of off Site VOCs which were not associated with the Site. These VOCs are within the zone of influence of the | Trowbridge Decl. II, ¶ 45, Ex. AL, Trudell Depo at 164:5-11; 165:8-13; 170:12-171:3, Hokkanen Decl., ¶ 44-47. | |

2916249

WHITTAKER CORPORATION'S SEPARATE STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW IN SUPPORT OF PARTIAL MOTION FOR SUMMARY JUDGMENT

| No. | Uncontroverted Material Fact | Citation(s) | Opposing Party Response |
|---|---|---|---|
| | extraction system installed at V-201.  The extraction wells would have been drawn into the V-201. | | |
| 13. | For V-205, the data shows that VOCs were detected in V-205 before perchlorate.  Given that perchlorate travels considerably faster than VOCs, it is impossible for Whittaker to be the source. | Hokkanen Decl., ¶ 45. | |
| 14. | It is Whitaker's expert's opinion that the source of VOCs in Saugus 1 and 2 is the neighboring Saugus Industrial Center ("SIC") property. | Hokkanen Decl., ¶ 50-87. | |
| 15. | The presence of other sources is also shown in VOC readings taken at locations in SCVWA's distribution system.  The system is fed by water from the SPTF that is then blended with water from the State Water Project. | *Id.* ¶ 89-90, Trowbridge Decl., ¶ 23 Ex. U, Abercrombie MSJ Decl. at ¶¶ 8-9. | |

2916249

8

WHITTAKER CORPORATION'S SEPARATE STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW IN SUPPORT OF PARTIAL MOTION FOR SUMMARY JUDGMENT

| No. | Uncontroverted Material Fact | Citation(s) | Opposing Party Response |
|---|---|---|---|
| | Testing is done for VOCs before it leaves the SPTF and after it is blended with the State Water.  It is results at these locations, which are called turnouts, which form the basis of SCVWA's statement that up to 10% of the water they serve is contaminated with VOCs. | | |
| 16. | At numerous times the concentrations of VOCs found at turnouts is too high for the SPTF to be the source. | *Id.* at *¶¶ 89-92.* | |
| 17. | SCVWA internal records that document the percentage of State Water that is blended with effluent from the SPTF show concentrations of VOCs at the turnouts that cannot be the result of VOC contamination coming from the SPTF and which SCVWA's FRCP 30(b)(6) admits may be the result of a | Trowbridge Decl. II, ¶ 51, Ex., AT, Additional Excerpts from Alvord 12/12/19 30(b)(6) Depo. at 40:19-41:5, 38:15-41:5. | |

2916249

9

WHITTAKER CORPORATION'S SEPARATE STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW IN SUPPORT OF PARTIAL MOTION FOR SUMMARY JUDGMENT

| No. | Uncontroverted Material Fact | Citation(s) | Opposing Party Response |
|-----|------------------------------|-------------|-------------------------|
|     | release from an unknown source. |          |                         |
| 18. | For a least a decade, SCVWA has regularly and knowingly served water contaminated with VOC below to its customers. SCVWA considers contamination below the MCLs to be safe to drink and admits that up to 10% of the water delivered to households contains detectable levels of VOCs. | Trowbridge Decl., ¶ 23, Ex. U, Abercrombie MSJ Decl. at ¶¶ 8-9; ¶ 7, Ex. E, Alvord 12/12/19 30(b)(6) Depo. at 19:12-23; ¶ 24, Ex. V, Deposition of Michael Alvord (December 5, 2019)("Alvord Depo.") 30:15-31:14. | |
| 19. | The VOCs found in SCVWA's wells have never been above the MCLs. In the required DTSC OU7 RAP, it was agreed that no remediation of VOCs in off-site groundwater is necessary. | Trowbridge Decl., ¶ 3, Ex. A, ¶ 8, Ex. F, *OU7 RAP* at 2-5, ¶ 2.3.4, | |
| 20. | After the installation of the perchlorate treatment systems, the concentrations of perchlorate in extracted | Trowbridge Decl., ¶ 6, Ex. D, February 97-005 Report, at Executive Summary – II – IV. | |

