NOSSAMAN LLP
FREDERIC A. FUDACZ (SBN 50546)
ffudacz@nossaman.com
BYRON GEE (SBN 190919)
bgee@nossaman.com
PATRICK J. RICHARD (SBN 131046)
prichard@nossaman.com
RAVEN McGUANE (SBN 336505)
rmcguane@nossaman.com
777 S. Figueroa Street, 34th Floor
Los Angeles, CA 90017
Telephone:  213.612.7800
Facsimile:   213.612.7801

Attorneys for Plaintiff SANTA CLARITA VALLEY
WATER AGENCY

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SANTA CLARITA VALLEY WATER AGENCY,<br><br>            Plaintiff,<br><br>    vs.<br><br>WHITTAKER CORPORATION and DOES 1-10, Inclusive,<br><br>            Defendant.<br><br>AND RELATED CASES | Case No:  2:18-cv-6825 SB (RAOx)<br><br>*Assigned to Hon. Stanley Blumenfeld, Jr.*<br><br>**PLAINTIFF'S MOTION IN LIMINE NO. 4 TO EXCLUDE TESTIMONY OF G. HOKKANEN**<br><br>Date Action Filed: August 8, 2018<br>Trial Date:  August 24, 2021 |

## I.    INTRODUCTION

Whittaker Experts Gary Hokkanen's opinion 4 relies on three monitoring wells (out of 300) to support his opinions that VOC contamination has not left the Whittaker site.   However, the three monitoring wells that form the "Hokkanen Maginot wall"[1]  cover only a small percentage of the Whittaker's western border. While he acknowledges that contamination was spread throughout the 998-acre site, he failed to account for alternative pathways from the site multiple contaminated areas, including pathways around the Hokkenan Maginot wall identified by Whittaker's consultant over the past 10 years. In addition, Mr. Hokkanen claims that TCE will travel at 40-50% the rate of perchlorate, but fails to apply the TCE travel distance to the perchlorate travel distance in his opinion – a comparison that clearly contradicts his conclusion.

Mr. Hokkanen also opines that the VOC contamination cannot reach Wells V-201 and V-205 because the production well zone of influence does not reach the Whittaker site.  The Zone of Influence is the area of groundwater which is affected by the pumping of a well. The faster the pumping rate the larger the area. *See* University of Michigan "Wellhead Protection Program" glossary at https://ehs.msu.edu/enviro/whpp/index.html.  It is undisputed that perchlorate contamination from the Whittaker site have reached these wells and since VOCs and perchlorate travel along the same flow paths, the well's zone of influence also draws VOCs to these wells.  Mr. Hokkanen also fails to consider the well zone of influence during the 13 years when up gradient wells were not operating.

Finally, Mr. Hokkanen claims that the Flamingo Cleaners is the source of VOCs in SCV Water's distribution system.  However, during his deposition, he

---

[1] While as discussed below, groundwater clearly flows around the Hokkanen Maginot wall, it also flows through and perhaps beneath the wall.  As shown in Exhibit 1, there have been detections of VOCs in the subject monitoring wells and two of the monitoring wells that Mr. Hokkanen rely do not extend to the deeper Hydrostatic units ("HSUs").

acknowledged that SCV Water's distribution system operates at a high pressure and was unaware or any process at a dry cleaner that has sufficient pressure to contaminate SCV Water's distribution system. For the reasons stated below, the following opinions are unreliable and

- Opinion 4: "Although perchlorate has impacted Water Agency groundwater production wells downgradient of the Bermite Site, based on the differences in migration rates and supportd by the water quality data, VOCs from the Bermite Site have not migrated to the Water Agency's groundwater production wells and the Bermite Site is not a source of the VOC detection in the wells at issue."

- Opinion 5: "VOCs from the Bermite Site have not impacted the Water Agency's groundwater production wells V-201 and V-205."

- Opinion 9" Based on the available data, other previously identified sources could be contributing VOCs in the Water Agency's Distribution system

## II.    STANDARDS FOR EXCLUSION OF EXPERT TESTIMONY

*As set forth in the FRE 702 Advisory notes, the 2000 Amendment "affirms* the trial court's role as gatekeeper and provides some general standards that the trial court must use to assess the reliability and helpfulness of proffered expert testimony. Among the factors that, the courts consider are:

- "Whether the expert has adequately accounted for obvious alternative explanations. *See Claar v. Burlington N.R.R*., 29 F.3d 499 (9th Cir. 1994) (testimony excluded where the expert failed to consider other obvious causes for the plaintiff's condition), and

- "Whether the expert "is being as careful as he would be in his regular professional work outside his paid litigation consulting." *Sheehan v. Daily Racing Form, Inc*., 104 F.3d 940, 942 (7th Cir. 1997). *See Kumho Tire Co. v. Carmichael*, 119 S.Ct. 1167, 1176 (1999) (*Daubert* requires

the trial court to assure itself that the expert "employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field")."

*See FRE 702 Committee Notes on Rule – 2000 Amendment.*

## III.   MR. HOKKANEN FAILED TO CONDUCT A "CAREFUL ANALYSIS" BY IGNORING "OBVIOUS ALTERNATIVE EXPLANATIONS"

### A.   Hokkanen Claims TCE travels at 40-50% the speed of Perchlorate but Failed to Calculate the TCE Travel Distance

Both Mr. Hokkanen and SCV Water experts agree that:

- Perchlorate and VOCs were generally released from the same source areas at the Whittaker site.
- VOCs and Perchlorate from the Whittaker site follow the same migration pathway
- VOC in groundwater migrate at a slower rate than perchlorate.

