NOSSAMAN LLP
FREDERIC A. FUDACZ (SBN 50546)
ffudacz@nossaman.com
BYRON GEE (SBN 190919)
bgee@nossaman.com
PATRICK J. RICHARD (SBN 131046)
prichard@nossaman.com
RAVEN McGUANE (SBN 336505)
rmcguane@nossaman.com
777 S. Figueroa Street, 34th Floor
Los Angeles, CA 90017
Telephone:  213.612.7800
Facsimile:   213.612.7801

Attorneys for Plaintiff SANTA CLARITA VALLEY
WATER AGENCY

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SANTA CLARITA VALLEY WATER AGENCY,<br><br>            Plaintiff,<br><br>      vs.<br><br>WHITTAKER CORPORATION and DOES 1-10, Inclusive,<br><br>            Defendant.<br><br>AND RELATED CASES | Case No:  2:18-cv-6825 SB (RAOx)<br><br>*Assigned to Hon. Stanley Blumenfeld, Jr.*<br><br>**DECLARATION OF BYRON GEE IN SUPPORT OF SCV WATER'S REPLIES**<br><br>Date Action Filed: August 8, 2018<br>Trial Date:  August 24, 2021 |

I, Byron P. Gee, declare as follows:

1. I am an attorney and partner at the law firm of Nossaman LLP, and counsel of record for Plaintiff Santa Clarita Valley Water Agency ("SCV Water") in the above-captioned action. I am a member in good standing of the State Bar of California and have been admitted to practice before this Court. I have personal knowledge of the facts set forth in this Declaration, and, if called as a witness, could and would testify competently to such facts under oath. I make this Declaration in support of SCV Water's Reply Briefs in Support of SCV Water's Motions in Limine, filed on July 23, 2021.

2. Prior to exchanging these motions in limine, the parties attempted to work out the evidentiary issues to which Plaintiff's motions are directed by meeting and conferring as required by the Court's Trial and Pretrial Order. Attached hereto as Exhibit A is a true and correct copy of correspondence from Plaintiff to Defendant discussing the motions Plaintiff intended to file and seeking to confer regarding Plaintiff's intended motions, dated July 6, 2021.

**Expert Report**

3. Attached hereto as Exhibit B is a true and correct copy of excerpts of the expert report of Gary Hokkanen, dated August 3, 2020.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that this declaration was executed on July 23, 2021 at Los Angeles, California.

BYRON P. GEE

# EXHIBIT A



**ATTORNEYS AT LAW**

777 South Figueroa Street
34th Floor
Los Angeles, CA  90017
T 213.612.7800
F 213.612.7801

Raven McGuane
D 213.612.7819
rmcguane@nossaman.com

Refer To File # 270619-0001

**VIA EMAIL**

July 6, 2021

Fred Blum, Esq.
fblum@behblaw.com

Michael Gallagher, Esq.
mgallagher@behblaw.com

Earl Hagstrom, Esq.
ehagstrom@behblaw.com

Marilyn Jenkins, Esq.
mjenkins@behblaw.com

Daniel E. Trowbridge, Esq.
dtrowbridge@behblaw.com

Bassi, Edlin, Huie & Blum LLP
500 Washington Street, Suite 700
San Francisco, CA 94111
Telephone: (415) 397-9006
Facsimile: (415) 397-1339

   Re: Plaintiff's Motions in Limine

Counsel:

  Pursuant to the meet and confer requirement for motions in limine required by Judge Blumenfeld's Trial and Pretrial Order, Plaintiff Santa Clarita Valley Water Agency ("SCV Water") provides the below information regarding evidence SCV Water seeks to exclude.  If the parties are unable to reach a resolution to these evidentiary issues, Plaintiff intends to file motions in limine concerning the following evidentiary issues.

**Evidence Plaintiff Seeks to Exclude**

1. All testimony related to the Saugus Industrial Center ("SIC").  SIC was dismissed with prejudice pursuant to the Court's finding of a good faith settlement.  The court ruled that SIC's liability would be apportioned using the pro tanto approach and thus SIC's proportional share of liability is irrelevant.  FRE 702(a) requires that expert testimony "help the trier of fact to understand the evidence or to determine a fact in issue." Raising

58129489.v1

nossaman.com

July 6, 2021
Page 2

      SIC's liability will increase the time of trial with no corresponding benefit to the parties or the court.

