FRED M. BLUM, ESQ. (SBN101586)
fblum@behblaw.com
MICHAEL E. GALLAGHER, ESQ. (SBN 195592)
mgallagher@behblaw.com
EARL L. HAGSTROM, ESQ. (SBN 150958)
ehagstrom@behblaw.com
MARYLIN JENKINS, ESQ. (SBN 89832)
mjenkins@behblaw.com
DANIEL E. TROWBRIDGE (SBN 301301)
dtrowbridge@behblaw.com
BASSI, EDLIN, HUIE & BLUM LLP
500 Washington Street, Suite 700
San Francisco, CA 94111
Telephone: (415) 397-9006
Facsimile: (415) 397-1339

Attorneys for Defendant And Third-Party Plaintiff WHITTAKER CORPORATION

NOSSAMAN LLP
FREDERIC A. FUDACZ (SBN 50546)
ffudacz@nossaman.com
BYRON GEE (SBN 190919)
bgee@nossaman.com
PATRICK J. RICHARD (SBN 131046)
prichard@nossaman.com
RAVEN McGUANE (SBN 336505)
rmcguane@nossaman.com
777 S. Figueroa Street, 34th Floor Los Angeles, CA 90017 Telephone: 213.612.7800 Facsimile: 213.612.7801

Attorneys for Plaintiff SANTA CLARITA VALLEY WATER AGENCY

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SANTA CLARITA VALLEY WATER AGENCY,

Plaintiff,

vs.

WHITTAKER CORPORATION and DOES 1-10, Inclusive,

Defendant.

AND RELATED CASES

Case No: 2:18-cv-6825 SB (RAOx)

*Assigned to Hon. Stanley Blumenfeld, Jr.*

**DEFENDANT WHITTAKER CORPORATION MOTION IN LIMINE NUMBER 2 TO PRECLUDE TESTIMONY CONTRADICTING 30(B)(6) WITNESS(ES)**

Date Action Filed: August 8, 2018
Trial Date: TBD

Defendant WHITTAKER CORPORATION ("Whittaker") moves the Court for an order precluding Plaintiff SANTA CLARITA VALLEY WATER AUTHORITY ("SCVWA") from offering any evidence or argument contradicting the testimony of FRCP 30(b)(6) witnesses designated by SCVWA without first making a proper showing why the testimony is not binding.

## I. INTRODUCTION

As recently as May of 2018, in *Snapp v. Burlington Northern Santa Fe Railway Co.*, the Ninth Circuit cemented the standard for when a 30(b)(6) designee's testimony is binding. It found that such testimony is an evidentiary admission, with conclusive effect, unless there is "good reason or explanation" to explain the conflict." *Snapp v. Burlington Northern Santa Fe Railway Co.*, 889 F.3d 1088 at 1103 (9th Cir. 2018).

Plaintiff's several FRCP 30(b)(6) witnesses have made multiple admissions which are binding on SCVWA, unless a proper showing can first be made. In this case, the testimony of SCVWA's 30(b)(6) witnesses is of the kind that cannot be corrected, explained, or supplemented, and therefore contradictory trial testimony or argument does not fit within the *Snapp* Court's parameters for the admission of such evidence.

Regardless, SCVWA should have to satisfy their burden before the evidence is presented to the fact finder.

## II. ARGUMENT

### A. SCVWA'S 30(B)(6) WITNESSES MADE MULTIPLE ADMISSIONS

SCVWA presented three 30(b)(6) witnesses for deposition: Michael Alvord twice, James Leserman and Richard Slade. They made the following relevant admissions in their depositions:

Mr. Alvord testified that future damages for SCVWA are unknown, as no remediation plan has been ordered (Alvord 30(b)(6) Deposition [February 6,

2020], 16:1-25, 17:1-16. Alvord 30(b)(6) Deposition [August 21, 2020] 29:15-19, 30:9-15,107: 18-109:4).[1]

Mr. Alvord testified that it was likely that turnouts SC1 and SC2, and possibly SC3, were contaminated by PCE from Flamingo Cleaners. (Alvord 30(b)(6) Deposition [February 6, 2020], 38:13- 40:16).

Mr. Alvord testified that water from wells S-1 and S-2 has always been delivered to SCVWA's customers so long as it was below the applicable maximum contaminant level ("MCL") (Alvord 30(6)(6) Deposition [December 12, 2019] 19:16-23).

