UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No.: | 2:18-cv-06825-SB-RAO | Date: | 8/12/2021 |
|---|---|---|---|

| Title: | *Santa Clarita Valley Water Agency v. Whittaker Corporation et al* |
|---|---|

| Present: The Honorable | **STANLEY BLUMENFELD, JR., U.S. District Judge** |
|---|---|

| Victor Cruz | N/A |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| None Appearing | None Appearing |

**Proceedings:     [TENTATIVE] PARTIES' JOINT MOTIONS IN LIMINE**

Before the Court are several joint motions in limine (JMILs), including several motions to exclude expert testimony under the principles articulated in *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 592-93 (1993). The Court's rulings on the in limine motions are necessarily limited, particularly by the presentation of the motions by the parties, which often reflected an obvious failure to meet and confer as required by this Court's Trial and Pretrial Conference Order. Contrary to the requirements of that Order, the parties neglected to provide the declaration at the end of each JMIL demonstrating that counsel discussed in good faith the specific evidence or argument at issue. The Court is considering whether to impose sanctions.[1]

---

[1] There are numerous examples where it is obvious that the parties neglected to meet and confer—either at all or in good faith. For instance, Defendant states in its JMIL #3 that "[i]t is unclear whether [Plaintiff] will seek live testimony or will play excerpts of [defense experts'] deposition testimony." A good-faith discussion would have elicited the answer. The lack of such discussion, here and elsewhere, served only to make an already onerous task more burdensome on the Court.

In ruling on the *Daubert* motions, the Court starts with Federal Rule of Evidence 702, which states:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

"The party offering the expert bears the burden of establishing that Rule 702 is satisfied." *Sundance Image Tech., Inc. v. Cone Editions Press, Ltd.*, No. 02 CV 2258 JM, 2007 WL 935703, at 4 (S.D. Cal. Mar. 7, 2007). Before the Court admits expert testimony, it must conduct "a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue." Daubert, 509 U.S. 579, 592-93 (1993).

"The trial court acts as a 'gatekeeper' by making a preliminary determination of whether the expert's proposed testimony is not only relevant but reliable." *In re Incretin-Based Therapies Prod. Liab. Litig.*, No. 13-MD-2452-AJB-MDD, 2021 WL 880316, at *18 (S.D. Cal. Mar. 9, 2021). "This two-step assessment requires consideration of whether (1) the reasoning or methodology underlying the testimony is scientifically valid (the reliability prong); and (2) whether the reasoning or methodology properly can be applied to the facts in issue (the relevance prong)." *Id.* In determining reliability, the Court examines a variety of non-exclusive factors: "(1) whether the theory can be and has been tested; (2) whether it has been subjected to peer review; (3) the known or potential rate of error; and (4) whether the theory or methodology employed is generally accepted in the relevant scientific community." *Id.* And in determining relevance, the Court asks whether the testimony "logically advances a material aspect of the proposing party's case." *Id.* (citation omitted).

## I.   PLAINTIFF'S JMIL #1

Plaintiff Santa Clarita Valley Water Agency's joint motion in limine #1 seeks to exclude a variety of expert testimony concerning potential "other sources" of contamination. Dkt. No. 293.

### A.   **Shoup Reports**

Plaintiff's motion focuses in large part on excluding the expert reports of Dr. Daniel Shoup.  Shoup provided two expert reports.

1.   Description.  The first report is titled "Historic Uses of Trichloroethylene (TCE) and Tetrachloroethylene (PCE) near Five Drinking Water Wells, Santa Clarita, CA."  Exhibit 6.  This report identifies "potential uses and users" of TCE and PCE "within a two-mile radius of the Saugus 1 drinking water well."  *Id.* at 1.  To do so, Shoup outlined the historical uses of TCE and PCE in various industries, such as dry cleaning.  *Id.* at 2-7.  Then, the report identifies business or other facilities operating within the two-mile area of interest with known releases of TCE or PCE or possible uses of those solvents based on their historical usage.  *Id.* at 8-22.

The second report is titled "Groundwater Regulation and Pollution Sources in Santa Clarita, 1987-1988."  Exhibit 7.  This report details the state of environmental regulation and the potential pollution sources within the vicinity of groundwater wells Saugus-1 and Saugus 2 during the period of January 1987 to June 1988 (i.e., the time leading up to the wells' construction between June and September 1988).  *Id.* at 1.  The report highlights recommendations made by geologist Richard Slade in 1986 and 1988 to investigate potential sources of groundwater contamination before siting any well in the area, given the high permeability of the ground near the groundwater.  *Id.* at 3.  Shoup points out that increasing groundwater regulation leading up to the construction of the wells at issue evinces a growing governmental concern for protecting water sources from toxic substances.  *Id.* at 4-5.  The report also states that public records show "at least 8 facilities within approximately 1/2-mile of the Saugus-1 and Saugus-2 wells were investigated for potential groundwater pollution."  *Id.* at 8.  In particular, the report identifies pollution occurring at (1) the Thatcher Glass Company, (2) the Keysor-Century Corporation,[2] (3) the Whittaker-Bermite site, and (4) several

---

[2] The parties indicate that Keysor was a predecessor of third-party defendant Saugus Industrial Center (SIC).  Opp. 21.

facilities which "reported leaking underground storage tanks and/or chemicals spills in or around the period of interest." *Id.* at 10-15. These records purportedly show that "the potential impacts to groundwater" from these facilities "were known to the public during the period of interest." *Id.* at 13.

      2.    <u>Positions</u>. Plaintiff argues that Shoup's expert reports are "unreliably flawed" because they identify possible sources of contamination by simply developing "a list of commercial and industrial facilities based on general information that 'could' have used VOC containing material." According to Plaintiff, Shoup did not verify whether any of these potential contamination sources "used VOCs," "had a release of VOCs," or "were situated in a location that could contaminate the Saugus Formation wells." For example, Plaintiff notes that among the five identified leaking underground storage tanks, there is no indication that TCE or PCE were present in those leaks. Likewise, there is nothing in Shoup's report tending to show that the releases at the Thatcher Glass Company involved TCE or PCE. *Id.* Indeed, California's Department of Toxic Substances does not list either as a potential contaminant of concern at that location. <u>Gee Decl.</u> Ex. V.

