1    UNITED STATES DISTRICT COURT

2    CENTRAL DISTRICT OF CALIFORNIA - WESTERN DIVISION

3    HONORABLE STANLEY BLUMENFELD, JR., U.S. DISTRICT JUDGE

4

5    SANTA CLARITA VALLEY WATER AGENCY,      )
                                             )
6                        Plaintiff,          )
                                             )
7         v.                                 )          Case No.
                                             )   CV 18-6825 SB (RAOx)
8    WHITTAKER CORPORATION, et al.,          )
                                             )          Volume 18
9                        Defendants.         )   (Pages 1964 - 2018)
     _____)

10

11              REPORTER'S TRANSCRIPT OF TRIAL PROCEEDINGS
                   TRIAL DAY 9:  P.M. SESSION - PART 2
12                 WEDNESDAY, DECEMBER 1, 2021
                            3:11 P.M.
13                   LOS ANGELES, CALIFORNIA

14

15

16

17

18

19

20

21

22    _____

23         MYRA L. PONCE, CSR 11544, CRR, RPR, RMR, RDR
                FEDERAL OFFICIAL COURT REPORTER
24              350 WEST 1ST STREET, ROOM 4455
                LOS ANGELES, CALIFORNIA  90012
25                     (213) 894-2305


UNITED STATES DISTRICT COURT

1       **APPEARANCES OF COUNSEL:**

2

3 **FOR THE PLAINTIFF:**

4   NOSSAMAN, LLP
   BY:  BYRON P. GEE
5   BY:  RAVEN MCGUANE
   BY:  PATRICK J. RICHARD
6   BY:  FRED FUDACZ
     Attorneys at Law
7   777 South Figueroa Street, 34th Floor
   Los Angeles, California  90017
8   (213) 612-7800

9   NOSSAMAN, LLP
   BY:  ILSE CHANDALAR SCOTT
10     Attorney at Law
   50 California Street, 34th Floor
11   San Francisco, California  94111
   (415) 398-3600
12

13
 **FOR THE DEFENDANT WHITTAKER CORPORATION:**
14
   EDLIN, GALLAGHER, HUIE & BLUM
15   BY:  MICHAEL E. GALLAGHER, JR.
   BY:  FRED M. BLUM
16   BY:  DANIEL ERIC TROWBRIDGE
     Attorneys at Law
17   500 Washington Street, Suite 700
   San Francisco, California  94111
18   (415) 397-9006

19

20 **ALSO PRESENT:**

21   MATT STONE
   SCOTT FRYER
22   RON BEATON
   ERIC LARDIERE
23

24

25

**INDEX OF WITNESSES**

DEFENDANT'S WITNESSES                                          PAGE

(NONE OFFERED.)

1967



**INDEX OF EXHIBITS**

| NUMBER | DESCRIPTION | FOR EVIDENCE PG. |
|---|---|---|
| | (NONE OFFERED.) | |

**UNITED STATES DISTRICT COURT**

```
  1              WEDNESDAY, DECEMBER 1, 2021; 3:11 P.M.

  2                    LOS ANGELES, CALIFORNIA

  3                            -oOo-

  4          (Out of the presence of the jury:)

  5          THE COURT:  Back on the record.  And all are present

  6   who were present before the break.

  7              Mr. Blum, I believe you were going to be saying

  8   something else.  Or have you completed your response to the

  9   Court's observation about Mr. Hokkanen's testimony?

 10          MR. BLUM:  Your Honor, I'm trying to remember what I

 11   said, honestly.

 12          THE COURT:  Let me just -- that's fine.  It's late.

 13   Let me just tell you what I recall.  And I took particular note

 14   of this because of the conversation that we had concerning

 15   Mr. Hokkanen and his ability to identify other potential

 16   sources is that he testified, as I recall, that what he would

 17   basically do, if he were looking to identify other sources, is

 18   that he would actually conduct an investigation to see who was

 19   disposing of what chemicals in the nearby area as a starting

 20   point to then do further analysis to see whether they

 21   potentially could be a source.  And he made it fairly clear he

 22   didn't do any of that.

 23              My takeaway from his deposition in this -- his

 24   testimony, rather, in this regard is that he said essentially

 25   it's not Whittaker.  And so if it's not Whittaker, well, by
```

definition, it's somebody else.

MR. BLUM:  Well, Your Honor, I think that's true.

Again, you asked us to give you specifically what we were

asking, what we were asking the Court.  And what we identified

in the pleading was specifically the mall wells and no other

location.

THE COURT:  And so tell me how you would present

this to the jury by way of an instruction, that SIC and who

were negligent or at fault?

MR. BLUM:  Those parties that -- whose -- whose

contamination was found in the mall wells.

THE COURT:  But you're not able to identify it other

than being Whittaker and I'm not aware of allowing by this

instruction an apportionment that would identify someone else

in that sort of nondescript way.  That's what I'm struggling

with, Mr. Blum.

MR. BLUM:  I understand where the Court is.  And

just to be clear, we're only talking about the negligence

claims here because I think it's different when we get to the

stuff that the Court has to deal with on CERCLA and stuff like

that.

The -- we're allowed to seek apportionment if we can

either name or describe with sufficient particularity the

party.  And I think we -- I think, since we have a -- a

specific geographical area, we have specific types of

contamination, and there is significant evidence that it's not

us and that it was then drawn into V-201 by the pumping system

that was in place, that, I think, is enough -- enough of a

particular description to put it before the jury.

03:15PM     I think the Court is right in terms of most of the

way it described the evidence, I just think we just -- we may

disagree on what the legal significance is.

THE COURT:  And are you able to provide the Court

with any authority that would support this?  I'm happy to

03:15PM  provide it if the law supports it.

MR. BLUM:  Your Honor, right now I don't have that

authority.  I would like to be able -- if I have, to come up

with it in the morning, but I understand we're in a time

crunch.

03:16PM     THE COURT:  Well, what I will allow you to do is

if -- I know the parties have briefed this.  But if you

actually have some more specific authority that you want to

cite to the Court, you can send the Court to chambers e-mail,

copying Mr. Richard, the citation, and I'll take a look at it.

03:16PM     I'm just not aware of the Court's legal ability to

essentially say, since it -- a party says -- has evidence that

it wasn't them, it therefore must have been somebody else, and

a jury then can allocate responsibility to someone else who

they know nothing about.  They don't know how they were

03:16PM  negligent, what they did, or at least they don't know who the

1    party potentially even was.

2            MR. BLUM:  Your Honor, I mean, let's just play out

3    what the Court said, and let's assume that the jury believes

4    we're not responsible for the mall wells.  What does the jury

03:17PM  5    do?  It can't apportion it -- it can't give it to us because it

6    believes that we didn't do it.  It's not SIC, and it's not the

7    plaintiff.  So what do I do with this chunk of liability that

8    they believe none of the parties here is responsible for?

9            THE COURT:  Let's talk about the practicality of it

03:17PM  10   because I think that may address it.  What does that translate

11   into?  So what is -- let's say the jury were to say, yeah,

12   there's some other source at the mall well -- at the mall

13   wells.  What does that translate into?  How do they make any

14   kind of rational allocation in that instance?

03:17PM  15           MR. BLUM:  Well, one way is, if they decide that,

16   for instance, let's say they decide that we're liable for

17   Saugus 1 and Saugus 2 but not V-201.  They can say -- or that

18   we -- that our contribution to it was infinitesimal and that

19   the only other known source would be the -- the mall wells and

03:18PM  20   the pumping.  They can assess 95 percent of what they believe

21   is a liability for V-201.  I don't know how that works out with

22   the total calculations, but juries do that all the time.

23           THE COURT:  All right.  One last thing before I turn

24   to Mr. Richard on this.  What's the real practical effect of

03:18PM  25   this?  That is to stay --

|  | 1 | MR. BLUM:  Well, less. |
|--|--|--|

                    1          MR. BLUM:  Well, less.

                    2          THE COURT:  That's what I'm asking is it's joint and

                    3   several liability at least with respect to economic damages;

                    4   right?

    03:18PM         5          MR. BLUM:  Yes.

                    6          THE COURT:  So you would pay less on an

                    7   apportionment basis for noneconomic harm; correct?

                    8          MR. BLUM:  Yes.

                    9          THE COURT:  Is there noneconomic harm here?

    03:18PM        10          MR. BLUM:  No.

                   11          THE COURT:  So what is the practical significance of

                   12   this?

                   13          MR. BLUM:  Um, Your Honor, funny thing about it,

                   14   that's what Mr. Gallagher and I were talking about last night.

    03:19PM        15   I don't know, Your Honor.  This is -- this is not a hill that I

                   16   want to die on.

                   17          THE COURT:  Look, can I ask you to maybe think about

                   18   this and see whether you even want an apportionment of

                   19   responsibility where you're going to be spending your time

    03:19PM        20   arguing to the -- to the jury that you should allocate this

                   21   much to this party, this much to that party?

                   22          I'm going to give you this apportionment of

                   23   responsibility instruction.  It's just going to be if you want

                   24   it.  It's just going to be a question of whether I'm including

    03:19PM        25   these -- the mall well contributors.  And, frankly, I think

1    we're spending a lot of time on what's probably an absolute

2    academic issue because I can't see how this practically matters

3    in a case involving complete economic harm.

4              MR. BLUM:  I will -- Mr. Gallagher and I will talk

03:19PM  5    about it, and we will -- if we decide to withdraw it, we will

6    send an e-mail to the Court.

7              THE COURT:  All right.  And, Mr. Richard, I will

8    hear from you if you wish to because I'm not likely going to be

9    able to give more time to discuss the issues.

03:20PM  10              MR. RICHARD:  I just want the record clear I do not

11   believe the evidence, after Mr. Hokkanen's testimony, supports

12   giving this instruction at all.  I -- and also -- so I'm -- I

13   just want the record clear I don't think the instruction should

14   be given at all, and I don't think further argument at this

03:20PM  15   point is necessary.

16              THE COURT:  That's fine.  I am fairly persuaded that

17   there's evidence that SIC may be the cause of the VOCs, not

18   just from Mr. Hokkanen.  There's been other testimony

19   concerning SIC potentially being a source.

03:20PM  20              But in any event, enough on that because I -- I

21   think we've taken that as far as it needs to be taken.

22              MR. BLUM:  Your Honor, on a completely different

23   issue, I talked to Mr. Richard at the break.  The plume maps

24   that Mr. Hokkanen relied upon, we've agreed that they could be

03:20PM  25   entered into evidence, and I'll be providing them to the clerk,

UNITED STATES DISTRICT COURT

|   |   |
|---|---|
|   | 1 |
|   | 2 |
|   | 3 |
|   | 4 |
| 03:21PM | 5 |

1    to Mr. Cruz.

2              THE COURT:  Very well.  And the Court accepts the

3    stipulation.

4              MR. BLUM:  Thank you.

5              THE COURT:  With regard to damage to real property,

6    this is the issue, I believe, of diminution in value.  And I

7    have had a chance to review the parties' supplemental briefing

8    on this.

9              It seems to the Court that there has been no

10   evidence of diminution in value of the property, nor,

11   incidentally, am I yet persuaded that there's been evidence of

12   diminution in value of the groundwater, even assuming that was

13   an appropriate evaluation or valuation point.

14             The parties agree -- and I think correctly

15   legally -- that it is Whittaker's burden to demonstrate

16   diminution in value.

17             So I will hear from the defense, if you wish to be

18   heard, as to where there is evidence of diminution in value.

19             MR. BLUM:  Your Honor, do you mean evidence of no

20   diminution of value?

21             THE COURT:  I'm sorry.  That there's evidence of

22   either no diminution in value or some diminution in value that

23   is less than the restoration damages.

24             MR. BLUM:  Your Honor, the evidence is let's -- if

25   we take what was testified to by Mr. Alvord about what the

1  property interest is, the evidence is that that hasn't been

2  affected in any way.  The machinery works.  The -- everything

3  is drawing fine.  That -- if you look at the water as a result

4  of the VOCs, it's --

03:23PM  5       THE COURT:  No.  I'm -- I'm very -- I think I'm

6  familiar with Whittaker's position that essentially -- and I

7  don't mean to make light of this.

8       MR. BLUM:  I understand.

9       THE COURT:  But no harm, no foul.  That is to say

03:23PM  10  that, even if we were responsible for the contamination,

11  it's -- it's clear that the VOCs are at such a level that it's

12  not causing problems in being able to serve the water below the

13  MCLs or even the MCL equivalence.  And there's been no evidence

14  of damage, as you say, to the wells and things of that nature.

03:23PM  15       But it seems to me that you're making a supposition

16  that the Court is not clear is correct, which is you're

17  suggesting that that is the valuation of groundwater.  You're

18  saying there's been no harm to the groundwater that's material

19  and, therefore, there's been no diminution in value, assuming

03:24PM  20  it's groundwater as opposed to assuming it's land.

21       MR. BLUM:  Well, Your Honor, we actually believe

22  it's land.  It's not groundwater.  But we argued both because

23  that's what we believe the plaintiff has been arguing.  Because

24  I think the land itself I think is the key, is the thing that

03:24PM  25  sort of allows the groundwater claim to go forward.

UNITED STATES DISTRICT COURT

|          |    |                                                            |
|----------|----|------------------------------------------------------------|
|          | 1  | And in terms of the land, the only evidence is             |
|          | 2  | Mr. Alvord talking about the pumping systems and we have -- and |
|          | 3  | it's clear here that those pumping systems have not been    |
|          | 4  | affected one iota, that there is nothing wrong with any of the |
| 03:24PM  | 5  | systems, that the VOCs haven't prevented them from pumping  |

And in terms of the land, the only evidence is
Mr. Alvord talking about the pumping systems and we have -- and
it's clear here that those pumping systems have not been
affected one iota, that there is nothing wrong with any of the
systems, that the VOCs haven't prevented them from pumping
anything.  I think the jury can infer no -- no diminution in
value from that evidence.

            THE COURT:  What evidence is there of land valuation
affected by contamination?

            MR. BLUM:  Your Honor, if the number is zero, you
don't need what the value is.

            THE COURT:  But that presupposes what you have to
prove, doesn't it?

            MR. BLUM:  Your Honor, all we have to go -- all we
have to -- in order to go forward with it, we just have to
prove that there is some evidence to support zero, substantial
evidence to support no diminution in value.

            THE COURT:  But tell me how do you value land?  How
is land valued?

            MR. BLUM:  One, it can be valued by the cost of
repair.  That's a proper way to value -- to value diminution in
value.  If it only costs ten cents to clean it up, it's lost
ten cents in value.

            THE COURT:  But you're not claiming cost of repair.
You're saying that the jury shouldn't look at the cost of

1    repair which is restoration damages.  You're saying that it's

2    diminution in value of the land.

3            MR. BLUM:  Restoration damages is not -- if the

4    issue was how much does it cost to restore the land, there is

03:26PM   5    zero evidence the land is contaminated.  If that's -- if that's

6    the standard that the Court uses, the Court should dismiss

7    plaintiff's case because there's zero evidence on restoration

8    of land here.  All of the evidence goes to restoration of

9    groundwater.

03:26PM  10            THE COURT:  Isn't -- isn't there evidence that the

11   VOCs have made their way into the soil and from the soil have

12   gotten into the groundwater?

13           MR. BLUM:  The -- yeah.  But that's at the Whittaker

14   site, not on the land that plaintiff owns.  All of the evidence

03:26PM  15   of movement is at the Whittaker site.  There is zero evidence

16   that there is any contamination of any of the land that

17   plaintiff claims they own.  And we don't even know what -- when

18   I say own, I'm inferring it's owned.  We don't know if it's a

19   lease.  We don't know if it's a license.  We don't know if it's

03:27PM  20   an easement.  And that's why we believe -- we actually believe

21   that the claim of ownership is too vague to substantiate

22   ownership.

23           THE COURT:  So you're saying that there is no

24   evidence of offsite migration of VOCs from the Whittaker site?

03:27PM  25           MR. BLUM:  Oh, no.  There's tons of it.  But has any

UNITED STATES DISTRICT COURT

1  of it ended up on plaintiff's land?  I don't know.  There's

2  been no evidence it has.

3          For instance, Your Honor, if they don't own the land

4  right -- that touches the groundwater, you can't infer that

03:27PM  5  there's contamination to the land.  If all they own is what's

6  on the surface, how has the contamination moved 40 or 50 feet

7  up?  There's no evidence of it.

8          THE COURT:  But let's assume there is evidence.  If

9  there is evidence that there was offsite migration of

03:27PM  10 contaminants that polluted or affected the plaintiff's

11 property, then the Court would need to have some valuation

12 evidence as to the impact of that contamination on their

13 property.

14         MR. BLUM:  I would agree.  But there's not -- that

03:28PM  15 evidence doesn't exist, Your Honor.

16         THE COURT:  The evidence of contamination of the

17 plaintiff's property doesn't exist.

18         MR. BLUM:  Correct.  And this is what I will say.

19 What is the plaintiff -- what is the ownership interest the

03:28PM  20 plaintiffs have?  Nobody knows.  So how can the Court say that

21 the property has been contaminated where we don't know what the

22 ownership interest is?

23         For instance, if it's a use easement, clearly the

24 VOCs haven't interfered with the use easement.  If it's a

03:28PM  25 license, that's not enough.

**UNITED STATES DISTRICT COURT**

            THE COURT:  All right.  So you're suggesting that

1   Mr. Alvord didn't provide sufficient evidence as to -- as to

2   property ownership.

3           MR. BLUM:  Yes, sir.  Yes.  And this would be the

4   last point.  When you look at the evidence for the -- okay.

5   When you look at the evidence, let's assume the land is the

6   key.  There's no evidence of rest -- of cost of restoration of

7   the land.  All of the evidence goes to restoration of the

8   groundwater.

9           THE COURT:  All right.  Let me hear from

10  Mr. Richard, please.

11          MR. RICHARD:  Yes, Your Honor.  Thank you.

12          I thought the instruction we were discussing was

13  damage to real property, and at times it seemed like you and

14  counsel were speaking at cross purposes.

15          So on that instruction, the question is whether

16  there should be any reference to diminution in value, and the

17  Court has correctly pointed out the parties agree that burden

18  falls to defendant, where there is not that evidence, then that

19  part of the instruction is not given.  So that's how I see that

20  issue on this instruction.

21          The other comments we've heard over and over again,

22  this slicing and dicing that's contrary to the law that we've

23  cited.  The *Starrh* case, the *City of Pomona* Ninth Circuit case.

24  So I'm not --

**UNITED STATES DISTRICT COURT**

```
 1              THE COURT:  Mr. Richard, you don't have to persuade
 2        me.
 3              MR. RICHARD:  Okay.
 4              THE COURT:  I have read that authority, and I have
 5        indicated that you are correct about it and that Mr. Blum, in
 6        my judgment, is incorrect about it.
 7              But we also had a discussion about what the evidence
 8        is to support the -- the Starrh type of instruction or analysis
 9        that you're entitled to restoration damages because your
10        property, your client's property, has been damaged through the
11        introduction of these contaminants.
12              MR. RICHARD:  Right.  And the City of Pomona case
13        very clearly said that contamination of groundwater provides
14        sufficient standing in that regard.  So I just wanted to be
15        clear on this instruction or which issue we're dealing with.
16              THE COURT:  Is there evidence that -- first of all,
17        that the water agency owns the property?
18              MR. RICHARD:  The evidence is that, for all their
19        wells, they either own it or have the exclusive right to use
20        it.  And so that is --
21              THE COURT:  Just the wells or the property
22        surrounding --
23              MR. RICHARD:  No, he said in the property that the
24        wells sit on.  He said, for all of our wells, the water agency,
25        both Valencia and then the new water agency after the merger,
```

03:30PM (line 5)
03:30PM (line 10)
03:30PM (line 15)
03:31PM (line 20)
03:31PM (line 25)

1981

1 either owns the land or has an exclusive right to use the land.

