UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SANTA CLARITA VALLEY WATER AGENCY,<br><br>    Plaintiff,<br><br>v.<br><br>WHITTAKER CORPORATION,<br><br>    Defendant. | Case No. 2:18-cv-6825-SB-RAO<br><br><br>ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION TO AMEND THE COURT'S FINDINGS OF FACT AND CONCLUSIONS OF LAW AND JUDGMENT [DKT. NO. 548] |

Plaintiff Santa Clarita Valley Water Agency moves to amend the Court's findings of fact and conclusions of law, Dkt. No 524 (FF/CL), and to amend the Court's judgment, Dkt. No. 529, pursuant to Federal Rules of Civil Procedure 52(b) and 59(e). Dkt. No. 548-1 (Motion). The Motion is granted in part and denied in part.

I.

Following a bench trial, a district court is required to set forth its factual findings and legal conclusions in sufficient detail to allow for meaningful appellate review. Fed. R. Civ. P. 52(a); see *Alpha Distrib. Co. of California v. Jack Daniel Distillery*, 454 F.2d 442, 453 (9th Cir. 1972) ("The findings should be explicit enough to give the appellate court a clear understanding of the basis of the trial court's decision, and to enable it to determine the ground on which the trial court reached its decision."). After a district court issues its findings and conclusions, a party may move to amend them. Fed. R. Civ. P. 52(b). A Rule 52(b) motion is "primarily designed to correct findings of fact which are central to the ultimate decision." *Davis v. Mathews*, 450 F. Supp. 308, 318 (E.D. Cal. 1978); see also 700

1

*Valencia St. LLC v. Farina Focaccia & Cucina Italiana, LLC*, No. 15-02286-JCS, 2017 WL 4680069, at *2 (N.D. Cal. Oct. 18, 2017) (noting that Rule 52(b) motions serve "to correct manifest errors of law or fact or to address newly discovered evidence").

II.

Plaintiff seeks to amend the factual findings, legal conclusions, and judgment in five areas: (1) Plaintiff's claim under the Resource Conservation and Recovery Act (RCRA), (2) Defendant Whittaker Corporation's liability under the Comprehensive Environmental Response, Compensation, and Liability Act (CERCLA), (3) Plaintiff's entitlement to declaratory relief, (4) the amount of pre-judgment interest due to Plaintiff, and (5) a typo in the judgment. The Court will address each in turn.

A.

Plaintiff argues that the Court "disregarded the appropriate flexible legal standard entitling Plaintiff to relief under RCRA and ignored the overwhelming evidence as to the imminent and substantial endangerment to Plaintiff's water supply posed by threat of existing, but uncharacterized, perchlorate and VOC contamination from the Whittaker Site." Motion at 1. In particular, Plaintiff asserts that the Court ignored: (1) the "undisputed" evidence of volatile organic compounds (VOCs) that remain in the soil, (2) the evidence of VOC plumes in and allegedly migrating with the off-site groundwater, and (3) that the maximum contaminant level goal (MCLG) for trichloroethylene (TCE) and perchloroethylene (PCE) is zero. Motion at 4. Plaintiff suggests these contaminants pose a threat to their customers' drinking water sufficient for RCRA liability.

The Court ignored neither the standard for relief under RCRA nor the relevant evidence. The Court reviewed and described the test in the Ninth Circuit for "imminent and substantial endangerment," the third element for liability under RCRA (and the only element in dispute). *See* FF/CL ¶ 99 (citing and discussing *Price v. U.S. Navy*, 39 F.3d 1011 (9th Cir. 1994), and noting that the Ninth Circuit has "liberally" construed this element). The Court also considered the relevant evidence, including the "large volume of VOCs and perchlorate near and beneath the Site." *Id.* ¶ 101; *see also id.* ¶¶ 4–5, 53 n.5 (discussing the migration pathway). But ultimately the Court was "not persuaded that the risk of harm is imminent and substantial." *Id.* ¶ 100. The Court explained its reasoning, including the "substantial remediation and containment efforts for years," the extensive

involvement and actions of the regulators for decades, and Plaintiff's constant monitoring of and consistent representations about the quality of the water delivered to the public. *Id.* ¶¶ 100–04. Based on all the evidence, the Court found that "[t]he ongoing work to address groundwater contamination . . . [has] resulted—by all accounts—in the delivery of safe water to the community for years." *Id.* ¶ 105. Consistent with that finding, Plaintiff's senior engineer represented to the State Water Resources Control Board, Division of Drinking Water (DDW), that there was "no discernible trends . . . that would suggest a water quality change or any new imminent threat to Saugus 1 and 2 wells." *Id.* ¶ 104.

