UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SANTA CLARITA VALLEY WATER AGENCY, <br><br> Plaintiff, <br><br> v. <br><br> WHITTAKER CORPORATION, <br><br> Defendant. | Case No. 2:18-cv-6825-SB-RAO <br><br><br> ORDER DENYING IN PART AND GRANTING IN PART PLAINTIFF'S MOTION FOR A NEW TRIAL [DKT. NO. 549] |

     A jury entered a verdict in favor of Plaintiff Santa Clarita Valley Water Agency on four theories of liability—negligence, trespass, private nuisance, and public nuisance—and awarded a single amount of damages separately supporting each theory. Following the verdict, the Court found that Defendant Whittaker Corporation was entitled to judgment as a matter of law on the trespass and private nuisance claims because Plaintiff failed to present sufficient evidence of a property interest necessary to support those claims. Dkt. No. 523 (hereinafter JMOL Order). Plaintiff contends that this finding is erroneous and moves the Court to set it aside by granting a new trial under Rule 59(a) and entering judgment on these claims as a matter of law under Rule 50(d). Fed. R. Civ. P. 59(a) & 50(d).[1] The motion is denied in part (as to the trespass claim) and granted in part (as to the private nuisance claim).

---

[1] In its motion for a new trial, Plaintiff also sought a new trial on its Resource Conservation and Recovery Act (RCRA), declaratory relief, and prejudgment interest claims if the Court were to deny its separate motion to amend the findings reached in and judgment rendered pursuant to the separate bench trial in this case. Dkt. No. 549. Plaintiff has withdrawn that request. Dkt. No. 555.

1

I.

A trespass is "an unlawful interference with possession of property." *Orange Cnty. Water Dist. v. Sabic Innovative Plastics US, LLC*, 14 Cal. App. 5th 343, 413 (2017) (cleaned up). To prove trespass, a plaintiff must therefore demonstrate that it has a possessory right in the invaded property. *Id*. Plaintiff contends that it presented sufficient evidence of a property interest to support a trespass claim.

In challenging the JMOL Order, Plaintiff first contends that it adduced sufficient evidence from which a jury could conclude that it owned or controlled the land. But as the Court noted in that order:

> The evidence was notably sparse and vague on a question readily subject to unequivocal proof if true. Plaintiff's chief operating officer testified about Plaintiff's operations, stating: "We have a number of groundwater wells, tanks, booster stations, [and] all sorts of pipelines and things that allow us to move that water around the valley to our customers." Trial Tr. 289:4–6 (Vol. 3). And Plaintiff's director of operations, when presented with a photograph of a well, stated: "This is V-205. It was previously owned by Valencia Water Company. Now it's owned and operated and the land associated with it have the exclusive operational rights to it to pump groundwater, so—as with all of our wells." Trial Tr. 1416:19–23 (Vol. 12).

Dkt. No. 523 at 6.

Plaintiff continues to rely on this testimony in support of its position and suggests that the quoted evidence is sufficient to prove ownership of the land. Dkt. No. 549 at 4. Judgment as a matter of law, however, is appropriate where "the evidence, construed in the light most favorable to the nonmoving party, permits only one reasonable conclusion, and that conclusion is contrary to that of the jury." *Alaska Rent-A-Car, Inc. v. Avis Budget Grp., Inc.*, 738 F.3d 960, 970 (9th Cir. 2013) (quoting *White v. Ford Motor Co.*, 312 F.3d 998, 1010 (9th Cir. 2002), *opinion amended on denial of reh'g*, 335 F.3d 833 (9th Cir. 2003)). For the reasons previously discussed, the Court remains unpersuaded that a reasonable jury could have found from this evidence that Plaintiff owned the land. Dkt. No. 523 at 6.

In its motion, Plaintiff further argues that even if there were insufficient evidence that it owned the land, a reasonable jury could find that it "controls all of the land associated with its historical pumping and extraction of [the underground] water." Dkt. No. 549 at 4. It is true that property ownership is not necessarily required to bring a trespass claim; other property interests, including lawful possession (as manifested by a party's control of the property), may be enough. *Veiseh v. Stapp*, 35 Cal. App. 5th 1099, 1104–05 (2019). Determining whether a party has the requisite property rights to support a trespass claim depends on the specific nature of that claim. *See id*. at 1105 ("[W]e conclude title to the land is significant to the outcome of a trespass action only when the alleged trespasser claims title himself or claims rights under the true owner."); *Sabic*, 14 Cal. App. 5th at 413 ("Contamination of subsurface soil has been held to interfere with a landowner's possessory interest in its land."); *Cassinos v. Union Oil Co.*, 14 Cal. App. 4th 1770, 1778 (1993) (owner of mineral estate could recover for trespass resulting from injury to the subsurface despite consent by the owner of the surface estate to the invasion because the surface-estate owner did not have the relevant interest in the land).

