UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SANTA CLARITA VALLEY WATER AGENCY,<br><br>           Plaintiff,<br><br>v.<br><br>WHITTAKER CORPORATION,<br><br>           Defendant. | Case No. 2:18-cv-6825-SB-RAO<br><br>ORDER DENYING DEFENDANT WHITTAKER'S RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW OR MOTION FOR A NEW TRIAL [DKT. NO. 550] |

During the jury trial in this case, Defendant Whittaker Corporation filed a motion for judgment as a matter of law pursuant to Federal Rule of Civil Procedure 50(a), Dkt. No. 437 (JMOL). The Court ruled on that motion, granting it in part and denying it in part. Dkt. No. 523 (JMOL Order). Defendant now renews its motion for judgment as a matter of law, pursuant to Federal Rule of Civil Procedure 50(b). Dkt. No. 550 (RJMOL). In the alternative, Defendant moves for a new trial under Federal Rule of Civil Procedure 59.

I.

Under Rule 50(a), a party may move for judgment as a matter of law before the case is submitted to the jury on the grounds that the evidence is insufficient to support a verdict against it. Fed. R. Civ. P. 50(a); see *Costa v. Desert Palace, Inc.*, 299 F.3d 838, 859 (9th Cir. 2002), *aff'd*, 539 U.S. 90 (2003). In ruling on the motion, a court "does not weigh the evidence or evaluate the credibility of the witnesses, but decides as a matter of law whether there is a lack of evidence to prove any necessary elements of plaintiff's case." *Hawley v. Alaska S. S. Co.*, 236 F.2d 307, 309 (9th Cir. 1956). If the court denies the motion, the moving party may renew its sufficiency challenge after the jury verdict and entry of judgment.

1

Fed. R. Civ. P. 50(b). "A party cannot raise arguments in its post-trial motion for judgment as a matter of law under Rule 50(b) that it did not raise in its pre-verdict Rule 50(a) motion.'" *Freund v. Nycomed Amersham*, 347 F.3d 752, 761 (9th Cir. 2003). The Court concludes that Defendant is not entitled to a judgment in its favor based on any of the arguments discussed below.

A.

Defendant argues that the Carpenter-Presley-Tanner Hazardous Substance Account Act (HSAA) precludes restoration costs for future remediation that is not approved by the California Department of Toxic Substances Control (DTSC) at sites under its jurisdiction. RJMOL at 4. Because Defendant did not raise this issue in its Rule 50(a) motion, it cannot do so in its "renew[ed]" motion. *Freund*, 347 F.3d at 761.

In an effort to avoid this procedural bar, Defendant broadly asserts that "a Rule 50(b) motion is not limited to the arguments made in the Rule 50(a) motion brought at the close of the evidence." Dkt. No. 584 (Reply) at 4. Defendant relies on two cases for this assertion. *Id.* (citing *McClaran v. Plastic Indus., Inc.*, 97 F.3d 347, 360 (9th Cir. 1996) and *CH2O, Inc. v. Meras Eng'g, Inc.*, 2017 WL 11631638, at *5 (C.D. Cal. July 13, 2017)). In *McClaran*, the Ninth Circuit found that a party preserved its right to move for judgment as a matter of law under Rule 50(b) by previously objecting to a jury instruction on a trademark claim on the ground that there was insufficient evidence to support it. 97 F.3d at 360. In *CH2O*, the district court made a similar finding because the party had moved in limine to exclude all evidence of patent infringement and "then again in argument following the introduction of the evidence." 2017 WL 11631638, at *5. Thus, in both of the cited cases, the party moving for Rule 50(b) relief had previously made the insufficiency argument at the close of the evidence.

Not so here. Defendant instead relies on an argument that it made on summary judgment. Reply at 4. The Court ruled that Defendant had not shown on summary judgment that the HSAA precludes Plaintiff's request for future remediation costs. Dkt. No. 272 at 26. Defendant asserts that the Court based its ruling on Plaintiff's "conce[ssion] that all remediation activities would still be subject to DTSC approval." RJMOL at 5 (quoting Dkt. No. 272 at 25). In its motion, Defendant contends that Plaintiff subsequently "reversed course, abandoned reliance on requirements imposed by [the Division of Drinking Water (DDW)] with DTSC approval, and sought the costs of constructing wellhead

2

treatment facilities on a restoration costs theory, even though . . . DDW has not required such facilities." RJMOL at 5 (internal citations omitted).