2916249

WHITTAKER CORPORATION'S SEPARATE STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW IN SUPPORT OF PARTIAL MOTION FOR SUMMARY JUDGMENT

| No. | Uncontroverted Material Fact | Citation(s) | Opposing Party Response |
|-----|------------------------------|-------------|-------------------------|
|     | well water were reduced to nondetectable and have been and continues to be served by SCVWA to its customers. | | |
| 21. | Well V-201 is currently being used as a containment well to pump and treat perchlorate contaminated water.  After treatment the water still contains VOCs below the MCLs.  The Department of Drinking Water ("DDW) has not granted SCVWA an amended permit to distribute the water from V-201 for consumer use.  It thus has to be disposed of in the storm drain, which ultimately discharges to the Santa Clara River.  In press releases issued by SCVWA, concerning the safety of the water after the perchlorate treatment, it has represented that "[t]he water [which | Trowbridge Decl., ¶ 25, Ex. W, *Water Information Sheet, Well V201:· NPDES Exceedance,* SCVWA, July 17, 2018. | |

2916249

Whittaker Corporation's Separate Statement of Uncontroverted Facts and Conclusions of Law in Support of Partial Motion for Summary Judgment

| No. | Uncontroverted Material Fact | Citation(s) | Opposing Party Response |
|---|---|---|---|
| | contains VOCs] could be served to homes for drinking . . . ." | | |
| 22. | The blend water that is required to be blended with the water pumped from V-201 because of other secondary contaminants, Total Dissolved Solids ("TDS") and Sulfates, not VOCS: "To mitigate the levels of TDS and sulfate, SCV Water now blends the well water with additional sources of potable water thereby reducing the concentration of TDS and sulfate to acceptable levels, before discharging to the storm drain." | *Id.* | |
| 23. | SCVWA does not expect that VOC concentrations in its wells will increase to levels above the MCLs. | Trowbridge Decl., ¶¶ 26, Ex. X, 27, Ex. Y, Deposition of B.J. Lechler ("Lechler Depo."), at 15:23-25, | |

2916249

WHITTAKER CORPORATION'S SEPARATE STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW IN SUPPORT OF PARTIAL MOTION FOR SUMMARY JUDGMENT

| No. | Uncontroverted Material Fact | Citation(s) | Opposing Party Response |
|---|---|---|---|
| | | 59:15-24, Deposition of Meredith Durant, taken August 4, 2020 ("Durant Depo."), 50:14-24; ¶ 6, Ex. D, February 97-005 Report at 3-9 | |
| 24. | Remediation systems installed at the Site have effectively prevented the off-site migration of VOCs to SCVWA's wells. | Trowbridge Decl. II, ¶ 42, Ex. AK, Deposition of Anthony Daus ("Daus Depo"), pp. 174:10-20; 196:18-197:9; Daus Decl., ¶ 3-12. | |
| 25. | DTSC agreed with SCVWA and has allowed Whittaker to cease a significant amount of its onsite remedial measures with respect to VOCs. | Trowbridge Decl., ¶ 19, Ex. Q, Correspondence titled Approval of Remedial Action Completion Report OUs 2 through 6 – Former Whittaker Bermite Facility, from DTSC's Haissam Y. Salloum to Whittaker's Consultant, Hassan Amini dated August 31, 2020; ¶ 16, Ex. N, Correspondence | |

2916249

WHITTAKER CORPORATION'S SEPARATE STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW IN SUPPORT OF PARTIAL MOTION FOR SUMMARY JUDGMENT

| No. | Uncontroverted Material Fact | Citation(s) | Opposing Party Response |
|---|---|---|---|
| | | from DTSC's Javier Hinojosa, dated September 12, 2012, approving Whittaker's completion report pertaining to Whittaker's OU1 RAP. | |
| 26. | After the installation and of a treatment system for Well V201 the water was safe to drink; notwithstanding the presence of VOCs below the MCLs. | Trowbridge Decl., ¶ 6, Ex. E, Alvord 12/12/19 30(b)(6) Depo. at 19:12-23; ¶ 24, Ex. V, Deposition of Michael Alvord (December 5, 2019)("Alvord Depo.") 30:15-31:14. | |
| 27. | VOCs are not the reason that the water was declared an extremely impaired aquifer, nor is the failure to treat VOCs the reason that a permit has not been granted. The declaration of an extremely impaired water source is dependent on the presence of a contaminant in | Trowbridge Decl., ¶ 31, Ex. AC, Revised Guidance for Direct Domestic Use of Extremely Impaired Sources, Revised August 20, 2020, DDW ("97-005 Process Memo"); p. 10, Trowbridge Decl., ¶ 3, Ex. A, *OU7 RAP* at 2- | |