Mr. Hokkanen further to explains that "The overall distance the perchlorate plume has migrated is approximately 2 to 2 ½ times the distance the TCE plume has migrate." See Gee Decl. ISO Mtns. Ex. EE at 51 (Hokkanen Report, Opinion 3). Mr. Hokkanen did not, however, calculate the distance traveled by TCE from the Whittaker site based on the distance traveled by perchlorate from the Whittaker site, a relatively simple calculation that an environmental consultant could easily perform to determine the extent of the TCE plume. Instead, Mr. Hokkanen includes a textbook schematic in section 4.6 to illustrate travel distance.

Both Whittaker and SCV Water consultants have been using monitoring data to determine the distance that perchlorate contamination has spread from the Whittaker site. Mr. Hokkanen even includes a depiction of the perchlorate plume in Figure 42 of his report that indicates that perchlorate traveled fourteen thousands

1  of feet from the Site:[2]



15  Using Whittaker consultant AECOM's 2014 report (figure 7c), the estimated

16  length of the perchlorate plume is 14,000 feet from the Hula Bowl disposal site

17  ("HB") Whittaker Bermite site. Gee Decl. ISO Mtns. Ex. H at 3 (Trudell Rebuttal

18  Report).  Applying Mr. Hokkanen's retardation factor for TCE, the length of the

19  TCE plume from the HB would be 6,200 feet.  Since SCV Water's Saugus 1 well

20  is 5,500 feet from HB at the Whittaker site, VOCs from the Whittaker would under

21  the AECOM's conservative estimate reached Saugus 1.

### B.    Hokkanen Ignores Pathways identified by Whittaker's own Consultants around the Hokkanen Maginot Wall

24  Mr. Hokkanen suggests that all VOCs impacting SCV Water wells from the

---

[2] The depiction in Figure 42 conservatively depicts the perchlorate plume.  The perchlorate plume has not been fully characterized Gee Decl. ISO Mtns. Ex. F at 31 (Stanin Rebuttal Report).  If groundwater moved at the rate of 630 feet per year as estimated in the 2015 CH2MHill report (P.1-4) the plume length would be 34.650 feet long.  See Gee Decl. ISO Mtns. Ex. H at 2 (Trudell Rebuttal Report).

PLAINTIFF'S MOTION IN LIMINE NO. 4 TO EXCLUDE TESTIMONY OF G. HOKKANEN
58166734.v2

1  Whittaker site must go through the Hokkanen Maginot wall.  As clearly shown in

2  Figure 42 above, perchlorate contamination spread from the multiple

3  contamination areas from the Whittaker site and created a contamination plume

4  that extends at least 14,000 feet to the west of the site.  There is clearly

5  contamination to the North and South of the Hokkanen Maginot wall.  Mr.

6  Hokkanen admits that VOCs and Perchlorate are found in the same source areas

7  and travel in the same pathways.  Hr. Hokkanen does not explain or even consider

8  the alternative pathways.

9        Mr. Hokkanen only needed to look at Whittaker's own consultant (AECOM)

10  groundwater monitoring reports that show that contamination flows to the north

11  and south of the Hokkanen Maginot wall.  Gee Decl. ISO Mtns. Ex. AA

12  (Hokkanen Depo. Ex. 316 and Ex. 318).  When asked about AECOM's Exhibit

13  316 groundwater flow diagrams, Mr. Hokkanen agreed that the AECOM flow

14  diagram contradicted his opinion that groundwater must flow through the

15  Hokkanen Maginot wall, but dismissed AECOM's depiction as a "snapshot in

16  time."

17        Q:    Does the arrows in HSU-3c appear to be moving in the west

18        southwest . . . direction from the Whittaker-Bermite site [to the south of the

19        Hokkanen Maginot wall]?

20        A:    In May of 2019, based on these water levels, that's what it indicates,

21        yes" . . . .

22        Q:    How did you determine whether the groundwater flows toward those .

23        . . monitoring wells?

24        A:    I want to preface my answer this way, that you're showing me in this

25        exhibit is one snapshot in time and . . . as a hydrogeologist, I wouldn't base

26        my analysis on one snapshot in time.  Your right . . . what this snapshot in

27        time seems to indicate a southwestern flow direction in [HSU]-3c from

28        OU-4 area of the Bermite site."

Gee Decl. ISO Mtns. Ex. J at 119:124:9 (Hokkanen Depo. Excerpts).

However, in reviewing AECOM's groundwater monitoring report over the past 10 years, the groundwater flow in HSU-3c has consistently moved in the west southwest direction to the south of the Hokkanen Maginot wall. *See* Gee Decl. ISO Mtns. Ex. Z (AECOM Flow Diagrams). Similarly, groundwater flow diagrams for the HSU 3a flowed to the north of the Hokkanen Maginot wall for the past 9 years. Gee Decl. ISO Mtns. Ex AA (Hokkanen Depo. Ex. 318); Ex Z (AECOM Flow Diagrams). A clear depiction of groundwater flow around the west border of the Hokkanen Maginot wall is shown in Gee Decl. ISO Mtns. Ex. F at 31 (Stanin Rebuttal Report).