2. All expert opinion to the effect that "SCV Water 'should have known" of potential industrial sources that had the 'potential' to contaminate groundwater." Such opinions are speculative, irrelevant, and unfairly prejudicial, and therefore fail to meet the admissibility standards of FRE 702.

3. Expert opinions regarding migration of contamination that employ flawed methodology, specifically Gary Hokkanen's Opinion 4 and Anthony Daus's Opinion 4, which rely on the omission of plausible pathways, and Hokkanen Opinion 5, which fails to consider perchlorate contamination at V-201 and V-205. Expert testimony is only admissible if the testimony is "the product of reliable principles and methods." FRE 702(c); *see also*, *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 593-94 (1993); FRE 702 Advisory Committee's Notes.

4. Expert opinions to the effect that Whittaker has complied with DTSC orders and cleaned up the Whittaker Site under the direction of DTSC, specifically Daus Opinion 1. Such opinions employ flawed methodology that fails to consider the prior history of the Whittaker Site. Expert testimony is only admissible if the testimony is "the product of reliable principles and methods." FRE 702(c); *see also*, *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 593-94 (1993); FRE 702 Advisory Committee's Notes.

5. Strike the expert report of Duane Steffey, who submitted an expert report without being disclosed as an expert as required by FRCP 26(a)(2).

6. Expert opinion to the effect that other previously unidentified sources could be contributing to VOCs in SCV Water's distribution system, including Hokkanen Opinion 9. This opinion employs flawed methodology that failed to conduct individual analysis of the viability of another previously unidentified source and explain how the alternate source could have led to detections in SCV Water's distribution system. Expert testimony is only admissible if the testimony is "the product of reliable principles and methods." FRE 702(c); *see also*, *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 593-94 (1993); FRE 702 Advisory Committee's Notes.

7. Expert opinion to the effect that SCV Water should have known that wells that are not operating could result in cross contamination across HSUs, including Luis Opinion 2. Luis Opinion 2 is unfairly prejudicial and without any probative, and Luis employs flawed methodology in reaching his opinion. Expert testimony is only admissible if the testimony is "the product of reliable principles and methods." FRE 702(c); *see also*, *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 593-94 (1993); FRE 702 Advisory Committee's Notes.

July 6, 2021
Page 3

Sincerely,

/s/Raven McGuane

Raven McGuane
Nossaman LLP

RM3:

58129489.v1

# EXHIBIT B



# Expert Report of Gary Hokkanen

In the Matter of:

Santa Clarita Valley Water Agency, v. Whittaker Corporation and Does 1-10, Inclusive

United States District Court, Central District of California
Case No. 2:18-CV-6825-GW (RAOx)

Whittaker Corporation v. Keysor-Century Corporation and Saugus Industrial Center

United States District Court, Central District of California
Case No. 2:18-CU-06825-GW-RAO

Prepared by:

Gary Hokkanen, M.S.

Principal Hydrogeologist

EKI B90086.00

3 August 2020

**EKI ENVIRONMENT & WATER, INC.**

www.ekiconsult.com

505 14th Street, Suite 250 • Oakland, CA 94612

## 5. OPINIONS

### 5.1 Opinion 1

**The investigations at the Bermite Site determined that perchlorate and VOCs were generally released from the same source areas.**

As discussed in Section 4.2.2.2, the remedial investigations conducted at the Bermite Site identified areas where soil was impacted by perchlorate and VOCs. These areas, called source areas, are the primary areas where perchlorate and VOCs migrated downward through the unsaturated zone and entered groundwater. Source areas were identified in all six OUs (OU-1 to OU-6) on the Bermite Site. The investigations concluded that the source areas were essentially the same for perchlorate and VOCs. This means that the areas where perchlorate and VOCs migrated through the unsaturated zone and entered the groundwater beneath the Bermite Site were essentially the same.

CH2MHill, the Water Agency's consultant, agreed in the VOC Report stating: "In addition, many of the VOC and perchlorate source areas on the former Whittaker Bermite Facility are collocated (Figure 5-1), suggesting similar sources and migration pathways could exist for perchlorate and TCE impacts in Saugus formation groundwater."