Mr. Alvord testified that SCVWA had not done any investigation as to why there was contamination at the turnouts (Alvord 30(6)(6) Deposition [December 12, 2019] 27:25-28:7).

Mr. Alvord testified that it is "plausible" that there is another source of TCE for wells' S-1 and S-2 (Alvord 30(6)(6) Deposition [December 12, 2019] 40:19-41:5).

Mr. Slade testified that SCVWA, prior to drilling its Saugus 1 and 2 wells, had not:

contacted any regulatory agency to determine what was known about hazardous waste in the area of the wells (Slade 30(b)(6) deposition [February 6, 2020] 47:9-48:25);

made any effort to determine what industries were upgradient of the well sites (Slade 30(b)(6) deposition [February 6, 2020] 51:5-22);

did anything to determine if there were dry cleaners in the area of the well sites (Slade 30(b)(6) deposition [February 6, 2020] 67:190- 68: 12);

knew that as of 1988 there was a RCRA closure plan at Bermite (Slade 30(b)(6) deposition [February 6, 2020] 88:7-25);

did anything to determine if there were any industrial ponds up-gradient

---

[1] The relevant portions of February 6, 2020 and the December 12, 2019 depositions of Michael Alvord as SCVWA's 30(b)(6) witnesses are attached as Exhibits 1 and 2 to the Blum Declaration ("Blum Decl.")

from the S-1 or S-2 well sites(Slade 30(b)(6) deposition [February 6, 2020] 85:24-87:17);

looked to see if there was any public information about activities that had taken place at the Whittaker-Bermite site (Slade 30(b)(6) deposition [February 6, 2020] 87:18-88:6); and

located industrial discharges on a map and determined the type and amounts of such discharges (Slade 30(b)(6) deposition [February 6, 2020] 99:1-5).[2]

Mr. Leserman testified that there was a TCE detection in turnout SC-2 in the summer of 2009, for which SCVWA had not determined a source. (Leserman 30(b)(6) deposition [December 12, 2019] 58:9 to 59:3).[3]

### B.  ABSENT A PROPER SHOWING, SCVWA MAY NOT CONTRADICT THESE ADMISSIONS.

The *Snapp* Court explained that "a corporation generally cannot present a theory of the facts that differs from that articulated by the designated Rule 30(b)(6) representative." *Snapp,* 889 F.3d at 1103. (Citing 7 James Wm. Moore et al., *Moore's Federal Practice* § 30.25[3] (3d ed. 2016)). The 30(b)(6) statements of its representative are binding on it "where the purportedly conflicting evidence truly, and without good reason or explanation, is in conflict, i.e., where it cannot be deemed as clarifying or simply providing full context for the Rule 30(b)(6) deposition." *Id.*

The testimony of these SCVWA 30(b)(6) witnesses is not of the kind that can be contextualized or explained away. It is factual information provided by SCVWA's designees on the subject matter of damages, the current status of remediation, the source of contamination of SCVWA wells, and whether SCVWA

---

[2] The relevant portions of the Slade Deposition are attached as Ex. 3 to the Blum Decl.

[3] The relevant portions of the Leserman Deposition are attached as Ex. 4 to the Blum Decl.

performed all appropriate inquiries and exercised due care prior to siting its wells. Any evidence or argument contradicting the statements of SCVWA through its designated representatives should be excluded.

Prior to offering contradicting testimony, SCVWA should first have to make a showing of good cause and/or an offer of proof.

## III. OPPOSITION TO MOTION:

### A. INTRODUCTION

SCV Water's 30(b)(6) witnesses will elaborate on testimony given during their 30(b)(6) depositions. Testimony explaining and expanding upon 30(b)(6) testimony is generally admissible, and Whittaker fails to establish that the testimony of SCV Water's witnesses will contradict any 30(b)(6) deposition testimony. Therefore, Whittaker's motion should be denied.