      Defendant responds that Plaintiff is trying to limit evidence in a way that makes it seem like Defendant was the only source of contamination at Plaintiff's wells. According to Defendant, Shoup's reports are relevant evidence that "(1) there was ample evidence in the public domain from which [Plaintiff] should have known prior to siting their wells that there were multiple potential sources of groundwater contamination and (2) there were a multitude of potential sources from which contaminants . . . may have originated." For example, Defendant claim that "even a cursory review of regulatory records" would have revealed the Whittaker site as a potential source of contamination. *See* <u>Exhibit 7</u> at 13 (providing overview of articles and government actions regarding contamination at Whittaker site). Defendant also argues that expert opinions about "possible" VOC sources should be admitted to ensure that sources other than the parties here are accurately accounted for when determining liability. In particular, Defendant states the "presence of unknown sources is critical" to the equitable allocation of costs among the parties under CERCLA's contribution provision, § 113. Opp. 22; *see e.g., Lyondell Chem. Co. v. Occidental Chem. Corp.*, 608 F.3d 284, 303 (5th Cir. 2010) ("As defined by some courts, an 'orphan share' is the liability attributable to a party who is insolvent, cannot be located, or cannot be identified.").

In reply, Plaintiff argues that Shoup failed to produce any public records of contamination that Plaintiff should have been aware of potential contamination from the Keysor or Whittaker sites. For instance, to demonstrate "the enforcement history" of the Whittaker site, Shoup points to a consent decree from 2003—to which Plaintiff obviously would not have had access. Exhibit 7 at 13. Likewise, Shoup looks to a site inspection report of the Keysor site from 2006 to show the site's history. *Id.* at 12. Plaintiff also disagrees with the legal proposition that "non-parties (i.e., PRPs [potentially responsible parties]) that cannot be identified creates an 'orphan share' that must be apportioned among solvent PRPs." Reply 29.[3] And in any event, Plaintiff argues that there is no evidence that many of the other entities in question "actually used and released the chemicals that contain TCE and PCE."

3.  <u>Analysis</u>. The Court finds many of Plaintiff's arguments for exclusion persuasive.

Shoup's first report, which identifies numerous facilities known to have used PCE and TCE, appears to put together a list of *potential users* of TCE and PCE within a two-mile radius of Plaintiff's Saugus 1 well. *See* Exhibit 6. It is not clear, however, how that list is sufficiently relevant to any material question to render it admissible. *See Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999) ("The objective of [the trial court's gatekeeping] requirement is to ensure the reliability *and relevancy* of expert testimony.") (emphasis added). At bottom, Defendant seeks to establish alternative "potential . . . sources" of TCE and PCE found at Plaintiff's wells. Opp. 14-15. Shoup's analysis admittedly "was not to determine . . . the source of groundwater pollution." Gee Decl. Ex. M (Shoup Decl.). Consequently, Shoup did not opine on whether these identified locations were sources of the contamination, nor does it appear that he was qualified to do so. Perhaps Shoup's report could be a starting place for another expert to determine alternative sources of pollution pursuant to a proper methodology, but it does not appear that testimony identifying other places that may use PCE or TCE would be of any benefit to the trier of fact. Any minimal probative value, moreover, would appear to be outweighed by the potential for confusion and the undue consumption of time.

---

[3] The legal issue of how to deal with so-called "orphan shares" is only cursorily briefed in this JMIL. The Court expresses no view on the legal dispute expressed by the parties but will require additional briefing and/or argument during the bench trial in connection with the § 113 claims.

Shoup's second report concludes that publicly available information leading up to the wells' construction could have made Plaintiff's aware of general concerns of groundwater pollution at eight specific locations within half a mile with active pollution investigations.  Exhibit 7.  Absent evidence of releases of chemicals of concern (i.e., TCE or PCE) from these sites at a relevant time and a relevant location, Shoup's testimony about them would be seem irrelevant, confusing, and a waste of time.  Shoup does not state that the five leaking underground storage tanks and the Thatcher Glass Company involved TCE or PCE or otherwise establish the relevance of the activity at these sites.

Shoup's conclusion that the pollution problems at the Keysor or Whittaker sites were publicly known leading up to the siting of Plaintiff's wells may tend to show Plaintiff's relative fault.  It appears, however, that the materials relied on in Shoup's report were released after the wells were sited and constructed.  It is not clear that the information Shoup points to was reasonably available to put Plaintiff on notice about potential pollution problems.  Shoup also relies on publicly available news articles, but Shoup's description of them does not demonstrate their probative value.  For example, one newspaper article indicated that there were concerns about toxic chemicals at the Keysor site.  But Shoup's brief summary of the article does not reveal whether Plaintiff could have been on notice about TCE or PCE contamination from that location.

For these reasons, the motion to exclude Shoup's expert testimony is **GRANTED IN PART**.  The Court may reconsider its ruling if Defendant can demonstrate in an offer of proof the reliability and relevance of Shoup's anticipated testimony (1) that the information he is relying on was publicly available, and (2) that the publicly available information would have made Plaintiff reasonably aware of the risk of TCE or PCE contamination from the Whittaker or Keysor sites.

### B.   <u>Luis Opinion 1</u>

Plaintiff moves to exclude Steven J. Luis's "Opinion 1" offered in his expert report.  That opinion states:

> [Plaintiff] should have understood that sources of VOCs, including TCE and PCE, were present in the area at the time production Wells S-1, S-2, V-201, and V-205 were installed.

Gee Decl. Ex. FF at 5.  Plaintiff contends that this opinion is not reliable because it would require Plaintiff to have known information that was unavailable when the wells were sited.  For instance, Plaintiff notes that the majority of dry cleaners discussed in Luis's report were not in existence at the time of the well's siting. Moreover, notwithstanding Luis's suggestion that TCE was a regulatory focus when the wells were sited, Plaintiff notes that the present detection limits on TCE in drinking water were not adopted until ten years after the wells were sited.

Plaintiff also takes issue with Luis's invocation of a 1981 bulletin from the California Department of Water Resources, which Luis cites as recommending that "[a]ll wells shall be located an adequate horizontal distance from potential sources of contamination and pollution."  Gee Decl. Ex. FF at 5.  Plaintiff notes that, in full context, that bulletin only recommended a minimum horizontal separation distance between a well and a potential source of 50-150 feet—a distance far shorter than suggested by Luis's identification of potential sources within 2 miles of the wells. Plaintiff also argues that Luis's opinion fails to account for the significant efforts it did expend in implementing precautions against contamination.