2 And he didn't go well-by-well.  He said for all the wells.

3            And that, in addition to Keith Abercrombie's

4 testimony about the piping and the water agency, is more than

03:31PM  5 sufficient to meet that jury instruction, which is a different

6 jury instruction.

7            THE COURT:  And so now what about the argument that

8 there's no evidence that anything other than the groundwater

9 has been affected by the contaminants?

03:31PM  10            MR. RICHARD:  Yeah.  And I think two things on that.

11 One, we've heard from several of the geologists saying that

12 they're seeking equilibrium, the contamination doesn't just

13 stay in the groundwater.  It does transport back and forth

14 between the surrounding land and the groundwater itself.  We've

03:32PM  15 heard testimony that it's not a river, it actually is part of

16 the land, and that those contaminants cling and go back and

17 forth between the soil and the water.  That sort of

18 distinction, though.  So yes, the evidence supports that, and

19 we can easily find that.

03:32PM  20            But too, the Ninth Circuit's been clear.  That's

21 sort of parsing, you know, do the particles of the

22 contamination stay on the land or stick to the water is

23 absolutely unnecessary.  We absolutely have standing to sue for

24 the groundwater contamination.  But in this case, we also have

03:32PM  25 that interesting evidence that the contamination sticks to the

```
  1    soil, not just to Whittaker's property but at the property

  2    beneath our well.

  3            THE COURT:  Is there evidence beyond that as to the

  4    contamination affecting the property other than the

  5    groundwater?

  6            MR. RICHARD:  Affecting the property?  I think the

  7    effect is via the groundwater.

  8            THE COURT:  So the introduction of the VOCs and the

  9    perchlorate all come through the groundwater, and then through

 10    the groundwater, the contaminants stick to or transfer to the

 11    soil.  That is the extent of the evidence with regard to

 12    contamination of the water agency's property.

 13            MR. RICHARD:  Well, no.  I mean, it's the -- when

 14    you say property, that's a different question.  I thought we

 15    were talking about soil.

 16            The groundwater provides -- contamination of

 17    groundwater under *Starrh and Starrh* and *City of Pomona* provides

 18    all the standing we need on these three claims.  So I was just

 19    answering Your Honor's question about is there evidence to show

 20    contamination from the soil as distinguished from the

 21    groundwater in the soil.

 22            THE COURT:  Well, construe my question, if you

 23    would, please, as property.  So is there something other than

 24    soil that these contaminants affected your client's --

 25            MR. RICHARD:  Yes.
```

03:33PM (line 5)
03:33PM (line 10)
03:33PM (line 15)
03:34PM (line 20)
03:34PM (line 25)

**UNITED STATES DISTRICT COURT**

1           THE COURT:  -- property?

2           MR. RICHARD:  Sure.  As the water -- I believe the

3    cases -- we have the right to pump and use the water, and when

4    we do that, it becomes the property of the agency.

03:34PM   5           THE COURT:  I understand.  There's water.  There's

6    soil.  Is there anything else that you're claiming the evidence

7    shows the contamination affected?

8           MR. RICHARD:  I'm -- I don't think we -- if I

9    thought about it, Your Honor, I'm sure it's in the piping and

03:34PM  10   throughout the distribution system, and that's also property.

11   But no, I think we fully addressed it in those components.

12          THE COURT:  All right.  I'm going to take this

13   matter under submission.  But I am inclined to accept the

14   instruction as presented by the plaintiff.  I'm not convinced

03:35PM  15   yet, but I will reflect further that there is any evidence of

16   diminution of value to the land.  I think the -- the argument

17   doesn't fit the legal principle here that I've heard from

18   Whittaker.

19          MR. RICHARD:  Thank you.

03:35PM  20          THE COURT:  Let me move on to the next issue which

21   is loss of use of real property.  And I'll hear from you,

22   Mr. Blum, if you wish to be heard on this.  I'm not sure that I

23   really understand the basis of the objection to this

24   instruction.  It seems it's a fairly standard loss of use

03:35PM  25   instruction just modified to fit -- fit the facts of this case.

1984

1    MR. BLUM:  Your Honor, I'm just finding the

2    instruction.

3    THE COURT:  You're fine with the instruction?  Oh,

4    you're looking at it.

03:36PM    5    MR. BLUM:  I'm just finding the instruction.

6    THE COURT:  That's fine.  All right.

7    MR. RICHARD:  It's No. 58.

8    THE COURT:  And, for the record, while you're taking

9    the lectern, it simply says, "To recover damages for the loss

03:36PM    10    of use, SCV Water must prove the reasonable cost to repurchase

11    placement water for the time when it could not use its own

12    wells."  Isn't that a permissible consequential damage

13    instruction?

14    MR. BLUM:  The only issue -- yes, Your Honor.  The

03:36PM    15    only thing I would ask is, if the title of it goes to the jury,

16    the title is wrong because we're not dealing with real

17    property.  But that's okay.  Whatever the Court wants to do,

18    we'll submit.

19    THE COURT:  All right.  I'll just indicate it as

03:37PM    20    loss of use.

21    And the next is plaintiff's property interest.  And,

22    once again, I'll hear from you, Mr. Blum, on this.  But it

23    seems like this is just the issue we seem to be going round and

24    round on.  And I thought I had decided this issue.  I know not

03:37PM    25    in a way that you're pleased with, and I know you think I'm

|      |                                                                                      |
| ---- | ------------------------------------------------------------------------------------ |
| 1    | contradicting Judge Wu's ruling, which I'm not.  But haven't --                       |
| 2    | hasn't the Court already decided this issue?                                          |
| 3    | MR. BLUM:  Your Honor, this has -- I don't think it                                   |
| 4    | has anything to do with -- with -- with that issue.  I think                          |
| 5    | the -- the type of interest plaintiff says they own is                                |
| 6    | something the jury needs to consider when there's -- when                             |
| 7    | they're trying to determine what has been the invasion of their                       |
| 8    | rights.  How can the jury decide that there's been an invasion                        |
| 9    | of the plaintiff's property rights without knowing what those                         |
| 10   | rights are?                                                                           |
| 11   | THE COURT:  But isn't that a factual question?                                        |
| 12   | There's going to be instruction about they have to prove, at                          |
| 13   | least for certain claims, that there's been a trespass on their                       |
| 14   | property and the like.  Isn't that just going to be a matter of                       |
| 15   | factual argument?                                                                     |
| 16   | MR. BLUM:  Your Honor, no.  The facts -- I don't --                                   |
| 17   | the issue is, for instance -- and, actually, if they -- if they                       |
| 18   | owned the property and they were using it to water their own                          |
| 19   | land, their rights would be -- would be greater than they are                         |
| 20   | if they're just using the water to sell.  And the rights that                         |
| 21   | they're saying they're interfered with are their -- are their                         |
| 22   | appropriative rights.  That's it.                                                     |
| 23   | So they can't -- other than if they can prove damage                                  |
| 24   | to their own property, which, you know, the jury will decide                          |
| 25   | whether or not there's sufficient evidence, they have to prove                        |

03:37PM (line 5)
03:38PM (line 10)
03:38PM (line 15)
03:38PM (line 20)
03:39PM (line 25)

1 damage to the rights of use.  And -- and the issue is -- the

2 question is when do those rights have to be damaged?  And what

3 the case law says -- and this is one in which the cases cited

4 by Mr. Peter have no application because we don't talk about

03:39PM  5 it -- is when does the damage have to occur?  If it's a factory

6 right, it has to occur after they actually use the water.

7        THE COURT:  And didn't the Court already rule

8 against Whittaker on this argument?  Because the Court has

9 concluded that, if they can demonstrate that they have a

03:39PM  10 property interest in the soil, the surface, or the subsurface

11 and that that has been impacted, then they can demonstrate

12 potentially restoration damages, although as reflected in the

13 *Starr and Starrh* case -- and that's S-t-a-r-r-h -- they have

14 to make a demonstration to the -- to the jury that, in fact,

03:40PM  15 it's reasonable, that the restoration costs are reasonable and

16 there are various factors.

17        But aren't you continuing to push back on the

18 Court's reading of *Starrh and Starrh*?

19        MR. BLUM:  Your Honor, first of all, if we want to

03:40PM  20 preserve our record, unfortunately we have no -- we have no

21 option.

22        THE COURT:  That's fine, but you can tell me that's

23 what you're doing.  You can tell me, Judge Blumenfeld, based

24 upon your ruling, you shouldn't give this instruction, but your

03:40PM  25 ruling is incorrect and we have -- we object to it.

1          MR. BLUM:  Your Honor, I -- with respect to the

2    Court, I do think your ruling was incorrect, but we're not -- I

3    don't want to re-argue it.

4          THE COURT:  I understand that, and you have clearly

03:40PM   5    preserved that.  What I need to figure out, though, is are you

6    in a sense trying to go at it again with an instruction, or are

7    you, as you just suggested, really just seeking to preserve

8    your objection?

9          MR. BLUM:  Both, Your Honor.  We believe, in order

03:41PM   10   for them to claim -- the ability to claim the damage is

11   different from the triggering point.  Yes, under your rulings,

12   they could claim the damage.  We still believe the trigger for

13   that damage is at the time they use the water for -- and that's

14   the point.

03:41PM   15         THE COURT:  Isn't it the case that if -- let's say

16   they just said they weren't going to use water -- they weren't

17   a water supply company -- but they just said, look, this --

18   this contamination has affected our property.  Right?  And all

19   the evidence that they presented was the evidence of absorption

03:41PM   20   and that somehow there's contamination that has now made its

21   way into the soil, there subsurface of their property.  They

22   could still make this argument to the jury, couldn't they,

23   except that perhaps they should lose.

24         MR. BLUM:  Your Honor, it comes down to the point

03:42PM   25   that we were talking about in the last -- one of the last

instructions.  If -- are they claiming that the damage is damage to their property or damage to the water?  And what they seem to be is the only -- the damage to the property is in a sense very small, if any.  All they're really claiming and all the evidence for restoration relates solely to damage to the water.

THE COURT:  Well, but isn't that because they happen to use this property for that purpose and doesn't that just go to the reasonableness analysis that the jury is going to have to decide?

MR. BLUM:  Yes.  But what the cases that we cite in this instruction is when is that damage triggered?  And -- and, Your Honor, I'm -- it's been a long day for everybody.  I would just submit on it.  I think we've -- we understand -- everybody understands each other's points.

THE COURT:  Very well.  All right.  Then let's -- and, actually, let me just very briefly hear a response because I am going to take the matter under submission.  And I hope to get -- if not all of the instructions, most of these instructions to you, as I indicated, this evening.

MR. RICHARD:  I don't have much to add other than, as soon as the Court denied the motion on the restoration damages, the in limine motion and the motion for reconsideration, we received a number of instructions trying to resuscitate that issue, and this is one of them.

1    So I've argued this, and I don't need to add

2    anything to the Court's -- I think the Court understands the

3    issue better than I do.  So I'm going to sit down.

4         THE COURT:  Well, one question, though, in that

03:43PM   5    regard.  Is it a correct proposition, legal proposition, that,

6    once you can demonstrate damage to the subsurface -- let's

7    exclude the water -- the subsurface, the soil, that that is

8    sufficient for you to seek restoration damages.  And then the

9    question is whether those restoration damages are reasonable.

03:44PM   10   And in this context, since you happen to -- or your client uses

11   the property for water supply, that is a factor that simply

12   gets considered in the reasonableness of the restoration damage

13   request.

14        MR. RICHARD:  And that's exactly right, Your Honor.

03:44PM   15   And the cases we cited, they are case specific.  What are the

16   restoration?  Is it damage to your home, damage -- and so it's

17   case specific.  And that's exactly right, that it goes to the

18   reasonableness of the restoration damages.  And that's an

19   evidentiary, you know, question for the jury in this case.

03:44PM   20        THE COURT:  All right.  Why don't you remain there

21   for negligence per se.

22        MR. RICHARD:  Oh, because that's not my issue,

23   Your Honor.

24        THE COURT:  Then let me hear from you on this one,

03:44PM   25   Mr. Gee.  And, Mr. Gee, the majority of the cases that I have

1   seen suggest that RCRA is not an appropriate statute to allow

2   for negligence per se.  Is that a fair characterization of the

3   case law on this?

4           MR. GEE:  Well, we did cite to a case that basically

03:45PM  5   reflects the property use of RCRA and negligence per se, which

6   is that it is evidence of negligence by virtue of the violation

7   of RCRA that gives rise to -- that, if we improve, that the

8   violations gave rise to the damages that -- that we incurred

9   would be an appropriate application of negligence per se.

03:46PM  10          THE COURT:  That's the minority decision, is that

11  correct?

12          MR. GEE:  Yeah, I haven't fully briefed all -- all

13  of the cases on that issue.

14          THE COURT:  But most of the cases that I have seen,

03:46PM  15  other than that one, come out the other way with some reasoning

16  that seems persuasive to me.

17          MR. GEE:  Well, I guess, Your Honor, the -- some of

18  the cases that defendant -- defendants point to basically say,

19  the only RCRA remedy associated with RCRA is under

03:46PM  20  42 U.S.C. 6972.  However, if we take a look at

21  42 U.S.C. 6972(f), it basically says nothing in this section

22  shall restrict the rights which any person shall have with

23  regard to -- with regards to common law and to seek enforcement

24  of any statutory standard or requirement.

03:47PM  25          THE COURT:  But is that really the point for

        1    determining whether or not this essentially establishes a

        2    presumption of negligence per se?  You can pursue other claims,

        3    but that doesn't really bear on the issue that we're

        4    discussing, does it?

03:47PM  5             MR. GEE:  Well, Your Honor, I guess I can cite to,

        6    you know, the purpose of RCRA which, if we take a look at

        7    section 69 -- or 42 U.S.C. 6900, you know, when congress passed

        8    RCRA, it basically says that it's meant to prevent damages --

        9    I'm taking a look at (b)(14), essentially with open dumping of

03:47PM 10    particularly harmful -- or particularly harmful to health

       11    and -- harmful and health contaminated drinking water from

       12    underground --

       13             THE COURT:  I'm generally familiar with the purpose

       14    of it.  It's a strict liability statute; correct?

03:47PM 15             MR. GEE:  That's correct.

       16             THE COURT:  And how does that affect the evaluation

       17    as to whether this gives rise to a presumption of negligence

       18    per se?

       19             MR. GEE:  Well, Your Honor, the -- by violating

03:48PM 20    RCRA, the -- you know, the defendants should be aware that

       21    there are consequences and that --

       22             THE COURT:  From a doctrinal standpoint, the fact

       23    that this is strict liability, does that cut in favor or

       24    against a presumption?

03:48PM 25             MR. GEE:  Um, I -- I guess I -- I don't understand

1     the issue.

2              THE COURT:  Let me ask a different question, then.

3     Is there private right of action under RCRA?

4              MR. GEE:  There is a prior right of action under the

03:48PM  5     citizens suit.  However, as I mentioned, where we're not

6     talking about whether, you know, the plaintiffs can have a

7     prior right of action under RCRA, we're -- we're talking

8     about --

9              THE COURT:  But you do recognize that there's a

03:49PM  10    strain of case law that says that, in looking to determine

11    whether statutory violation gives rise to a presumption, you do

12    take into account whether the violation would give rise to a

13    private right of action.  There is law that stands for that

14    proposition; is that correct?

03:49PM  15             MR. GEE:  I have not -- I have not looked at that.

16             THE COURT:  All right.  Let's move on, then.

17             If the Court concludes that RCRA doesn't give rise

18    to a presumption, that would apply to the California

19    counterpart.  Would you agree with that?

03:49PM  20             MR. GEE:  Yeah, basically one -- or they're mimics

21    of what -- of the same action.

22             THE COURT:  And the same would be true with respect

23    to the federal and state counterpart for the Clean Water Act?

24             MR. GEE:  Well, there's a Porter-Cologne Act which

03:50PM  25    is somewhat separate than what is available underneath the

**UNITED STATES DISTRICT COURT**

|   | |
|---|---|
| | 1  Clean Water Act.  The Clean Water Act basically -- basically |
| | 2  gives -- you know, protects navigable water.  Porter-Cologne |
| | 3  Act actually has provisions that protect underground -- or |
| | 4  groundwater sources.  And, you know, under the Porter-Cologne |
| 03:50PM | 5  Act 13304, and I -- I don't have it in front of me, but I |

03:50PM 5  Act 13304, and I -- I don't have it in front of me, but I

6  believe it's like (c)(5) -- that allows public entities to --

7  to basically recover costs associated with releases, associated

8  with contamination much in the sense -- same sense that the

9  Regional Water Quality Control Board can seek, you know,

03:51PM 10  basically to recover their damages associated with -- with

11  water contamination.

12       THE COURT:  And let me have you respond to

13  Whittaker's brief with regard to the L.A. County ordinances.

14       MR. GEE:  Well, the L.A. County ordinances should

03:51PM 15  not come as any surprise to Whittaker in the sense that the

16  L.A. County ordinance is -- basically prohibit the release and

17  disposal of noxious material that -- that can cause a nuisance.

18  And so, you know, that is a standard, that -- that prohibits

19  basically some of the activities that they did that resulted in

03:51PM 20  soil contamination and -- and the groundwater contamination.

21       THE COURT:  What about their claim that they've been

22  prejudiced because you have not introduced any evidence -- and

23  maybe it's not even a matter of prejudice, it's a matter of

24  lack of proof -- about the appropriate standard of care or

03:52PM 25  whether there was, in fact, a violation of these ordinances?

1       MR. GEE:  Well, Your Honor, the -- there are -- some

2  of the ordinances do require that before getting -- before

3  discharging waste, you need to get a permit.

4       THE COURT:  Is there any evidence of permitting in

03:52PM  5  this case?

6       MR. GEE:  There -- there is no -- there is no

7  evidence that they obtained a permit but, again --

8       THE COURT:  Is there any evidence one way or the

9  other on that issue?

03:52PM 10       MR. GEE:  Again, as Mr. Richard pointed out, we were

11  not entitled to provide -- to be given -- we asked for

12  evidence, and we were told that it was either lost or otherwise

13  unavailable.

14       THE COURT:  All right.  But is there any trial

03:52PM 15  evidence before this jury on the question of permitting?

16       MR. GEE:  Um, again, we --

17       THE COURT:  It's a yes or a no.

18       MR. GEE:  No.  No, there is not and --

19       THE COURT:  So you're not entitled to this

03:53PM 20  instruction, then, are you?  That's the Court's ruling.  And

21  there's a long pause in response to the Court's question.

22       What about the other instruction, the other

23  ordinance, rather, 20.36.010?  That's not the permitting.  Is

24  there evidence that would support providing that ordinance as a

03:53PM 25  basis for a presumption of negligence per se?