In short, Plaintiff's motion amounts to a request for reconsideration based on arguments previously raised and considered.[1] Thus, the request to amend the findings related to its RCRA claim is denied.

B.

The Court found Plaintiff was entitled to recover costs for investigation, permitting and design (IPD), but not blend and replacement water costs. FF/CL ¶ 54. Blend and replacement water costs were not "recoverable under CERCLA because Plaintiff is not entitled to a double recovery." *Id.* ¶ 56 (citing 42 U.S.C. § 9614(b) (prohibiting double recovery)). The jury's award included replacement and blend water costs, *id.* ¶¶ 57–65, and Plaintiff "does not dispute that the jury awarded it its incurred replacement and blend water costs, and does not seek duplication." Motion at 7. But Plaintiff seeks amendment of the findings and conclusions to "include findings that Whittaker is *liable* for Plaintiff's blend and replacement water costs under CERCLA, except to the extent those costs were awarded to Plaintiff by the jury and the jury's verdict is affirmed on appeal." Motion at 7.

Plaintiff claims that it is entitled to a liability ruling, notwithstanding the double-recovery bar, based on a state court holding that a party may pursue overlapping damages predicated on consistent legal theories, so long as the party is ultimately required to make an election as may be necessary to avoid any double

---

[1] While the Court did not specifically refer to the MCLG for TCE and PCE, it extensively discussed and considered the various regulatory measurements for evaluating the safety of the drinking water. *See, e.g.,* FF/CL ¶¶ 15–24 & 103–04. The omitted reference does not alter the conclusions reached in this case about whether these VOCs present an imminent and substantial endangerment.

recovery. *Bowser v. Ford Motor Co.*, 78 Cal. App. 5th 587, 623-23 (2022). The holding in *Bowser*, a state lemon-law case involving state claims tried by a jury, is inapposite. That case did not address the question whether a plaintiff that obtains a jury verdict on state claims is entitled under federal law to a determination of liability on a federal claim subsequently decided by a different fact finder. Under federal law, Plaintiff is not entitled to any compensation in light of the jury's verdict. 42 U.S.C. § 9614(b). Section 9614(b) provides that "[a]ny person who receives compensation for . . . damages or claims pursuant to any other Federal or State law shall be precluded from receiving compensation for the same . . . damages or claims as provided in this chapter." *Id*.

In its findings and conclusions, the Court principally relied on § 9614(b) in determining that Plaintiff was not entitled to recover its replacement and blend water costs in light of the jury's verdict allowing recovery on the state claims. FF/CL ¶ 56 ("As for the replacement and blend water costs, the Court finds that they are not recoverable under CERCLA because Plaintiff is not entitled to a double recovery. 42 U.S.C. § 9614(b) (prohibiting double recovery in CERCLA cases)"). Yet Plaintiff does not address this federal law or its implication on the issue raised in its motion. Nor is the Court otherwise persuaded that its analysis should be revisited. *See* FF/CL ¶¶ 66–77. Accordingly, the motion to amend the findings and conclusions to include a determination of liability is denied.

C.

The Court awarded $675,000 in IPD response costs under CERCLA and allocated liability for those costs between Defendant (90%) and Plaintiff (10%). Plaintiff argues that because Defendant is liable for these costs, the entry of declaratory relief as to future response costs is mandatory. Plaintiff cites *Voggenthaler v. Maryland Square LLC*, which held that "a plaintiff who establishes liability for past response costs under CERCLA is entitled to a declaratory judgment on liability for future costs." 724 F.3d 1050, 1065 (9th Cir. 2013) (citing *City of Colton v. Am. Promotional Events, Inc.-W.,* 614 F.3d 998, 1007 (9th Cir. 2010)). This holding has a statutory basis. 42 U.S.C. § 9613(g)(2) (stating that "the court shall enter a declaratory judgment on liability for response costs or damages that will be binding on any subsequent action or actions to recover further response costs or damages").