Here, Plaintiff is asserting a subsurface trespass, but it did not submit evidence to adequately demonstrate its rights and relationship to the land for purposes of supporting that particular claim. Plaintiff's own description of the trial record reflects the sparse and vague nature of the evidence: "Plaintiff *either* owns *or* controls all of the land associated" with its operations. Dkt. No. 549 at 4 (emphasis added).[2] Nor has Plaintiff cited any authority that its ownership of the wells and purported control over the land give rise to the type of possessory interest that would allow it to assert a trespass claim involving a subsurface intrusion. Instead, Plaintiff assumes that *any type of property interest* is sufficient to support *any type of trespass claim*. California law does not appear to be that broad—or, at least, Plaintiff has not shown that it is. *See, e.g.*, *Sabic*, 14 Cal. App. 5th at 413 (noting that a "*landowner's* possessory interest" may support a subsurface trespass) (emphasis added). On this record, the Court is not inclined to reverse its prior determination on this point.

---

[2] At oral argument, the Court inquired about the evidence of Plaintiff's interest in the property. Plaintiff's counsel could point to no evidence of land ownership; and he stated that his client owned "some of the wells," and he "assume[d]" that his client leased a treatment system on the property.

Plaintiff next contends that its appropriative rights provide an independently adequate basis upon which to sustain the jury's verdict on the trespass claim. It has long been established in California that a private person cannot own or possess water in its natural state. See *Eddy v. Simpson*, 3 Cal. 249, 252 (1853) ("The right is not in the corpus of the water . . . ."). It is therefore said that "the right of property in water is usufructuary, and consists not so much of the fluid itself as the advantage of its use." *Id*.; *Sabic*, 14 Cal. App. 5th at 415 ("Water in its natural state, before it is appropriated or otherwise captured, cannot be owned or possessed by any private person."). That is, the right to water, if any, is the right to use it; and once acquired, the right is considered an interest in real property. *Sabic*, 14 Cal. App. 5th at 415. One of the two ways to obtain the right to use water is by appropriation. *United States v. State Water Res. Control Bd.*, 182 Cal. App. 3d 82, 101 (1986) (noting that California law recognizes "riparian rights and appropriation rights"); *see* Cal. Water Code § 102 ("All water within the State is the property of the people of the State, but the right to the use of water may be acquired by appropriation in the manner provided by law."). The parties in this case dispute whether Plaintiff appropriates the underground water at the time of capture or prior thereto. Because the contamination of the groundwater occurred prior to its extraction by Plaintiff, the resolution of this dispute is dispositive of the trespass claim to the extent that it is predicated on Plaintiff's assertion of appropriative rights.

The question raised by the dispute requires a determination of when Plaintiff's appropriative rights vested for purposes of creating a possessory interest in the water. "To constitute a valid appropriation of water, three elements must always exist: (1) An intent to apply it to some existing or contemplated beneficial use; (2) an actual diversion from the natural channel by some mode sufficient for the purpose; and (3) an application of the water within a reasonable time to some beneficial use." *Simons v. Inyo Cerro Gordo Mining & Power Co.*, 48 Cal. App. 524, 537 (1920); *Turlock Irrigation Dist. v. Zanker*, 140 Cal. App. 4th 1047, 1054 (2006) (same). Significantly, "the term 'divert' or 'diversion' as used in California water law ha[s] always applied to the *taking* of water from a stream or river, and not the mere blocking or altering of the course of the stream or river itself." *Siskiyou Cnty. Farm Bureau v. Dep't of Fish & Wildlife*, 237 Cal. App. 4th 411, 436 (2015) (emphasis in original). The taking requirement is long-standing:

> The entire history of the origin and development of the doctrine of appropriation of water in California . . . demonstrates that appropriation of water in the legal sense involves possession of the water, evidenced by some form of diversion or physical control over

> it. The courts from the very birth of the legal concept of appropriation of water have uniformly evidenced the basic common element of possession. Sometimes it is referred to as a "taking" of water, "diversion," or a "physical control."

*California Trout, Inc. v. State Water Res. Control Bd.*, 90 Cal. App. 3d 816, 819 (1979); *see also Kelly v. Natoma Water Co.*, 6 Cal. 105, 108 (1856) ("Possession, or actual appropriation, must be the test of priority in all claims to the use of water, whenever such claims are not dependent upon the ownership of the land through which the water flows. [¶] Such appropriation cannot be constructive . . . . [¶] [I]t is not the intention to possess, but the actual possession, which gives the right."); *Nevada Cnty. & Sacramento Canal Co. v. Kidd,* 37 Cal. 282, 310 (1869) "The right to the water . . . is only acquired by an actual appropriation and use of the water."); *City of Pasadena v. City of Alhambra*, 33 Cal. 2d 908, 925 (1949) ("The right of an appropriator depends upon an actual taking of water.").