Defendant cannot rely on *the summary judgment record* in claiming that it preserved its challenge to the sufficiency of evidence in *the trial record*. *See Janes v. Wal-Mart Stores Inc.*, 279 F.3d 883, 887 (9th Cir. 2002) (rejecting a party's argument that "its motion for summary judgment and its trial brief satisfy the requirement that it move for JMOL before the close of evidence"). The two records, of course, are not the same and serve a different purpose. Moreover, because the summary judgment record was not well developed on the question whether Plaintiff could recover future remediation costs, the Court stated that it would "not reach a definite conclusion on this question until Defendant has the chance to more fully respond at trial." Dkt. No. 272 at 25–26. If Defendant believed that it was entitled to judgment as a matter of law based on the trial record, it was incumbent upon it to raise it then. But Defendant did not argue that the evidence was insufficient to show that DTSC would approve the treatment systems to remove contaminants from the well water. Thus, Defendant has not preserved the issue.[1]

B.

Defendant contends that Plaintiff should not be permitted to recover restoration damages because it did not identify its theory of recovery for those damages in its Rule 26 disclosures. *See* Fed. R. Civ. P. 26(a)(1)(A)(iii) (requiring "a computation of each category of damages claimed by the disclosing party").

Plaintiff disclosed that it was seeking the costs of treating the contaminated wells early in the litigation and later produced an expert report that set forth the treatment costs. By this disclosure, Defendant was aware of the damages sought and the supporting evidence—and produced its own expert in opposition. Nevertheless, Defendant argues that the Court should have precluded Plaintiff from introducing evidence of the water-treatment systems—effectively dismissing a substantial part of the state-law claims for lack of damages evidence—because Plaintiff failed to disclose under Rule 26 the specific *legal theory* that would

---

[1] Because the issue was not preserved, the Court need not consider the sufficiency of the evidence to support Defendant's argument, including whether DTSC approval was required and whether Plaintiff would seek and obtain any necessary approval.

3

support its requested remedy.  The Court previously rejected this argument.  *See* Dkt. Nos. 367 at 3 ("While it is true that Plaintiff labeled these damages 'restoration damages' for the first time at the continued [pretrial conference], Defendant has been well aware that Plaintiff seeks to recover damages for the cost of a groundwater treatment program.  That Plaintiff has been slow to properly articulate the legal relevance of its long-held factual position has not resulted in any demonstrated prejudice."); 408 at 5 ("The Court already considered and rejected this argument in its JMIL Order.").  The Court is still not convinced.

      Significantly, Defendant does not genuinely contend that Plaintiff failed to disclose "a computation of each category of damages claimed."  Fed. R. Civ. P. 26(a)(1)(A)(iii).  Rather, Defendant's complaint is that Plaintiff "did not mention restoration costs"—i.e., a legal theory for recovery of those costs.  RJMOL at 7.  But Plaintiff has not shown that it was entitled to what amounted to terminating sanctions for Plaintiff's failure to disclose the precise legal theory supporting its damages claim.  The language of the rule itself would not seem to support Defendant's position.  *See Athena Cosms., Inc. v. AMN Distribution Inc.*, No. 20-05526-SVW, 2022 WL 4596549, at *6 (C.D. Cal. Aug. 16, 2022) ("While Rule 26 requires the identification of certain evidence and its disclosure to the opposing party, it does not require a party to disclose its legal theory to the opposition . . . ."); *Estakhrian v. Obenstine*, 233 F. Supp. 3d 824, 837 n.11 (C.D. Cal. 2017) (same).  Nor does the authority cited by Defendant address evidentiary exclusion for failure to disclose the legal theory of damages.  RJMOL at 7.  In the cited cases, the plaintiff had "failed to disclose damage computations."  *See, e.g.*, *Hoffman v. Constr. Protective Servs., Inc.*, 541 F.3d 1175, 1179 (9th Cir. 2008); *Vinotemp Int'l Corp. v. Wine Master Cellars, LLLP*, No. 11-1543-ABC, 2013 WL 5366405, at *2 (C.D. Cal. Feb. 5, 2013) (noting that the plaintiff neglected to disclose "any . . . category or computation of damages" and instead stated that it "is unable to calculate any potential damages claim").