2916249

WHITTAKER CORPORATION'S SEPARATE STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW IN SUPPORT OF PARTIAL MOTION FOR SUMMARY JUDGMENT

| No. | Uncontroverted Material Fact | Citation(s) | Opposing Party Response |
|---|---|---|---|
| | concentrations exceeding multiples of the MCLs. VOCs have never been above the MCLs. | 5, ¶ 2.3.4, Trowbridge Decl., ¶ 3, Ex. AI, 10/15/20 V-201 Corres. | |
| 28. | Regulators have never ordered any treatment of VOCs for the wells at issue. | Trowbridge Decl., ¶ 31, Ex. AC, Revised Guidance for Direct Domestic Use of Extremely Impaired Sources, Revised August 20, 2020, DDW ("97-005 Process Memo"); p. 10, Trowbridge Decl., ¶ 3, Ex. A, *OU7 RAP* at 2-5, ¶ 2.3.4, Trowbridge Decl., ¶ 3, Ex. AI, 10/15/20 V-201 Corres. | |
| 29. | The DDW requirements under DDW Policy 97-005 are not based on DDW's determination that SCVWA's well water is unsafe to drink. According to 97-005 Policy is not a | Trowbridge Decl., ¶ 29, Ex. AA, ¶ 31, Ex. AC, ¶ 29, Ex. AA Process Memo, pp. 13-16, O'Keefe Depo. at 10:11-18, 84:8-85:6, 89:9-20. September 2020 DDW | |

2916249

WHITTAKER CORPORATION'S SEPARATE STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW IN SUPPORT OF PARTIAL MOTION FOR SUMMARY JUDGMENT

| No. | Uncontroverted Material Fact | Citation(s) | Opposing Party Response |
|---|---|---|---|
| | health based standard, but one based on treatability. The 97-005 Policy uses an equation called the MCL Equivalent to determine if additional treatment is necessary before the water can be distributed to households. | *Process Memo 97-005 Users Guide* ("DDW Users Guide"). Trowbridge Decl. II, ¶ 61, Ex. BD. | |
| 30. | Under the DDW treatability standard, any further action by SCVWA for VOCs should not be required.  The key determination for determining whether additional treatment is necessary is whether an evaluation, called the MCL Equivalent, is calculated to be below 1.  In determining whether the MCL Equivalent is below 1, DDW does not require any health risk assessment.  SCVWA has completed the work | Trowbridge Decl., ¶ 6, Ex. D February 97-005 Report at Executive Summary – VI, ¶ 31, Ex. AC, Process Memo, p. 14, ¶ 29, Ex. AA, O'Keefe Depo, at 89:9-20. | |

2916249

WHITTAKER CORPORATION'S SEPARATE STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW IN SUPPORT OF PARTIAL MOTION FOR SUMMARY JUDGMENT

| No. | Uncontroverted Material Fact | Citation(s) | Opposing Party Response |
|---|---|---|---|
| | necessary to determine the MCL Equivalent for V-201. They have concluded that the MCL Equivalent score for V-201 is below 1. | | |
| 31. | According to the DDW Users Guide, and SCVWA's interpretation of its obligations, no additional treatment for VOCs is necessary if the score is below 1. | *Id.* | |
| 32. | At the time SCVWA decided to purchase replacement water from the State Water Project it had significant alternatives within its own system to provide the needed water. The "lost" production capacity from V-201 and V-205 was a very minor part of the total production could have been easily replaced. *See* Trowbridge Decl. II, ¶¶ 52-57, Ex. AU, 2014 Santa | Trowbridge Decl. II, ¶¶ 52-57, Ex. AU-AZ; 2014-2019 Santa Clarita Valley Water Report, Ludhorff & Scalmanini, June 2015-June 2020, at Table 4-1, Declaration of Keith Abercrombie, July 20, 2020, ¶¶ 7, 16, Docket No. 250-2, attached to the Declaration of Jeff Zelikson. | |