In summary, Mr. Hokkanen used three monitoring wells on the west side of the Whittaker site to create an illusion that VOCs cannot migrate off of the Whittaker site, but failed to evaluate the obvious alternatives – that is, there are numerous pathways around the Hokkanen Maginot wall. The existence of alternative pathways depicted by Whittaker's own consultants is consistent with the 14,000 foot perchlorate plumes and the corresponding 5,600 foot TCE plume that have impacted SCV Water's Saugus wells.

### C. Hokkanen's conclusion that the zone of influence for V-201 and V-205 does not reach the Whittaker site is also contrary to AECOM's analysis.

Mr. Hokkanen argues that VOC's cannot reach SCV Water wells because the zone of influent does not reach the Whittaker Bermite site. To support his conclusion, he uses an outdated 2004 particle tracking diagram developed by CH2MHill prepared for the Army Corp of Engineers to demonstrate that the operation of the two closest wells to the Whittaker site (Saugus 1 and 2) to contain the perchlorate plume from the Whittaker Bermite site from contaminating V-201 and V-205. Since 2004, much more data has been collected both from the Whittaker Bermite site and in the groundwater west of the Whittaker site that both Whittaker and SCV Water consultants have used to refine the particle tracking

1   model.  The most recent particle tracking model presented by AECOM to SCV

2   Water and its consultants on February 26. 2019 clearly show that the capture zone

3   for V-201 and B-205 clearly reach and extend through the Whittaker site.  Gee

4   Decl. ISO Mtns. Ex X at 60 (Powerpoint Presentation).

5       Even if the 2004 particle tracking model was still valid (which it is not), Mr.

6   Hokkanen failed to consider that the Saugus 1 and 2 wells were shut down from

7   1997 to 2010/2011 due to perchlorate contamination from the Whittaker site.  The

8   model, which was used to determine if Saugus 1 and 2 could be operated to

9   prevent contamination from reaching V-201 and V-205 is not valid during the time

10   period that Saugus 1 and 2 were operating.  Gee Decl. ISO Mtns. Ex. F at 13

11   (Stanin Rebuttal Report).

12
13
       **D.**   **Mr. Hokkanen Cannot Explain how VOCs from a low pressure
dry cleaner can contaminate SCV Water's high-pressure
distribution system**

14       Mr. Hokkanen identifies Flamingo Cleaners as the one possible source of

15   contamination to SCV Water's high-pressure distribution system.  However, it is

16   clear that he did not evaluate and could not explain how a dry cleaner that uses

17   PCE to spray onto clothes at low pressure can overcome the distribution system

18   pressure.

19
20
   Q     Are you aware that the pressure within a water distribution system is
approximately 150 to 175 pounds per square inch?

21
22
23
   A     . . . I have a civil engineering degree, and I studied water and
wastewater and distribution systems and this sort of thing.  So, yes, I do
know that these pipes are pressurized.

24
25
26
27
   Q     Okay.  And the sites that you . . . referenced that may be contributing
to the PCE  contamination such as dry-cleaners, do they have any facilities --
or any tanks or pipes or anything at a dry cleaner that can produce 150 to
175 pounds per [square inch] pressure?

28   A:     I don't believe so, no.

1    Q:    So did you do a fate and transport analysis to determine whether a dry

2    cleaner can put TCE [PCE] contamination [into a] 150 to 175 pound

3    distribution system?

4    A:    Did I do an analysis like that, no.

5    Q:    And how did you conclude that these other potential sources of PCE

6    could contaminate the distribution system?

7    A:    I believe Mr. Leserman testified that he felt that one of the dry

8    cleaners, Flamingo Cleaners, could have been the source of the high PCE

9    detections in one of the turnouts. . .

10    Q:    Okay. And did your read Mr. Leserman's report?

11    A:    I think I did, yes, once.  It wasn't a very long report if I remember

12    right. . .

13    Q:    Okay. And how else can PCE get into a pressurized distribution

14    system?

15    A:    I'm not sure.

16    In other words, Mr. Hokkanen's opinion is based on a single reading of an

17 investigation report and he did not give any thought as to whether low pressure

18 PCE from a dry cleaner can contaminate a pipeline operating at a much higher

19 pressure.  Clearly, Mr. Hokkanen was not being as careful in rendering this opinion

20 as he would be a hydrogeologist that analyzes the fate and transport of

21 contamination and his opinion should be excluded.  *See Kumho Tire Co. v.*

22 *Carmichael*, 119 S.Ct. 1167, 1176 (1999) (*Daubert* requires the trial court to

23 assure itself that the expert "employs in the courtroom the same level of

24 intellectual rigor that characterizes the practice of an expert in the relevant field").

25 **IV.   CONCLUSION**

26    Mr. Hokkanen failed to consider obvious alternative theories and was not as

27 careful as a professional conducting his work outside of his paid litigation

28 consulting. His Opinions 4, 5, and 9 are unreliable and misleading and should be

1   excluded from trial.