### 5.2 Opinion 2

**Perchlorate and VOCs released from the source areas on the Bermite Site followed the same migration pathway in the unsaturated zone and in groundwater.**

Perchlorate and VOCs were released at the Bermite Site from the same source areas. The perchlorate and VOC releases migrated downward through the unsaturated zone to the water table and entered the groundwater. Upon entering the groundwater, these dissolved chemicals begin slowly moving with and in the direction the groundwater was moving. It is well established that chemicals dissolved in groundwater will simply move along with and in the same direction as the groundwater. For the Bermite Site this means that the chemicals that were released and migrated downward to the water table followed the same pathway as they migrated downgradient with the groundwater. In other words, perchlorate, TCE, PCE and other chemicals released at the Bermite Site moved along the same pathway.

The perchlorate data collected from groundwater monitoring wells on and off the Bermite Site and from groundwater production wells show that perchlorate from source areas on the



3 August 2020
EKI B90086.00
Page 49

Bermite Site has migrated in groundwater in a northwesterly direction. Figure 42 is Figure 5-4 from the CH2MHill VOC Report and shows the extent of the perchlorate plume from the Bermite Site (the orange area of Figure 42). VOCs from the Bermite Site followed the same pathway as the perchlorate.

The CH2MHill VOC Report hypothesized that the VOCs from the Bermite Site migrated along different pathways than the perchlorate (see Figure 5-5 in the CH2MHill VOC Report). Specifically, the CH2MHill VOC Report hypothesizes that VOCs did not migrate in a northwesterly direction through the western boundary of the Site, even though this is the pathway perchlorate migrated. As discussed above, chemicals dissolved in groundwater, released at the same location do not migrate along different pathways. The CH2MHill Report hypothesized VOC migration pathways are not supported by the water level or water quality data collected at the Bermite Site. The CH2MHill VOC Report calls these pathways "conceptual" and Mr. Lechler testified that the VOC pathways presented in the VOC Report were hypothetical and that more data would be needed to determine if they actually exist. Mr. Lechler testified that the additional information was needed because it couldn't be concluded that the Bermite Site was the source of VOCs in Saugus 1 and Saugus 2. He testified that the recommended data has not been collected.

It is my opinion that perchlorate and VOCs released from the source areas on the Bermite Site followed the same migration pathway in the unsaturated zone and in groundwater.

### 5.3  Opinion 3

**Due to the different migration rates of perchlorate and VOCs in groundwater, releases of perchlorate from the source areas have migrated faster and further than VOCs.**

As discussed in Section 4.6, there has been considerable research examining the migration of dissolved chemicals in groundwater. Perchlorate has been shown to migrate essentially at the same rate as groundwater. VOCs, such as PCE and TCE, on the other hand, have been found to migrate at a slower rate than the rate of groundwater. A number of representative research papers are included in Exhibit A that discuss the differences in migration rates of perchlorate, PCE and TCE. This research has found that TCE and PCE move 2 to 10 times slower than the rate of groundwater. The CH2MHill VOC Report agreed, stating: "The retardation factors for TCE and PCE in sand and gravel aquifers low in organic matter, similar to aquifer materials of the study area, are expected to fall between 1 and 10 (Mackay, et al., 1985)." For example, the Stanford/Waterloo study discussed in Section 4.6 found that PCE migrated approximately 5 times slower than groundwater in a uniform clean sand aquifer.

3 August 2020
EKI B90086.00
Page 50



### 5.4 Opinion 4

**Although perchlorate has impacted Water Agency groundwater production wells downgradient of the Bermite Site, based on the differences in migration rates and supported by the water quality data, VOCs from the Bermite Site have not migrated to the Water Agency's groundwater production wells and the Bermite Site is not a source of the VOC detections in the wells at issue.**

As discussed in Opinion 1, Section 4.2.2.2 describes the results of the remedial investigations at the Bermite Site that show the source areas for perchlorate and VOCs. The investigations concluded that the source areas for perchlorate and VOCs were essentially the same. Releases at these source areas migrated downward through the unsaturated zone to the water table and entered the groundwater. The perchlorate and VOCs dissolved in groundwater then moved with and in the direction the groundwater was moving and moved along the same pathway. The perchlorate plume, shown in Figure 42 (the orange area), has migrated in a northwesterly direction. VOCs from the Bermite Site followed the same pathway as the perchlorate.