### B. PLAINTIFF DOES NOT SEEK TO "CONTRADICT" THE TESTIMONY OF ITS 30(B)(6) WITNESSES

Whittaker seeks to lock in SCV Water testimony that can change over time or was in response to irrelevant, misleading or vague theoretical questions asked by counsel during deposition. For instance, in 2019, Whittaker asked Mr. Alvord whether DDW had made a definitive decision on whether it would mandate VOC treatment. SCV Water has quarterly meetings with DDW to discuss well permitting and SCV Water's 2021 response may be different than it was in 2019 based on the information exchanged during these meetings. With regards to Mr. Alvord's testimony on Flamingo Cleaners, Mr. Alvord was testifying about a short investigation report for which Flamingo Cleaners was a suspected site. He should be allowed to provide clarification testimony that the 2011 report was inconclusive and that suspected pipes near Flamingo Cleaners were isolated. Mr. Alvord should also be allowed to provide updates on the PCE measurements in the distribution system that continue to persist after the SCV Water's 2011 actions.

In the case of Mr. Slade, he provided testimony that he reviewed Regional Water Quality Control Board [that oversaw groundwater contamination cleanups in the 1980s] records, which did not have much information on contaminated sites. Gee Decl. ISO Opp., Ex. D at 47:9-22 (Slade Depo. Excerpts). He also testified

that environmental records in the 1980s are not the same as they were in 2020 because the environmental site evaluations were just beginning in the 1980s. Gee Decl. ISO Opp., Ex. D at 47:9-22 (Slade Depo. Excerpts). Notwithstanding this testimony, Whittaker counsel continued to ask about records that did not exist. SCV Water should be allowed to clarify that Mr. Slade's testimony regarding the absence of records applied to Whittaker's follow up questions regarding records that did not exist.

Whittaker's counsel also asked questions about reviewing records that are unrelated to pollution [phone books] to suggest that Mr. Slade was required to investigate all companies that used chemicals within a two-mile radius of a proposed well site – there is no such requirement for well siting guidelines/regulations. Even today, a professional siting a well can rely on environmental records of regulatory oversight agencies and is not required to conduct investigation of all chemical users that may be listed the phone book. While SCV Water will not contradict Mr. Slade's testimony about not reviewing phone books for contamination sources, it may provide testimony to clarify that the well siting requirements at the time did not include the investigations suggested by Whittaker counsel as it did for subsequently sited wells. Gee Decl. ISO Opp., Ex. B, at 28:24-34:25 (Alvord Depo. Excerpts 2-6-20).

Finally, as to Mr. Leserman's testimony regarding not being able to identify 2009 detection of TCE, Whittaker wrongly suggests that SCV Water should be able to identify all higher than normal readings and by not doing so, it is negligent. SCV Water should be able to provide clarifying testimony about its procedure for investigating abnormal readings that may be the result of, for example, improper sampling, a testing error or potentially an unknown source. Not all investigations identify the cause of an isolated high contamination detection. Whittaker counsel asked numerous "is it possible" questions of Mr. Leserman. SCV Water should

not be bound to a 30(b)(6) witness opinion to a vague theoretical question about the possibility of unspecified alternative sources of contamination.

### C. EVIDENCE TO FULLY EXPLORE AND EXPLAIN 30(B)(6) WITNESS TESTIMONY IS ADMISSIBLE

Whittaker relies heavily on *Snapp v. United Transportation Union*, 889 F.3d 1088 (9th Cir. 2018). But *Snapp* actually supports Plaintiff's right to introduce evidence to provide context and explanation regarding the testimony of Rule 30(b)(6) witnesses—as the Ninth Circuit pointed out, limiting evidence to isolated statements made in a deposition would, in fact, improperly interfere with the factfinder's truth-seeking function. 889 F.3d at 1104.

As *Snapp* explains, "'[A] corporation *generally* cannot present a theory of the facts that differs from that articulated by the designated Rule 30(b)(6) representative.'" 889 F.3d at 1103 (emphasis in original) (quoting 7 James Wm. Moore et al., Moore's Federal Practice § 30.25[3] (3d ed. 2016)). "*This general proposition should not be overstated, however, because it applies* ***only*** *where the purportedly conflicting evidence truly, and without good reason or explanation, is in conflict, i.e., where it cannot be deemed as clarifying or simply providing full context for the Rule 30(b)(6) deposition*." *Id.* at 1103 (emphasis supplied).

*Snapp* further cautioned that:

> the testimony of a Rule 30(b)(6) deponent ***does not absolutely bind the corporation in the sense of a judicial admission, but rather is evidence that, like any other deposition testimony, can be contradicted and used for impeachment purposes***. The Rule 30(b)(6) testimony also is not binding against the organization in the sense that ***the testimony can be corrected, explained and supplemented, and the entity is not "irrevocably" bound to what the fairly prepared and candid designated deponent happens to remember during the testimony***.
>
> 7 James Wm. Moore, et al., Moore's Federal Practice § 30.25[3] (3d ed. 2016). "Finally, a Rule 30(b)(6) deponent's own interpretation of the facts or legal conclusions do not bind the entity." *Id.*

*Snapp*, 889 F.3d at 1104 (emphasis supplied).