Defendant failed to respond to the motion's arguments about this specific opinion, and the Court reads this silence as consent to exclusion.  Given the serious concerns raised by Plaintiff as to the reliability of Luis's Opinion 1 and the failure of Defendant to carry its burden of showing admissibility, the Court **GRANTS** the motion as to this opinion.  *United States v. Holmes*, No. 5:18-CR-00258-EJD-1, 2021 WL 2035177, at *2 (N.D. Cal. May 21, 2021) ("The proponent of expert testimony has the burden of proving admissibility in accordance with Rule 702.").

## C.    *Hokkanen Opinion 8*

Next, Plaintiff moves to exclude "Opinion 8" of Gary Hokkanen's expert report.  Mot.  That opinion states:

> There are other potential sources that could be contributing VOCs to the Water Agency's groundwater production wells.

Gee Decl. Ex. EE at 64.

Plaintiff argues that Hokkanen's opinion is unreliable because it relies largely on the report from Shoup discussed already.  For example, Hokkanen identifies Thatcher Glass as a potential source, even though there is no evidence of TCE or PCE at that location.  Indeed, in his deposition, Hokkanen conceded that he

was not saying any of the locations necessarily had experienced a release of those contaminants and that he had not done any investigation of the viability of those sites as potential sources, beyond looking at the Shoup report.  Gee Decl. Ex. J at 320-21 (Q: "So other than Mr. Shoup's expert report, is it correct to say that you did no further investigation as to the viability of the sites as potentially responsible parties?" A: ". . . I did not do any investigation at these sites, that's correct.").

Defendant barely offers a response.  It briefly argues that Hokkanen relied on his knowledge of the historical roles that certain industries played in causing VOC contamination and groundwater data to conclude that there are unknown sources.  But Hokkanen admittedly offered no independent analysis, noting that he was not concluding that a release had occurred at those locations and that he had not done any investigation beyond reading another expert report (which itself does not establish whether any of the identified locations were sources).  Such a cursory analysis appears to fall short of the "same level of intellectual rigor that characterizes the practice of an expert in the relevant field."  *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999).

The motion is **GRANTED** as to this opinion.

### D.   Luis Opinion 2

Plaintiff moves to exclude Luis's "Opinion 2" offered in his expert report. That opinion states:

> SCVWA should have understood that during periods of non-operation, production Wells S-1, S-2, V-201, and V-205 would serve as preferential pathways conveying impacted groundwater deeper into the Saugus Formation.

Gee Decl. Ex. FF at 8.  According to Luis, in light of Plaintiff's purported knowledge, Plaintiff also should have known "that there were steps that could be taken to reduce the likelihood these wells would serve as preferential pathways (e.g., abandoning the wells)."  Gee Decl. Ex. FF at 9.

Plaintiff takes issue with Luis's conclusion that it should have abandoned its wells.  According to Plaintiff, Luis misses "the obvious alternative[] explanations" for why Plaintiff did not do so because both Plaintiff and Defendant had "evaluated the risk (none) versus the harm (paying $6-8 Million to drill new wells)" and had decided the Luis's suggestion "would result in significant costs with little of any

corresponding benefit." Plaintiff's problem, however, is with Luis's conclusions, which are not addressed properly by this motion. *Daubert v. Merrell Dow Pharms.*, Inc., 43 F.3d 1311, 1318 (9th Cir. 1995) ("the test under *Daubert* is not the correctness of the expert's conclusions but the soundness of his methodology").

The motion is **DENIED** as to this opinion.

## II.   PLAINTIFF'S JMIL #2

In Plaintiff's joint motion in limine #2, Plaintiff seeks to exclude three opinions offered by Defendant's expert, Anthony Daus. Dkt. No. 296 (Pltf. Mot. #2).

### A.   Daus Opinion 1

Plaintiff first seeks to exclude Opinion 1 from the Daus Report. That opinion states:

> The Site investigation and remedial measures implemented by Whittaker have been performed under the direct supervision of the DTSC and to the DTSC's satisfaction."

Pltf. Mot #2 at 2.[4] Plaintiff objects to this opinion on the grounds that because Daus does not—and has never—worked for DTSC, he lacks proper foundation upon which to opine that Defendant's cleanup activities were to DTSC's "satisfaction." Pltf. Mot #2 at 3. Defendant responds that Daus has "interfaced" with DTSC or its predecessor agency for decades and that Daus's "[p]ractical experience and extensive training provide the necessary basis" for this challenged opinion. Opp. to Mot. #2 at 12.

Neither interfacing with a government agency for whom he never worked nor his general "experience" and "training" provides Daus with sufficient knowledge to opine as to that agency's satisfaction with Defendant's waste cleanup efforts. *See Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 150 (1999) (stating that "the relevant reliability concerns [for expert testimony] may focus upon

---

[4] The Court cites to the Motion rather than to the Daus Report itself because Plaintiff neither provided a proper citation to the Daus Report nor filed a complete version of the Daus Report. Plaintiff did not provide proper citations to many of the exhibits it cited to in the briefing for the JMILs.

personal knowledge or experience . . . ."); *Bazile v. City of New York*, 215 F. Supp. 2d 354, 381-82 (S.D.N.Y. 2002), aff'd 64. F. App'x 805 (2d Cir. 2003) (rejecting expert testimony in a firearm discharge lawsuit against an NYPD officer by a witness with years of law-enforcement personnel supervision experience, but who had never worked for the NYPD, because he lacked "any specific knowledge about how the [NYPD] ordinarily conducts firearms discharge investigations."). Thus, the Court **GRANTS** Plaintiff's motion as to Daus's Opinion 1.

### B.   Daus Opinions 4 and 5

Plaintiff next moves to exclude Daus's Opinion 4 and Opinion 5 offered in his expert report. Those Opinions state:

> Opinion 4: The VOC plume in OU-3 and OU-4 has been sufficiently delineated to implement the approved groundwater remedy.

> Opinion 5: The groundwater extraction system is providing containment of the VOC plume in S-IIIa in OU-3 and OU-4.

Mot #2 at 2. Plaintiff contends that these opinions are flawed because Daus failed to consider the impact of groundwater pumping on either the direction of groundwater flow or the containment of VOC contamination on the Whittaker site. *Id.* 5-7. Plaintiffs assert that Daus's failure to do so warrants exclusion of these Opinions because groundwater pumping is a foundational part of any proper groundwater flow analysis. *Id.* 8. Defendant responds that Daus's analysis did, in fact, account for groundwater pumping. Opp. to Mot. #2 at 12.