**UNITED STATES DISTRICT COURT**

1        MR. GEE:  Well, the fact that it prohibits waste

2   materials from being disposed of in water bodies and surface --

3   well, let's see.  Hang on a second.  Well, it's much -- much in

4   the same way as -- as a prohibition against -- again, the

03:54PM   5   disposal and deposit of any waste material which may cause a

6   public nuisance or menace to public health.  This does not

7   require a permit for this to be actionable and it's --

8        THE COURT:  And --

9        MR. GEE:  I'm sorry.

03:54PM   10        THE COURT:  That's okay, Mr. Gee.  I'm interrupting

11   you.

12        MR. GEE:  Oh.

13        THE COURT:  If I were to give this as a basis for a

14   presumption, is it -- is there any added value in giving any

03:54PM   15   other statute or law as a basis for a presumption in this case?

16        MR. GEE:  Well, again, you know, this is just -- a

17   cause of action for which a -- a -- an act conducted by

18   Whittaker gives rise to damages associated with -- with -- with

19   their release -- releases of contamination.

03:55PM   20        THE COURT:  Let me put it another way.  If the jury

21   were to conclude that you haven't proven this, you haven't

22   proven that Whittaker deposited any material which may create a

23   public nuisance or a menace to the public health or safety or

24   which may pollute underground or surface waters, then you're

03:55PM   25   going to lose.  You're going to lose on negligence for sure,

|   |   |
|---|---|
| 1 | let alone on this presumption issue; correct? |
| 2 | MR. GEE:  If you're -- if -- if your question is |
| 3 | does the same evidence substantiate or support both nuisance -- |
| 4 | nuisance and negligence per se, I would have to agree that they |
| 5 | do. |
| 6 | THE COURT:  What I'm really driving at is, if I were |
| 7 | convinced to give this ordinance as a basis for the |
| 8 | presumption, is there any reason why I would give any other |
| 9 | statute or law as a basis for presumption?  Because either the |
| 10 | jury would decide that this gives rise to that presumption of |
| 11 | negligence per se that you've proven this or not.  There's no |
| 12 | other statute that you're relying upon that is going to affect |
| 13 | that. |
| 14 | That is to say, where they might say the plaintiff |
| 15 | hasn't proven a violation of 20.36.010 to give rise to a |
| 16 | presumption of negligence per se, but sure have proven a |
| 17 | violation of -- and you filled in the blank of the laundry list |
| 18 | of statutory violations that you've submitted.  Am I correct or |
| 19 | incorrect on that? |
| 20 | MR. GEE:  Can you rephrase -- rephrase the question? |
| 21 | I'm -- I don't -- |
| 22 | THE COURT:  Is there any other statutory violation |
| 23 | that you are offering that adds anything to this statute for |
| 24 | purposes of the negligence per se presumption instruction that |
| 25 | you're requesting? |

03:55PM — line 5
03:56PM — line 10
03:56PM — line 15
03:56PM — line 20
03:57PM — line 25

1       MR. GEE:  No, Your Honor.  I guess it's -- it's --

2   for this one, it's -- it would give rise to, you know, other

3   tort claims.

4       THE COURT:  So in other words, the jury couldn't

03:57PM  5   say, no, plaintiff hasn't proven 20.36.010's been violated, but

6   the plaintiff has proven -- you filled in the blank of all of

7   the other statutes that you want me to give as a basis for the

8   presumption.  Am I right on that?

9       MR. GEE:  For this particular statute, yes.

03:57PM 10      THE COURT:  Are you satisfied if I decide -- I still

11  haven't heard from Whittaker.  If I decide to give this as a

12  basis for the presumption, are you satisfied with my giving

13  just this one ordinance?

14      MR. GEE:  Just this one single ordinance that --

03:58PM 15      THE COURT:  Yes.

16      MR. GEE:  L.A. County?

17      Um, no.  Again, the Porter-Cologne Act does contain

18  a right of -- private right of recovery for public entities

19  like my client.

03:58PM 20      THE COURT:  Tell me what it practically does,

21  Mr. Gee.  Put yourself in the shoes of the jury.

22      MR. GEE:  Okay.

23      THE COURT:  And they're going to be listening to all

24  of these statutes.

03:58PM 25      MR. GEE:  Okay.

THE COURT:  And then argue it to the jury in your own mind.  How does it matter to the jury to have two, three, or four different statutes that either largely say the same thing, overlap to an extent?  That's the point I'm driving at.

03:58PM

MR. GEE:  Okay.  Well, for instance, Your Honor, let's say that we have -- that we have costs associated with investigation for the release to groundwater under the Porter-Cologne Act.  We do have -- we do have as a public entity the right to claim costs associated with that -- that is not -- there are costs that are not covered by oversight because, for example, DTSC --

03:59PM

THE COURT:  Mr. Gee, either you're not understanding me, respectfully, or I'm not understanding you, and I'm not sure which is the case.  But this is -- the jury's not going to make a determination as to whether you violated statute A, B, C, or D for purposes -- or whether Whittaker did for purposes of this instruction.  You're not going to know.  Have you provided the Court with any special verdict form that asks the jury to come back and say they violated statute A, B, C, or D?  I'm not recalling that you did, but maybe I'm misremembering.  Did you?

03:59PM

04:00PM

MR. GEE:  No.  No, Your Honor.

THE COURT:  So I return to the question that I asked you.  Is there any value, if I give a presumption of negligence per se instruction, am I giving more than this one statute,

04:00PM

this one ordinance?

I'm going to let you confer with counsel, and I'll hear from Mr. Blum.

MR. BLUM:  Your Honor, is there anything specific you want me to deal with?

THE COURT:  This particular ordinance.  I will tell you that, Mr. Blum, that I'm looking to see if there's prejudice here that I could find, not that I'm necessarily looking for it or not looking for it.  But because this is purely a matter of law, I'm having a hard time seeing prejudice, and that's why I'm focused on this particular ordinance.

MR. BLUM:  Well, Your Honor, it depends on how they want to prove we did it.  If they're going to argue, for instance, that what we do was -- was a harm to public health, we would have taken discovery on that, and it's a possibility we would have retained an expert to say no.

THE COURT:  But let's assume that they're not going to argue that there was an actual injury to public health but, rather, they're going to argue that under this ordinance, your client was not permitted to pollute the underground or surface waters and they did so here.

MR. BLUM:  Well, Your Honor, if that's what their argument is, I think that there's no evidence to support that because there's no evidence we did.

1          THE COURT:  Right.  And in which case, you win on

2     this.

3          MR. BLUM:  Well, in which case, if there's no

4     evidence, the instruction shouldn't even go to the jury.

04:02PM    5          THE COURT:  Well, I understand that.  But that goes

6     back to your motion --

7          MR. BLUM:  Yes, I understand that.

8          THE COURT:  So let's assume for purposes of this

9     discussion, because we're at jury instructions, that you're

04:02PM   10     going to lose on your JMOL.

11          MR. BLUM:  Well, Your Honor, it's -- the statute

12     doesn't say you're not allowed to dispose of anything on the

13     ground.  It says you're not allowed to pollute.  So it's got to

14     mean something, the word "pollute."  So, for instance, it

04:02PM   15     probably doesn't -- the example I would use -- it's the easiest

16     one -- is if we poured distilled water on the ground, that

17     wouldn't be in violation of the statute.

18          The difficulty with the statute is and where we

19     would actually focus on it is, at the time we did it, we -- we

04:03PM   20     were not polluting.  For instance -- and why perchlorate, it's

21     not a big issue because everybody agrees that it wasn't until

22     1997 that there was a problem.  We would have submitted more

23     evidence on the issue of what was known about TCE at the time

24     or whether or not we knew we were polluting or had reasonable

04:03PM   25     belief that we were polluting or all of those issues.  But we

1    didn't even know this was an issue until halfway through this

2    trial.

3                THE COURT:  What about the creating a public

4    nuisance portion of the ordinance?

04:03PM   5                MR. BLUM:  Well, in order for there to be a public

6    nuisance, there has to be harm to the public which brings us

7    back to harm with health.

8                THE COURT:  But there is a claim in this case of

9    public nuisance.

04:03PM   10               MR. BLUM:  Yes.  And we've asked for a JMOL because

11   one of the requirements of it is to show harm to public health.

12               THE COURT:  But for purposes of whether you've been

13   prejudiced by the last minute introduction of this particular

14   instruction -- this ordinance, how can I find prejudice, if, in

04:04PM   15   fact, one of the bases of a public nuisance and that's a claim

16   in the case?

17               MR. BLUM:  Because there's a difference between --

18   in our view, of a claim for public nuisance and negligence

19   per se.  And the reason we're fighting so hard on the

04:04PM   20   negligence per se is because it -- what it tells the jury, you

21   don't have to find anything wrong.  All you have to find is a

22   violation of this statute.  And it's always a much easier pull

23   for a plaintiff than other causes of action.

24               We would have definitely, if we were confronting

04:04PM   25   this cause of action, have been able to bring in a

|  |  |  |
|--|--|--|
| | 1 | toxicologist.  And, in fact, I think -- I believe a |
| | 2 | toxicologist was on our original expert witness designation. |
| | 3 | I'm not 100 percent sure, but I think it was.  We decided not |
| | 4 | to do it because of the way the case was structured. |
| 04:05PM | 5 | THE COURT:  And one last time, Mr. Blum, when this |
| | 6 | indicates that, if you create a public nuisance, you're saying |
| | 7 | that the prejudice here is that, even though you are facing a |
| | 8 | public nuisance claim, that, because the negligence per se is |
| | 9 | so much more of a concern to your client, that you would have |
| 04:05PM | 10 | done more at this trial to address that point? |
| | 11 | MR. BLUM:  Yes, sir.  And there's other issues -- I |
| | 12 | mean, we would have dealt with the -- yes, sir. |
| | 13 | THE COURT:  All right.  What about the other federal |
| | 14 | claims that are being asserted as the predicate? |
| 04:05PM | 15 | MR. BLUM:  Your Honor, first of all, they can't just |
| | 16 | put RCRA.  They've got to tell us what section.  We have the |
| | 17 | right to know, when we go into closing, are we defending the |
| | 18 | entire RCRA statute or sections of RCRA?  And that they've |
| | 19 | never told us. |
| 04:06PM | 20 | THE COURT:  Is Mr. Gee correct that RCRA can form |
| | 21 | the predicate for -- |
| | 22 | MR. BLUM:  No. |
| | 23 | THE COURT:  -- negligence per se? |
| | 24 | MR. BLUM:  RCRA is a very -- RCRA has a very limited |
| 04:06PM | 25 | private right of action.  It has procedural protections in it |

           1    such as the requirement of a 90-day notice.  It has

           2    limitations, what you have to prove to bring your action.  And

           3    then it has very limited remedies.  That was the purpose behind

           4    RCRA.  It never was meant as a broad statute in which you can

 04:06PM   5    bring -- basically get common law damages under.  And this

           6    would pervert the intent of RCRA.

           7             Congress didn't write it this way, and I don't think

           8    the state has the right to use it this way.

           9             THE COURT:  What about the -- the Porter-Cologne as

 04:06PM  10    well as the Federal Clean Water Act?

          11             MR. BLUM:  Porter-Cologne Act does not -- the

          12    Porter-Cologne does not provide for a private right of action

          13    for plaintiff.  I don't know what section -- this is another

          14    thing.  I have no idea what section they're talking about.

 04:07PM  15             The one that is generally used I think is 133.  That

          16    area doesn't provide a private action except under the

          17    circumstances in which the water board assesses penalties

          18    against somebody, and then there's a private right of action to

          19    seek contribution.  That's not what we have here.  And those

 04:07PM  20    people that have the right to sue, my understanding is -- and I

          21    limit this as I don't know what statute -- what section they're

          22    going under.  I'll -- I'll accept that I could be wrong.

          23             The people that have the right to bring it are the

          24    district attorneys of each county and the regional water boards

 04:07PM  25    or the State Attorney General's Office.  That's my

                          UNITED STATES DISTRICT COURT

```
 1   understanding of the people who have the right.

 2           And again, give me the section.  But you just

 3   can't -- you just can't say Porter-Cologne Act.  What's the

 4   jury supposed to know?  And there's -- and right now, the only

 5   evidence we have in this case is from Mr. Hughto who didn't

 6   even know the Porter-Cologne Act existed.

 7           THE COURT:  All right.  Anything further on this

 8   issue?

 9           MR. BLUM:  Um, no, Your Honor.

10           THE COURT:  I'll hear, Mr. Gee, from you on the

11   Court's question.  And I also will give you an opportunity to

12   respond to Mr. Blum's argument about prejudice here for the

13   reasons that he's mentioned.

14           MR. GEE:  Your Honor, again, we don't think there is

15   any prejudice.  I mean, this -- this is -- you know, a fairly

16   straight -- straightforward county ordinance that basically

17   says a person shall not discharge or cause discharge

18   something -- cause public nuisance or which may pollute

19   groundwater and surface water.

20           THE COURT:  But what he argued was that, in light of

21   the significance of negligence per se, had he been made aware

22   that you were proceeding on this ground, that he would have

23   mounted a vigorous defense, including presenting evidence that

24   there was no public nuisance in a way that he hasn't.  You

25   heard his argument.
```

04:07PM (line 5)
04:08PM (line 10)
04:08PM (line 15)
04:08PM (line 20)
04:09PM (line 25)

1          MR. GEE:  You mean hiring a toxicologist.  Is

2     that --

3          THE COURT:  Among other things.

4          MR. GEE:  Okay.  I don't think -- you know, I don't

04:09PM    5     think there would be any additional defenses that he has not

6     already raised that would -- that would -- would have caused

7     him to not be subject to this violation of the city ordinance.

8          THE COURT:  And then what are the specific statutes

9     that you're relying upon?  We're now moving past these two

04:09PM   10     ordinances which are specific.  What specific statutes are you

11     relying on under every single ground that you're seeking to use

12     as a predicate for negligence per se?

13          MR. GEE:  And, Your Honor, you know, again, if the

14     section -- citing for a specific section of RCRA, again, there

04:10PM   15     are just so many sections that were violated.  And again, there

16     are -- there were -- are requirements that, once you close a

17     property, that you take proper action to implement a RCRA

18     corrective action -- corrective action plan.  And there's the

19     evidence of -- you know, Mr. Alibrandi, president of Whittaker

04:10PM   20     Corporation, saying, well, I mean, he's being told by his

21     consultants that -- that there is this requirement and that

22     what he was planning on doing does not comply with RCRA.

23          THE COURT:  But, Mr. Gee, I have to specifically

24     instruct the jury, and they have to have a specific predicate,

04:11PM   25     do they not, so that they can say, here's the law, specific

1   law, here's the evidence, was there a violation of that

2   specific law?  The defendant is entitled to know what the

3   specific law is, not a large act like RCRA; correct?

4            MR. GEE:  Yes.  Your Honor, there are -- you know,

04:11PM  5   there are specific sections of the RCRA regulations that we --

6   that was clearly violated, and it's --

7            THE COURT:  Have -- have you provided that to the

8   Court in the jury instructions?  Because what I have is very

9   vague and general.  It says, "RCRA gives EPA the authority to

04:11PM  10   control activities related to hazardous waste, including the

11   generation, transportation, treatment, storage, and disposal of

12   hazardous waste.  Any violations of RCRA that were a

13   substantial factor in bringing about SCV Water's harm gives

14   rise to a claim for negligence per se."

04:12PM  15            I don't know as a judge what I would do with that

16   precisely.  What is the jury to do with that?

17            MR. GEE:  Well, we can cite to the EPA notice of

18   violation for which Whittaker was well aware that occurred back

19   in the late 1980s as -- as evidence of the violations that --

04:12PM  20   of RCRA that they -- that they knew of.

21            THE COURT:  And what specific act was violated in

22   that circumstance that the jury can consider?

23            MR. GEE:  Well, brought in evidence that, you know,

24   groundwater monitoring was not implemented, for instance.

04:12PM  25            THE COURT:  Have you given the Court the specific

law and have you given Whittaker the specific law under RCRA

that has been violated?  Yes or no, please.

MR. GEE:  No.  We did not list that in the jury instruction.

THE COURT:  Did you do that with regard to any law other than the two ordinances of L.A. County?  Did you do that for any federal or state law that you have provided other than the two L.A. County ordinances?

MR. GEE:  For Porter-Cologne Act, we did cite to 1334 -- 13304.

THE COURT:  You did.  Anything else?

MR. GEE:  Actually, I'd have to take a look, but there was some NPDES violations, and I may have cited to the specific provisions associated with the NPDES violations.  I'll have to look, though.

THE COURT:  And so answer the question if you -- if you don't mind, that the Court asked you before you -- you sat down and consulted with Mr. Richard.  Are you asking the Court for an instruction with every single one of these predicates or something less?

MR. GEE:  Um, we would probably withdraw the permit -- the county permit violation because we don't have evidence as to whether or not they applied for a permit and -- and obviously -- would bother me, though, that we couldn't produce evidence of a permit because we didn't get evidence --

| | |
|---|---|
| 1 | THE COURT:  That's a discovery issue; right? |
| 2 | MR. GEE:  Yes. |
| 3 | THE COURT:  All right.  We're at trial, please, |
| 4 | Mr. Gee. |
| 04:14PM  5 | MR. GEE:  Yes.  Other than that, Your Honor, I -- I |
| 6 | think that there's -- there's plenty of evidence that -- that |
| 7 | there are violations of -- of RCRA.  We didn't cite to a |
| 8 | specific provision.  We did cite to a specific provision of the |
| 9 | Porter-Cologne Act, as I recall. |
| 04:14PM  10 | THE COURT:  All right.  I'm going to take this |
| 11 | matter under submission.  I will tell you, I'm -- I am |
| 12 | concerned about how this matter was presented by the plaintiff. |
| 13 | This is an important issue.  All counsel understood that from |
| 14 | the outset.  Negligence per se is a significant issue when |
| 04:15PM  15 | you're trying to prove negligence, especially in a case like |
| 16 | this where you're dealing with standards of care and activities |
| 17 | that go back a long way. |
| 18 | It seems to me it does require care from counsel to |
| 19 | be very specific and to provide the information in a timely way |
| 04:15PM  20 | to both the other side, Whittaker, as well as to the Court. |
| 21 | And I do have serious concerns about how this is presented. |
| 22 | But I'm going to take a further look at this, and |
| 23 | you'll have the Court's ruling on it, obviously if not tonight, |
| 24 | by tomorrow morning. |
| 04:15PM  25 | MR. GEE:  Thank you, Your Honor. |

```
 1              THE COURT:  And so you're going to have to
 2   proceed -- Mr. Richard, you may not get a ruling until tomorrow
 3   morning.  You're going to have to unfortunately have a plan A
 4   and a plan B with regard to this portion of your slide deck,
 5   assuming you're using a PowerPoint.
 6              MR. RICHARD:  Understood.  Are we -- do I have time
 7   to make my motion on the cross-complaint?
 8              THE COURT:  Of course you do.  Yes.
 9              MR. RICHARD:  I think I can share with the Court
10   that, when I met and conferred briefly with Mr. Blum on this
11   issue, he said he had not been thinking about whether he had a
12   cross-complaint.  But there are seven claims, two of which
13   arguably could go to the jury.  One for negligence, and that's
14   claim 7, and -- and I think the other was contribution.
15              So there's been no evidence of harm.  And as I stand
16   here, I don't know if Whittaker's intending to pursue it.  But
17   the record should be clear because at the outset the Court
18   instructed the jury that there were cross-claims.  And I don't
19   want to be surprised and have Mr. Blum argue cross-claims
20   tomorrow in front of the jury and expect to have a final
21   closing argument so --
22              THE COURT:  Let me do this.  Let me ask Mr. Blum
23   what his position is so this way you actually have a target
24   that matters.
25              All right.
```

**UNITED STATES DISTRICT COURT**

1           MR. BLUM:  Your Honor, may I have one second?

2           THE COURT:  Yes.

3           (Pause in the proceedings.)