*Voggenthaler* and *City of Colton* are distinguishable for two reasons. First, Plaintiff already obtained a jury verdict that included past and future costs necessary to make it whole. For future damages, the jury awarded Plaintiff $64.6

million for the three treatment systems and $3.7 million for the projected costs for water replacement and blending. FF/CL ¶¶ 61, 64. There is therefore no need to issue a declaration for "continuing liability for the cost of finishing the job." *In re Dant & Russell, Inc.*, 951 F.2d 246, 249–50 (9th Cir. 1991). Such a declaration, moreover, would invite rather than resolve future disputes. Indeed, Plaintiff asks for a declaration of liability for future IPD, blend water, and replacement water costs without explaining how such costs would not be duplicative of the jury award. Instead, Plaintiff asserts that "[t]he nature and amount of future costs (if any) will be subject to proof at future proceedings and will only include costs to the extent not otherwise covered by the jury's verdict." Dkt. No. 585 at 8 (reply brief). This is an invitation not only for further litigation but also for relitigation of previously adjudicated issues. Plaintiff had the chance to make its case about future costs, and it did so successfully. It has not shown that it is entitled to more in an amount, and for expenditures, yet to be determined. Second, Plaintiff is not entitled to a declaration to recover future costs for any expenditures other than those required to complete a job already found to comply with the national contingency plan (NCP). *City of Colton*, 614 F.3d at 1008. This precludes declaratory relief for future water replacement costs because the Court found that Plaintiff failed to comply with the NCP when incurring those costs.[2]

Thus, the Court declines to enter declaratory judgment in favor of Plaintiff.

D.

Plaintiff moves to amend the findings and conclusions on prejudgment interest on two separate grounds.

First, Plaintiff contends that the Court should amend its findings and conclusions to include prejudgment interest on V-205 replacement water costs. Motion at 17–19. The Court already considered this issue, including the primary case on which Plaintiff relies, and determined that Plaintiff "failed to provide evidence of the specific economic consequences of the resale of the purchased water and thus has not shown that prejudgment interest is needed to make it whole." *See* FF/CL ¶¶ 115–16, 119. The Court will not revisit its findings.

---

[2] While the Court did not reach the same conclusion for the IPD and blending costs, Plaintiff is not entitled to future IPD and blending costs because the jury rendered an award designed to make Plaintiff whole.

      Second, Plaintiff asserts that prejudgment interest should be awarded on the jury's full damages award from the date of the verdict, December 3, 2021, to the date of the entry of judgment, June 28, 2022, under California Civil Code § 3287(a) ("A person who is entitled to recover damages certain . . . , and the right to recover which is vested in the person upon a particular day, is entitled to recover interest thereon from that day . . . ."). Defendants respond that this is a new argument, Dkt. No. 580 at 18, but Plaintiff did raise this issue in the parties' joint submission on the proposed form of judgment, Dkt. No. 525 at 4 (including a space for "Prejudgment Interest Between Verdict and Entry of Judgment"). *See also* Dkt. No. 528 (noting that it intended to brief "[o]ther issues regarding prejudgment interest" in post-judgment briefing given the Court's limited inquiry). On the merits, Plaintiff appears to be correct—and Defendant so conceded at oral argument (objecting only on procedural grounds). Plaintiff's request for prejudgment interest from the date of the verdict is therefore granted.

E.

      The judgment, Dkt. No. 529, contains a typographical error, awarding post-judgment interest "at a daily rate of $5,115.006.119." *Id.* at 3. In light of the error and the additional prejudgment interest awarded between the date of the verdict and the date of the judgment, the Court intends to amend the judgment. The parties are hereby ORDERED to meet and confer and then file by January 6, 2023 a joint statement that sets forth the calculations of the total prejudgment interest and the daily rate for post-judgment interest. The calculations should be based on the Court's rulings in this order; and if the parties are unable to agree, they should set forth in a joint report their respective calculations with each party providing a brief explanation in support of its position.

IT IS SO ORDERED.

Date: December 28, 2022

                                                  Stanley Blumenfeld, Jr.
                                                  United States District Judge