Plaintiff is therefore incorrect when it asserts that its "appropriative water right in the groundwater became a possessory interest . . . [and] was perfected decades ago." Dkt. No. 583 at 1 (reply brief). In advancing this position, Plaintiff seeks to convert its conditional property right to use the water into a vested possessory right in the water. The California Supreme Court has explained the difference between conditional and vested rights more than a century ago, stating:

> [A] visible act and avowed intent [of building a dam and ditch for the diversion and use of water] gave [the builder] a conditional right to the future use of the water, prior to its actual use, the condition being that he should thereafter diligently continue the work to completion and then divert the water and apply it to a useful purpose . . . . Upon the performance of these conditions, his title to such use would become complete and perfect. In the mean time, however, he had an existing conditional right, manifested by actual visible possession of the works. It would be clearly a property right, and it being incidental and appurtenant to land, it was real property.

*Inyo Consol. Water Co. v. Jess*, 161 Cal. 516, 520 (1911). Contrary to Plaintiff's assertion, the "[conditional] right to the use of running water does not vest in possession at common law, until there has been an actual diversion *and* beneficial use of the water." *Id*. at 519 (emphasis added). While Plaintiff has completed the construction of its system to extract water decades ago, it must still "divert the water and apply it to a useful purpose" before its appropriative rights mature into

5

possessory rights. *See Sabic*, 14 Cal. App. 5th at 416 ("[E]ven accepting that the District has appropriative water rights in groundwater in the [] basin, the District does not have a *possessory* property right sufficient to support a claim for trespass . . . ." (emphasis added)).

None of the cases cited by Plaintiff states otherwise. *Starrh & Starrh Cotton Growers v. Aera Energy LLC*, 153 Cal. App. 4th 583, 588 (2007), and *Walker v. Emerson*, 89 Cal. 456, 458 (1891), did not involve appropriative rights because the plaintiff in each case was a landowner. The right of a landowner to the water beneath his property "is based on ownership of the land and is appurtenant thereto." *City of Pasadena*, 33 Cal. 2d at 925. The case of *City of Pomona v. SQM N. Am. Corp.*, 750 F.3d 1036, 1050 (9th Cir. 2014), also did not involve appropriative rights but instead addressed the unrelated question of whether the damages sought under a strict liability theory were barred by the economic loss rule. The other cases upon which Plaintiff relies state general principles without analyzing the specific issue presented here. *See, e.g.*, *Casitas Mun. Water Dist. v. United States*, 102 Fed. Cl. 443, 458 (2011), *aff'd,* 708 F.3d 1340 (Fed. Cir. 2013) (noting the "axiomatic" principle that "once rights to use water are acquired, they become vested property rights") (cleaned up); *Fullerton v. State Water Res. Control Bd.*, 90 Cal. App. 3d 590, 598 (1979) (noting the general principle that "the right to appropriative water [is] a possessory property right").[3]

Accordingly, the trespass claim fails as a matter of law on the trial record.

II.

A private nuisance is an interference "with the comfortable enjoyment of . . . property." Cal. Civ. Code § 3479. Like a trespass claim, a cause of action for private nuisance requires a plaintiff to "show harm to a property interest." *Sabic*, 14 Cal. App. 5th at 401. Unlike a trespass claim, a cause of action for private nuisance does not require a plaintiff to prove "a *possessory* property interest." *Id*. at 416 (emphasis in original). Relying on *Sabic*, Plaintiff contends that its

---

[3] Plaintiff also relies on an inapplicable tax case in which the court upheld the taxation of the plaintiffs' "exclusive and profitable use of [a portion of a river] for commercial rafting." *Scott-Free River Expeditions, Inc. v. Cnty. of El Dorado*, 203 Cal. App. 3d 896, 900 (1988). As the court stated, the "[p]laintiffs are not being taxed on the flow of the water in the river, but rather on their *use* of that water for commercial purposes." *Id*. (emphasis in original).

"appropriative rights in the groundwater alone constitute a sufficient property interest to support Plaintiff's private nuisance claim." Dkt. No. 549 at 13.