      Nor has Defendant demonstrated any cognizable prejudice that would warrant exclusion of Plaintiff's damages evidence.  *See* Fed. R. Civ. P. 37(c)(1) (exclusion not required when "the failure was substantially justified or harmless"). Defendant conclusorily asserts that had it known about Plaintiff's legal theory earlier, "it would have developed evidence regarding the original condition of SCVWA's property, the value of the property, and any diminution in that value." RJMOL at 18.  But the relevant facts were known by Defendant and the relevant law was equally available to Defendant.  Moreover, the evidence Defendant now claims it would have developed is evidence in support of a defense theory on which it bore the burden of proof.  *See* discussion *infra*.  Defendant has not shown

that Plaintiff is responsible for failing to alert the defense to a possible defense theory arising under California law. Thus, the Court finds that Defendant has not shown that it is entitled to relief from the judgment for a failure to disclose under Rule 26(a).

C.

Defendant asserts that the award should be vacated because this Court found that "SCVWA 'did not introduce substantial evidence that it owned an interest in the land.'" RJMOL at 9 (citing JMOL Order at 5). This ruling, however, was specific to Plaintiff's claims for *trespass* and *private nuisance*—claims that require an interest in property as an essential element. JMOL Order at 4–7.[2]

Defendant urges that the Court's conclusion in the JMOL Order should extend to Plaintiff's other claims for restoration damages because those damages compensate for injury to property. But Plaintiff recovered damages on the theories of negligence and nuisance, which contain materially different elements. Dkt. No. 468 ¶¶ 11 & 17. Defendant cites no case law that supports disturbing the damages award because of the absence of evidence of a property interest on a negligence or public nuisance claim. *See* Dkt. No. 467 at 9–10 (discussing and rejecting Defendant's argument that the jury instructions should require possessory interests to pursue restoration damages for a negligence claim); Trial Tr. Vol. 20, 2200:1-13 (distinguishing ownership requirements for trespass and nuisance on the one hand, and negligence on the other). As such, the Court declines to find that Defendant is entitled to judgment as a matter of law on that ground.

D.

Defendant claims that the jury's award "fails because [Plaintiff] presented no evidence that the wellhead treatment facilities it seeks to construct would restore the property at issue to its original condition." RJMOL at 9.

Before analyzing this issue, the Court considers the jury instructions and special verdict form presented by the parties. The parties agreed upon the formulation of the instruction on the general measure of tort damages. Dkt. No.

---

[2] In its concurrently filed order on Plaintiff's motion for a new trial, the Court set aside the judgment in favor of Defendant on the private nuisance claim but left intact the ruling on the trespass claim.

5

412 at 63 (submitting Judicial Council of California Civil Jury Instruction (CACI) 3900). Under California law, the "measure of damages . . . is the amount which will compensate for all the detriment proximately caused thereby, whether it could have been anticipated or not." Cal. Civ. Code § 3333. The instruction submitted by the parties, CACI 3900, is intended to capture that general principle.

The principal dispute between the parties centered around the correct formulation of CACI 3903F, the instruction for damages to real property caused by tortious conduct, which is derived from the California Civil Code.[3] Judicial Council of California Civil Jury Instruction 3903F; *see* Cal. Civ. Code § 3334(a). As this Court previously explained:

> The parties submitted dueling instructions on the issue of "Damage to Real Property." Defendant proposed the verbatim text of CACI 3903F: Damage to Real Property (Economic Damage). Plaintiff submitted a modified version of CACI 3903F that removed references to "fair market value of the property" and "reduction in property value." Plaintiff argued that to "provide an instruction on fair market value and diminution in value where defendant has presented no evidence regarding those matters would merely create juror confusion and a risk of reversible error."

Dkt. No. 467 at 6.