2916249

WHITTAKER CORPORATION'S SEPARATE STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW IN SUPPORT OF PARTIAL MOTION FOR SUMMARY JUDGMENT

| No. | Uncontroverted Material Fact | Citation(s) | Opposing Party Response |
|---|---|---|---|
| | Clarita Valley Water Report, at Tables 4-1; | | |
| 33. | SCVWA has significant water supplies which could have been used to replace any water lost from V-201 or V-205 ceasing to pump. It had vast reserves of "banked" water available to provide to its customers in the event of a dry year or an emergency. | Trowbridge Decl. II, ¶¶ 52-57, Ex. AU, 2014 Santa Clarita Valley Water Report, at ES6, Ex AV, 2015 Santa Clarita Valley Water Report, at ES-6; Ex. AW 2016 Santa Clarita Valley Water Report, at ES-5; Ex. AX 2017 Santa Clarita Valley Water Report, at ES-5; Ex. AY 2018 Santa Clarita Valley Water Report, at ES-5, Ex. AZ 2019 Santa Clarita Valley Water Report, at ES-2, *Id.* at Tables 4-1. | |
| 34. | The reported lost production from V-201, and V-205 according to Mr. Abercrombie is just 214 acre feet ("af") per year, and 774 | Trowbridge Decl. II, ¶¶ 52-57, Ex. AU-AZ, 2014 Santa Clarita Valley Water Report, at Table 4-1; Declaration of Keith | |

2916249

WHITTAKER CORPORATION'S SEPARATE STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW IN SUPPORT OF PARTIAL MOTION FOR SUMMARY JUDGMENT

| No. | Uncontroverted Material Fact | Citation(s) | Opposing Party Response |
|-----|------------------------------|-------------|-------------------------|
|  | af per year, which amounts to less than 1.5% of the total annual production of water to its customers in a given year. | Abercrombie, July 20, 2020, ¶¶ 7, 16, Docket No. 250-2, attached to the Declaration of Jeff Zelikson ("Abercrombie 7/20 Decl."). | |
| 35. | SCVWA had capacity to pump a the planned normal amount of groundwater from the Saugus formation in the years it contends it lost production from V-201 and V-205, and that it could have pumped three times more had it been necessitated by a "dry year" or other emergency. | Trowbridge Decl. II, ¶¶ 52-57, Ex. AU, 2014 Santa Clarita Valley Water Report, at ES6, Ex AV, 2015 Santa Clarita Valley Water Report, at ES-6; Ex. AW 2016 Santa Clarita Valley Water Report, at ES-5; Ex. AX 2017 Santa Clarita Valley Water Report, at ES-5; Ex. AY, 2018 Santa Clarita Valley Water Report, at ES-5, Ex. AZ 2019 Santa Clarita Valley Water Report, at ES-2. | |

2916249

WHITTAKER CORPORATION'S SEPARATE STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW IN SUPPORT OF PARTIAL MOTION FOR SUMMARY JUDGMENT

| No. | Uncontroverted Material Fact | Citation(s) | Opposing Party Response |
|-----|------------------------------|-------------|------------------------|
| 36. | SCVWA has at least 6 months available prior to having determine whether purchasing water from the State Water Project was necessary. | Trowbridge Decl. II, ¶¶ 52-57, Ex. AU, 2014 Santa Clarita Valley Water Report, at ES6, Ex AV, 2015 Santa Clarita Valley Water Report, at ES-6; Ex. AW 2016 Santa Clarita Valley Water Report, at ES-5; Ex. AX 2017 Santa Clarita Valley Water Report, at ES-5; Ex. AY, 2018 Santa Clarita Valley Water Report, at ES-5, Ex. AZ 2019 Santa Clarita Valley Water Report, at ES-2. | |
| 37. | SCVWA did not prepare a removal site evaluation, an EC/CA or to provide public participation even though the removal activity has been ongoing for more than 120 | Trowbridge Declaration ¶ 33, Ex. AE, Deposition of Jeffrey Zelikson ("Zelikson Depo."), at 187:3-7, 197:25-198:25,[1] | |