2

3   Date: July 13, 2021                              NOSSAMAN LLP

4                                                    FREDERIC A. FUDACZ
                                                     BYRON GEE
5                                                    PATRICK J. RICHARD
                                                     RAVEN McGUANE
6

7                                                    By:  /s/ Byron Gee
                                                            Byron Gee
8                                                    Attorneys for Plaintiff SANTA
                                                     CLARITA VALLEY WATER
9                                                    AGENCY

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFF'S MOTION IN LIMINE NO. 4 TO EXCLUDE TESTIMONY OF G. HOKKANEN
58166734.v2

1

## **WHITTAKER'S OPPOSITION TO SCVWA'S MIL # 4: G. HOKKANEN**

## I.  **INTRODUCTION**

The fact that Santa Clarita Valley Water Association (SCVWA) disagrees with the opinions of Whittaker's expert Mr. Gary Hokkanen is not a basis for the Court to exclude them under *Daubert v. Merrell Dow Pharms.*, Inc., 509 U.S. 579 (1993) and Federal Rule of Evidence 702.  The reasoning and methodology applied by Mr. Hokkanen is based on accepted scientific principles, field data, and a published methodology that has been peer reviewed in publications and accepted in the field of Hydrology.  This Court said as much in its April 5, 2021 Order Regarding Parties Motions and Cross Motions for Partial Summary Judgement Dkt. 272 (pp. 4-6).  The opinions of Mr. Hokkanen will assist the Court and the jury in determining the central issues in this case.

## II.  **THE STANDARD FOR ADMITTING EXPERT TESTIMONY**

SCVWA incorrectly seeks to exclude the opinions of Whittaker's expert Mr. Gary Hokkanen under *Daubert* and Federal Rule of Evidence 702 by claiming these opinions are based upon a flawed methodology, are not the product of reliable scientific principles and accepted methods in the field of Hydrology. This argument crumbles when the basis for each of the opinions challenged by SCVWA are examined.

The fact that SCVWA disagrees with the opinions of Mr. Hokkanen is not a proper basis for the Court to exclude them under *Daubert*. *Kennedy v. Collagen Cor*p., 161 F.3d 1226, 1230 (9th Cir. 1998), *cert. den*. 526 U.S. 1099 (stating that a court "should not exclude expert testimony simply because it disagrees with the conclusions of an expert" and "[t]he [*Daubert*] test is whether or not the reasoning is scientific and will assist [the trier of fact]."

Even assuming for the sake of argument that some of these expert opinions put forth by Mr. Hokkanen are flawed in methodology (and Whittaker in no way concedes this point), "'[d]isputes as to the strength of [an expert's] credentials, faults in his use of [a particular] methodology, or lack of textual authority for his

opinion, go to the weight, not the admissibility, of his testimony.'" *Id*. (*quoting McCullock v. H.B. Fuller Co.*, 61 F.3d 1038, 1044 (2d Cir.1995)).

In determining whether an expert's testimony is reliable and based upon the scientific method, the Ninth Circuit, in *Edwin Hardeman v Monsanto Company*, 997 F.3d 941, 960 (9th Cir. May 14, 2021) held:

> [w]hen determining reliability, district court judges can consider the following non-exclusive factors: (1) "whether the theory or technique employed by the expert is generally accepted in the scientific community;" (2) "whether it's been subjected to peer review and publication;" (3) "whether it can be and has been tested;" and (4) "whether the known or potential rate of error is acceptable."

*Daubert v. Merrell Dow Pharms., Inc.,* 43 F.3d 1311, 1316 (9th Cir. 1995) (citing *Daubert*, 509 U.S. at 593– 95).

"Th[is] inquiry is 'flexible,'" *Wendell*, 858 F.3d at 1232 (quoting *Daubert*, 509 U.S. at 594), and "should be applied with a 'liberal thrust favoring admission,'" *Messick v. Novartis Pharms. Corp.,* 747 F.3d 1193, 1196 (9th Cir. 2014) (quoting *Daubert,* 509 U.S. at 588, 113 S.Ct.2786)." "Scientific evidence is reliable when "the principles and methodology used by an expert are grounded in the methods of science." *Clausen v. M/V New Carissa*, 339 F.3d 1049, 1056 (9th Cir. 2003)." *Hardeman, supra,* 997 F.3d 941at 960.

The work done in support of the testimony given by Mr. Hokkanen in this case meets all of these factors, cited both in the 2000 Advisory Notes to Federal Rule of Evidence 702 and by the Ninth Circuit in its *Hardeman*.   Furthermore, the principals and methods relied upon by Mr. Hokkanen are well grounded in science and widely accepted and applied by experts in the field. That SCVWA may disagree with the methodology used by or the conclusions reached by Mr. Hokkanen is not a basis to exclude the opinions offered. *Kennedy,* 161 F.3d  at 1230.

In removing any lingering doubt about the admissibility of reliable expert

testimony the Ninth Circuit made it clear that: "[T]he interests of justice favor leaving difficult issues in the hands of the jury and relying on the safeguards of the adversary system . . . to 'attack[] shaky but admissible evidence.'" *Wendell,* 858 F.3d at 1237 (quoting *Daubert,* 509 U.S. at 596) (alteration in original). The Supreme Court has not directed courts to follow a different rule since it first decided Daubert almost 28 years ago." *Hardeman, supra,* at 962.

That one side disagrees with the opinion of the other sides' expert is not a basis for the Court to exclude them under *Daubert.* The test is whether or not the reasoning is scientific and will assist the trier of fact. *Kennedy*, *supra*, 161 F.3d at 1230. The reasoning and methodology of Whittaker's expert Mr. Hokkanen is based on hard science, field data and the application of a widely accepted methodology. Mr. Hokkanen's opinions and testimony will accomplish exactly what *Daubert* counsels, it will assist the Court and the jury in determining the central issues in this case.