As discussed in Section 4.8 and Opinion 3, the rate of migration of perchlorate in the unsaturated zone and in groundwater is different than the migration rate of PCE and TCE. Perchlorate has been shown to migrate at about the same rate as the rate of groundwater. PCE and TCE have been shown to migrate up to 10 times slower than the rate of groundwater. This widely studied and accepted phenomenon means that perchlorate released at the Bermite Site would have migrated faster and further than PCE and TCE.

These different migration rates are supported by the perchlorate, TCE, and PCE data collected at and downgradient of the Site. The most recent perchlorate groundwater data, discussed in Section 4.2.2.3, shows that perchlorate has reached the western boundary of OU-4 and has migrated off-site. The most recent VOC data shows that VOCs have not reached the western boundary of OU-4 and have not migrated off-site. Section 4.2.2.4 examines the maximum concentrations of perchlorate and VOCs detected at the western boundary of OU-4 since groundwater sampling began. The data confirms that perchlorate migrated to and downgradient of the western boundary of OU-4 and VOCs have not reached the boundary and have not migrated off-site.

The CW-01 well nest is located north of OU-4 and west of OU-5. The three wells in the CW-01 well nest are screened at different depths in HSU S-III and all of the wells have detected perchlorate at concentrations ranging from 1.6 to 11.2 µg/L. PCE and TCE have not been detected in these wells. Based on water level measurements, groundwater flow is to the east in this area, from the CW-01 well nest towards the RMW-04 well nest in OU-5.

3 August 2020
EKI B90086.00
Page 52



VOCs are present in groundwater at the Northern Alluvium Area and have migrated off-site in the shallow Alluvium aquifer in a northwesterly direction. However, the data shows that the VOCs in the shallow groundwater did not migrate to the Water Agency Saugus Formation production wells and there is no evidence that the VOCs migrated downward into the Saugus Formation from the Northern Alluvium Area and impacted the production wells. As discussed in Section 4.2.2.1, the Northern Alluvium Area is located north of the San Gabriel Fault. The San Gabriel Fault has been shown to be a barrier to groundwater flow in the Saugus Formation. VOCs in the Saugus Formation in the Northern Alluvium Area would not migrate south of the San Gabriel Fault. The Water Agency Saugus Formation groundwater production wells are located south of the San Gabriel Fault.

TCA has been detected in the Alluvium aquifer in the Northern Alluvium Area on the Bermite Site. The highest historical concentration of TCA detected in the Northern Alluvium Area was 12,000 µg/L in monitoring well 75-MW-26A. TCA has been detected in Alluvium wells downgradient of the Northern Alluvium Area, however, TCA has not been detected in Alluvium wells in the proximity of Saugus 1 and Saugus 2. TCA has also not been detected in Saugus 1, Saugus 2, V-201 or V-205.

It is my opinion that PCE and TCE have not migrated from the Bermite Site to the Water Agency groundwater production wells. The Bermite Site is not the source of the detections of PCE and TCE in their groundwater production wells.

## 5.5   Opinion 5

**VOCs from the Bermite Site have not impacted the Water Agency's groundwater production wells V-201 and V-205.**

As discussed in Opinion 4, VOCs from the Bermite Site have not migrated to the Water Agency's groundwater production wells. The Water Agency groundwater production wells V-201 and V-205 are located west of Saugus 1 (Figure 4). Well V-210 is located approximately 3900 feet west of Saugus 1 (3/4 of a mile) and well V-205 is located approximately 6200 feet west of Saugus 1 (over a mile).

As discussed in Section 4.2.2.5, VOCs have been detected in monitoring wells in the vicinity of V-201 and V-205. The concentrations of VOCs are higher than concentrations detected in upgradient monitoring wells. Three of the wells are screened in the S-IIIc formation and one well is screened in the S-Va formation. Both V-201 and V-205 draw water from these formations. This data supports the presence of other potential unidentified sources in the vicinity of Water Agency groundwater production wells V-201 and V-205.





eki environment & water

FIGURE 15

Expert Report of Gary Hokkanen

## 6. SIGNATURE

The opinions in this report are based on my education, training, years of experience in environmental consulting, and the materials listed in Exhibit A. I may revise these opinions as additional documents, testimony, or discovery responses become available.

_____          3 August 2020
                                           _____
Gary Hokkanen, MS                          Date

Vice President