*See also Okafor v. Dep't of Conservation*, 775 F. App'x 321, 322 (9th Cir. 2019) (rejecting attempt to bind a party to a particular statement from a 30(b)(6) deposition which, taken out of context, appeared to contradict other declarations—instead, the court properly considered "the deposition as a whole" and determined the declarations merely clarified the testimony).

Here, Whittaker invites this Court to make an evidentiary ruling in a vacuum, and to assume that any witness testimony that is not identical to the testimony of a 30(b)(6) witness must be "contradictory" evidence that will not correct, explain, and/or supplement the prior testimony, and should therefore be presumptively excluded. The Court should decline that invitation, as it is not possible to predetermine exactly how direct and cross-examination questions will be asked at trial, or how witnesses will answer. *See, e.g., Union Pac. R.R. Co. v. Winecup Ranch*, LLC, No. 317CV00477LRHCLB, 2020 WL 7125918, at *14 (D. Nev. Dec. 4, 2020) (denying motion in limine, and noting that "the Court cannot make a blanket ruling that [defendant] may not proffer testimony other than the 'I don't know' answers [the 30(b)(6) witness] articulated during his deposition to specific questions. *Rather, the Court must make a ruling based in the context of trial whether any answer provided merely corrects, explains, or supplements the deposition testimony, or if it truly contradicts it*.") (emphasis supplied); *Cypress Ins. Co. v. SK Hynix Am., Inc.*, No. 2:17-CV-00467-RAJ, 2019 WL 625509, at *1 (W.D. Wash. Feb. 14, 2019) (same).

### D. CONCLUSION

This motion should be denied. Whittaker has not identified any particular evidence that is properly excluded as allegedly "contradictory" to any 30(b)(6) testimony, and any such rulings cannot be made at this time and must be reserved for trial.

Date: July 19, 2021

NOSSAMAN LLP
FREDERIC A. FUDACZ
BYRON GEE
PATRICK J. RICHARD
RAVEN McGUANE

By: /s/ Patrick J. Richard
　　　Patrick J. Richard
Attorneys for Plaintiff SANTA
CLARITA VALLEY WATER
AGENCY

# REPLY TO OPPOSITION TO MOTION

## I. INTRODUCTION

Whittaker's Motion asked that prior to offering contradicting testimony SCVWA should first have to make a showing of good cause and/or an offer of proof. SCVWA does not discuss the requested relief, but instead argues why they should be able to change their testimony. They do not present any real change in circumstances or reason to change the testimony other than their FRCP 30(b)(6) witnesses were not properly prepared so they should be able to change their testimony to give better answers.

## I. ARGUMENT

### A. MICHAEL ALVORD

Mr. Alvord testified at his August 2020 30(b)(6) deposition that future damages for SCVWA are unknown, as no remediation plan has been ordered. SCVWA argues that Mr. Alvord's testimony might be different today, so he should be permitted to "explain" his deposition testimony. Unless Mr. Alvord is prepared to testify that a remediation plan has in fact been approved, no amount of "quarterly discussions with the DDW", or input from SCVWA consultants, is going to change the fact that SCVWA's future damages are speculative until such time as the DDW issues its final order.

With respect to Flamingo Cleaners as a PCE source, Mr. Alvord testified that there was a report from James Leserman on this subject but that he never read it. The fact that he was not prepared for his 30(b)(6) deposition does not give him the opening to re-testify after reviewing documents that he should have reviewed prior to his deposition. Finally, Mr. Alvord's deposition was in 2020; surely he had available to him SCVWA's PCE measurements from 2011 to the date of his deposition. The fact that he was not prepared to testify about them does not mean that he should have the opportunity to go back and "explain" his testimony.

B. JAMES LESERMAN

Mr. Leserman, SCVWA's senior engineer, testified that there was a TCE detection in the turnout for Well SC-2 in the summer of 2009, for which SCVWA had not determined a source, and that he could not exclude the possibility that the TCE came from a source other than the Saugus wells. Mr. Leserman now wishes to amend his testimony to speculate that there are many reasons why this detection might have occurred. Obviously, SCVWA thought of a better answer. Mr. Leserman had the obligation as SCVWA's 30(b)(6) witness to examine all the relevant records, and apparently did not do so. He should not be permitted to "explain" his testimony now.