While Plaintiff offers a mild challenge to Daus's methodology, Plaintiff's objections to Opinions 4 and 5 at bottom appear to be a disagreement with Daus's conclusions. Such disagreements over "accuracy . . . may go to testimony's weight, but not its admissibility." *i4i Ltd. P'ship. v. Microsoft Corp.*, 598 F.3d 831, 852 (Fed. Cir. 2010); *see also Primiano v. Cook*, 598 F.3d 558, 564 (9th Cir. 2010) (describing the inquiry into the admissibility of expert testimony as a "flexible one" where "[s]haky but admissible evidence is to be attacked by cross examination, contrary evidence, and attention to the burden of proof, not exclusion."). Thus, the Court **DENIES** Plaintiff's motion as to Opinions 4 and 5 **without prejudice**.

## III.  PLAINTIFF'S JMIL #3

Plaintiff moves to exclude all evidence or argument relating to opinions of Defendant's chemical engineer expert Gaynor Dawson.  Dkt. No. 293.  Plaintiff complains that Dawson inappropriately relies on judicial findings of fact and conclusions of law and expert evidence given in another case from this district involving the Whittaker site, *American Int'l Specialty Lines Ins. Co. v. United States*, Case No. CV-09-01734 AHM (RZx) (C.D. Cal. 2013).  Plaintiff argues that the expert opinion lacks any independent evaluation of the source documents or data relied upon by the experts and the court in that case.  Plaintiff notes that Dawson did not have access to any of the underlying data, except for a single witness deposition. For example, Plaintiff cites Dawson's deposition:

> Q. Is it fair to say that a lot of your opinions in this case, Mr. Dawson, rely in part on materials you haven't seen?
>
> A. If you mean primary source materials because I'm referencing the findings of fact and conclusions or the expert reports of other individuals from earlier on, I take those documents at face value. I have not seen the antecedent documents on which they're based.

Gee Decl. Ex. L at 274.  Plaintiff also argues that, since Plaintiff was not a party to the other case and did not have the opportunity to litigate the issues or challenge the findings there, it is not bound by those findings under principles of res judicata. Plaintiff notes that the jury may not understand this distinction and may conclude that the previous case definitively resolved the factual questions here.[5]

Defendant responds by emphasizing the Federal Rules of Evidence permit an expert to rely on a wide range of evidence:

> An expert may base an opinion on facts or data in the case that the expert has been made aware of or personally observed. If experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject, they need not be admissible for the opinion to be admitted.

---

[5] In two sentences, Plaintiff also argues all five of Dawson's opinions rely on a flawed, nonscientific methodology.  In support of this perfunctory argument, Plaintiff just points to its own rebuttal expert.

Fed. R. Evid. 703.  Defendant notes that Dawson's report did not merely regurgitate the findings and expert opinion from the previous case but rather relied on a variety of other evidence, including his experience performing forensic analyses at multiple solid rocket sites.  *See* Gee Decl. Ex. E

An expert can "appropriately rely on the opinions of others if other evidence supports" the expert's opinion and "the record demonstrates that the expert conducted an independent evaluation of that evidence."  *In re Conagra Foods, Inc.*, 302 F.R.D. 537, 556 (C.D. Cal. 2014).  "Additionally, an expert may also rely on previous expert reports where the expert supplements the prior report with additional evidence and experience, and where the expert 'does not rely exclusively' on the prior report."  *Mendoza v. Intuitive Surgical, Inc.*, No. 18-CV-06414-LHK, 2020 WL 1976472, at *7 (N.D. Cal. Apr. 24, 2020); *see* 29 Wright & Miller, Federal Practice and Procedure § 6274 ("The testifying expert's opinion must be excluded only if that expert is just parroting the opinion of the other expert rather than formulating her own opinion.").

In resolving Plaintiff's motion, the Court looks first to Dawson's Opinions 1 and 2.  His first opinion is that "[t]he overwhelming majority of releases of perchlorate and chlorinated solvents at the Bermite site were associated with the production of Sidewinder and Chaparral missiles, and to a lesser extent. JATO rockets."  His second opinion states:

> I have seen no clear evidence that the missiles and rockets produced at the Bermite facility were not made in accordance with contract requirements mandating adherence to military specifications and the US Department of Defense DOD Contractors' Safety Manual for Ammunition, Explosives and Related Dangerous Materials dated October 1968 or their revisions released in 1986 and 1997, which would have constituted due care and the state of practice for those operations in those time frames.

Gee Decl. Ex. E.

The Court cannot say that an expert in Dawson's field could never rely on other expert's opinions and a federal court's findings of fact, especially when dealing with historical facts.  *See* Fed. R. Evid. 703.  Even so, the analysis offered in his opinions mostly consists of reciting the materials and findings from the previous case.  Then Dawson notes briefly that those facts and findings were "consistent with [his] experience" or "consistent with all of the materials [he has]

reviewed and knowledge gained from working at four major solid rocket production plants." Gee Decl. Ex. E. Dawson concedes, however, that he has not seen the underlying data relied on by the previous experts or the court's conclusions. This "primary reliance" on the opinions and findings of others "raises serious reliability questions." *Cholakyan v. Mercedes-Benz, USA*, LLC, 281 F.R.D. 534, 544 (C.D. Cal. 2012); *see Fosmire v. Progressive Max Ins. Co.*, 277 F.R.D. 625, 629 (W.D. Wash. 2011) (noting expert report was "deficient" where there was "nothing in the record to indicate" that the expert had reviewed another expert's "underlying data to ensure its reliability" or that the expert even had access to such data"). These opinions simply restate the conclusions of others without any meaningful independent analysis. Such impermissible parroting is not immunized by a cursory statement that the conclusions reflected Dawson's own experience in the field. Moreover, these opinions are unduly prejudicial in that the jury likely will construe the judicial findings as established, and Plaintiff would be seriously impeded in its ability to challenge them. *See* Fed. R. Evid. 403.

The Court, however, reserves decision on the motion to exclude Dawson's Opinions 3, 4, and 5. Though these opinions feature similar materials from the previous case, there is more meaningful analysis rooted in Dawson's experience as well as reliance on other materials. Even so, the Court is mindful of the risk of jury confusion, as raised by Plaintiff as a concern.

The motion in limine is **GRANTED IN PART**. The Court deems Dawson's Opinions 1 and 2 to be subject to exclusion and reserves on this other challenged opinions.

## IV.   PLAINTIFF'S JMIL #4

Next, Plaintiff moves to exclude three opinions from Gary Hokkanen's expert report. Dkt. No. 298 (Pltf. Mot. #4) at 2. Those opinions state:

> Opinion 4: Although perchlorate has impacted Water Agency groundwater production wells downgradient of the Bermite Site, based on the differences in migration rates and supported by the water quality data, VOCs from the Bermite Site have not migrated to the Water Agency's groundwater production wells and the Bermite Site is not a source of the VOC detection in the wells at issue.