4           MR. BLUM:  Just a second, Your Honor.

04:18PM  5           Your Honor, right this moment I'm in a little

6    ethical quandary.  I can't agree to dismiss it because I need

7    the client's permission.

8           THE COURT:  Understood.

9           MR. BLUM:  So --

04:18PM  10           THE COURT:  Tell me within -- within those

11   boundaries what you anticipate, and this will not bind you or

12   Whittaker.

13           MR. BLUM:  I had not -- I did not intend to argue

14   that -- I intend to argue they're negligent but not that we are

04:18PM  15   damaged as a result.  Other than the -- that we have to pay

16   more for the cleanup as -- which is different in my mind.

17           THE COURT:  All right.  So let me -- thank you.  Let

18   me hear from Mr. Richard as to where that leaves you with

19   regard to your -- your motion.  And if this is of any help to

04:19PM  20   you, I will indicate that you have preserved your -- your

21   rights with regard to making a motion to their entire

22   cross-complaint.

23           MR. RICHARD:  Thank you, Your Honor.

24           As a practical matter, I was focused on the

04:19PM  25   potential claims that could go to the jury, and the 7th claim

1    is for negligence.  Plaintiff owed a duty and then as a --

2    paragraph 34 of the cross-complaint as a -- or counter-claim,

3    as a direct and proximate result of plaintiff's negligence,

4    Whittaker has been damaged in an amount according to proof.

04:19PM   5    Well, there is no proof.  So that's -- that's an easy one.

6         The fifth counter-claim against counter-defendant,

7    contribution at line 7, after alleging to the extent Whittaker

8    may have any liability, quote, "Plaintiff is liable to

9    Whittaker for contribution for all costs to the extent that

04:20PM   10   Whittaker might have liability to a nonparty."

11        Again, there's just no evidence of harm, and so I

12   don't believe there's any issue.  And also, it's probably been

13   waived because there are no questions in the verdict form that

14   was submitted months ago and has been worked on.  So it is out

04:20PM   15   of an abundance of caution that I want to address this now and

16   not be surprised.

17        THE COURT:  All right.  Mr. Blum, how would you

18   suggest we proceed?

19        MR. BLUM:  If counsel can give me three hours after

04:20PM   20   we get out of here, my -- I will probably be able to resolve

21   the problem.  Considering where we are, I'm sure the Court is

22   able to rule tomorrow morning if I don't get the answer I

23   expect.

24        THE COURT:  That's fine.  So I'll defer ruling until

04:20PM   25   I know that it is a disputed issue.

1          I am going to order the parties to be here tomorrow

2    at 7:30 because I'm going to provide you with the -- with the

3    jury instructions.  I can see sad looks on faces.

4          Let's go off the record for a moment to discuss

04:21PM  5    this.

6          Off the record.

7          (Off-the-record discussion.)

8          THE COURT:  Back on the record.

9          So the parties are ordered back tomorrow at

04:24PM 10   8:00 o'clock.  And with regard to the PowerPoint presentations

11   that each counsel intends to use, we had an off-the-record

12   discussion where I indicated that I would like to receive

13   tomorrow morning a copy of your respective PowerPoint

14   presentations.  However, both counsel agreed not to have

04:25PM 15   their -- their own PowerPoint shared with the other side, which

16   is agreeable to the Court.

17          So the parties will be providing me an ex parte

18   communication of their PowerPoints.

19          Also, Mr. Blum indicated that I may not be getting

04:25PM 20   the final version of his PowerPoint to the limited extent that

21   he's making changes in the course of hearing Mr. Richard's

22   closing argument, and that's fine.  But I expect that I'm going

23   to get the version that is the final version other than

24   whatever changes that you are contemporaneously making.

04:25PM 25          Let me make sure that I have accurately stated what

```
 1    was materially stated off the record and agreed upon.
 2                Mr. Richard?
 3                MR. RICHARD:  Yes, Your Honor, you have.
 4                THE COURT:  Mr. Blum?
 5                MR. BLUM:  That's correct, Your Honor.
 6                THE COURT:  All right.  Then is there anything
 7    further that we have to discuss before we conclude?
 8                Since you're standing, I'll go with you first,
 9    Mr. Blum, then Mr. Richard.
10                MR. BLUM:  First, Your Honor, after plaintiff does
11    their small part of Mr. Dawson's --
12                THE COURT:  Use the microphone if you would, please.
13                MR. BLUM:  After plaintiff reads -- does the small
14    portion of Mr. Dawson's tomorrow, I would like -- if I could do
15    it in advance, we have to make a directed verdict motion based
16    on the issues we've also already raised in the JMOL.
17                THE COURT:  All right.  That's fine.  Why don't we
18    do this.  So this is for your anticipating possibly a 50(b)
19    motion.  Is that what you're --
20                MR. BLUM:  I believe that's the section, Your Honor.
21                THE COURT:  All right.  And so procedurally,
22    Mr. Richard, do you have any objection if -- if that is done
23    after closing arguments?
24                MR. RICHARD:  Not at all, Your Honor.
25                THE COURT:  All right.  Is that agreeable, Mr. Blum?
```

04:26PM (line 5)
04:26PM (line 10)
04:26PM (line 15)
04:26PM (line 20)
04:27PM (line 25)

2014

```
 1                MR. BLUM:  That's fine.  I do also have one other
 2    question, Your Honor.
 3                THE COURT:  Yes.
 4                MR. BLUM:  I don't want to have to interrupt
 5    Mr. Richard, and I know -- and I don't want him to interrupt
 6    me.  But what I would like to be able -- so I don't want to
 7    have to make the argument during his closing that the facts
 8    don't support the argument.  And I would like those issues to
 9    be preserved so that we're not -- and also, that any issue
10    raised by us in the JMOL is deemed raised as it relates to the
11    closing argument.  Otherwise, I'm in a really tough position
12    when I would -- and I'm actually making this -- it benefits the
13    plaintiff.
14                THE COURT:  I'm not sure really what it is that
15    you're asking.  If you're asking essentially that you preserve
16    all objections to anytime that the other side has arguably
17    strayed from the trial evidence, I'm not sure how that would
18    practically work.
19                MR. BLUM:  Well, Your Honor, we have -- the two of
20    us have a very different view of some of the evidence.  Either
21    I have to object to his closing, which most likely is going to
22    get annoying to everybody, including myself, on those grounds
23    or they're preserved and if -- if I have to appeal, that I
24    don't want to be -- I don't want the argument back that I've
25    waived that argument.
```

04:27PM (line 5)
04:27PM (line 10)
04:27PM (line 15)
04:28PM (line 20)
04:28PM (line 25)

**UNITED STATES DISTRICT COURT**

1      THE COURT:  I'm not sure how you're going to be able

2  to proceed in that fashion.

3      MR. BLUM:  Well, I've done it before, Your Honor.

4  And what we agree with the Court's consent that objections as

04:28PM    5  to -- that the evidence doesn't support the argument are

6  preserved and don't have to be made at the time of the argument

7  but could be made after the argument.

8      THE COURT:  And give me the appellate argument that

9  results from that because you're taking me out of the equation

04:29PM   10  here.

11      MR. BLUM:  Not intentionally, Your Honor.  But

12  what -- for instance, if he makes an argument and the appellate

13  Court says, yes, it was wrong but you didn't object to it at

14  the time of closing, therefore, you waived it.

04:29PM   15      THE COURT:  I understand that.  But practically

16  speaking, your argument is going to be that there was

17  insufficient evidence to support the verdict if it's an adverse

18  verdict.  And you have filed a JMOL and have renewed it at the

19  close of your case.  So tell me where the daylight is between

04:29PM   20  those two points.

21      MR. BLUM:  Your Honor, this is just what I've done

22  pretty much every case I've tried --

23      THE COURT:  All right.  I don't think I'm going to

24  agree to that because I don't understand the consequences of

04:29PM   25  it.  So if you think that you need to stand up and object every

**UNITED STATES DISTRICT COURT**

```
 1    time, I'm not sure that you need to do so from an appellate

 2    standpoint, but I can't make that determination for you.

 3              I have never seen what you're suggesting, and I've

 4    been doing this for a while as well.  And if you could explain

 5    to me the practical significance of it, then perhaps I will

 6    reconsider.  But otherwise, I think we -- we have a respective

 7    job to do.

 8              If you believe that the -- that Mr. Richard is not

 9    arguing either from the evidence or reasonable inferences from

10    the evidence, then presumably you're going to object.  And

11    if -- that's different, it seems to me, than saying that the

12    evidence doesn't potentially support the verdict.

13              So I'm just not really tracking what you're

14    requesting, and so I'm reluctant to do it.

15              MR. BLUM:  That's fine, Your Honor.

16              THE COURT:  All right.  We are in recess until --

17    actually, Mr. Richard, I don't know that I gave you an

18    opportunity.

19              MR. RICHARD:  I was just thinking about our

20    discussion before opening statement, Your Honor, where similar

21    concerns were raised.  And the only argument in opening

22    statement, as I reread it, was from Mr. Blum repeatedly, and I

23    didn't object.

24              So, you know, I can't sit here and hear that he's

25    concerned I'm going to do something inappropriate without at
```

```
 1    least saying I think he's worried about the wrong orator.
 2              THE COURT:  I didn't hear him to suggest that.
 3    Here's what I heard him to say, for whatever it's worth, is
 4    that your whole argument is going to be improper because you
 5    can't argue that you're entitled to a verdict because you
 6    haven't presented any evidence that would support a verdict.
 7              Have I gotten that right, Mr. Blum?
 8              MR. BLUM:  Generally, yes, sir.
 9              THE COURT:  Pretty close.
10              All right.  We're in recess.  Have a good evening.
11              MR. RICHARD:  Thank you.
12              (Proceedings adjourned at 4:31 p.m.)
13
14
15
16
17
18
19
20
21
22
23
24
25
```

**UNITED STATES DISTRICT COURT**

1          **CERTIFICATE OF OFFICIAL REPORTER**

2

3   COUNTY OF LOS ANGELES    )
                             )
4   STATE OF CALIFORNIA      )

5

6            I, MYRA L. PONCE, FEDERAL OFFICIAL REALTIME COURT

7   REPORTER, IN AND FOR THE UNITED STATES DISTRICT COURT FOR THE

8   CENTRAL DISTRICT OF CALIFORNIA, DO HEREBY CERTIFY THAT PURSUANT

9   TO SECTION 753, TITLE 28, UNITED STATES CODE THAT THE FOREGOING

10  IS A TRUE AND CORRECT TRANSCRIPT OF THE STENOGRAPHICALLY

11  REPORTED PROCEEDINGS HELD IN THE ABOVE-ENTITLED MATTER AND THAT

12  THE TRANSCRIPT PAGE FORMAT IS IN CONFORMANCE WITH THE

13  REGULATIONS OF THE JUDICIAL CONFERENCE OF THE UNITED STATES.

14

15

16

17            DATED THIS 2ND DAY OF DECEMBER, 2021.

18

19

20            /S/ MYRA L. PONCE
    _____
21      MYRA L. PONCE, CSR NO. 11544, CRR, RDR
            FEDERAL OFFICIAL COURT REPORTER
22

23

24

25

**UNITED STATES DISTRICT COURT**

**1**

**1** [2] - 1968:1, 1971:17
**100** [1] - 2002:3
**133** [1] - 2003:15
**13304** [2] - 1993:5, 2007:10
**1334** [1] - 2007:10
**1980S** [1] - 2006:19
**1997** [1] - 2000:22

**2**

**2** [1] - 1971:17
**20.36.010** [2] - 1994:23, 1996:15
**20.36.010'S** [1] - 1997:5
**2021** [1] - 1968:1

**3**

**34** [1] - 2011:2
**3:11** [1] - 1968:1

**4**

**40** [1] - 1978:6
**42** [3] - 1990:20, 1990:21, 1991:7
**4:31** [1] - 2017:12

**5**

**50** [1] - 1978:6
**50(B** [1] - 2013:18
**58** [1] - 1984:7

**6**

**69** [1] - 1991:7
**6900** [1] - 1991:7
**6972** [1] - 1990:20
**6972(F** [1] - 1990:21

**7**

**7** [2] - 2009:14, 2011:7
**7:30** [1] - 2012:2
**7TH** [1] - 2010:25

**8**

**8:00** [1] - 2012:10

**9**

**90-DAY** [1] - 2003:1
**95** [1] - 1971:20

**A**

**ABERCROMBIE'S** [1] - 1981:3
**ABILITY** [3] - 1968:15, 1970:20, 1987:10
**ABLE** [10] - 1969:12, 1970:8, 1970:12, 1973:9, 1975:12, 2001:25, 2011:20, 2011:22, 2014:6, 2015:1
**ABSOLUTE** [1] - 1973:1
**ABSOLUTELY** [2] - 1981:23
**ABSORPTION** [1] - 1987:19
**ABUNDANCE** [1] - 2011:15
**ACADEMIC** [1] - 1973:2
**ACCEPT** [2] - 1983:13, 2003:22
**ACCEPTS** [1] - 1974:2
**ACCORDING** [1] - 2011:4
**ACCOUNT** [1] - 1992:12
**ACCURATELY** [1] - 2012:25
**ACT** [14] - 1992:23, 1992:24, 1993:1, 1993:3, 1993:5, 1997:17, 1998:8, 2003:10, 2003:11, 2004:3, 2004:6, 2007:9, 2008:9
**ACT** [3] - 1995:17, 2006:3, 2006:21
**ACTION** [16] - 1992:3, 1992:4, 1992:7, 1992:13, 1992:21, 1995:17, 2001:23, 2001:25, 2002:25, 2003:2, 2003:12, 2003:16, 2003:18, 2005:17, 2005:18
**ACTIONABLE** [1] - 1995:7
**ACTIVITIES** [3] - 1993:19, 2006:10, 2008:16
**ACTUAL** [1] - 1999:19
**ADD** [2] - 1988:21, 1989:1
**ADDED** [1] - 1995:14
**ADDITION** [1] - 1981:3
**ADDITIONAL** [1] - 2005:5

**ADDRESS** [3] - 1971:10, 2002:10, 2011:15
**ADDRESSED** [1] - 1983:11
**ADDS** [1] - 1996:23
**ADJOURNED** [1] - 2017:12
**ADVANCE** [1] - 2013:15
**ADVERSE** [1] - 2015:17
**AFFECT** [2] - 1991:16, 1996:12
**AFFECTED** [8] - 1975:2, 1976:4, 1976:9, 1978:10, 1981:9, 1982:24, 1983:7, 1987:18
**AFFECTING** [2] - 1982:4, 1982:6
**AGENCY** [5] - 1980:17, 1980:24, 1980:25, 1981:4, 1983:4
**AGENCY'S** [1] - 1982:12
**AGO** [1] - 2011:14
**AGREE** [8] - 1974:14, 1978:14, 1979:18, 1992:19, 1996:4, 2010:6, 2015:4, 2015:24
**AGREEABLE** [2] - 2012:16, 2013:25
**AGREED** [3] - 1973:24, 2012:14, 2013:1
**AGREES** [1] - 2000:21
**ALIBRANDI** [1] - 2005:19
**ALLEGING** [1] - 2011:7
**ALLOCATE** [2] - 1970:23, 1972:20
**ALLOCATION** [1] - 1971:14
**ALLOWED** [1] - 1969:22, 2000:12, 2000:13
**ALLOWING** [1] - 1969:13
**ALLOWS** [2] - 1975:25, 1993:6
**ALONE** [1] - 1996:1
**ALVORD** [3] - 1974:25, 1976:2, 1979:2

**AMOUNT** [1] - 2011:4
**ANALYSIS** [3] - 1968:20, 1980:8, 1988:9
**ANGELES** [1] - 1968:2
**ANNOYING** [1] - 2014:22
**ANSWER** [2] - 2007:16, 2011:22
**ANSWERING** [1] - 1982:19
**ANTICIPATE** [1] - 2010:11
**ANTICIPATING** [1] - 2013:18
**ANYTIME** [1] - 2014:16
**APPEAL** [1] - 2014:23
**APPELLATE** [3] - 2015:8, 2015:12, 2016:1
**APPLICATION** [2] - 1986:4, 1990:9
**APPLIED** [2] - 2007:23
**APPLY** [1] - 1992:18
**APPORTION** [1] - 1971:5
**APPORTIONMENT** [7] - 1969:14, 1969:22, 1972:7, 1972:18, 1972:22
**APPROPRIATE** [4] - 1974:13, 1990:1, 1990:9, 1993:24
**APPROPRIATIVE** [1] - 1985:22
**AREA** [3] - 1968:19, 1969:25, 2003:16
**ARGUABLY** [2] - 2009:13, 2014:16
**ARGUE** [9] - 1987:3, 1998:1, 1999:14, 1999:19, 1999:20, 2009:19, 2010:13, 2010:14, 2017:5
**ARGUED** [3] - 1975:22, 1989:1, 2004:20
**ARGUING** [3] - 1972:20, 1975:23, 2016:9
**ARGUMENT** [24] - 1973:14, 1981:7, 1983:16, 1985:15, 1986:8, 1987:22, 1999:24, 2004:12, 2004:25, 2009:21, 2012:22, 2014:7, 2014:8, 2014:11, 2014:24, 2014:25,

2015:5, 2015:6, 2015:7, 2015:8, 2015:12, 2015:16, 2016:21, 2017:4
**ARGUMENTS** [1] - 2013:23
**ASSERTED** [1] - 2002:14
**ASSESS** [1] - 1971:20
**ASSESSES** [1] - 2003:17
**ASSOCIATED** [8] - 1990:19, 1993:7, 1993:10, 1995:18, 1998:6, 1998:9, 2007:14
**ASSUME** [5] - 1971:3, 1978:8, 1979:6, 1999:18, 2000:8
**ASSUMING** [4] - 1974:12, 1975:19, 1975:20, 2009:5
**ATTORNEY** [1] - 2003:25
**ATTORNEYS** [1] - 2003:24
**AUTHORITY** [5] - 1970:9, 1970:12, 1970:17, 1980:4, 2006:9
**AVAILABLE** [1] - 1992:25
**AWARE** [5] - 1969:13, 1970:20, 1991:20, 2004:21, 2006:18

**B**

**B)(14** [1] - 1991:9
**BASED** [2] - 1986:23, 2013:15
**BASES** [1] - 2001:15
**BASIS** [9] - 1972:7, 1983:23, 1994:25, 1995:13, 1995:15, 1996:7, 1996:9, 1997:7, 1997:12
**BEAR** [1] - 1991:3
**BECOMES** [1] - 1983:4
**BEHIND** [1] - 2003:3
**BELIEF** [1] - 2000:25
**BELIEVES** [2] - 1971:3, 1971:6
**BELOW** [1] - 1975:12
**BENEATH** [1] - 1982:2
**BENEFITS** [1] - 2014:12
**BETTER** [1] - 1989:3
**BETWEEN** [4] -