In *Sabic*, the court noted that the plaintiff did "not itself extract or 'actually divert' groundwater" and that, "[a]bsent evidence of appropriation, [it] generally cannot claim appropriative rights." 14 Cal. App. 5th at 410 (cleaned up). The court went on to note, however, that there is "an exception to this general rule" that applies when a party engages in "recharge activities" by depositing water from other sources into a groundwater basin. *Id*. This exception, codified in § 7075 of the California Water Code, authorizes a party that has contributed water to a basin to "retain an equivalent right to reclaim or reappropriate water from the basin." *Sabic*, 14 Cal. App. 5th at 411. To obtain appropriative rights in this context, the party seeking to reclaim the water must have an intent to recapture it. *Id*. The court found that the plaintiff was not provided a fair opportunity to develop the record to prove its intent. *Id*. at 412. While the plaintiff itself did not extract or intend to extract water from the groundwater basin, the plaintiff claimed that it could produce evidence that it had entered into transactions to have water producers extract the recharged water (or its equivalent). *Id*. The court held that the plaintiff's proffered evidence was not sufficient to support a trespass claim because "[w]ater in its natural state, before it is appropriated or otherwise captured, cannot be owned or possessed by any private person." *Id*. at 415. But the proffered evidence, if proven, was sufficient to support a private nuisance claim because a nuisance claim does not require proof of "a *possessory* property interest." *Id*. at 416 (emphasis in original).

Defendant contends that *Sabic*'s conclusion about the private nuisance claim is distinguishable because the plaintiff in that case "was using the aquifer as a reservoir to store previously extracted water for future use" and thus retained an interest in the reclaimed water. Dkt. No. 559 at 12. The Court is not persuaded that the holding in *Sabic* is that limited. The decision in *Sabic* was grounded in the basic principle that "any interest sufficient to be dignified as a property right will support an action based on a private nuisance." 14 Cal. App. 5th at 416 (cleaned up). The fact that the court in *Sabic* explored the application of that principle to a "specific" type of appropriative rights does not mean that the principle is confined thereto. Dkt. No. 559 at 12. As in *Sabic*, the question here is whether Plaintiff had "any interest sufficient to be dignified as a property right." 14 Cal. App. 5th at 416. As previously discussed, Plaintiff has acquired a "conditional right" recognized under California law as "a property right" that affords priority to use of the water and a potential remedy for violating that right. *Jess*, 161 Cal. at 519–20 (describing an unexercised appropriative right as "an existing conditional right"

that is "clearly a property right"). Defendant has not shown that this recognized property right is insufficient to support a nuisance claim under the analysis in *Sabic*.

The Court did not grant judgment as a matter of law on the private nuisance claim based on a different reading of *Sabic*. Rather, the Court relied on the elements of the nuisance claim as agreed upon by the parties in their jointly submitted jury instruction—specifically, the fact that "the fourth element of the private nuisance claim required Plaintiff to prove that the contaminated groundwater 'substantially interfered with [Plaintiff's] use or enjoyment of its land.'"[4] Dkt. No. 523 at 7 n.4 (quoting the instructions). In its motion, Plaintiff questions the propriety of relying on the jury instruction, arguing that the law in the Ninth Circuit requires a determination about whether the evidence is sufficient to support a verdict based on a correct statement of the applicable law, irrespective of the instruction. Dkt. No. 549 at 9 (citing "*Bridge Aina Le'a, LLC v. Hawaii Land Use Comm'n*, 950 F.3d 610, 624 (9th Cir. 2020); *Air-Sea Forwarders, Inc. v. Air Asia Co., Ltd.*, 880 F.2d 176, 183 & n.10 (9th Cir. 1989) (distinguishing contrary Calif. approach)"). Defendant in its opposition does not disagree with this seemingly correct procedural point; instead, it argues that California law does indeed require a plaintiff to prove "interference with the use or enjoyment of its land." Dkt. No. 559 at 13–14. Defendant does not attempt to square its argument, however, with the law as stated in *Sabic*—which held that a private nuisance claim will lie for an interference with the enjoyment of any interest in a property right, even if that right has no "connection to land." 14 Cal. App. 5th at 416 ("Nor is a connection to land a generally necessary element."). Moreover, Plaintiff's conditional right to property in this case is considered a "real property" right under California law. *Jess*, 161 Cal. at 519–20.

In short, there was sufficient evidence to prove that Defendant interfered with Plaintiff's enjoyment of its conditional right to the use of real property. Thus, the jury verdict in favor of Plaintiff on the private nuisance claim should not have been disturbed.

---

[4] In its JMOL Order, the Court incorrectly stated that the parties agreed upon Instruction No. 25 ("Plaintiff's Property Interest"). Dkt. No. 523 at 7. Plaintiff disputed that instruction. Dkt. No. 412 at 93–96. Instead, the agreement extended to the elements of the trespass and nuisance claims. *Id.* at 52–56.

III.

The motion is DENIED in part and GRANTED in part. The order granting judgment as a matter of law in favor of Defendant on the trespass claim shall stand. The order granting judgment as a matter of law in favor of Defendant on the private nuisance claim shall be set aside. The judgment will be modified accordingly.

IT IS SO ORDERED.

Date: December 28, 2022

Stanley Blumenfeld, Jr.
United States District Judge