CACI 3903F states the general rule for compensating a party for property damage—namely, the cost of repair (i.e., the cost of the restoring the property to its original condition) or the diminution in value, whichever is less. *Mozetti v. City of Brisbane*, 67 Cal. App. 3d 565, 576 (1977). Diminution in value, however, is "not an absolute limitation on damages," and it is only relevant when a party introduces evidence of such loss. *Armitage v. Decker*, 218 Cal. App. 3d 887, 904 (1990). The resolution of the dispute over the dueling formulation of the instruction, therefore, depended on which party had the burden of proof on this issue. California law imposes this burden on the defendant: "It follows that when a plaintiff proves

---

[3] The parties also disputed a defense instruction about "Plaintiff's Property Interest" requiring Plaintiff to prove a possessory interest in the damaged property to recover restoration damages. Dkt. No. 412 at 93. The Court overruled Plaintiff's objection and gave the instruction, except that it limited the instruction to the trespass and nuisance claims.

damages by showing the cost of repairs it should be incumbent on the defendant to introduce evidence that the repair costs exceed the value of the property." *Id*. at 905. Indeed, Defendant admitted that it was its burden to bear. Dkt. No. 440 at 2 (admitting that "the burden rests with Defendant to show that diminution of value is less than the purported cost to repair allegedly damaged real property"). Having failed to introduce diminution evidence, Defendant was not entitled to the instruction as requested. *See Jones v. Williams*, 297 F.3d 930, 934 (9th Cir. 2002) ("A party is entitled to an instruction about his or her theory of the case if it is supported by law and has foundation in the evidence.").[4] Consequently, the Court gave the instruction as modified by Plaintiff to omit the diminution-in-value portion of CACI 3903F. Dkt. No. 468 ¶ 23 (Instruction No. 23).

While Defendant now contends that restoration damages are inappropriate because of an absence of evidence of restoration of the property to its original condition, it did not propose an alternative instruction that would have provided a proper statement of the law applicable to this case. California law does not rigidly define repair costs to be limited to restoring the real property to its original condition:

> There is no fixed, inflexible rule for determining the measure of damages for injury to, or destruction of, property; whatever formula is most appropriate to compensate the injured party for the loss sustained in the particular case, will be adopted. . . . The rule precluding recovery of restoration costs in excess of diminution in value is . . . not of invariable application.

*Heninger v. Dunn*, 101 Cal. App. 3d 858, 862-63 (1980) (cleaned up).

Here, Plaintiff sought to repair the harm caused by the groundwater contamination by removing the contaminants prior to delivering drinking water to the public—and to that extent, the jury provided an award to "compensate the injured party for the loss sustained" in this case. The jury was instructed about this general remedial principle. Instruction No. 22 introduced the basic measure of tort damages—i.e., the amount that will compensate for harm proximately caused by

---

[4] Despite acknowledging to the Court that it bore the burden of proving diminution in value, defense counsel argued to the jury—without objection—that it could not award damages under CACI 3903F "because plaintiff didn't put on any evidence" of the value of the land. Trial Tr. Vol. 20, 2182:19–20.

the wrongdoing. Dkt. No. 468 at 10. As discussed, this jointly submitted instruction was drawn from CACI 3900, and the source of this standard instruction is § 3333 of the California Civil Code. Defendant did not suggest that this instruction was inadequate to guide the jury's consideration of damages arising out of the tortious conduct alleged in this case, including negligence and nuisance. Nor did Defendant request any modifications to CACI 3900.

The parties originally submitted competing special verdict forms. Dkt. Nos. 371, 372. During trial, Plaintiff submitted an updated verdict form, to which Defendant agreed on the "substantive issues," but not on how "damages were laid out." Dkt. No. 459; Trial Tr. Vol. 19, 2043:16–22. The Court discussed the form with the parties, offered a modification to the wording of one question, and the parties agreed to the form. Trial Tr. Vol. 20, 2206:14–22, 2207:1–4. The jury was asked to render a verdict on Plaintiff's theories of liability (i.e., negligence, trespass, private nuisance, and public nuisance).[5] The jury found that Defendant was negligent and that Defendant's negligence was "a substantial factor in causing harm" to Plaintiff. Dkt. No. 476 at 1, 6. The jury also found that Defendant created a public and private nuisance that harmed Plaintiff. *Id*. at 2–5. The jury was then asked to determine "Past damages" and "Reasonable restoration or repair costs." *Id*. at 6. Even in the parties' competing forms, the parties did not request that the jury provide a separate verdict for damages depending on the specific theory of tort liability. *See* Dkt. Nos. 371 at 11 (Plaintiff's proposal, which includes a single question for the jury to state a damages amount); 372 at 2 (Defendant's proposal, same).