2916249

WHITTAKER CORPORATION'S SEPARATE STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW IN SUPPORT OF PARTIAL MOTION FOR SUMMARY JUDGMENT

| No. | Uncontroverted Material Fact | Citation(s) | Opposing Party Response |
|---|---|---|---|
| | days; although it's NCP expert argues that they were not necessary. Although SCVWA contends its removal action began in 2012, it still has not completed an EE/CA. | SCVWA Motion, at p. at 26, fn 12. | |
| 38. | SCVWA never asked its customers to comment about any of the issues relevant to the how the water lost would be replaced. Nor is there any mention of involving other entities which Zelikson admits were affected parties. These include SIC, other potential sources of contamination such as dry cleaners. | Declaration of Keith Abercrombie, Nov. 30, 2020, Docket 250-6, ¶ 10, Zelikson Depo., at 182:4-10. | |
| 39. | SVCWA did not provide proper documentation of its costs. The substantial majority of the alleged present costs incurred by SCVWA, approximately, | Trowbridge Decl. II, ¶ 58, Ex. BA, SCVWA's Fourth Amended Initial Disclosures, served on August 28, 2020, at Computation of | |

2916249

WHITTAKER CORPORATION'S SEPARATE STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW IN SUPPORT OF PARTIAL MOTION FOR SUMMARY JUDGMENT

| No. | Uncontroverted Material Fact | Citation(s) | Opposing Party Response |
|-----|------------------------------|-------------|------------------------|
| | $6.5 million, relate to SCVWA's claim that they expended that sum to purchase replacement water as a result of their inability to use their groundwater wells. The sole basis for the claim is a declaration of Keith Abercrombie, who is the Chief Operating Officer for SCVWA. SCVWA has taken the position that Mr. Abercrombie is not an expert in this case. The declaration provides no back up documents to support the conclusion. | Damages, Trowbridge Decl. II, ¶ 59, Ex. BB, Correspondence from SCVWA's counsel Tara Paul, dated October 5, 2020, Abercrombie 7/20 Decl., Docket No. 250-2. | |
| 40. | The numbers supplied in the Abercrombie Declaration were only estimates and Mr. Zelikson is unaware if the number can be off by as much as 50%. Mr. Zelikson does not know whether the equation used in the | Trowbridge Decl. II ¶ 60, Ex. AE, Zelikson Depo., at 123:15-126:10, 126:19-129:12. | |

2916249

WHITTAKER CORPORATION'S SEPARATE STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW IN SUPPORT OF PARTIAL MOTION FOR SUMMARY JUDGMENT

| No. | Uncontroverted Material Fact | Citation(s) | Opposing Party Response |
|---|---|---|---|
| | declaration was appropriate or accurate and that he did not do anything to verify its accuracy. | | |
| 41. | Mr. Zelikson did not review any of the backup documents that supported Mr. Abercrombie's conclusions. | *Id.* | |
| 42. | Mr. Zelikson did not review any of the backup documents that supported Mr. Abercrombie's conclusions. | *Id.* | |
| 43. | SCVWA concedes that it did not prepare a removal site evaluation or to provide public participation. | Deposition of Jeffrey Zelikson ("Zelikson Depo."), at 187:3-7, 197:25-198:25. | |
| 55. | SCVWA did not provide Mr. Zelikson any of the documents supporting its claim for reimbursement for approximately $6.5 million in replacement water. | Zelikson Depo, at 123:15-126:10; 123:15-126:10; 126:19-129:12. | |
| 60. | Regardless of who the source is, DTSC is not requiring any | DTSC Letter dated December 2, 2014 (revised December 17, | |

2916249

WHITTAKER CORPORATION'S SEPARATE STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW IN SUPPORT OF PARTIAL MOTION FOR SUMMARY JUDGMENT

| No. | Uncontroverted Material Fact | Citation(s) | Opposing Party Response |
|-----|------------------------------|-------------|-------------------------|
| | remediation of the VOCs offsite. | 2014) approving OU7 RAP, Ex. H to Trowbridge Decl. | |

## CONCLUSIONS OF LAW

1.       In order to recover their response costs under the Hazardous Substances Account Act ("HSAA") and/or the Comprehensive Environmental Response Compensation Liability Act[2] ("CERCLA") SCVWA must prove that these costs were necessary and incurred in substantial compliance with the National Contingency Plan (40 C.F.R. Part 300) ("NCP").  SCVWA cannot meet this burden.