## III.   **ARGUMENT**

SCVWA incorrectly seeks to exclude Mr. Hokkanen's Opinions 4, 5 and 9 under *Daubert* and Federal Rules of Evidence, Rule 702 by claiming these opinions employ flawed methodology and are not the product of reliable principles and methods. This argument crumbles when the basis for each of these opinions are examined:

- Hokkanen Opinion 4 is based on the provable scientific facts that perchlorate migrates at the same rate as groundwater, PCE and TCE migrate up to 10 times slower than groundwater, and is also based upon detection levels of these VOCs at various wells at issue
- Hokkanen Opinion 5 is based on the capture zones for well V-201 and V-205 developed by CH2MHill
- Hokkanen Opinion 9 is based on SCVWA s own measurements of chloride concentrations in both the effluent from its perchlorate treatment plant and the water in Castaic Lake as compared to SCVWA's measurement of chloride concentrations at its water delivery turnouts.
  1.

**A.   THE COURT PREVIOUSLY RULED THAT THE MR. HOKKANEN'S OPINIONS MEET THE STANDARD FOR THEIR ADMISSIBILITY.**

In its April 5, 2021 Order Regarding Parties Motions and Cross Motions for Partial Summary Judgement Dkt. 272 (pp. 4-6), this Court found that Mr. Hokkanen's Opinions were reliable and credible. In so ruling the Court addressed, and rejected, the very issues SCVWA argues in its motion in limine to exclude Mr. Hokkanen's Opinions. Based upon this alone Mr. Hokkanen's Opinions meet the standards under *Daubert* and Fed. R. Evid. 702.

The Court, based on Mr. Hokkanen's opinion found that there was a genuine issue of fact as to causation that precludes summary judgement in favor of Plaintiff. Seeking to avoid this result, Plaintiff discusses at length the various problems it perceived with this expert's opinion, calling it "conclusory" and incapable of creating a genuine dispute. SCVWA MSJ Reply Brief ("SCVWA Reply"). As in the present Motion, Plaintiff argued that Defendant's expert failed to account for other possible pathways or the impact of Plaintiff's wells on the flow paths and flow rates. *Id.* at 9-13.

In rejecting the argument, the Court stated:

> To be sure, courts may grant "summary judgment against a party who relies solely on an expert's opinion that has no more basis in or out of the record than . . . theoretical speculations." *United States v. Various Slot Machines on Guam*, 658F.2d 697, 700 (9th Cir. 1981) (citation omitted). But the Court cannot conclude at this point that Defendant's expert, who provided extensive data and analysis in support of his conclusions, holds an opinion based on pure speculation. *See id.* (noting summary judgment was properly reversed when "the expert stated facts to back up his conclusion"). While Plaintiff's "numerous criticisms" of the expert's opinion "are not to be taken lightly," the "weight to be given" to that opinion "is an issue best left to the jurors to decide in trial." *Jones v. Nat'l Distillers & Chem. Corp.*, 484 F. Supp. 679, 683 (S.D.N.Y. 1979). (Footnotes omitted)."

MSJ Order at 5.

**B.    THE OPINION REGARDING TRAVEL TIME RATES MEETS THE STANDARDS FOR ADMISSIBILITY.**

Mr. Hokkanen's evaluation of the migration of TCE was based in part on groundwater data collected and analyzed by SCVWA's consultant CH2M Hill, and compared to perchlorate groundwater data also collected by CH2M Hill. The data was compared and plotted to show the relative extent of migration for both TCE and perchlorate.  The resulting analysis shows that "TCE has not migrated to the western boundary [of the Whittaker property] and beyond to the [SCVWA] production wells." Declaration of Gary Hokkanen ("Hokkanen Dcl."), attached as Exhibit 1 to Declaration of Fred M. Blum ("Blum Decl."), filed and served herewith, at ¶¶6-12.

As would be expected the comparison of the plumes shows the perchlorate plume has migrated  2 to 2.5 further than TCE, which CH2M Hill reported migrates up to 10 times slower than groundwater and in turn perchlorate. Hokkanen Dcl. para. 11-13.

The "distance traveled by TCE from the Whittaker site based on the distance traveled by perchlorate from the Whittaker site" was not calculated in my Expert Report. This calculation was not performed for two reasons. First, the TCE data, as shown in Figures 1 and 2, make this calculation unnecessary. The groundwater quality data shows TCE has not migrated as far as the western boundary of the Bermite Site or Saugus 1 and 2. Using TCE data from groundwater monitoring wells shows how far TCE has migrated from the Bermite Site.

SCVWA ignores this and instead, despite the lack of site-specific data, such as organic carbon content to determine a site-specific retardation factor, tries to calculate the distance using non-site-specific data, which is not representative of the actual TCE travel distance. Hokkanen Dcl. ¶14. Instead of using actual groundwater quality data collected in the field SCVWA calculated the hypothetical length of the TCE plume from the Hula Bowl to be 6,200 feet. As discussed above,

1   the groundwater quality data does not support this calculation.

2   Groundwater production well V-201 is approximately 9,400 feet

3   downgradient from the Hula Bowl and V-205 is approximately 11,200 feet

4   downgradient from the Hula Bowl. Both wells are further from the Hula Bowl than

5   the SCVWA's hypothetical TCE plume distance. SCVWA's calculation also does

6   not account for the travel time from a surface release through the area above the

7   groundwater (called the vadose or unsaturated zone) to the groundwater. TCE also

8   moves slower than perchlorate in this zone.