C. RICHARD SLADE.

Mr. Slade did his work with respect to siting SCVWA's wells prior to 1988, when the decision was made where the wells would be located. His deposition testimony concerned the work he did (or failed to do) before that siting. For SCVWA to now contend that his testimony has "change[d] over time" is preposterous. Work done prior to 1988 is done; it is not an evolving effort.

SCVWA hopes to save Mr. Slade's testimony by suggesting that, although he testified that he did not contact any regulatory agency to determine what was known about hazardous waste in the area of the wells, he actually viewed the records of the Regional Water Quality Control Board, "which did not have much information," because environmental records in the 1980s were "just beginning." Mr. Slade already explained this in his deposition. He also stated that there was probably no effort to look at the records of any regulatory agencies. Had Mr. Slade bothered to look at the records of the EPA, which has been around since 1970, he might have seen the 1988 RCRA Closure Plan for the Bermite-Whittaker Site, and been put on notice of the environmental condition of that site. No one looked for this information, though, he admitted.

In order to prevail on its innocent landowner defense, SCVWA must show that it took "all appropriate inquiries." Mr. Slade's deposition testimony, with its

- 11 - Case No. 2:18-cv-6825 SB (RAOx)

MOTION IN LIMINE NUMBER 2 BY DEFENDANT WHITTAKER CORPORATION TO PRECLUDE TESTIMONY CONTRADICTING 30(B)(6) WITNESS(ES)

58151577.v1

litany of things that he did not do, did not aid SCVWA in this endeavor; hence the struggle to repaint Mr. Slade's pre-siting investigation in the most favorable light possible. After Mr. Slade's list of all the other things he did not do (did not make any effort to determine what industries were upgradient of the proposed well sites, did not determine if there were any dry cleaners in the area, did not look for industrial ponds upgradient, did not look at maps of industrial discharges, did not look for public information about the Bermite-Whittaker site), the fact that he did not review EPA records is evidence that SCVWA did not make all appropriate inquiries. Mr. Slade now wants to try to explain that he was not required to do make those inquiries in the 1980s. That is irrelevant as to whether he did them or not. If SCVWA's counsel was concerned that Mr. Slade's testimony did not include this excuse, they should have asked him those questions.

## II. CONCLUSION

Whittaker has asked that these witnesses make an offer of proof if they want to contradict their 30(b)(6) testimony. Once they do so, it should be clear whether they are contradicting their earlier testimony, if there are post-deposition developments which explain their testimony, or if they are just trying to improve unhelpful testimony.

Dated: July 23, 2021

BASSI EDLIN HUIE & BLUM

By: */s/ Michael E. Gallagher*
FRED M. BLUM
MICHAEL E. GALLAGHER
Attorneys for Defendant and Third-Party Plaintiff WHITTAKER CORPORATION

**Re**: **Santa Clarita Valley Water Agency v. Whittaker Corporation**
**United States District Court, Central District Case No. 2:18-cv-6825-GW (RAOx)**

**PROOF OF SERVICE – ELECTRONIC TRANSMISSION**

STATE OF CALIFORNIA/COUNTY OF San Francisco

I am a citizen of the United States and an employee in the County of San Francisco. I am over the age of eighteen (18) years and not a party to the within action. My business address is BASSI, EDLIN, HUIE & BLUM LLP, 500 Washington Street, Suite 700, San Francisco, California 94111.

On July 23, 2021, I electronically served the document(s) via USDC CDCA ECF website, described below, on the recipients designated on the Transaction Receipt located on the USDC CDCA ECF website.

**DEFENDANT WHITTAKER CORPORATION MOTION IN LIMINE NUMBER 2 TO PRECLUDE TESTIMONY CONTRADICTING 30(B)(6) WITNESS(ES)**

On the following parties:

PLEASE SEE SERVICE LIST PROVIDED BY USDC CDCA WEBSITE

I declare under penalty of perjury that the foregoing is true and correct and that this document is executed on July 23, 2021, at San Francisco, California.

*/s/ Bridgette C. Burdick*
BRIDGETTE C. BURDICK

3175453