> Opinion 5: VOCs from the Bermite Site have not impacted the Water Agency's groundwater production wells V-201 and V-205.

Opinion 9: Based on the available data, other previously identified
sources could be contributing VOCs in the Water Agency's
Distribution system.

*Id.*

Plaintiff chides Hokkanen for allegedly improperly calculating a distance
traveled by TCE from the Whittaker site (Pltf. Mot. #4 at 3), misreading a
groundwater flow diagram (*Id.* 6), using a 2004 particle tracking diagram in his
analysis (*Id.*), and not conducting a fate and transport analysis to determine
potential sources of PCE contamination (*Id.* 8).  Defendant responds that
Hokkanen relied on scientifically sound principles and methods and that Plaintiff's
quarrel with the Hokkanen Report is really about its conclusions, not its
methodology.  Opp. to Pltf. Mot. #4 at 12.

Though Plaintiffs raise issues with how Hokkanen reached his conclusions,
Hokkanen's methodology appears scientifically "reliable" under *Daubert*.  Once
that threshold is clear, any "[d]isputes as to the . . . faults in an [expert's] use of [a
particular] methodology, or lack of textual authority for his opinion, go to the
weight, not the admissibility, of his testimony." *Kennedy v. Collagen Corp.*, 161 F.
3d 1226, 1231 (9th Cir. 1998) (internal citation omitted).  To the extent Plaintiffs
dispute the validity of Hokkanen's conclusions themselves, that too is properly the
province of the fact finder.  *See i4i Ltd. P'ship,* 598 F.3d at 852; *see also Jones v.
Nat'l Distillers & Chem. Corp.*, 484 F. Supp. 679, 683 (S.D.N.Y. 1979) (footnotes
omitted) (while Plaintiff's "numerous criticisms" of the expert's opinion "are not
to be taken lightly," the "weight to be given" to that opinion "is an issue best left to
the jurors to decide in trial.").

Thus, the Court **DENIES** Plaintiff's motion **without prejudice**.

## V.    PLAINTIFF'S JOINT MOTION IN LIMINE #5

Plaintiff's final motion seeks to exclude the testimony and report of
Defendant's expert Dr. Duane Steffey.  Dkt. No. 299 (Pltf. Mot. #5).  Plaintiff
claims Defendant violated Federal Rule of Civil Procedure 26 by improperly
designating Steffey as a rebuttal expert instead of as an affirmative expert for
strategic advantage.  *Id.* 2-3.  Plaintiff claims it was prejudiced by Defendant's
action because it was unable to designate a statistician to rebut the affirmative
testimony in Steffey's report concerning the likely source of VOCs detected in the

pipes of Plaintiff's distribution system and downstream of contaminated wells. *Id.*
5.

Defendant responds that Steffey's rebuttal expert opinion is based on his
review of, and thus properly addressed towards, the testimony of Plaintiff's experts
Mark Trudell and Lynn Takaichi. Opp. to Pltf. Mot. #5 at 7. According to
Defendant, those experts gave opinions to the effect that the VOCs in SCVWA's
wells and at the turnouts necessarily came from Defendant's Site. *Id.* Defendant
asserts that Steffey's opinions in his report and his deposition "directly
contradict[]" Trudell's and Takaichi's position. *Id.* 8. Defendant also argues there
was no prejudice to Plaintiff because Steffey was properly identified as a rebuttal
expert, served his rebuttal report on September 4, 2020, and was deposed on
October 2, 2020. *Id.* at 7.

Rebuttal experts are used "solely to contradict or rebut evidence on the same
subject matter" as the other party's experts' opinions. Fed. R. Civ. P
26(a)(2)(D)(ii). Rebuttal experts should "restrict their testimony to attacking the
theories offered by the adversary's experts." *Int'l Bus. Machs. Corp. v. Fasco
Indus., Inc.*, No. C–93–20326 RPA, 1995 WL 115421, at *3 (N.D. Cal. Mar. 15,
1995).

Here, both Steffey's expert report and deposition testimony explicitly
address the opinions of Trudell and Takaichi, by name, several times. Steffey
"purports to contradict or rebut" Trudell and Takaichi's assertions (or implications)
that the VOCs detected in Plaintiff's wells and turnouts came from Defendant's
Site. *U.S. ex rel. Brown v. Celgene Corp.*, Case No. CV 10-3165 GHK (SS), 2016
WL 6542730, at *4 (C.D. Cal. June 29, 2016). Plaintiff's disagreements with
Steffey's conclusions are insufficient to persuade the Court that Steffey's report
and testimony are not "on the same subject matter" as Trudell and Takaichi's
opinions. Fed. R. Civ. P 26(a)(2)(D)(ii). The Court also finds no prejudice to
Plaintiff from admitting Steffey's report and testimony, as Plaintiff has had access
to them for nearly a year and could have challenged them at an earlier date (or
could have requested to reopen discovery, if necessary, to respond).

Thus, the Court **DENIES** Plaintiff's motion.

## VI.   DEFENDANT'S JOINT MOTION IN LIMINE #1

The Court now turns to Defendant's motions.  Defendant first seeks an order precluding Plaintiff from (1) offering any evidence or argument related to future damages to be incurred by Plaintiff; (2) offering any evidence or argument related to whether the Department of Drinking Water (DDW) will require Plaintiff to treat its groundwater for VOCs; and (3) calling past or present DDW employees to testify.  Dkt. No. 302 (Def. Mot. #1).

### A.   <u>Evidence of Future Damages and DDW-Ordered Remedies</u>

Plaintiff seeks damages for its claims for negligence, negligence per se, private nuisance and trespass claims.  Third Amended Complaint, Dkt No. 42. Plaintiff claims damages based on its assumption that DDW will ultimately require Plaintiff to treat groundwater that has been contaminated with VOCs.  *Id.* 8. Defendant, citing California Civil Code § 3283's requirement that future damages must be "certain to result," seeks to exclude this testimony.  Def. Mot. #1 at 2. Defendant contends that any testimony regarding the nature or amount of future damages is speculative (and thus irrelevant) at this stage because no such damages have yet been ordered by DDW.  Def. Mot. #1 at 4. Plaintiff responds that only the fact of damages must be certain, not the amount.  Opp. to Def. Mot. #1 at 7-8.