1981:14, 1981:17, 2001:17, 2015:19
**BEYOND** [1] - 1982:3
**BIG** [1] - 2000:21
**BIND** [1] - 2010:11
**BLANK** [2] - 1996:17, 1997:6
**BLUM** [18] - 1968:7, 1969:16, 1980:5, 1983:22, 1984:22, 1999:3, 1999:7, 2002:5, 2009:10, 2009:19, 2009:22, 2011:17, 2012:19, 2013:4, 2013:9, 2013:25, 2016:22, 2017:7
**BLUM** [70] - 1968:10, 1969:2, 1969:10, 1969:17, 1970:11, 1971:2, 1971:15, 1972:1, 1972:5, 1972:8, 1972:10, 1972:13, 1973:4, 1973:22, 1974:4, 1974:19, 1974:24, 1975:8, 1975:21, 1976:10, 1976:14, 1976:20, 1977:3, 1977:13, 1977:25, 1978:14, 1978:18, 1979:4, 1984:1, 1984:5, 1984:14, 1985:3, 1985:16, 1986:19, 1987:1, 1987:9, 1987:24, 1988:11, 1999:4, 1999:13, 1999:23, 2000:3, 2000:7, 2000:11, 2001:5, 2001:10, 2001:17, 2002:11, 2002:15, 2002:22, 2002:24, 2003:11, 2004:9, 2010:1, 2010:4, 2010:9, 2010:13, 2011:19, 2013:5, 2013:10, 2013:13, 2013:20, 2014:1, 2014:4, 2014:19, 2015:3, 2015:11, 2015:21, 2016:15, 2017:8
**BLUM'S** [1] - 2004:12
**BLUMENFELD** [1] - 1986:23
**BOARD** [1] - 1993:9
**BOARD** [1] - 2003:17
**BOARDS** [1] - 2003:24
**BODIES** [1] - 1995:2

**BOTHER** [1] - 2007:24
**BOUNDARIES** [1] - 2010:11
**BREAK** [2] - 1968:6, 1973:23
**BRIEF** [1] - 1993:13
**BRIEFED** [2] - 1970:16, 1990:12
**BRIEFING** [1] - 1974:7
**BRIEFLY** [2] - 1988:17, 2009:10
**BRING** [4] - 2001:25, 2003:2, 2003:5, 2003:23
**BRINGING** [1] - 2006:13
**BRINGS** [1] - 2001:6
**BROAD** [1] - 2003:4
**BROUGHT** [2] - 2006:23
**BURDEN** [2] - 1974:15, 1979:18

### C

**C)(5** [1] - 1993:6
**CALCULATIONS** [1] - 1971:22
**CALIFORNIA** [1] - 1992:18
**CALIFORNIA** [1] - 1968:2
**CARE** [3] - 1993:24, 2008:16, 2008:18
**CASE** [28] - 1973:3, 1977:7, 1979:24, 1980:12, 1981:24, 1983:25, 1986:3, 1986:13, 1987:15, 1989:15, 1989:17, 1989:19, 1990:3, 1990:4, 1992:10, 1994:5, 1995:15, 1998:14, 2000:1, 2000:3, 2001:8, 2001:16, 2002:4, 2004:5, 2008:15, 2015:19, 2015:22
**CASES** [8] - 1983:3, 1986:3, 1988:11, 1989:15, 1989:25, 1990:13, 1990:14, 1990:18
**CAUSED** [1] - 2005:6
**CAUSES** [1] - 2001:23
**CAUSING** [1] - 1975:12
**CAUTION** [1] - 2011:15
**CENTS** [2] - 1976:22,

1976:23
**CERCLA** [1] - 1969:20
**CERTAIN** [1] - 1985:13
**CHAMBERS** [1] - 1970:18
**CHANCE** [1] - 1974:7
**CHANGES** [2] - 2012:21, 2012:24
**CHARACTERIZATIO N** [1] - 1990:2
**CHEMICALS** [1] - 1968:19
**CHUNK** [1] - 1971:7
**CIRCUIT** [1] - 1979:24
**CIRCUIT'S** [1] - 1981:20
**CIRCUMSTANCE** [1] - 2006:22
**CIRCUMSTANCES** [1] - 2003:17
**CITATION** [1] - 1970:19
**CITE** [8] - 1970:18, 1988:11, 1990:4, 1991:5, 2006:17, 2007:9, 2008:7, 2008:8
**CITED** [4] - 1979:24, 1986:3, 1989:15, 2007:13
**CITING** [1] - 2005:14
**CITIZENS** [1] - 1992:5
**CITY** [3] - 1979:24, 1980:12, 1982:17
**CITY** [1] - 2005:7
**CLAIM** [16] - 1975:25, 1977:21, 1987:10, 1987:12, 1993:21, 1998:9, 2001:8, 2001:15, 2001:18, 2002:8, 2006:14, 2009:14, 2010:25, 2011:2, 2011:6
**CLAIMING** [4] - 1976:24, 1983:6, 1988:1, 1988:4
**CLAIMS** [11] - 1969:19, 1977:17, 1982:18, 1985:13, 1991:2, 1997:3, 2002:14, 2009:12, 2009:18, 2009:19, 2010:25
**CLEAN** [4] - 1992:23, 1993:1, 2003:10
**CLEAN** [1] - 1976:22
**CLEANUP** [1] - 2010:16
**CLEAR** [10] - 1968:21,

1969:18, 1973:10, 1973:13, 1975:11, 1975:16, 1976:3, 1980:15, 1981:20, 2009:17
**CLEARLY** [4] - 1978:23, 1980:13, 1987:4, 2006:6
**CLERK** [1] - 1973:25
**CLIENT** [4] - 1989:10, 1997:19, 1999:21, 2002:9
**CLIENT'S** [3] - 1980:10, 1982:24, 2010:7
**CLING** [1] - 1981:16
**CLOSE** [3] - 2005:16, 2015:19, 2017:9
**CLOSING** [8] - 2002:17, 2009:21, 2012:22, 2013:23, 2014:7, 2014:11, 2014:21, 2015:14
**COLOGNE** [12] - 1992:24, 1993:2, 1993:4, 1997:17, 1998:8, 2003:9, 2003:11, 2003:12, 2004:3, 2004:6, 2007:9, 2008:9
**COMMENTS** [1] - 1979:22
**COMMON** [2] - 1990:23, 2003:5
**COMMUNICATION** [1] - 2012:18
**COMPANY** [1] - 1987:17
**COMPLAINT** [4] - 2009:7, 2009:12, 2010:22, 2011:2
**COMPLETE** [1] - 1973:3
**COMPLETED** [1] - 1968:8
**COMPLETELY** [1] - 1973:22
**COMPLY** [1] - 2005:22
**COMPONENTS** [1] - 1983:11
**CONCERN** [1] - 2002:9
**CONCERNED** [2] - 2008:12, 2016:25
**CONCERNING** [2] - 1968:14, 1973:19
**CONCERNS** [2] - 2008:21, 2016:21
**CONCLUDE** [2] - 1995:21, 2013:7

**CONCLUDED** [1] - 1986:9
**CONCLUDES** [1] - 1992:17
**CONDUCT** [1] - 1968:18
**CONDUCTED** [1] - 1995:17
**CONFER** [1] - 1999:2
**CONFERRED** [1] - 2009:10
**CONFRONTING** [1] - 2001:24
**CONGRESS** [2] - 1991:7, 2003:7
**CONSENT** [1] - 2015:4
**CONSEQUENCES** [2] - 1991:21, 2015:24
**CONSEQUENTIAL** [1] - 1984:12
**CONSIDER** [2] - 1985:6, 2006:22
**CONSIDERED** [1] - 1989:12
**CONSIDERING** [1] - 2011:21
**CONSTRUE** [1] - 1982:22
**CONSULTANTS** [1] - 2005:21
**CONSULTED** [1] - 2007:18
**CONTAIN** [1] - 1997:17
**CONTAMINANTS** [6] - 1978:10, 1980:11, 1981:9, 1981:16, 1982:10, 1982:24
**CONTAMINATED** [3] - 1977:5, 1978:21, 1991:11
**CONTAMINATION** [26] - 1969:11, 1970:1, 1975:10, 1976:9, 1977:16, 1978:5, 1978:6, 1978:12, 1978:16, 1980:13, 1981:12, 1981:22, 1981:24, 1981:25, 1982:4, 1982:12, 1982:16, 1982:20, 1983:7, 1987:18, 1987:20, 1993:8, 1993:11, 1993:20, 1995:19
**CONTEMPORANEO USLY** [1] - 2012:24
**CONTEXT** [1] - 1989:10
**CONTINUING** [1] -

1986:17
**CONTRADICTING** [1] - 1985:1
**CONTRARY** [1] - 1979:23
**CONTRIBUTION** [5] - 1971:18, 2003:19, 2009:14, 2011:7, 2011:9
**CONTRIBUTORS** [1] - 1972:25
**CONTROL** [1] - 1993:9
**CONTROL** [1] - 2006:10
**CONVERSATION** [1] - 1968:14
**CONVINCED** [2] - 1983:14, 1996:7
**COPY** [1] - 2012:13
**COPYING** [1] - 1970:19
**CORPORATION** [1] - 2005:20
**CORRECT** [14] - 1972:7, 1975:16, 1978:18, 1980:5, 1989:5, 1990:11, 1991:14, 1991:15, 1992:14, 1996:1, 1996:18, 2002:20, 2006:3, 2013:5
**CORRECTIVE** [2] - 2005:18
**CORRECTLY** [2] - 1974:14, 1979:18
**COST** [6] - 1976:20, 1976:24, 1976:25, 1977:4, 1979:7, 1984:10
**COSTS** [7] - 1976:22, 1986:15, 1993:7, 1998:6, 1998:9, 1998:10, 2011:9
**COUNSEL** [7] - 1979:15, 1999:2, 2008:13, 2008:18, 2011:19, 2012:11, 2012:14
**COUNTER** [3] - 2011:2, 2011:6
**COUNTER-CLAIM** [2] - 2011:2, 2011:6
**COUNTER-DEFENDANT** [1] - 2011:6
**COUNTERPART** [2] - 1992:19, 1992:23
**COUNTY** [3] - 2003:24, 2004:16,

2007:22
**COUNTY** [6] - 1993:13, 1993:14, 1993:16, 1997:16, 2007:6, 2007:8
**COURSE** [2] - 2009:8, 2012:21
**COURT** [36] - 1969:4, 1969:17, 1969:20, 1970:5, 1970:8, 1970:18, 1971:3, 1973:6, 1974:2, 1974:9, 1975:16, 1977:6, 1978:11, 1978:20, 1979:18, 1984:17, 1985:2, 1986:7, 1986:8, 1987:2, 1988:22, 1989:2, 1992:17, 1998:18, 2006:8, 2006:25, 2007:17, 2007:18, 2008:20, 2009:9, 2009:17, 2011:21, 2012:16, 2015:13
**COURT** [140] - 1968:5, 1968:12, 1969:7, 1969:12, 1970:8, 1970:15, 1971:9, 1971:23, 1972:2, 1972:6, 1972:9, 1972:11, 1972:17, 1973:7, 1973:16, 1974:2, 1974:5, 1974:21, 1975:5, 1975:9, 1976:8, 1976:12, 1976:18, 1976:24, 1977:10, 1977:23, 1978:8, 1978:16, 1979:1, 1979:10, 1980:1, 1980:4, 1980:16, 1980:21, 1981:7, 1982:3, 1982:8, 1982:22, 1983:1, 1983:5, 1983:12, 1983:20, 1984:3, 1984:6, 1984:8, 1984:19, 1985:11, 1986:7, 1986:22, 1987:4, 1987:15, 1988:7, 1988:16, 1989:4, 1989:20, 1989:24, 1990:10, 1990:14, 1990:25, 1991:13, 1991:16, 1991:22, 1992:2, 1992:9, 1992:16, 1992:22, 1993:12, 1993:21, 1994:4, 1994:8, 1994:14,

1994:17, 1994:19, 1995:8, 1995:10, 1995:13, 1995:20, 1996:6, 1996:22, 1997:4, 1997:10, 1997:15, 1997:20, 1997:23, 1998:1, 1998:12, 1998:23, 1999:6, 1999:18, 2000:1, 2000:5, 2000:8, 2001:3, 2001:8, 2001:12, 2002:5, 2002:13, 2002:20, 2002:23, 2003:9, 2004:7, 2004:10, 2004:20, 2005:3, 2005:8, 2005:23, 2006:7, 2006:21, 2006:25, 2007:5, 2007:11, 2007:16, 2008:1, 2008:3, 2008:10, 2009:1, 2009:8, 2009:22, 2010:2, 2010:8, 2010:10, 2010:17, 2011:17, 2011:24, 2012:8, 2013:4, 2013:6, 2013:12, 2013:17, 2013:21, 2013:25, 2014:3, 2014:14, 2015:1, 2015:8, 2015:15, 2015:23, 2016:16, 2017:2, 2017:9
**COURT'S** [9] - 1968:9, 1970:20, 1986:18, 1989:2, 1994:20, 1994:21, 2004:11, 2008:23, 2015:4
**COVERED** [1] - 1998:10
**CREATE** [2] - 1995:22, 2002:6
**CREATING** [1] - 2001:3
**CROSS** [7] - 1979:15, 2009:7, 2009:12, 2009:18, 2009:19, 2010:22, 2011:2
**CROSS-CLAIMS** [2] - 2009:18, 2009:19
**CROSS-COMPLAINT** [4] - 2009:7, 2009:12, 2010:22, 2011:2
**CRUNCH** [1] - 1970:14
**CRUZ** [1] - 1974:1
**CUT** [1] - 1991:23

**D**

**DAMAGE** [20] - 1974:5, 1975:14, 1979:14, 1984:12, 1985:23, 1986:1, 1986:5, 1987:10, 1987:12, 1987:13, 1988:1, 1988:2, 1988:3, 1988:5, 1988:12, 1989:6, 1989:12, 1989:16
**DAMAGED** [4] - 1980:10, 1986:2, 2010:15, 2011:4
**DAMAGES** [16] - 1972:3, 1974:23, 1977:1, 1977:3, 1980:9, 1984:9, 1986:12, 1988:23, 1989:8, 1989:9, 1989:18, 1990:8, 1991:8, 1993:10, 1995:18, 2003:5
**DAWSON'S** [2] - 2013:11, 2013:14
**DAYLIGHT** [1] - 2015:19
**DEAL** [2] - 1969:20, 1999:5
**DEALING** [3] - 1980:15, 1984:16, 2008:16
**DEALT** [1] - 2002:12
**DECEMBER** [1] - 1968:1
**DECIDE** [9] - 1971:15, 1971:16, 1973:5, 1985:8, 1985:24, 1988:10, 1996:10, 1997:10, 1997:11
**DECIDED** [3] - 1984:24, 1985:2, 2002:3
**DECISION** [1] - 1990:10
**DECK** [1] - 2009:4
**DEEMED** [1] - 2014:10
**DEFENDANT** [4] - 1979:19, 1990:18, 2006:2, 2011:6
**DEFENDANTS** [2] - 1990:18, 1991:20
**DEFENDING** [1] - 2002:17
**DEFENSE** [2] - 1974:17, 2004:23
**DEFENSES** [1] - 2005:5
**DEFER** [1] - 2011:24

**DEFINITELY** [1] - 2001:24
**DEFINITION** [1] - 1969:1
**DEMONSTRATE** [4] - 1974:15, 1986:9, 1986:11, 1989:6
**DEMONSTRATION** [1] - 1986:14
**DENIED** [1] - 1988:22
**DEPOSIT** [1] - 1995:5
**DEPOSITED** [1] - 1995:22
**DEPOSITION** [1] - 1968:23
**DESCRIBE** [1] - 1969:23
**DESCRIBED** [1] - 1970:6
**DESCRIPTION** [1] - 1970:4
**DESIGNATION** [1] - 2002:2
**DETERMINATION** [2] - 1998:15, 2016:2
**DETERMINE** [2] - 1985:7, 1992:10
**DETERMINING** [1] - 1991:1
**DICING** [1] - 1979:23
**DIE** [1] - 1972:16
**DIFFERENCE** [1] - 2001:17
**DIFFERENT** [10] - 1969:19, 1973:22, 1981:5, 1982:14, 1987:11, 1992:2, 1998:3, 2010:16, 2014:20, 2016:11
**DIFFICULTY** [1] - 2000:18
**DIMINUTION** [15] - 1974:6, 1974:10, 1974:12, 1974:16, 1974:18, 1974:20, 1974:22, 1975:19, 1976:6, 1976:17, 1976:21, 1977:2, 1979:17, 1983:16
**DIRECT** [1] - 2011:3
**DIRECTED** [1] - 2013:15
**DISAGREE** [1] - 1970:7
**DISCHARGE** [2] - 2004:17
**DISCHARGING** [1] - 1994:3
**DISCOVERY** [2] - 1999:16, 2008:1

DISCUSS [3] - 1973:9, 2012:4, 2013:7
DISCUSSING [2] - 1979:13, 1991:4
DISCUSSION [5] - 1980:7, 2000:9, 2012:7, 2012:12, 2016:20
DISMISS [2] - 1977:6, 2010:6
DISPOSAL [3] - 1993:17, 1995:5, 2006:11
DISPOSE [1] - 2000:12
DISPOSED [1] - 1995:2
DISPOSING [1] - 1968:19
DISPUTED [1] - 2011:25
DISTILLED [1] - 2000:16
DISTINCTION [1] - 1981:18
DISTINGUISHED [1] - 1982:20
DISTRIBUTION [1] - 1983:10
DISTRICT [1] - 2003:24
DOCTRINAL [1] - 1991:22
DONE [4] - 2002:10, 2013:22, 2015:3, 2015:21
DOWN [3] - 1987:24, 1989:3, 2007:18
DRAWING [1] - 1975:3
DRAWN [1] - 1970:2
DRINKING [1] - 1991:11
DRIVING [2] - 1996:6, 1998:4
DTSC [1] - 1998:11
DUMPING [1] - 1991:9
DURING [1] - 2014:7
DUTY [1] - 2011:1

E

E-MAIL [2] - 1970:18, 1973:6
EASEMENT [3] - 1977:20, 1978:23, 1978:24
EASIER [1] - 2001:22
EASIEST [1] - 2000:15
EASILY [1] - 1981:19
EASY [1] - 2011:5

ECONOMIC [2] - 1972:3, 1973:3
EFFECT [2] - 1971:24, 1982:7
EITHER [10] - 1969:23, 1974:22, 1980:19, 1981:1, 1994:12, 1996:9, 1998:3, 1998:12, 2014:20, 2016:9
ENDED [1] - 1978:1
ENFORCEMENT [1] - 1990:23
ENTERED [1] - 1973:25
ENTIRE [2] - 2002:18, 2010:21
ENTITIES [2] - 1993:6, 1997:18
ENTITLED [5] - 1980:9, 1994:11, 1994:19, 2006:2, 2017:5
ENTITY [1] - 1998:9
EPA [2] - 2006:9, 2006:17
EQUATION [1] - 2015:9
EQUILIBRIUM [1] - 1981:12
EQUIVALENCE [1] - 1975:13
ESPECIALLY [1] - 2008:15
ESSENTIALLY [6] - 1968:24, 1970:21, 1975:6, 1991:1, 1991:9, 2014:15
ESTABLISHES [1] - 1991:1
ETHICAL [1] - 2010:6
EVALUATION [2] - 1974:13, 1991:16
EVENING [2] - 1988:20, 2017:10
EVENT [1] - 1973:20
EVIDENCE [87] - 1970:1, 1970:6, 1970:21, 1973:11, 1973:17, 1973:25, 1974:10, 1974:11, 1974:18, 1974:19, 1974:21, 1974:24, 1975:1, 1975:13, 1976:1, 1976:7, 1976:8, 1976:16, 1976:17, 1977:5, 1977:7, 1977:8, 1977:10, 1977:14, 1977:15, 1977:24,