Given this procedural background, the Court is not persuaded that Defendant is entitled to judgment as a matter of law. It is true that Plaintiff did not show that the treatment system would restore *the real property* to its original condition. Instead, Plaintiff produced evidence that treatment of the water would restore it to its pre-harm position (i.e., the position it would have occupied had Defendant not contaminated the groundwater). That is, Plaintiff presented evidence that the treatment system would remove from its supply wells the contamination caused by Plaintiff. To the extent that the instructions did not adequately convey this measure of damages for the negligence and nuisance theories, Defendant made no objection pointing out any relevant deficiency. Defendant instead focused its

---

[5] The Court focuses on three of the four liability theories in light of its ruling that Plaintiff failed to prove trespass as a matter of law. *See* JMOL Order; Order on Plaintiff's Motion for New Trial.

objections primarily on the failure to instruct the jury on diminution in value, which—as shown—did not apply here. These objections do not appear to be sufficient to challenge the adequacy of the instructions, *see* Fed. R. Civ. P. 51(d)(1) (stating that a party may assign error to the jury instructions "if that party properly objected"); *Coston v. Nangalama*, 13 F.4th 729, 732 (9th Cir. 2021) (noting a party must provide an objection or proposed instruction that "is sufficiently specific to bring into focus the precise nature of the alleged error" (cleaned up)); and Defendant has not shown that "review is needed to prevent a miscarriage of justice," *C.B. v. City of Sonora*, 769 F.3d 1005, 1019 (9th Cir. 2014) (describing availability of plain error review when a party fails to preserve an objection after 2003 amendment to Rule 51) (en banc) (cleaned up).[6]

Accordingly, Defendant has not shown that it is entitled to judgment as a matter of law.

II.

Defendant argues that, if not vacated, the jury's award should be reduced because it is disproportionate and unreasonable. Defendant relies on the Court's finding that Plaintiff "has not presented evidence that establishes 'anything more than a speculative prospect of harm.'" FF/CL ¶ 105 (quoting *Simsbury-Avon Pres. Club, Inc. v. Metacon Gun Club, Inc.*, 575 F.3d 199, 214 (2d Cir. 2009)). But the Court found that the harm Plaintiff established was insufficiently imminent and substantial *for purposes of Plaintiff's RCRA claim seeking injunctive relief*. The jury's award was based on different legal theories with different legal requirements and involved fact finding by different triers of fact.[7] "This court will not disturb an

---

[6] In closing argument, Defendant seemed to agree that water treatment was a proper measure of damages and invited the jury to return a verdict against it—just not in the scope and amount of damages sought by Plaintiff. Trial Tr. Vol. 20, 2130:24–2131:1 ("The perchlorate is ours. And whatever you decide is a reasonable sum to put a perchlorate treatment system in [Well] 205, we have to pay."); *see also id*. at 2135:6–12 (urging the jury to award Plaintiff $3.1 million); *id*. at 2185:6–7 (same).

[7] For example, the Court in its role as a fact finder was not persuaded by Plaintiff's evidence that DDW had stated that it required a VOC treatment system to permit the use of V-201 and V-205 as a source of drinking water. But a reasonable fact finder could conclude from the trial record that the installation of such a system would facilitate DDW's issuance of a permit. A reasonable fact finder also could

award of damages on appeal unless it is clearly unsupported by the evidence. An otherwise supportable verdict must be affirmed unless it is grossly excessive or monstrous or shocking to the conscience." *Brady v. Gebbie*, 859 F.2d 1543, 1557 (9th Cir. 1988) (citations omitted) (cleaned up). The Court finds the award was not manifestly excessive, and as such, the Court will not reduce the jury's award.

### III.

Defendant also moves, in the alternative, for a new trial pursuant to Rule 59 on the negligence and public nuisance claims. A new trial may be ordered "after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court." Rule 59(a)(1)(A). Defendant raises three grounds for a new trial.