2.       Regardless of what kind of response action is undertaken, to prevail in a private cost recovery action, a plaintiff must prove that a release of a hazardous substance resulted in plaintiff incurring response costs that were necessary and substantially consistent with the national contingency plan.  *AmeriPride Services*, 782 F. 3d at 489.

3.       In creating CERCLA, Congress did not create a broad statute that allowed a party to recover all costs relating to environmental contamination. *County Line*, 933 F.2d at 1517.  Congress intended CERCLA to be a narrowly drawn federal remedy, not one to make injured parties whole or to be a general vehicle for toxic tort actions.  *Id.*

4.       A plaintiff still has to establish that the replacement water was needed to remediate a harm that caused injury to human health or the environment. *Southfund Partners III v. Sears, Roebuck And Co.,* 57 F. Supp. 2d 1369, 1378

---

[2] 42 U.S.C. § 9601, *et seq.*

2916249

WHITTAKER CORPORATION'S SEPARATE STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW IN SUPPORT OF PARTIAL MOTION FOR SUMMARY JUDGMENT

(N.D. Ga. 1999).  A party is required to prove:  "(1) that the costs were incurred in response to a threat to human health or the environment that existed prior to initiation of the response action and (2) that the costs were necessary to address that threat."  *Id.*

5.     DTSC's determination that there is no need to remediate VOCs is significant since the DTSC has the exclusive authority to make that determination. DTSC has listed the Site as "one of statewide concern, requiring the application of uniform standards, procedures, and remedies subject to the jurisdiction of DTSC." CAL. HEALTH & SAFETY CODE §25236 (Westlaw 2020).

6.     While there are numerous provisions of the NCP that apply to a private parties attempt to recover response costs under CERCLA, only four are relevant to this motion.  These are (1) the preparation of a removal site evaluation (40 CFR§§300.410, 300.700(b)(5)(v)), (2) the need to provide public participation after 120 days (40 CFR§§300.410(n)(3), 300.700(b)(5)(v)), an EE/CA and (4) the requirement that costs be properly documented. 40 CFR §§ 300.160, 300.700(n)(ii).  SCVWA cannot satisfy these requirements.

7.     SCVWA did not prepare a removal site evaluation, an EE/CA, adequate public participation or proper documentation.

8.     SCVWA's removal action was a non-time critical removal action.

9.     SCVWA did not substantially comply with the NCP.

10.     Mr. Zelikson's opinion that there has been substantial compliance with the NCP is irrelevant since the issue of substantial compliance is a question of law.  *Aviall Services, Inc. v. Cooper Industries, L.L.C.*, 572 F. Supp. 2d 673, 695 (N.D. Tx. 2008).

11.     In order to recover the costs for replacement water, 40 C.F.R. section 300.160 requires documentation sufficient to persuade the court that the costs have been proven by a preponderance of the evidence.  *Roosevelt Irrigation*, 2017 WL at *11.  Vague estimates, based on documentation that wasn't seen and equations

2916249

WHITTAKER CORPORATION'S SEPARATE STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW IN SUPPORT OF PARTIAL MOTION FOR SUMMARY JUDGMENT

1  that are not known to be accurate, are insufficient to meet SCVWA's burden to
2  demonstrate it has substantially complied with the NCP.

3      12.    In order for the supplying of an alternative water source to be a
4  recoverable removal cost, SCVWA must prove more than just that it supplied the
5  water.  It must also show that was "necessary immediately to reduce exposure to
6  contaminated household water . . . ." 40 CFR § 300.415e(9).  Once the perchlorate
7  was removed from the water, the necessity to supply alternative water ceased.
8  SCVWA has failed to show VOCs in the water presented any health risk.

9

10  Date:  December 14, 2020        BASSI, EDLIN, HUIE & BLUM LLP

11

12

13                                 By:   /s/Michael E. Gallagher
14                                     MICHAEL E. GALLAGHER
                                        Attorneys for Defendant and Third-Party
15                                     Plaintiff WHITTAKER CORPORATION

16

17

18

19

20

21

22

23

24

25

26

27

28

2916249

WHITTAKER CORPORATION'S SEPARATE STATEMENT OF UNCONTROVERTED FACTS
AND CONCLUSIONS OF LAW IN SUPPORT OF PARTIAL MOTION FOR SUMMARY
JUDGMENT