9   Not surprisingly, SCVWA's experts disagree with Mr. Hokkanen's opinion.

10   SCVWA ignored the field data collected from the wells and used a hypothetical

11   calculation to reach a conclusion.  Mr. Hokkanen relied upon data to reach his

12   conclusion.  SCVWA does not provide any basis for concluding that travel time

13   analysis is an essential part of a causation analysis when extensive groundwater

14   data is considered.  That SCVWA disagrees with Mr. Hokkanen's methods and

15   conclusions is not a basis to exclude Mr. Hokkanen's opinion. *Kennedy*, 161 F.3d

16   at 1230.

17   **C.**   **THE OPINION REGARDING MIGRATION PATHWAYS RATES MEETS**

18   **THE STANDARDS FOR ADMISSIBILITY.**

19   In forming his opinion with regard to the migration pathway for VOCs, Mr.

20   Hokkanen examined and analyzed "water level and groundwater quality data

21   collected from and in the vicinity of the [Whittaker property].  Hokkanen Dcl. ¶18.

22   SCVWA provides not basis for concluding that this is an improper methodology.

23   SCVWA proved no expert declaration.  No reference to a treatise.  And no

24   reference to a regulatory guidance document.  All it relies on is statements from its

25   attorneys.

26   Mr. Hokkanen's review of the data shows the migration pathways for VOCs

27   and perchlorate, as shown in Figures 1 and 2.  *Id.* at ¶¶8, 11 and 12. SCVWA

28   claims that VOCs did not migrate through the western boundary as perchlorate did,

- 16 -

Case No. 2:18-cv-6825 SB (RAOx)

but, instead, decided to take a different route either north or south of the western boundary. The water quality data does not support this hypothesis. *Id.* at ¶¶ 19-20. Mr. Hokkanen, contrary to SCVWA's contentions, did not rely upon just three wells.  As set forth in detail in his expert report he considered all of the available data. *Id.* at ¶¶ 21-25.

SCVWA's hypothesis is that VOCs and perchlorate migrated along alternative pathways with VOCs going their own way. This theory runs directly contrary to the Report of its own expert - Dr. Mark Trudell.  Dr. Trudell stated that VOCs and perchlorate "are migrating on exactly the same groundwater flow path." Report of Mark Trudell, at 16 (Ex. 2 to Blum Decl.). That SCVWA now disagrees with Mr. Hokkanen's opinion on groundwater migration pathways does not mean that Mr. Hokkanen ignored the possibility of "alternatives."  On the contrary, Mr. Hokkanen considered water quality data collected from the wells in the area, and this data led him to conclude the pathways for perchlorate and VOCs would be the same.

Once again, the fact that that SCVWA's position is in disagreement with Mr. Hokkanen's data-based analysis and conclusion is not a basis to exclude Mr. Hokkanen's opinion. *Kennedy*, *supra*, 161 F.3d at 1230.

**D.    The Opinion Regarding V-201 And V-205 Meets The Standards For Admissibility.**

In his Expert Report Mr. Hokkanen discusses in detail the groundwater monitoring well data in the vicinity of V-201 and V-205 that support the presence of other potential unidentified sources of VOCs. He also examined the results of groundwater flow modeling by CH2M Hill, a Water Agency consultant, to determine that capture zones for V-201 and V-205 did not encompass the [Whittaker property]. Hokkanen Dcl. ¶¶29-30. Furthermore, in rebutting SCVWA's expert Mark Trudell he examined water quality data from V-201 and V-205 and concluded that VOCs detected in these wells could not have migrated

1    from the [Whittaker property]. *Id*. at ¶ 31.

2    In reaching this opinion Mr. Hokkanen, evaluated groundwater quality data

3    obtained from the California State Water Resources Control Board GAMA

4    Groundwater Information System. This data showed that TCE was first detected in

5    V-201 in 2017 and in 2012 in V-205.  Perchlorate was first detected in V-201 in

6    2010 and first detected in V-205 in 2015. Due to retardation, if both perchlorate

7    and TCE were migrating to V-201 and V-205 from the Bermite Site, TCE should

8    take at least twice as long to arrive at these wells as perchlorate. Instead, TCE was

9    detected in V-205 before perchlorate was detected. And TCE was detected in V-

10   205 before being detected in V-201, although V-205 is located downgradient and

11   further away from the [Whittaker property].   *Id*. at ¶33.

12   Further support for this opinion comes from SCVWA's Dr. Trudell.  He

13   testified that he could not conclude that VOC detections in V-201 and V-205 were

14   from the Bermite Site. He testified that the VOC detections were likely from a

15   source other than the [Whittaker property]. *Id*. at ¶ 35.

16   There is no basis to exclude Mr. Hokkanen's opinion just because SCVWA

17   disagrees with the opinion.  This is especially so when SCVWA's expert Mark

18   Trudell concluded that the VOC's in SCVWA's wells could not have emigrated

19   from the Whittaker property.