Defendant then contends that the fact of damages is not yet certain and cites seemingly unchallenged record evidence from some of Plaintiff's Federal Rule of Civil Procedure 30(b)(6) witnesses suggesting that DDW has not yet elected a remedy.  Michael Alvord, Plaintiff's Rule 30(b)(6) damages witness, agreed with the statement that "what the remedy . . . [SCVWA] will ask for or suggest and what the remedy will be ultimately approved is unknown . . . ."  Decl. of Fred Blum ISO Defendant's Motion in Limine #1 (Blum Decl.), Ex. 1 at 109:1-4. Plaintiff's NCP expert, Jeffrey Zelikson, also answered in the affirmative when asked whether the "final remedy" is "unknown at this time" and that he "could only speculate" as to what it might be.  Blum Decl., Ex. 5 at 96:4-12.

Plaintiff does not respond to this record evidence.  While DDW may ultimately require Plaintiff to treat its groundwater, it has not yet done so—and Plaintiff has not pointed the Court to any evidence that it will do so.  Accordingly, any discussion of the costs of that treatment appears speculative at this stage.  *See Maheu v. Hughes Tool Co.*, 569 F.2d 459, 474-76 (9th Cir. 1977) (rejecting a damages award "based on inadmissible speculative evidence" and "rampant speculation that went to the jury . . . .").  The Court **GRANTS** Defendant's motion

to exclude testimony and evidence about the future costs of treating extracted well water for VOCs, absent a proper foundation (which Plaintiff has not yet offered).

### B.   Testimony of Past or Present DDW Employees

Defendant also seeks to exclude the testimony of any past or present DDW employees. Def. Mot. #1 at 1. The scope of Defendant's request is unclear from the moving papers. To the extent Defendant seeks to preclude DDW witnesses (past or present) from testifying at all, about any subject, the request is far too broad. The Court will assume Defendant did not seek such an overbroad exclusion and reads Defendant's motion as seeking only to prevent DDW witnesses from testifying about speculative future damages. Under this narrow construction only, the Court **GRANTS** Defendant's motion, absent a proper foundation.

## VII.   DEFENDANT'S JOINT MOTION IN LIMINE #2

Defendant next seeks an order precluding Plaintiff from offering evidence contradicting the testimony of Plaintiff's Federal Rule of Civil Procedure 30(b)(6) witnesses. Dkt. No. 303 (Def. Mot. #2). Defendant contends that Plaintiff's Rule 30(b)(6) witnesses made various binding admissions during their depositions. *Id.* 1. Defendant argues that the Court should exclude any evidence or argument contradicting the testimony of Plaintiff's Rule 30(b)(6) witnesses because "a corporation generally cannot present a theory of the facts that differs from that articulated by the designated Rule 30(b)(6) representative." *Snapp v. United Transp. Union*, 889 F.3d 1088, 1103 (9th Cir. 2018) (citing 7 James Wm. Moore et al., *Moore's Federal Practice* § 30.25[3] (3d ed. 2016)).

Plaintiff responds that the testimony of a Rule 30(b)(6) deponent "does not absolutely bind the corporation in the sense of a judicial admission, but rather is evidence that, like any other deposition testimony, can be contradicted and used for impeachment purposes. The Rule 30(b)(6) testimony also is not binding against the organization in the sense that the testimony can be corrected, explained and supplemented, and the entity is not 'irrevocably' bound to what the fairly prepared and candid designated deponent happens to remember during the testimony." Opp. to Def. Mot. #2 at 7 (citing *Snapp*, 889 F.3d at 1104).

The Court **DENIES** Defendant's motion. Defendant overstates the binding nature of Rule 30(b)(6) testimony and the holding in *Snapp*. *Snapp*, 889 F.3d at 1104 (rejecting an attempt to use "isolated sentences . . . as legal or judicial admissions" from Rule 30(b)(6) testimony as "cut[ting] against the jury's truth-

seeking function"); *see also Keepers, Inc. v. City of Milford,* 807 F.3d 24, 34 (2d Cir. 2015) ("[The plaintiff] rightly notes that an organization's deposition testimony is binding in the sense that whatever its deponent says can be used against the organization. But Rule 30(b)(6) testimony is not binding in the sense that it precludes the deponent from correcting, explaining, or supplementing its statements.") (internal citation omitted); *A.I. Credit Corp. v. Legion Ins. Co.,* 265 F.3d 630, 637 (7th Cir. 2001) ("[T]estimony given at a Rule 30(b)(6) deposition is evidence which, like any other deposition testimony, can be contradicted and used for impeachment purposes.").

## VIII.   DEFENDANT'S JOINT MOTION IN LIMINE #3

With this motion, Defendant seeks to preclude Plaintiff from calling four of Defendant's experts in support of Plaintiff's case-in-chief. Dkt. No. 304 (Def. Mot. #3). Defendant argues that forcing these experts to appear twice would be a waste of time and confuse the jury. *Id.* 2. In response, Plaintiff asserts that it is well settled that disclosed experts can be called in support of either party's case-in-chief. Opp. to Def. Mot. #3 at 3.

As a case cited by both parties makes clear, the decision to allow a party to call an opposing party's witness in support of its own case-in-chef is "committed to the discretion of the trial court." *Lis v. Robert Packer Hosp.*, 579 F.2d 819, 823 (3d Cir. 1978). However, the Court currently lacks enough information from the parties to exercise its discretion in an informed manner. Thus, the parties are hereby ordered to **MEET AND CONFER** and report to the Court: (i) what Plaintiff intends to have Defendant's four experts testify about; and (ii) in what form (*i.e.* live testimony, video excerpts of deposition testimony, etc.). If there is still a dispute after the parties have met and conferred, Defendant is ordered to resubmit this motion by **Tuesday, August 17.**

## IX.   DEFENDANT'S JOINT MOTION IN LIMINE #4

In this Motion, Defendant seeks to exclude any reference to (1) a California Department of Toxic Substances Control (DTSC) Staff Analysis urging a criminal investigation of Defendant; (2) the cover letter transmitting the DTSC Staff Analysis to the U.S. Attorney in Los Angeles; and (3) a similar letter from DTSC to the Los Angeles District Attorney. Dkt. No. 305 (Def. Mot. #4). These documents discuss the Staff Analysis's author's opinion that Defendant violated environmental laws and that criminal investigation of Defendant's conduct was

warranted.  Def. Mot. #4 at 2.  Neither the U.S. Attorney nor the Los Angeles District Attorney criminally charged Whittaker.  *Id.* at 2-3.