1978:2, 1978:7, 1978:8, 1978:9, 1978:12, 1978:15, 1978:16, 1979:2, 1979:5, 1979:6, 1979:7, 1979:8, 1979:19, 1980:7, 1980:16, 1980:18, 1981:8, 1981:18, 1981:25, 1982:3, 1982:11, 1982:19, 1983:6, 1983:15, 1985:25, 1987:19, 1988:5, 1990:6, 1993:22, 1994:4, 1994:7, 1994:8, 1994:12, 1994:15, 1994:24, 1996:3, 1999:24, 1999:25, 2000:4, 2000:23, 2004:5, 2004:23, 2005:19, 2006:1, 2006:19, 2006:23, 2007:23, 2007:25, 2008:6, 2009:15, 2011:11, 2014:17, 2014:20, 2015:5, 2015:17, 2016:9, 2016:10, 2016:12, 2017:6
EVIDENTIARY [1] - 1989:19
EX [1] - 2012:17
EXACTLY [2] - 1989:14, 1989:17
EXAMPLE [2] - 1998:11, 2000:15
EXCEPT [2] - 1987:23, 2003:16
EXCLUDE [1] - 1989:7
EXCLUSIVE [2] - 1980:19, 1981:1
EXIST [2] - 1978:15, 1978:17
EXISTED [1] - 2004:6
EXPECT [3] - 2009:20, 2011:23, 2012:22
EXPERT [2] - 1999:17, 2002:2
EXPLAIN [1] - 2016:4
EXTENT [5] - 1982:11, 1998:4, 2011:7, 2011:9, 2012:20

F

FACES [1] - 2012:3
FACING [1] - 2002:7
FACT [6] - 1986:14, 1991:22, 1993:25,

1995:1, 2001:15, 2002:1
FACTOR [2] - 1989:11, 2006:13
FACTORS [1] - 1986:16
FACTORY [1] - 1986:5
FACTS [3] - 1983:25, 1985:16, 2014:7
FACTUAL [2] - 1985:11, 1985:15
FAIR [1] - 1990:2
FAIRLY [4] - 1968:21, 1973:16, 1983:24, 2004:15
FALLS [1] - 1979:19
FAMILIAR [2] - 1975:6, 1991:13
FAR [1] - 1973:21
FASHION [1] - 2015:2
FAULT [1] - 1969:9
FAVOR [1] - 1991:23
FEDERAL [1] - 2003:10
FEDERAL [3] - 1992:23, 2002:13, 2007:7
FEET [1] - 1978:6
FIFTH [1] - 2011:6
FIGHTING [1] - 2001:19
FIGURE [1] - 1987:5
FILED [1] - 2015:18
FILLED [2] - 1996:17, 1997:6
FINAL [3] - 2009:20, 2012:20, 2012:23
FINE [11] - 1968:12, 1973:16, 1975:3, 1984:3, 1984:6, 1986:22, 2011:24, 2012:22, 2013:17, 2014:1, 2016:15
FIRST [5] - 1980:16, 1986:19, 2002:15, 2013:8, 2013:10
FIT [3] - 1983:17, 1983:25
FOCUS [1] - 2000:19
FOCUSED [2] - 1999:11, 2010:24
FORM [3] - 1998:18, 2002:20, 2011:13
FORTH [2] - 1981:13, 1981:17
FORWARD [2] - 1975:25, 1976:15
FOUL [1] - 1975:9
FOUR [1] - 1998:3
FRANKLY [1] -

1972:25
FRONT [2] - 1993:5, 2009:20
FULLY [2] - 1983:11, 1990:12
FUNNY [1] - 1972:13

G

GALLAGHER [2] - 1972:14, 1973:4
GEE [45] - 1990:4, 1990:12, 1990:17, 1991:5, 1991:15, 1991:19, 1991:25, 1992:4, 1992:15, 1992:20, 1992:24, 1993:14, 1994:1, 1994:6, 1994:10, 1994:16, 1994:18, 1995:1, 1995:9, 1995:12, 1995:16, 1996:2, 1996:20, 1997:1, 1997:9, 1997:14, 1997:16, 1997:22, 1997:25, 1998:5, 1998:22, 2004:14, 2005:1, 2005:4, 2005:13, 2006:4, 2006:17, 2006:23, 2007:3, 2007:9, 2007:12, 2007:21, 2008:2, 2008:5, 2008:25
GEE [9] - 1989:25, 1995:10, 1997:21, 1998:12, 2002:20, 2004:10, 2005:23, 2008:4
GENERAL [1] - 2006:9
GENERAL'S [1] - 2003:25
GENERALLY [3] - 1991:13, 2003:15, 2017:8
GENERATION [1] - 2006:11
GEOGRAPHICAL [1] - 1969:25
GEOLOGISTS [1] - 1981:11
GIVEN [5] - 1973:14, 1979:20, 1994:11, 2006:25, 2007:1
GREATER [1] - 1985:19
GROUND [4] - 2000:13, 2000:16, 2004:22, 2005:11
GROUNDS [1] -

2014:22
GROUNDWATER [27] - 1974:12, 1975:17, 1975:18, 1975:20, 1975:22, 1975:25, 1977:9, 1977:12, 1978:4, 1979:9, 1980:13, 1981:8, 1981:13, 1981:14, 1981:24, 1982:5, 1982:7, 1982:9, 1982:10, 1982:16, 1982:17, 1982:21, 1993:4, 1993:20, 1998:7, 2004:19, 2006:24
GUESS [4] - 1990:17, 1991:5, 1991:25, 1997:1

**H**

HALFWAY [1] - 2001:1
HANG [1] - 1995:3
HAPPY [1] - 1970:9
HARD [2] - 1999:10, 2001:19
HARM [12] - 1972:7, 1972:9, 1973:3, 1975:9, 1975:18, 1999:15, 2001:6, 2001:7, 2001:11, 2006:13, 2009:15, 2011:11
HARMFUL [3] - 1991:10, 1991:11
HAZARDOUS [2] - 2006:10, 2006:12
HEALTH [8] - 1991:10, 1991:11, 1995:6, 1995:23, 1999:15, 1999:19, 2001:7, 2001:11
HEAR [12] - 1973:8, 1974:17, 1979:10, 1983:21, 1984:22, 1988:17, 1989:24, 1999:3, 2004:10, 2010:18, 2016:24, 2017:2
HEARD [9] - 1974:18, 1979:22, 1981:11, 1981:15, 1983:17, 1983:22, 1997:11, 2004:25, 2017:3
HEARING [1] - 2012:21
HELP [1] - 2010:19
HILL [1] - 1972:15

HIRING [1] - 2005:1
HOKKANEN [3] - 1968:15, 1973:18, 1973:24
HOKKANEN'S [2] - 1968:9, 1973:11
HOME [1] - 1989:16
HONESTLY [1] - 1968:11
HONOR [61] - 1968:10, 1969:2, 1970:11, 1971:2, 1972:13, 1972:15, 1973:22, 1974:19, 1974:24, 1975:21, 1976:10, 1976:14, 1978:3, 1978:15, 1979:12, 1983:9, 1984:1, 1984:14, 1985:3, 1985:16, 1986:19, 1987:1, 1987:9, 1987:24, 1988:13, 1989:14, 1989:23, 1990:17, 1991:5, 1991:19, 1994:1, 1997:1, 1998:5, 1998:22, 1999:4, 1999:13, 1999:23, 2000:11, 2002:15, 2004:9, 2004:14, 2005:13, 2006:4, 2008:5, 2008:25, 2010:1, 2010:4, 2010:5, 2010:23, 2013:3, 2013:5, 2013:10, 2013:20, 2013:24, 2014:2, 2014:19, 2015:3, 2015:11, 2015:21, 2016:15, 2016:20
HONOR'S [1] - 1982:19
HOPE [1] - 1988:18
HOURS [1] - 2011:19
HUGHTO [1] - 2004:5

**I**

IDEA [1] - 2003:14
IDENTIFIED [1] - 1969:4
IDENTIFY [4] - 1968:15, 1968:17, 1969:12, 1969:14
IMPACT [1] - 1978:12
IMPACTED [1] - 1986:11
IMPLEMENT [1] - 2005:17

IMPLEMENTED [1] - 2006:24
IMPORTANT [1] - 2008:13
IMPROPER [1] - 2017:4
IMPROVE [1] - 1990:7
INAPPROPRIATE [1] - 2016:25
INCIDENTALLY [1] - 1974:11
INCLINED [1] - 1983:13
INCLUDING [4] - 1972:24, 2004:23, 2006:10, 2014:22
INCORRECT [4] - 1980:6, 1986:25, 1987:2, 1996:19
INCURRED [1] - 1990:8
INDICATE [2] - 1984:19, 2010:20
INDICATED [4] - 1980:5, 1988:20, 2012:12, 2012:19
INDICATES [1] - 2002:6
INFER [2] - 1976:6, 1978:4
INFERENCES [1] - 2016:9
INFERRING [1] - 1977:18
INFINITESIMAL [1] - 1971:18
INFORMATION [1] - 2008:19
INJURY [1] - 1999:19
INSTANCE [11] - 1971:14, 1971:16, 1978:3, 1978:23, 1985:17, 1998:5, 1999:15, 2000:14, 2000:20, 2006:24, 2015:12
INSTRUCT [1] - 2005:24
INSTRUCTED [1] - 2009:18
INSTRUCTION [33] - 1969:8, 1969:14, 1972:23, 1973:12, 1973:13, 1979:13, 1979:16, 1979:20, 1979:21, 1980:8, 1980:15, 1981:5, 1981:6, 1983:14, 1983:24, 1983:25, 1984:2, 1984:3,

1984:5, 1984:13, 1985:12, 1986:24, 1987:6, 1988:12, 1994:20, 1994:22, 1996:24, 1998:17, 1998:25, 2000:4, 2001:14, 2007:4, 2007:19
INSTRUCTIONS [7] - 1988:1, 1988:19, 1988:20, 1988:24, 2000:9, 2006:8, 2012:3
INSUFFICIENT [1] - 2015:17
INTEND [2] - 2010:13, 2010:14
INTENDING [1] - 2009:16
INTENDS [1] - 2012:11
INTENT [1] - 2003:6
INTENTIONALLY [1] - 2015:11
INTEREST [6] - 1975:1, 1978:19, 1978:22, 1984:21, 1985:5, 1986:10
INTERESTING [1] - 1981:25
INTERFERED [2] - 1978:24, 1985:21
INTERRUPT [2] - 2014:4, 2014:5
INTERRUPTING [1] - 1995:10
INTRODUCED [1] - 1993:22
INTRODUCTION [3] - 1980:11, 1982:8, 2001:13
INVASION [2] - 1985:7, 1985:8
INVESTIGATION [2] - 1968:18, 1998:7
INVOLVING [1] - 1973:3
IOTA [1] - 1976:4
ISSUE [33] - 1973:2, 1973:23, 1974:6, 1977:4, 1979:21, 1980:15, 1983:20, 1984:14, 1984:23, 1984:24, 1985:2, 1985:4, 1985:17, 1986:1, 1988:25, 1989:3, 1989:22, 1990:13, 1991:3, 1992:1, 1994:9, 1996:1, 2000:21,

2000:23, 2001:1, 2004:8, 2008:1, 2008:13, 2008:14, 2009:11, 2011:12, 2011:25, 2014:9
ISSUES [5] - 1973:9, 2000:25, 2002:11, 2013:16, 2014:8
ITSELF [2] - 1975:24, 1981:14

**J**

JMOL [5] - 2000:10, 2001:10, 2013:16, 2014:10, 2015:18
JOB [1] - 2016:7
JOINT [1] - 1972:2
JUDGE [2] - 1985:1, 1986:23
JUDGE [1] - 2006:15
JUDGMENT [1] - 1980:6
JURIES [1] - 1971:22
JURY [42] - 1968:4, 1969:8, 1970:4, 1970:23, 1971:3, 1971:4, 1971:11, 1972:20, 1976:6, 1976:25, 1981:5, 1981:6, 1984:15, 1985:6, 1985:8, 1985:24, 1986:14, 1987:22, 1988:9, 1989:19, 1994:15, 1995:20, 1996:10, 1997:4, 1997:21, 1998:1, 1998:2, 1998:19, 2000:4, 2000:9, 2001:20, 2004:4, 2005:24, 2006:8, 2006:16, 2006:22, 2007:3, 2009:13, 2009:18, 2009:20, 2010:25, 2012:3
JURY'S [1] - 1998:14

**K**

KEITH [1] - 1981:3
KEY [2] - 1975:24, 1979:7
KIND [1] - 1971:14
KNOWING [1] - 1985:9
KNOWN [2] - 1971:19, 2000:23
KNOWS [1] - 1978:20

## L

**L.A** [6] - 1993:13, 1993:14, 1993:16, 1997:16, 2007:6, 2007:8
**LACK** [1] - 1993:24
**LAND** [25] - 1975:20, 1975:22, 1975:24, 1976:1, 1976:8, 1976:18, 1976:19, 1977:2, 1977:4, 1977:5, 1977:8, 1977:14, 1977:16, 1978:1, 1978:3, 1978:5, 1979:6, 1979:8, 1981:1, 1981:14, 1981:16, 1981:22, 1983:16, 1985:19
**LARGE** [1] - 2006:3
**LARGELY** [1] - 1998:3
**LAST** [7] - 1971:23, 1972:14, 1979:5, 1987:25, 2001:13, 2002:5
**LATE** [2] - 1968:12, 2006:19
**LAUNDRY** [1] - 1996:17
**LAW** [19] - 1970:10, 1979:23, 1986:3, 1990:3, 1990:23, 1992:10, 1992:13, 1995:15, 1996:9, 1999:10, 2003:5, 2005:25, 2006:1, 2006:2, 2006:3, 2007:1, 2007:5, 2007:7
**LEASE** [1] - 1977:19
**LEAST** [4] - 1970:25, 1972:3, 1985:13, 2017:1
**LEAVES** [1] - 2010:18
**LECTERN** [1] - 1984:9
**LEGAL** [4] - 1970:7, 1970:20, 1983:17, 1989:5
**LEGALLY** [1] - 1974:15
**LESS** [4] - 1972:1, 1972:6, 1974:23, 2007:20
**LEVEL** [1] - 1975:11
**LIABILITY** [7] - 1971:7, 1971:21, 1972:3, 1991:14, 1991:23, 2011:8, 2011:10

**LIABLE** [2] - 1971:16, 2011:8
**LICENSE** [2] - 1977:19, 1978:25
**LIGHT** [2] - 1975:7, 2004:20
**LIKELY** [2] - 1973:8, 2014:21
**LIMINE** [1] - 1988:23
**LIMIT** [1] - 2003:21
**LIMITATIONS** [1] - 2003:2
**LIMITED** [3] - 2002:24, 2003:3, 2012:20
**LINE** [1] - 2011:7
**LIST** [2] - 1996:17, 2007:3
**LISTENING** [1] - 1997:23
**LOCATION** [1] - 1969:6
**LOOK** [13] - 1970:19, 1972:17, 1975:3, 1976:25, 1979:5, 1979:6, 1987:17, 1990:20, 1991:6, 1991:9, 2007:12, 2007:15, 2008:22
**LOOKED** [1] - 1992:15
**LOOKING** [6] - 1968:17, 1984:4, 1992:10, 1999:7, 1999:9
**LOOKS** [1] - 2012:3
**LOS** [1] - 1968:2
**LOSE** [4] - 1987:23, 1995:25, 2000:10
**LOSS** [4] - 1983:21, 1983:24, 1984:9, 1984:20
**LOST** [2] - 1976:22, 1994:12

## M

**MACHINERY** [1] - 1975:2
**MAIL** [2] - 1970:18, 1973:6
**MAJORITY** [1] - 1989:25
**MALL** [7] - 1969:5, 1969:11, 1971:4, 1971:12, 1971:19, 1972:25
**MAPS** [1] - 1973:23
**MATERIAL** [4] - 1975:18, 1993:17, 1995:5, 1995:22
**MATERIALLY** [1] -

2013:1
**MATERIALS** [1] - 1995:2
**MATTER** [10] - 1983:13, 1985:14, 1988:18, 1993:23, 1998:2, 1999:10, 2008:11, 2008:12, 2010:24
**MATTERS** [2] - 1973:2, 2009:24
**MCL** [1] - 1975:13
**MCLS** [1] - 1975:13
**MEAN** [9] - 1971:2, 1974:19, 1975:7, 1982:13, 2000:14, 2002:12, 2004:15, 2005:1, 2005:20
**MEANT** [2] - 1991:8, 2003:4
**MEET** [1] - 1981:5
**MENACE** [2] - 1995:6, 1995:23
**MENTIONED** [2] - 1992:5, 2004:13
**MERGER** [1] - 1980:25
**MET** [1] - 2009:10
**MICROPHONE** [1] - 2013:12
**MIGHT** [2] - 1996:14, 2011:10
**MIGRATION** [2] - 1977:24, 1978:9
**MIMICS** [1] - 1992:20
**MIND** [3] - 1998:2, 2007:17, 2010:16
**MINORITY** [1] - 1990:10
**MINUTE** [1] - 2001:13
**MISREMEMBERING** [1] - 1998:20
**MODIFIED** [1] - 1983:25
**MOMENT** [2] - 2010:5, 2012:4
**MONITORING** [1] - 2006:24
**MONTHS** [1] - 2011:14
**MORNING** [5] - 1970:13, 2008:24, 2009:3, 2011:22, 2012:13
**MOST** [4] - 1970:5, 1988:19, 1990:14, 2014:21
**MOTION** [9] - 1988:22, 1988:23, 2006:9, 2009:7, 2010:19, 2010:21, 2013:15,

2013:19
**MOUNTED** [1] - 2004:23
**MOVE** [2] - 1983:20, 1992:16
**MOVED** [1] - 1978:6
**MOVEMENT** [1] - 1977:15
**MOVING** [1] - 2005:9
**MR** [139] - 1968:10, 1969:2, 1969:10, 1969:17, 1970:11, 1971:2, 1971:15, 1972:1, 1972:5, 1972:8, 1972:10, 1972:13, 1973:4, 1973:10, 1973:22, 1974:4, 1974:19, 1974:24, 1975:8, 1975:21, 1976:10, 1976:14, 1976:20, 1977:3, 1977:13, 1977:25, 1978:14, 1978:18, 1979:4, 1979:12, 1980:3, 1980:12, 1980:18, 1980:23, 1981:10, 1982:6, 1982:13, 1982:25, 1983:2, 1983:8, 1983:19, 1984:1, 1984:5, 1984:7, 1984:14, 1985:3, 1985:16, 1986:19, 1987:1, 1987:9, 1987:24, 1988:11, 1988:21, 1989:14, 1989:22, 1990:4, 1990:12, 1990:17, 1991:5, 1991:15, 1991:19, 1991:25, 1992:4, 1992:15, 1992:20, 1992:24, 1993:14, 1994:1, 1994:6, 1994:10, 1994:16, 1994:18, 1995:1, 1995:9, 1995:12, 1995:16, 1996:2, 1996:20, 1997:1, 1997:9, 1997:14, 1997:16, 1997:22, 1997:25, 1998:5, 1998:22, 1999:4, 1999:13, 1999:23, 2000:3, 2000:7, 2000:11, 2001:5, 2001:10, 2001:17, 2002:11, 2002:15, 2002:22, 2002:24, 2003:11, 2004:9,