### A.

The first ground is that the jury's award is "contrary to the clear weight of the evidence." RJMOL at 15. In particular, Defendant takes issue with seemingly insufficient evidence of Plaintiff's property interests, evidence that the restoration of Plaintiff's property will return it to its original condition, and evidence of sufficient contamination to justify the award. The standard for disturbing a jury's award is high: if "there is evidence, which, if believed, would support the verdict," the Court must uphold the jury verdict. *Passantino v. Johnson & Johnson Consumer Prod., Inc.*, 212 F.3d 493, 513 (9th Cir. 2000). The Court finds, as discussed above, that there is evidence on which the jury reasonably could have based its award in each of these areas and will not order a new trial on these grounds. *See also* JMOL Order at 2–4.

### B.

Defendant also argues that the court erred in failing to instruct the jury on what to do if Plaintiff failed to show that the restoration costs it sought were reasonable. RJMOL at 16–17 (citing *Starrh & Starrh Cotton Growers v. Aera Energy LLC*, 153 Cal. App. 4th 583, 600–01(2007)). Defendant's reliance on *Starrh & Starrh* for this argument is misplaced.

---

find that the cost of the system was reasonable because those two wells rely on an "extremely impaired" water source.

10

In *Starrh & Starrh*, the plaintiff sought damages arising out of a trespass that resulted from oil production activities on adjacent land owned by the defendant. At trial, the plaintiff introduced a restoration plan to return the underlying groundwater to its native state at a cost of approximately $2.2 billion, even though the groundwater in its original condition was not useable for drinking water or irrigation of most agricultural crops. 153 Cal. App. 4th at 590. The plaintiff also introduced an expert who valued the underlying groundwater in its native condition at $10 million. The jury returned a verdict in favor of the plaintiff in the amount of $3.8 million—an amount that had "no evidentiary support" and that could not even be explained. *Id*. at 600. In the context of a party seeking to restore real property to its original condition, the court concluded that the jury instructions were deficient:

> In order to balance these competing interests, a jury must be told that once it resolves the factual issue of how much it might cost to restore the groundwater under [the plaintiff's] property to its original state (resolving the evidence presented by the experts), it must then determine whether the restoration costs are reasonable in light of all the competing interests. Without proper instruction, a jury will have a very difficult time knowing how to go about its evaluation of damages. This is particularly true in light of the fact that the proposed restoration project arguably bears little relationship to the current use and value of the land, coupled with the historic understanding of the availability of the water for irrigation and other uses.

*Id*. at 601.

Unlike the plaintiff in *Starrh & Starrh*, Plaintiff in this case did not seek to restore the land to its native condition. As the court stated in that case, "there are many ways to measure damages and the ultimate goal is to restore the plaintiff to its former position." *Id*. Plaintiff in this case sought to be placed in the position it would have occupied but for the contamination caused by Defendant by removing the contaminants from the water through a treatment system before delivery to the public. The jury was instructed that if it found liability, it had to decide "how much money will reasonably compensate [Plaintiff] for the harm." Dkt. No. 468 ¶ 22. The jury was further instructed that Plaintiff had to prove the reasonable cost of repairing the harm, that there had to be "a reasonable relationship between the cost of repair and the harm caused by [Defendant's] conduct," and that the jury must determine if the costs are "reasonable in light of all the competing interests set forth in the evidence presented by the parties." *Id*. ¶ 23.

11

Defendant's principal argument is that the Court erred in "declin[ing] to instruct the jury on how to determine the property's fair market value or the reduction in that value." RJMOL at 17. As previously discussed, however, Defendant admittedly had the burden of demonstrating that the costs of the treatment systems were unreasonable in light of the reduction in the value of the real property caused by the contamination. Having failed to introduce any evidence to support this argument, Defendant could not obtain an instruction that would have shifted the burden to Plaintiff. As Defendant acknowledges, it was only entitled to this instruction "if it is supported by law and has a foundation in the evidence." *Id*. at 18 (quoting *Clem v. Lomeli*, 566 F.3d 1177, 1181 (9th Cir. 2009)). Because there was no evidentiary support for an instruction about the fair market value of the property, there was no basis to instruct the jury on this point.

C.

Finally, Defendant seeks a new trial because of the alleged Rule 26(a) violation in failing to disclose the damage theory. This argument does not warrant a new trial for the reasons previously discussed.

IV.

Defendant's renewed motion for judgment as a matter of law and its alternative motion for a new trial are DENIED.

IT IS SO ORDERED.

Date: December 28, 2022

_____
Stanley Blumenfeld, Jr.
United States District Judge