20       **E.      The Opinion Regarding Flamingo Cleaners Meets The Standards**

21              **For Admissibility.**

22   In reaching this opinion Mr. Hokkanen cited a Castaic Lake Water Agency

23   report and testimony by Mr. Leserman, Senior Engineer with the Santa Clarita

24   Valley Water Agency regarding the detection of VOC Castaic Lake s in the water

25   distribution system.  *Id*. at ¶36.  The Castaic Lake report stated that "CLWA is

26   confident that Saugus 1 and 2 wells are not the source of the recent episodes of

27   high PCE detection." *Id*. at ¶37. Mr. Leserman, Senior Engineer with the Santa

28   Clarita Valley Water Agency, testified that the PCE detections at SC-1 had nothing

to do with the Whittaker property. *Id*. at ¶38.  Flamingo Cleaners was identified as the most likely source.  Investigation into Elevated Tetrachloroethylene (PCE) levels at CLWA SC-1 Turnout March 21, 2013, at 4 (Ex. 3 to Blum Decl.).

PCE concentrations at the SC-1 turnout (the piping that delivers water to residents) was 14 times higher than the concentrations measured in the effluent from the Perchlorate Treatment Plant that treated water pumped from Saugus-1 and Saugus-2 leading to the logical conclusion that groundwater was not the source of the VOC contamination. A conclusion reached by SCVWA on several occasions. Hokkanen Dcl. at ¶ 38.

## IV.  CONCLUSION

There is no basis upon which to exclude Mr. Hokkanen's Opinions. A mere disagreement among experts is not sufficient to do so. *Kennedy v. Collagen Corp*., 161 F.3d 1226, 1230 (9th Cir. 1998), *cert. den*. 526 U.S. 1099.  And this Court has previously ruled that Mr. Hokkanen's Opinions are reliable and credible, and therefore admissible.

1    **REPLY IN SUPPORT OF PLAINTIFF'S MIL # 4 - G. HOKKANEN**

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## I.    INTRODUCTION

As a preliminary matter, much of Whittaker's opposition relies on the Declaration of Gary Hokkanen that is attached to the Blum declaration.  The language cited in Whittaker's opposition does not match the declaration and/or is not contained in the Hokkanen declaration.  All arguments based on the Hokkanen declaration lack foundation and should be stricken from Whittaker's opposition.

## II.    MR. HOKKANEN'S OPINION 4 OMITS A SIMPLE BUT CRITICAL CALCULATION – THE DISTANCE TCE MOVES FROM THE WHITTAKER SITE – AND FAILS TO CONSIDER GROUNDWATER FLOW DIRECTION

### A.    Hokkanen's Opinions 1-4 allowed Mr. Hokkanen to calculate TCE travel distance, but he declined to do so

Whittaker argues that SCV Water seeks to exclude Mr. Hokkanen's testimony because its experts disagree with Mr. Hokkanen.  Whittaker is wrong. Both SCV Water experts and Mr. Hokkanen agree that:

- Perchlorate and VOCs were generally released from the same source areas on the Whittaker site.  Gee Decl. ISO Replies, Ex. B at Op. 1 (Hokkanen Expert Report).

- Perchlorate and VOCs released from the source areas followed the same migration pathway in the unsaturated zone and in groundwater. Gee Decl. ISO Replies, Ex. B at Op. 2 (Hokkanen Expert Report).

- Due to the different migration rates of perchlorate and VOCs, releases of perchlorate from the source areas have migrated faster and further than VOCs.  See Gee Decl. ISO Mtns., Ex. EE at Op. 3 (Hokkanen Expert Report).

- While Mr. Hokkanen and Dr. Trudell utilize different methodologies to determine the relative rate of TCE and perchlorate travel through groundwater, both agree that the perchlorate moves 2 to 2.5 times the rate of TCE. (Gee Decl. ISO Replies, Ex. B at Op. 4 (Hokkanen Expert Report) and Gee Decl. ISO Mtns., Ex. H at 2 (Trudell Rebuttal

Expert Report).  (Whittaker counsel, of course, uses the relative rates of perchlorate and "PCE" (and not "TCE") in its opposition to conflate the calculation.)

It is also uncontested that the perchlorate plume has extended at least 14,000 feet from the Whittaker site.  However, Mr. Hokkanen inexplicably renders a travel distance opinion without conducting an elementary travel distance calculation for TCE to determine the distance TCE travels from the site.  Opinion 4 states that "Although perchlorate has impacted . . . groundwater production wells [14,000 feet] downgradient of the Bermite site, VOCs from the Bermite site have not migrated [7,000 feet[3] using Mr. Hokkanen's opinion that perchlorate moves twice the rate of VOCs] has not impacted SCV Water wells [that are located less than 7,000 feet away]."  Whittaker contends, without supporting evidence, that Mr. Hokkanen omitted the calculation because of infrequent TCE detections in the three wells along the western border of Whittaker site.  However, as demonstrated in the ASVAB for Dummies exemplar, the travel distance for TCE is based only on travel rates for TCE and perchlorate and known perchlorate travel distance – contamination sample results are not a factor in the distance travel calculation.  Thus, even if Whittaker's unsupported assertion regarding Mr. Hokkanen's omission of the travel distance is true, contamination data is not a factor in the VOC travel calculation of ½ of 14,000 feet equals 7,000 feet.