Defendant contends these documents are irrelevant to the issues in this case and that their prejudicial effect outweighs their probative value.  *Id.* at 3.  Plaintiff responds that the documents are admissible under the public record hearsay exception, Federal Rule of Evidence 803(8).  Opp. to Def. Mot. #4 at 4.

"The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . unfair prejudice . . . ."  Fed. R. Evid. 403.  Plaintiff fails to explain why a DTSC analysis discussing alleged violations of environmental laws unrelated to the ones at issue in this case (and at different locations from the Site at issue here) has any probative value.  Absent a legitimate explanation, it would appear that Plaintiff seeks to admit these documents for the purpose of raising the vague and prejudicial specter of criminality.  Rather than explain the relevance, Plaintiff heads off on a tangent, contending that these documents are admissible under the public records exception to the hearsay rule (when the issue raised is one of relevance and undue prejudice).[6]  The prejudice of this evidence outweighs its minimal probative value and is inadmissible under Federal Rule of Evidence 403.  *See Sandau v. Wood,* 497 F. App'x 727, 729 (9th Cir. 2012) (upholding district court's exclusion of defendant's prior conviction because "the incident bore no resemblance to" the case at hand and was therefore "more prejudicial than probative."); *Meeks v. Parsons*, 433 F. App'x 567, 568-69 (9th Cir. 2011) (affirming district court's exclusion of defendant's prior terminations because they "arose from circumstances unrelated to this case [and] might give an unwarranted suggestion of misconduct on all of" defendant's actions).  Thus, the Court **GRANTS** Defendant's motion.

## X.    DEFENDANT'S JOINT MOTION IN LIMINE #5

In this motion, Defendant seeks to preclude Plaintiff from calling Defendant's President and General Counsel Eric Lardiere as a witness without first making an offer of proof to establish that he has relevant non-hearsay knowledge.  Dkt. No. 306 (Def. Mot. # 5).  Defendant contends that Plaintiff's designation of 300 minutes (five hours) for Lardiere's examination is unnecessary because Lardiere only joined Defendant in 2000 and has no personal, non-hearsay

---

[6] This is yet another example of the failure to meet and confer in good faith.  The parties talk past each other, defeating the purpose of the JMIL—which is designed, when followed, to avoid this waste of scarce judicial resources.

knowledge of "the history of the Bermite-Whittaker Site, the contamination of the site, the spread of any of that contamination, the clean-up of the Site, or Whittaker's compliance with any regulatory scheme or order." Def. Mot. #5 at 1. Plaintiff responds that its "estimate" of five hours is appropriate for questioning Lardiere given his 20 years of experience at Defendant, seniority, and "unique knowledge of numerous relevant business practices." Opp. to Def. Mot. #5 at 4.

The Court is skeptical of all the time estimates in this case, including this one. The parties' estimate is more in line with taking discovery rather than trial testimony. The Court orders Plaintiff to make a detailed **offer of proof** about the anticipated testimony of this witness, specifying the expected time for each point to be elicited. Plaintiff's failure to provide an offer of proof by **Tuesday, August 17** may result in the exclusion of this witness.

## XI.   DEFENDANT'S JOINT MOTION IN LIMINE #6

Defendant next seeks to reinstate the following affirmative defenses: (1) statute of limitations; (2) unclean hands; (3) assumption of the risk; (4) failure to mitigate; (5) contributory/comparative negligence; (6) preemption; and (7) government contractor defense. Dkt. No. 308 (Def. Mot. #6).

In its Order Regarding the Parties' Motions and Cross-Motions for Partial Summary Judgment, the Court struck many of Defendant's affirmative defenses for lack of any factual basis. Dkt. No. 272 (MSJ Order) 16. Defendant argues that reinstating these defenses will not prejudice Plaintiff because the allegations in Defendant's original answer (Dkt. No. 43), filed on April 1, 20219, gave notice to Plaintiff that Defendant would seek to assert them. Def. Mot. #6 at 2. Plaintiff responds that the selected defenses should remain dismissed because nothing has changed since Defendant failed to present sufficient evidence in support of these defenses at the summary judgment stage. Opp. to Def. Mot #6 at 7. Plaintiff also claims it would be prejudiced if the Court reinstated the defenses due to lack of notice. *Id.*

In its MSJ Order, the Court noted that it "will not necessarily deny Defendant the chance to raise potentially meritorious affirmative defenses at trial, especially in the absence of any prejudice to Plaintiff caused by the pleading deficiency." MSJ Order 16. For reinstatement to be proper, Defendant must plead "at least some facts indicating the grounds on which the defense is based, but need not include facts sufficient to demonstrate plausible entitlement to relief." *Rosen v. Masterpiece Mktg. Grp., LLC,* 222 F. Supp. 3d 793, 802 (C.D. Cal. 2016).

### A.   Statute of Limitations

Defendant asserts it should be able to rely on a statute of limitations defense for Plaintiff's claims for negligence, trespass, and nuisance.  Def. Mot. #6 at 2.  But Defendant then proceeds to discuss the statute of limitations only as it pertains to Plaintiff's nuisance claim.  Specifically, Defendant argues that the "continuing nuisance" exception to the three-year statute of limitations for a nuisance claim should not apply here.  *Id.* at 2-3.  Defendant has presented "at least some facts" to suggest that the purported nuisance at issue here is permanent, rather than continuing.  *Rosen*, 222 F. Supp. 3d at 802.  Thus, the Court **GRANTS** Defendant's motion to reinstate the statute of limitations affirmative defense, but only as to Plaintiff's nuisance claim.  Defendant cannot rely on the statute of limitations defense for Plaintiff's negligence or trespass claims because Defendant has not presented any facts or stated any law to suggest that defense would be meritorious at trial as to those two claims.

### B.   Unclean Hands

Defendant provides no legal or factual argument in its moving papers as to why the unclean hands defense should be reinstated.  Thus, the Court **DENIES** Defendant's motion to reinstate the unclean hands defense.