2004:14, 2005:1, 2005:4, 2005:13, 2006:4, 2006:17, 2006:23, 2007:3, 2007:9, 2007:12, 2007:21, 2008:2, 2008:5, 2008:25, 2009:6, 2009:9, 2010:1, 2010:4, 2010:9, 2010:13, 2010:23, 2011:19, 2013:3, 2013:5, 2013:10, 2013:13, 2013:20, 2013:24, 2014:1, 2014:4, 2014:19, 2015:3, 2015:11, 2015:21, 2016:15, 2016:19, 2017:8, 2017:11
**MUST** [2] - 1970:22, 1984:10

## N

**NAME** [1] - 1969:23
**NATURE** [1] - 1975:14
**NAVIGABLE** [1] - 1993:2
**NEARBY** [1] - 1968:19
**NECESSARILY** [1] - 1999:8
**NECESSARY** [1] - 1973:15
**NEED** [9] - 1976:11, 1978:11, 1982:18, 1987:5, 1989:1, 1994:3, 2010:6, 2015:25, 2016:1
**NEEDS** [2] - 1973:21, 1985:6
**NEGLIGENCE** [27] - 1969:18, 1989:21, 1990:2, 1990:5, 1990:6, 1990:9, 1991:2, 1991:17, 1994:25, 1995:25, 1996:4, 1996:11, 1996:16, 1996:24, 1998:24, 2001:18, 2001:20, 2002:8, 2002:23, 2004:21, 2005:12, 2006:14, 2008:14, 2008:15, 2009:13, 2011:1, 2011:3
**NEGLIGENT** [3] - 1969:9, 1970:25, 2010:14
**NEVER** [3] - 2002:19, 2003:4, 2016:3

**NEW** [1] - 1980:25
**NEXT** [2] - 1983:20, 1984:21
**NIGHT** [1] - 1972:14
**NINTH** [1] - 1979:24, 1981:20
**NOBODY** [1] - 1978:20
**NONDESCRIPT** [1] - 1969:15
**NONE** [1] - 1971:8
**NONECONOMIC** [2] - 1972:7, 1972:9
**NONPARTY** [1] - 2011:10
**NOTE** [1] - 1968:13
**NOTHING** [3] - 1970:24, 1976:4, 1990:21
**NOTICE** [2] - 2003:1, 2006:17
**NOXIOUS** [1] - 1993:17
**NPDES** [2] - 2007:13, 2007:14
**NUISANCE** [14] - 1993:17, 1995:6, 1995:23, 1996:3, 1996:4, 2001:4, 2001:6, 2001:9, 2001:15, 2001:18, 2002:6, 2002:8, 2004:18, 2004:24
**NUMBER** [2] - 1976:10, 1988:24

## O

**O'CLOCK** [1] - 2012:10
**OBJECT** [6] - 1986:25, 2014:21, 2015:13, 2015:25, 2016:10, 2016:23
**OBJECTION** [3] - 1983:23, 1987:8, 2013:22
**OBJECTIONS** [2] - 2014:16, 2015:4
**OBSERVATION** [1] - 1968:9
**OBTAINED** [1] - 1994:7
**OBVIOUSLY** [2] - 2007:24, 2008:23
**OCCUR** [2] - 1986:5, 1986:6
**OCCURRED** [1] - 2006:18
**OFF-THE-RECORD**

[2] - 2012:7, 2012:11
**OFFERING** [1] - 1996:23
**OFFICE** [1] - 2003:25
**OFFSITE** [2] - 1977:24, 1978:9
**ONCE** [3] - 1984:22, 1989:6, 2005:16
**ONE** [28] - 1971:15, 1971:23, 1976:4, 1976:20, 1981:11, 1986:3, 1987:25, 1988:25, 1989:4, 1989:24, 1990:15, 1992:20, 1994:8, 1997:2, 1997:13, 1997:14, 1998:25, 1999:1, 2000:16, 2001:11, 2001:15, 2002:5, 2003:15, 2007:19, 2009:13, 2010:1, 2011:5, 2014:1
**OOO** [1] - 1968:3
**OPEN** [1] - 1991:9
**OPENING** [2] - 2016:20, 2016:21
**OPPORTUNITY** [2] - 2004:11, 2016:18
**OPPOSED** [1] - 1975:20
**OPTION** [1] - 1986:21
**ORATOR** [1] - 2017:1
**ORDER** [4] - 1976:15, 1987:9, 2001:5, 2012:1
**ORDERED** [1] - 2012:9
**ORDINANCE** [14] - 1993:16, 1994:23, 1994:24, 1996:7, 1997:13, 1997:14, 1999:1, 1999:6, 1999:12, 1999:20, 2001:4, 2001:14, 2004:16, 2005:7
**ORDINANCES** [7] - 1993:13, 1993:14, 1993:25, 1994:2, 2005:10, 2007:6, 2007:8
**ORIGINAL** [1] - 2002:2
**OTHERWISE** [3] - 1994:12, 2014:11, 2016:6
**OUTSET** [2] - 2008:14, 2009:17
**OVERLAP** [1] - 1998:4
**OVERSIGHT** [1] -

1998:10
**OWED** [1] - 2011:1
**OWN** [11] - 1977:17, 1977:18, 1978:3, 1978:5, 1980:19, 1984:11, 1985:5, 1985:18, 1985:24, 1998:2, 2012:15
**OWNED** [2] - 1977:18, 1985:18
**OWNERSHIP** [5] - 1977:21, 1977:22, 1978:19, 1978:22, 1979:3
**OWNS** [3] - 1977:14, 1980:17, 1981:1

## P

**P.M** [1] - 2017:12
**P.M** [1] - 1968:1
**PARAGRAPH** [1] - 2011:2
**PARSING** [1] - 1981:21
**PART** [3] - 1979:20, 1981:15, 2013:11
**PARTE** [1] - 2012:17
**PARTICLES** [1] - 1981:21
**PARTICULAR** [6] - 1968:13, 1970:4, 1997:9, 1999:6, 1999:11, 2001:13
**PARTICULARITY** [1] - 1969:23
**PARTICULARLY** [2] - 1991:10
**PARTIES** [8] - 1969:10, 1970:16, 1971:8, 1974:14, 1979:18, 2012:1, 2012:9, 2012:17
**PARTIES'** [1] - 1974:7
**PARTY** [5] - 1969:24, 1970:21, 1971:1, 1972:21
**PASSED** [1] - 1991:7
**PAST** [1] - 2005:9
**PAUSE** [1] - 1994:21
**PAUSE** [1] - 2010:3
**PAY** [2] - 1972:6, 2010:15
**PENALTIES** [1] - 2003:17
**PEOPLE** [3] - 2003:20, 2003:23, 2004:1
**PER** [20] - 1989:21, 1990:2, 1990:5,

1990:9, 1991:2, 1991:18, 1994:25, 1996:4, 1996:11, 1996:16, 1996:24, 1998:25, 2001:19, 2001:20, 2002:8, 2002:23, 2004:21, 2005:12, 2006:14, 2008:14
**PERCENT** [2] - 1971:20, 2002:3
**PERCHLORATE** [2] - 1982:9, 2000:20
**PERHAPS** [2] - 1987:23, 2016:5
**PERMISSIBLE** [1] - 1984:12
**PERMISSION** [1] - 2010:7
**PERMIT** [7] - 1994:3, 1994:7, 1995:7, 2007:22, 2007:23, 2007:25
**PERMITTED** [1] - 1999:21
**PERMITTING** [3] - 1994:4, 1994:15, 1994:23
**PERSON** [2] - 1990:22, 2004:17
**PERSUADE** [1] - 1980:1
**PERSUADED** [2] - 1973:16, 1974:11
**PERSUASIVE** [1] - 1990:16
**PERVERT** [1] - 2003:6
**PETER** [1] - 1986:4
**PIPING** [2] - 1981:4, 1983:9
**PLACE** [1] - 1970:3
**PLACEMENT** [1] - 1984:11
**PLAINTIFF** [17] - 1971:7, 1975:23, 1977:14, 1977:17, 1978:19, 1983:14, 1985:5, 1996:14, 1997:5, 1997:6, 2001:23, 2003:13, 2008:12, 2011:1, 2013:10, 2013:13, 2014:13
**PLAINTIFF** [1] - 2011:8
**PLAINTIFF'S** [7] - 1977:7, 1978:1, 1978:10, 1978:17, 1984:21, 1985:9, 2011:3

**PLAINTIFFS** [2] - 1978:20, 1992:6
**PLAN** [3] - 2005:18, 2009:3, 2009:4
**PLANNING** [1] - 2005:22
**PLAY** [1] - 1971:2
**PLEADING** [1] - 1969:5
**PLEASED** [1] - 1984:25
**PLENTY** [1] - 2008:6
**PLUME** [1] - 1973:23
**POINT** [11] - 1968:20, 1973:15, 1974:13, 1979:5, 1987:11, 1987:14, 1987:24, 1990:18, 1990:25, 1998:4, 2002:10
**POINTED** [2] - 1979:18, 1994:10
**POINTS** [2] - 1988:15, 2015:20
**POLLUTE** [5] - 1995:24, 1999:21, 2000:13, 2000:14, 2004:18
**POLLUTED** [1] - 1978:10
**POLLUTING** [3] - 2000:20, 2000:24, 2000:25
**POMONA** [1] - 1979:24, 1980:12, 1982:17
**PORTER** [12] - 1992:24, 1993:2, 1993:4, 1997:17, 1998:8, 2003:9, 2003:11, 2003:12, 2004:3, 2004:6, 2007:9, 2008:9
**PORTER-COLOGNE** [12] - 1992:24, 1993:2, 1993:4, 1997:17, 1998:8, 2003:9, 2003:11, 2003:12, 2004:3, 2004:6, 2007:9, 2008:9
**PORTION** [3] - 2001:4, 2009:4, 2013:14
**POSITION** [3] - 1975:6, 2009:23, 2014:11
**POSSIBILITY** [1] - 1999:16
**POSSIBLY** [1] - 2013:18
**POTENTIAL** [2] -

1968:15, 2010:25
**POTENTIALLY** [5] - 1968:21, 1971:1, 1973:19, 1986:12, 2016:12
**POURED** [1] - 2000:16
**POWERPOINT** [5] - 2009:5, 2012:10, 2012:13, 2012:15, 2012:20
**POWERPOINTS** [1] - 2012:18
**PRACTICAL** [4] - 1971:24, 1972:11, 2010:24, 2016:5
**PRACTICALITY** [1] - 1971:9
**PRACTICALLY** [4] - 1973:2, 1997:20, 2014:18, 2015:15
**PRECISELY** [1] - 2006:16
**PREDICATE** [4] - 2002:14, 2002:21, 2005:12, 2005:24
**PREDICATES** [1] - 2007:19
**PREJUDICE** [7] - 1993:23, 1999:8, 1999:11, 2001:14, 2002:7, 2004:12, 2004:15
**PREJUDICED** [2] - 1993:22, 2001:13
**PRESENCE** [1] - 1968:4
**PRESENT** [3] - 1968:5, 1968:6, 1969:7
**PRESENTATIONS** [2] - 2012:10, 2012:14
**PRESENTED** [5] - 1983:14, 1987:19, 2008:12, 2008:21, 2017:6
**PRESENTING** [1] - 2004:23
**PRESERVE** [3] - 1986:20, 1987:7, 2014:15
**PRESERVED** [5] - 1987:5, 2010:20, 2014:9, 2014:23, 2015:6
**PRESIDENT** [1] - 2005:19
**PRESUMABLY** [1] - 2016:10
**PRESUMPTION** [17] - 1991:2, 1991:17,

1991:24, 1992:11, 1992:18, 1994:25, 1995:14, 1995:15, 1996:1, 1996:8, 1996:9, 1996:10, 1996:16, 1996:24, 1997:8, 1997:12, 1998:24
**PRESUPPOSES** [1] - 1976:12
**PRETTY** [2] - 2015:22, 2017:9
**PREVENT** [1] - 1991:8
**PREVENTED** [1] - 1976:5
**PRINCIPLE** [1] - 1983:17
**PRIVATE** [7] - 1992:3, 1992:13, 1997:18, 2002:25, 2003:12, 2003:16, 2003:18
**PROBLEM** [2] - 2000:22, 2011:21
**PROBLEMS** [1] - 1975:12
**PROCEDURAL** [1] - 2002:25
**PROCEDURALLY** [1] - 2013:21
**PROCEED** [3] - 2009:2, 2011:18, 2015:2
**PROCEEDING** [1] - 2004:22
**PROCEEDINGS** [2] - 2010:3, 2017:12
**PRODUCE** [1] - 2007:25
**PROHIBIT** [1] - 1993:16
**PROHIBITION** [1] - 1995:4
**PROHIBITS** [2] - 1993:18, 1995:1
**PROOF** [3] - 1993:24, 2011:4, 2011:5
**PROPER** [2] - 1976:21, 2005:17
**PROPERTY** [40] - 1974:5, 1974:10, 1975:1, 1978:11, 1978:13, 1978:17, 1978:21, 1979:3, 1979:14, 1980:10, 1980:17, 1980:21, 1980:23, 1982:1, 1982:4, 1982:6, 1982:12, 1982:14, 1982:23, 1983:1, 1983:4, 1983:10,

1983:21, 1984:17, 1984:21, 1985:9, 1985:14, 1985:18, 1985:24, 1986:10, 1987:18, 1987:21, 1988:2, 1988:3, 1988:8, 1989:11, 1990:5, 2005:17
**PROPOSITION** [3] - 1989:5, 1992:14
**PROTECT** [1] - 1993:3
**PROTECTIONS** [1] - 2002:25
**PROTECTS** [1] - 1993:2
**PROVE** [9] - 1976:13, 1976:16, 1984:10, 1985:12, 1985:23, 1985:25, 1999:14, 2003:2, 2008:15
**PROVEN** [7] - 1995:21, 1995:22, 1996:11, 1996:15, 1996:16, 1997:5, 1997:6
**PROVIDE** [8] - 1970:8, 1970:10, 1979:2, 1994:11, 2003:12, 2003:16, 2008:19, 2012:2
**PROVIDED** [3] - 1998:18, 2006:7, 2007:7
**PROVIDES** [3] - 1980:13, 1982:16, 1982:17
**PROVIDING** [3] - 1973:25, 1994:24, 2012:17
**PROVISION** [2] - 2008:8
**PROVISIONS** [2] - 1993:3, 2007:14
**PROXIMATE** [1] - 2011:3
**PUBLIC** [20] - 1993:6, 1995:6, 1995:23, 1997:18, 1998:8, 1999:15, 1999:19, 2001:3, 2001:5, 2001:6, 2001:9, 2001:11, 2001:15, 2001:18, 2002:6, 2002:8, 2004:18, 2004:24
**PULL** [1] - 2001:22
**PUMP** [1] - 1983:3
**PUMPING** [5] - 1970:2, 1971:20, 1976:2, 1976:3,

1976:5
**PURELY** [1] - 1999:10
**PURPOSE** [4] - 1988:8, 1991:6, 1991:13, 2003:3
**PURPOSES** [6] - 1979:15, 1996:24, 1998:16, 2000:8, 2001:12
**PURSUE** [2] - 1991:2, 2009:16
**PUSH** [1] - 1986:17
**PUT** [4] - 1970:4, 1995:20, 1997:21, 2002:16

---

**Q**

**QUALITY** [1] - 1993:9
**QUANDARY** [1] - 2010:6
**QUESTIONS** [1] - 2011:13
**QUOTE** [1] - 2011:8

---

**R**

**RAISED** [5] - 2005:6, 2013:16, 2014:10, 2016:21
**RATHER** [3] - 1968:24, 1994:23, 1999:20
**RATIONAL** [1] - 1971:14
**RCRA** [29] - 1990:1, 1990:5, 1990:7, 1990:19, 1991:6, 1991:8, 1991:20, 1992:3, 1992:7, 1992:17, 2002:16, 2002:18, 2002:20, 2002:24, 2003:4, 2003:6, 2005:14, 2005:17, 2005:22, 2006:3, 2006:5, 2006:9, 2006:20, 2007:1, 2008:7
**RE** [1] - 1987:3
**RE-ARGUE** [1] - 1987:3
**READ** [1] - 1980:4
**READING** [1] - 1986:18
**READS** [1] - 2013:13
**REAL** [5] - 1971:24, 1974:5, 1979:14, 1983:21, 1984:16
**REALLY** [9] - 1983:23,

1987:7, 1988:4, 1990:25, 1991:3, 1996:6, 2014:11, 2014:14, 2016:13
**REASON** [2] - 1996:8, 2001:19
**REASONABLE** [6] - 1984:10, 1986:15, 1989:9, 2000:24, 2016:9
**REASONABLENESS** [3] - 1988:9, 1989:12, 1989:18
**REASONING** [1] - 1990:15
**REASONS** [1] - 2004:13
**RECALLING** [1] - 1998:20
**RECEIVE** [1] - 2012:12
**RECEIVED** [1] - 1988:24
**RECESS** [2] - 2016:16, 2017:10
**RECOGNIZE** [1] - 1992:9
**RECONSIDER** [1] - 2016:6
**RECONSIDERATION** [1] - 1988:24
**RECORD** [12] - 1968:5, 1973:10, 1973:13, 1984:8, 1986:20, 2009:17, 2012:4, 2012:6, 2012:7, 2012:8, 2012:11, 2013:1
**RECOVER** [3] - 1984:9, 1993:7, 1993:10
**RECOVERY** [1] - 1997:18
**REFERENCE** [1] - 1979:17
**REFLECT** [1] - 1983:15
**REFLECTED** [1] - 1986:12
**REFLECTS** [1] - 1990:5
**REGARD** [12] - 1968:24, 1974:5, 1980:14, 1982:11, 1989:5, 1990:23, 1993:13, 2007:5, 2009:4, 2010:19, 2010:21, 2012:10
**REGARDS** [1] - 1990:23

**REGIONAL** [1] - 1993:9
**REGIONAL** [1] - 2003:24
**REGULATIONS** [1] - 2006:5
**RELATED** [1] - 2006:10
**RELATES** [2] - 1988:5, 2014:10
**RELEASE** [3] - 1993:16, 1995:19, 1998:7
**RELEASES** [2] - 1993:7, 1995:19
**RELIED** [1] - 1973:24
**RELUCTANT** [1] - 2016:14
**RELYING** [3] - 1996:12, 2005:9, 2005:11
**REMAIN** [1] - 1989:20
**REMEDIES** [1] - 2003:3
**REMEDY** [1] - 1990:19
**REMEMBER** [1] - 1968:10
**RENEWED** [1] - 2015:18
**REPAIR** [3] - 1976:21, 1976:24, 1977:1
**REPEATEDLY** [1] - 2016:22
**REPHRASE** [2] - 1996:20
**REPURCHASE** [1] - 1984:10
**REQUEST** [1] - 1989:13
**REQUESTING** [2] - 1996:25, 2016:14
**REQUIRE** [3] - 1994:2, 1995:7, 2008:18
**REQUIREMENT** [3] - 1990:24, 2003:1, 2005:21
**REQUIREMENTS** [2] - 2001:11, 2005:16
**REREAD** [1] - 2016:22
**RESOLVE** [1] - 2011:20
**RESPECT** [3] - 1972:3, 1987:1, 1992:22
**RESPECTFULLY** [1] - 1998:13
**RESPECTIVE** [2] - 2012:13, 2016:6
**RESPOND** [2] - 1993:12, 2004:12