Mr. Hokkanen's fourth opinion should be excluded, not because of any disagreement among the experts, but because Mr. Hokkanen omitted the distance

---

[3] For simplicity, the 7000 feet calculation is based on perchlorate traveling twice as far as TCE.  Since Mr. Hokkanen provided a range of perchlorate traveling 2-2.5 times faster TCE, the TCE travel distance is between 5,600 feet and 7,000 feet. See exemplar distance problem from *ASVAB/AFQT for Dummies*, 2nd Edition ("ASVAB for Dummies"), at https://www.dummies.com/test-prep/asvab-test/how-to-solve-travel-problems-on-the-asvab/. "If two trains are traveling in the same direction as each other but at different rates of speed, one train travels farther in the same time than the other travels. The distance between the two trains is the difference between the distance traveled by train A and the distance traveled by train B."

1    travel calculation from his opinion.

2    **B.    Mr. Hokkanen's Premise that groundwater leaving the Whittaker**
3    **site must flow through the Hokkanen Maginot Wall is contradicted by Mr. Hokkanen himself**

4    As stated in the underlying motion, Mr. Hokkanen failed to consider years of

5    groundwater flow data provided by AECOM to opine that groundwater flow must

6    go through the Hokkanen Maginot Wall to reach Saugus 1 and 2.  Upon review of

7    the evidence provided in Blum Declaration in support of Whittaker's opposition to

8    SCV Water's motion to exclude Mr. Hokkanen's opinion 4, Whittaker provided

9    evidence that Mr. Hokkanen himself contradicted his Maginot Wall assertion.  On

10   PDF page 60 of Mr. Blum's declaration (page 14 of the Hokkanen expert report),

11   Mr. Hokkanen states that "Figure 15 shows the groundwater flow direction in the

12   HSU S-IIIa (one of the largest HSUs) is west to northwest.  Figure 15 of his report

13   shows groundwater flow around the Hokkanen Maginot wall towards SCV Water's

14   wells.  See Gee Decl. ISO Replies, Ex. B, Figure 15 (Hokkanen Expert Report).

15   **III.    WHITTAKER DOES NOT ADDRESS SCV WATER'S REASONS**
16   **FOR EXCLUDING HOKKANEN OPINION 5.**

17   Whittaker did not and cannot dispute SCV Water's motion to exclude Mr.

18   Hokkanen's Opinion 5.  Mr. Hokkanen's opinion is based on an outdated 2004

19   CH2MHill Area of Influence diagram that includes the influence of Saugus 1 and 2

20   on the Area of Influence for well V-201.  Mr. Hokkanen completely fails to

21   consider that Saugus 1 and 2 did not operate between 1997 and 2011 and that the

22   two wells would not have intercepted groundwater contamination during the time

23   that they did not operate.  Mr. Hokkanen is obligated to be as careful in analyzing

24   information as an expert as he would be in his normal consulting activities, and a

25   glaring omission of 14 years of non-operation (since the construction of the wells

26   32 years ago) suggest that he was not being careful.  In response to Whittaker's

27   assertion that his opinion is based on groundwater flow calculations—calculations

28   that he did not include in Opinion 4—Mr. Hokkanen did not consider that Saugus 1

1  and 2 would have drawn groundwater from the Whittaker site during its operation

2  between 1989 and 1997, and then would have slowed down to its natural flow rate

3  from 1997 to 2011.  Again, Mr. Hokkanen was not being as careful with his expert

4  analysis as a hydrogeologist would be in his normal consulting activities because

5  he did not consider 14 years of non-operation.

6  **IV.    WHITTAKER'S OPPOSITION DOES NOT ADDRESS SCV**
   **WATER'S MOTION TO EXCLUDE OPINION 9 AND THUS IT**
7  **SHOULD BE EXCLUDED**

8        SCV Water seeks to exclude Mr. Hokkanen's opinion because it simply

9  regurgitates the findings of a percipient witness report for which the witness

10  himself was uncertain as to whether Flamingo Cleaners was a source of PCE

11  contamination in the distribution system.  Mr. Hokkanen admitted that he read the

12  short report once sometime prior to his deposition and did no further analysis on

13  the information contained in the report. *See Baker v. Firstcom Music*, No.

14  A16CV08931VAPJPRX, 2018 WL 2676636, at *2 (C.D. Cal. May 8, 2018)

15  ("First, experts are expected to verify the reliability of the data underlying their

16  conclusions independently instead of simply adopting the representations of an

17  interested party."); *Cholakyan v. Mercedes–Benz USA, LLC*, 281 F.R.D. 534 (C.D.

18  Cal. 2012) ("An expert can appropriately rely on the opinions of others if other

19  evidence supports his opinion and the record demonstrates that the expert

20  conducted an independent evaluation of that evidence"). Mr. Hokkanen's opinion

21  number 9 should be excluded because he simply read the report and incorporated

22  the conclusions of the report without verifying the reliability of the report or

23  independently evaluating the analysis and credibility of the report.  He only

24  determined that the underlying report was flawed during his deposition, when he

25  was asked about low pressure contaminants flowing into a high pressure

26  distribution system.

27  **V.    CONCLUSION**

28        For the foregoing reasons, Mr. Hokkanen's opinions 4, 5, and 9 should be

1   excluded.

2

3   Date: July 23, 2021                    NOSSAMAN LLP
                                           FREDERIC A. FUDACZ
4                                          BYRON GEE
                                           PATRICK J. RICHARD
5                                          RAVEN McGUANE

6                                          By:  /s/ Byron Gee
                                                   Byron Gee
7
                                           Attorneys for Plaintiff SANTA
8                                          CLARITA VALLEY WATER
                                           AGENCY
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28