### C.   Assumption of the Risk

Defendant claims that it is alleging secondary, rather than primary, assumption of the risk.  Reply to Opp. to Mot. #6 at 9-10.  Defendant's two sentences of conclusory argument fail to explain how secondary assumption of risk applies to this case.  The Court **DENIES** the motion to reinstate the assumption of risk defense.  The Court orders the parties to **meet and confer** to prepare a new joint motion in limine that spells out the theory of the defense of secondary assumption of risk with appropriate points and authorities and citations to the factual record.  This new motion must be submitted no later than **Tuesday, August 17.**

### D.   Failure to Mitigate and Contributory or Comparative Negligence

The Court does not find Defendant's arguments for reinstating the defenses of failure to mitigate and contributory/comparative negligence to be entirely convincing.  *Id.* at 4-5.  However, Plaintiff's Opposition fails to address

Defendant's contributory negligence argument beyond the perfunctory claim that it is "simply not meritorious in this case" (Opp. to Def. Mot. #6 at 7) and does not mention failure to mitigate at all.  Plaintiff's failure to respond to Defendant's argument may be construed as conceding the point.  *See Whooley v. Tamalpais Union High Sch. Dist.*, 399 F. Supp. 3d 986, 993 (N.D. Cal. 2019) ("[Plaintiff] effectively concedes this point by failing to address it in her Opposition . . . ."). Thus, the Court **GRANTS** the motion as to the defenses of failure to mitigate and contributory or comparative negligence.

### E.    Preemption

In its Order denying Defendant's motion to bifurcate trial (Bifurcation Order), Dkt. No. 291, the Court described Defendant's preemption theory as "questionable" and stated that it was "not convinced" by Defendant's preemption arguments.  Bifurcation Order 2, 4.  Defendant's conclusory, one sentence attempt to revive its preemption defense in the instant motion is insufficient to change the Court's position.  Def. Mot. #6 at 5.  Thus, the Court **DENIES** the motion to reinstate the preemption defense.

### F.    Government Contractor Defense

For the government contractor defense to apply, the defendant must establish that "(1)the United States approved reasonably precise specifications; (2) the equipment conformed to those specifications; and (3) the supplier warned the United States about the dangers in the use of the equipment that were known to the supplier but not the United States." *Arness v. Boeing N. Am., Inc.,* 997 F. Supp 1268, 1272 (C.D. Cal. 1998).

Defendant seeks to rely on the "Findings of Fact and Law" issued by Judge Matz in *Am. Ins. Specialty Lines Ins. Co. v. U.S.*, Case No. CV 09-01734 AHM (RZx), Dkt. No. 180, 2009 WL 10672384.  Defendant presumably does so because, as Plaintiff points out, Defendant has "failed to provide the government contracts, specifications, equipment contracts and related records necessary to defend this claim." Opp to. Def. Mot #6 at 7.  Defendant cannot make out a meritorious government contractor defense without showing the underlying government contract.  To allow Defendant to use Judge Matz's findings in *American Insurance* in lieu of producing a government contract would render those findings—which Plaintiff has no chance to rebut or respond to—binding upon Plaintiff, causing that case to have an unfair claim preclusive effect upon the

current proceedings.  Thus, the Court **DENIES** the motion to reinstate the government contractor defense.

In summary, the Court **GRANTS** Defendant's motion to reinstate the affirmative defenses of (1) statute of limitations (only as to Plaintiff's nuisance claim); (2) failure to mitigate; and (3) contributory or comparative negligence.[7] The Court **DENIES** Defendant's motion to reinstate the affirmative defenses of (1) unclean hands; (2) assumption of the risk; (3) preemption; and (4) government contractor defense, as more fully stated above.

## XII.   DEFENDANT'S JOINT MOTION IN LIMINE #7

Defendant's final joint motion in limine seeks to preclude Plaintiff's expert Richard Hughto from testifying (1) that Defendant buried, dumped or disposed of any hazardous substance, including perchlorate or any VOC, except during its normal production operations; (2) about any "illegal" or improper" activities that do not directly involve perchlorate or VOCs; (3) that Defendant has been found to have engaged in illegal disposal of a hazardous waste; and (4) that a search warrant was executed at the Site.  Dkt. No. 309 (Def. Mot. #7) 1.

### A.   Opinions Regarding Defendant's Waste Disposal Practices

Defendant argues that Hughto's opinions about Defendant's disposal practices are inadmissible to the extent they involve the disposal of any substance except VOCs or perchlorate.  *Id.* at 6.  Defendant argues that this evidence is impermissible character evidence under Federal Rule of Civil Procedure 404(b) and more prejudicial than probative in violation of Federal Rule of Civil Procedure 403.  *Id.* at 6-7.  Though its Opposition lacks appropriate citations to the record, Plaintiff seems to contend that Hughto's report establishes high levels of VOC contamination in areas at issue in the case.  Opp. to Def. Mot. #7 at 9.  Plaintiff also defends Hughto's conclusions about Defendant's allegedly "indiscriminate" disposal of chemicals.  Decl. of Fred Blum, Ex. 1 at 4.

---

[7] Plaintiff is not prejudiced by the reinstatement of defenses as they were part of the case for all of discovery and until the Court rendered its MSJ Order.  *See Simmons v. Navajo Cty., Ariz.*, 690 F.3d 1011, 1023 (9th Cir. 2010), *overruled on other grounds by Castro v. County of Los Angeles*, 833 F.3d 1060 (9th Cir. 2016) (rejecting argument that a party lacked notice of affirmative defenses which were subject to "lengthy legal argument," including in the defendant's motion for summary judgment).

It is unclear on this record whether Plaintiff seeks to offer Hughto's testimony about Defendant's waste disposal practices for a relevant purpose. Such testimony might be admissible if it was offered as circumstantial evidence that Defendant caused the high concentrations of VOCs and perchlorate present at the relevant sites. But such testimony is inadmissible if offered only as "evidence of any other . . . wrong [] or act . . . to prove [Defendant's] character in order to show that on a particular occasion [Defendant] acted in accordance with the character." Fed. R. Evid. 404(b)(1).

Thus, the Court **reserves ruling** on this portion of the motion. The parties are ordered to provide an **offer of proof** no more than **five pages** in length that sets forth (1) every Hughto opinion Plaintiff seeks to admit and the purpose for which Plaintiff seeks to admit it and (2) the basis for each of Hughto's opinions with specific citations to the record. This report must be submitted by **August 17, 2021.**

## B.   <u>Opinions About the DTSC Report and Search Warrant</u>

In granting Defendant's Joint Motion in Limine #4, the Court rejected this evidence as more prejudicial than probative and thus inadmissible under Federal Rule of Evidence 403. Plaintiffs cannot use an expert as a conduit to admit these prejudicial and otherwise inadmissible documents. The Court **GRANTS** the motion to exclude Hughto's opinions regarding the finding of allegedly illegal conduct by Defendant and the existence or execution of a search warrant at Defendant's site.

**IT IS SO ORDERED**.