**RESPONSE** [3] - 1968:8, 1988:17, 1994:21
**RESPONSIBILITY** [3] - 1970:23, 1972:19, 1972:23
**RESPONSIBLE** [3] - 1971:4, 1971:8, 1975:10
**REST** [1] - 1979:7
**RESTORATION** [17] - 1974:23, 1977:1, 1977:3, 1977:7, 1977:8, 1979:7, 1979:8, 1980:9, 1986:12, 1986:15, 1988:5, 1988:22, 1989:8, 1989:9, 1989:12, 1989:16, 1989:18
**RESTORE** [1] - 1977:4
**RESTRICT** [1] - 1990:22
**RESULT** [3] - 1975:3, 2010:15, 2011:3
**RESULTED** [1] - 1993:19
**RESULTS** [1] - 2015:9
**RESUSCITATE** [1] - 1988:25
**RETAINED** [1] - 1999:17
**RETURN** [1] - 1998:23
**REVIEW** [1] - 1974:7
**RICHARD** [16] - 1970:19, 1971:24, 1973:7, 1973:23, 1979:11, 1980:1, 1994:10, 2007:18, 2009:2, 2010:18, 2013:2, 2013:9, 2013:22, 2014:5, 2016:8, 2016:17
**RICHARD** [24] - 1973:10, 1979:12, 1980:3, 1980:12, 1980:18, 1980:23, 1981:10, 1982:6, 1982:13, 1982:25, 1983:2, 1983:8, 1983:19, 1984:7, 1988:21, 1989:14, 1989:22, 2009:6, 2009:9, 2010:23, 2013:3, 2013:24, 2016:19, 2017:11
**RICHARD'S** [1] - 2012:21
**RIGHTS** [10] - 1985:8, 1985:9, 1985:10,

1985:19, 1985:20, 1985:22, 1986:1, 1986:2, 1990:22, 2010:21
**RISE** [11] - 1990:7, 1990:8, 1991:17, 1992:11, 1992:12, 1992:17, 1995:18, 1996:10, 1996:15, 1997:2, 2006:14
**RIVER** [1] - 1981:15
**ROUND** [2] - 1984:23, 1984:24
**RULE** [2] - 1986:7, 2011:22
**RULING** [8] - 1985:1, 1986:24, 1986:25, 1987:2, 1994:20, 2008:23, 2009:2, 2011:24
**RULINGS** [1] - 1987:11

## S

**SAD** [1] - 2012:3
**SAFETY** [1] - 1995:23
**SAT** [1] - 2007:17
**SATISFIED** [2] - 1997:10, 1997:12
**SAUGUS** [2] - 1971:17
**SCV** [2] - 1984:10, 2006:13
**SE** [20] - 1989:21, 1990:2, 1990:5, 1990:9, 1991:2, 1991:18, 1994:25, 1996:4, 1996:11, 1996:16, 1996:24, 1998:25, 2001:19, 2001:20, 2002:8, 2002:23, 2004:21, 2005:12, 2006:14, 2008:14
**SECOND** [3] - 1995:3, 2010:1, 2010:4
**SECTION** [10] - 1990:21, 1991:7, 2002:16, 2003:13, 2003:14, 2003:21, 2004:2, 2005:14, 2013:20
**SECTIONS** [3] - 2002:18, 2005:15, 2006:5
**SEE** [8] - 1968:18, 1968:20, 1972:18, 1973:2, 1979:20, 1995:3, 1999:7, 2012:3

**SEEING** [1] - 1999:10
**SEEK** [5] - 1969:22, 1989:8, 1990:23, 1993:9, 2003:19
**SEEKING** [3] - 1981:12, 1987:7, 2005:11
**SEEM** [2] - 1984:23, 1988:3
**SELL** [1] - 1985:20
**SEND** [2] - 1970:18, 1973:6
**SENSE** [5] - 1987:6, 1988:4, 1993:8, 1993:15
**SEPARATE** [1] - 1992:25
**SERIOUS** [1] - 2008:21
**SERVE** [1] - 1975:12
**SEVEN** [1] - 2009:12
**SEVERAL** [2] - 1972:3, 1981:11
**SHALL** [3] - 1990:22, 2004:17
**SHARE** [1] - 2009:9
**SHARED** [1] - 2012:15
**SHOES** [1] - 1997:21
**SHOW** [2] - 1982:19, 2001:11
**SHOWS** [1] - 1983:7
**SIC** [4] - 1969:8, 1971:6, 1973:17, 1973:19
**SIDE** [3] - 2008:20, 2012:15, 2014:16
**SIGNIFICANCE** [4] - 1970:7, 1972:17, 2004:21, 2016:5
**SIGNIFICANT** [2] - 1970:1, 2008:14
**SIMILAR** [1] - 2016:20
**SIMPLY** [2] - 1984:9, 1989:11
**SINGLE** [3] - 1997:14, 2005:11, 2007:19
**SIT** [3] - 1980:24, 1989:3, 2016:24
**SITE** [3] - 1977:14, 1977:15, 1977:24
**SLICING** [1] - 1979:23
**SLIDE** [1] - 2009:4
**SMALL** [3] - 1988:4, 2013:11, 2013:13
**SOIL** [14] - 1977:11, 1981:17, 1982:1, 1982:11, 1982:15, 1982:20, 1982:21, 1982:24, 1983:6, 1986:10, 1987:21,

1989:7, 1993:20
**SOLELY** [1] - 1988:5
**SOMEONE** [2] - 1969:14, 1970:23
**SOMEWHAT** [1] - 1992:25
**SOON** [1] - 1988:22
**SORRY** [2] - 1974:21, 1995:9
**SORT** [4] - 1969:15, 1975:25, 1981:17, 1981:21
**SOURCE** [4] - 1968:21, 1971:12, 1971:19, 1973:19
**SOURCES** [3] - 1968:16, 1968:17, 1993:4
**SPEAKING** [2] - 1979:15, 2015:16
**SPECIAL** [1] - 1998:18
**SPECIFIC** [22] - 1969:25, 1970:17, 1989:15, 1989:17, 1999:4, 2005:8, 2005:10, 2005:14, 2005:24, 2005:25, 2006:2, 2006:3, 2006:5, 2006:21, 2006:25, 2007:1, 2007:14, 2008:8, 2008:19
**SPECIFICALLY** [3] - 1969:3, 1969:5, 2005:23
**SPENDING** [2] - 1972:19, 1973:1
**STAND** [2] - 2009:15, 2015:25
**STANDARD** [5] - 1977:6, 1983:24, 1990:24, 1993:18, 1993:24
**STANDARDS** [1] - 2008:16
**STANDING** [4] - 1980:14, 1981:23, 1982:18, 2013:8
**STANDPOINT** [2] - 1991:22, 2016:2
**STANDS** [1] - 1992:13
**STARRH** [1] - 1986:13
**STARRH** [8] - 1979:24, 1980:8, 1982:17, 1986:13, 1986:18
**STARTING** [1] - 1968:19
**STATE** [1] - 2003:25
**STATE** [3] - 1992:23,

2003:8, 2007:7
**STATEMENT** [2] - 2016:20, 2016:22
**STATUTE** [17] - 1990:1, 1991:14, 1995:15, 1996:9, 1996:12, 1996:23, 1997:9, 1998:15, 1998:19, 1998:25, 2000:11, 2000:17, 2000:18, 2001:22, 2002:18, 2003:4, 2003:21
**STATUTES** [5] - 1997:7, 1997:24, 1998:3, 2005:8, 2005:10
**STATUTORY** [4] - 1990:24, 1992:11, 1996:18, 1996:22
**STAY** [3] - 1971:25, 1981:13, 1981:22
**STICK** [2] - 1981:22, 1982:10
**STICKS** [1] - 1981:25
**STILL** [3] - 1987:12, 1987:22, 1997:10
**STIPULATION** [1] - 1974:3
**STORAGE** [1] - 2006:11
**STRAIGHT** [1] - 2004:16
**STRAIGHTFORWAR D** [1] - 2004:16
**STRAIN** [1] - 1992:10
**STRAYED** [1] - 2014:17
**STRICT** [2] - 1991:14, 1991:23
**STRUCTURED** [1] - 2002:4
**STRUGGLING** [1] - 1969:15
**STUFF** [2] - 1969:20
**SUBJECT** [1] - 2005:7
**SUBMISSION** [3] - 1983:13, 1988:18, 2008:11
**SUBMIT** [2] - 1984:18, 1988:14
**SUBMITTED** [3] - 1996:18, 2000:22, 2011:14
**SUBSTANTIAL** [2] - 1976:16, 2006:13
**SUBSTANTIATE** [2] - 1977:21, 1996:3
**SUBSURFACE** [4] - 1986:10, 1987:21,

1989:6, 1989:7
**SUE** [2] - 1981:23, 2003:20
**SUFFICIENT** [6] - 1969:23, 1979:2, 1980:14, 1981:5, 1985:25, 1989:8
**SUGGEST** [3] - 1990:1, 2011:18, 2017:2
**SUGGESTED** [1] - 1987:7
**SUGGESTING** [3] - 1975:17, 1979:1, 2016:3
**SUIT** [1] - 1992:5
**SUPPLEMENTAL** [1] - 1974:7
**SUPPLY** [2] - 1987:17, 1989:11
**SUPPORT** [12] - 1970:9, 1976:16, 1976:17, 1980:8, 1994:24, 1996:3, 1999:24, 2014:8, 2015:5, 2015:17, 2016:12, 2017:6
**SUPPORTS** [3] - 1970:10, 1973:11, 1981:18
**SUPPOSED** [1] - 2004:4
**SUPPOSITION** [1] - 1975:15
**SURFACE** [6] - 1978:6, 1986:10, 1995:2, 1995:24, 1999:21, 2004:19
**SURPRISE** [1] - 1993:15
**SURPRISED** [2] - 2009:19, 2011:16
**SURROUNDING** [2] - 1980:22, 1981:14
**SYSTEM** [2] - 1970:2, 1983:10
**SYSTEMS** [3] - 1976:2, 1976:3, 1976:5

## T

**TAKEAWAY** [1] - 1968:23
**TARGET** [1] - 2009:23
**TCE** [1] - 2000:23
**TEN** [2] - 1976:22, 1976:23
**TERMS** [2] - 1970:5, 1976:1

**TESTIFIED** [2] - 1968:16, 1974:25
**TESTIMONY** [6] - 1968:9, 1968:24, 1973:11, 1973:18, 1981:4, 1981:15
**THE** [140] - 1968:5, 1968:12, 1969:7, 1969:12, 1970:8, 1970:15, 1971:9, 1971:23, 1972:2, 1972:6, 1972:9, 1972:11, 1972:17, 1973:7, 1973:16, 1974:2, 1974:5, 1974:21, 1975:5, 1975:9, 1976:8, 1976:12, 1976:18, 1976:24, 1977:10, 1977:23, 1978:8, 1978:16, 1979:1, 1979:10, 1980:1, 1980:4, 1980:16, 1980:21, 1981:7, 1982:3, 1982:8, 1982:22, 1983:1, 1983:5, 1983:12, 1983:20, 1984:3, 1984:6, 1984:8, 1984:19, 1985:11, 1986:7, 1986:22, 1987:4, 1987:15, 1988:7, 1988:16, 1989:4, 1989:20, 1989:24, 1990:10, 1990:14, 1990:25, 1991:13, 1991:16, 1991:22, 1992:2, 1992:9, 1992:16, 1992:22, 1993:12, 1993:21, 1994:4, 1994:8, 1994:14, 1994:17, 1994:19, 1995:8, 1995:10, 1995:13, 1995:20, 1996:6, 1996:22, 1997:4, 1997:10, 1997:15, 1997:20, 1997:23, 1998:1, 1998:12, 1998:23, 1999:6, 1999:18, 2000:1, 2000:5, 2000:8, 2001:3, 2001:8, 2001:12, 2002:5, 2002:13, 2002:20, 2002:23, 2003:9, 2004:7, 2004:10, 2004:20, 2005:3, 2005:8, 2005:23, 2006:7, 2006:21, 2006:25,

2007:5, 2007:11, 2007:16, 2008:1, 2008:3, 2008:10, 2009:1, 2009:8, 2009:22, 2010:2, 2010:8, 2010:10, 2010:17, 2011:17, 2011:24, 2012:8, 2013:4, 2013:6, 2013:12, 2013:17, 2013:21, 2013:25, 2014:3, 2014:14, 2015:1, 2015:8, 2015:15, 2015:23, 2016:16, 2017:2, 2017:9
**THEREFORE** [3] - 1970:22, 1975:19, 2015:14
**THEY'VE** [3] - 1993:21, 2002:16, 2002:18
**THINKING** [2] - 2009:11, 2016:19
**THREE** [3] - 1982:18, 1998:2, 2011:19
**THROUGHOUT** [1] - 1983:10
**TIMELY** [1] - 2008:19
**TITLE** [2] - 1984:15, 1984:16
**TOMORROW** [8] - 2008:24, 2009:2, 2009:20, 2011:22, 2012:1, 2012:9, 2012:13, 2013:14
**TONIGHT** [1] - 2008:23
**TONS** [1] - 1977:25
**TOOK** [1] - 1968:13
**TORT** [1] - 1997:3
**TOTAL** [1] - 1971:22
**TOUCHES** [1] - 1978:4
**TOUGH** [1] - 2014:11
**TOXICOLOGIST** [3] - 2002:1, 2002:2, 2005:1
**TRACKING** [1] - 2016:13
**TRANSFER** [1] - 1982:10
**TRANSLATE** [2] - 1971:10, 1971:13
**TRANSPORT** [1] - 1981:13
**TRANSPORTATION** [1] - 2006:11
**TREATMENT** [1] - 2006:11
**TRESPASS** [1] -

1985:13
**TRIAL** [5] - 1994:14, 2001:2, 2002:10, 2008:3, 2014:17
**TRIED** [1] - 2015:22
**TRIGGER** [1] - 1987:12
**TRIGGERED** [1] - 1988:12
**TRIGGERING** [1] - 1987:11
**TRUE** [2] - 1969:2, 1992:22
**TRYING** [5] - 1968:10, 1985:7, 1987:6, 1988:24, 2008:15
**TURN** [1] - 1971:23
**TWO** [8] - 1981:10, 1998:2, 2005:9, 2007:6, 2007:8, 2009:12, 2014:19, 2015:20
**TYPE** [2] - 1980:8, 1985:5
**TYPES** [1] - 1969:25

## U

**U.S.C** [3] - 1990:20, 1990:21, 1991:7
**UNAVAILABLE** [1] - 1994:13
**UNDER** [17] - 1982:17, 1983:13, 1987:11, 1988:18, 1990:19, 1992:3, 1992:4, 1992:7, 1993:4, 1998:7, 1999:20, 2003:5, 2003:16, 2003:22, 2005:11, 2007:1, 2008:11
**UNDERGROUND** [4] - 1991:12, 1993:3, 1995:24, 1999:21
**UNDERNEATH** [1] - 1992:25
**UNDERSTOOD** [3] - 2008:13, 2009:6, 2010:8
**UNFORTUNATELY** [2] - 1986:20, 2009:3
**UNNECESSARY** [1] - 1981:23
**UP** [5] - 1970:12, 1976:22, 1978:1, 1978:7, 2015:25
**USES** [2] - 1977:6, 1989:10

## V

**V-201** [3] - 1970:2, 1971:17, 1971:21
**VAGUE** [2] - 1977:21, 2006:9
**VALENCIA** [1] - 1980:25
**VALUATION** [4] - 1974:13, 1975:17, 1976:8, 1978:11
**VALUE** [22] - 1974:6, 1974:10, 1974:12, 1974:16, 1974:18, 1974:20, 1974:22, 1975:19, 1976:7, 1976:11, 1976:17, 1976:18, 1976:21, 1976:22, 1976:23, 1977:2, 1979:17, 1983:16, 1995:14, 1998:24
**VALUED** [2] - 1976:19, 1976:20
**VARIOUS** [1] - 1986:16
**VERDICT** [8] - 1998:18, 2011:13, 2013:15, 2015:17, 2015:18, 2016:12, 2017:5, 2017:6
**VERSION** [3] - 2012:20, 2012:23
**VIA** [1] - 1982:7
**VIEW** [2] - 2001:18, 2014:20
**VIGOROUS** [1] - 2004:23
**VIOLATED** [7] - 1997:5, 1998:15, 1998:19, 2005:15, 2006:6, 2006:21, 2007:2
**VIOLATING** [1] - 1991:19
**VIOLATION** [13] - 1990:6, 1992:11, 1992:12, 1993:25, 1996:15, 1996:17, 1996:22, 2000:17, 2001:22, 2005:7, 2006:1, 2006:18, 2007:22
**VIOLATIONS** [7] - 1990:8, 1996:18, 2006:12, 2006:19, 2007:13, 2007:14, 2008:7
**VIRTUE** [1] - 1990:6
**VOCS** [8] - 1973:17,

1975:4, 1975:11, 1976:5, 1977:11, 1977:24, 1978:24, 1982:8

## W

**WAIVED** [3] - 2011:13, 2014:25, 2015:14
**WANTS** [1] - 1984:17
**WASTE** [5] - 1994:3, 1995:1, 1995:5, 2006:10, 2006:12
**WATER** [31] - 1975:3, 1975:12, 1980:17, 1980:24, 1980:25, 1981:4, 1981:17, 1981:22, 1982:12, 1983:2, 1983:3, 1983:5, 1984:11, 1985:18, 1985:20, 1986:6, 1987:13, 1987:16, 1987:17, 1988:2, 1988:6, 1989:7, 1989:11, 1991:11, 1993:2, 1993:11, 1995:2, 2000:16, 2003:17, 2003:24, 2004:19
**WATER** [6] - 1984:10, 1992:23, 1993:1, 1993:9, 2003:10
**WATER'S** [1] - 2006:13
**WATERS** [2] - 1995:24, 1999:22
**WEDNESDAY** [1] - 1968:1
**WELL-BY-WELL** [1] - 1981:2
**WELLS** [12] - 1969:5, 1969:11, 1971:4, 1971:13, 1971:19, 1975:14, 1980:19, 1980:21, 1980:24, 1981:2, 1984:12
**WHITTAKER** [22] - 1968:25, 1969:13, 1977:13, 1977:15, 1977:24, 1983:18, 1986:8, 1993:15, 1995:18, 1995:22, 1997:11, 1998:16, 2005:19, 2006:18, 2007:1, 2008:20, 2010:12, 2011:4, 2011:7, 2011:9, 2011:10
**WHITTAKER'S** [5] - 1974:15, 1975:6,

1982:1, 1993:13, 2009:16
**WHOLE** [1] - 2017:4
**WIN** [1] - 2000:1
**WISH** [3] - 1973:8, 1974:17, 1983:22
**WITHDRAW** [2] - 1973:5, 2007:21
**WITNESS** [1] - 2002:2
**WORD** [1] - 2000:14
**WORDS** [1] - 1997:4
**WORKS** [2] - 1971:21, 1975:2
**WORRIED** [1] - 2017:1
**WORTH** [1] - 2017:3
**WRITE** [1] - 2003:7
**WU'S** [1] - 1985:1

## Y

**YOURSELF** [1] - 1997:21

## Z

**ZERO** [5] - 1976:10, 1976:16, 1977:5, 1977:7, 1977:15

**UNITED STATES DISTRICT COURT**